**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JAZZ PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 22-941-GBW |
| v. | ) | |
| | ) | |
| AVADEL CNS PHARMACEUTICALS, LLC, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COUNTERCLAIM PLAINTIFF AVADEL CNS PHARMACEUTICALS, LLC'S
OPPOSITION TO COUNTERCLAIM DEFENDANT JAZZ PHARMACEUTICALS,
INC.'S MOTION TO DISMISS ANTITRUST COUNTERCLAIMS**

## <u>TABLE OF CONTENTS</u>

**Page**

NATURE AND STAGE OF THE PROCEEDINGS ....................................................................1

SUMMARY OF ARGUMENT ...............................................................................................2

STATEMENT OF FACTS ....................................................................................................3

LEGAL STANDARD...........................................................................................................5

ARGUMENT .....................................................................................................................6

I.      Jazz's "Reasonable, Good Faith" Defense Provides No Basis for Dismissal.....................7

      1.      Avadel was not required to plead facts overcoming an affirmative defense ..........7

      2.      Jazz fails to argue that its filing was in good faith, and could not do so without creating a question of fact that would require discovery ..........................8

            a.      Good faith is a necessary element of Jazz's claimed defense....................8

            b.      Avadel has alleged abundant facts plausibly showing that Jazz listed, and refused to delist, the '963 patent in bad faith ............................8

            c.      A dispute around Jazz's "good faith" would require discovery ...............10

      3.      Jazz did not have a "reasonable basis" for listing the '963 patent in 2014...........11

            a.      Jazz was only permitted to list a patent covering a drug or method of using a drug ......................................................................................11

II.      Jazz Is Not Entitled to *Noerr-Pennington* Immunity ........................................................16

      1.      Jazz concedes that *Noerr-Pennington* provides no protection for improperly listing the '963 Patent in the Orange Book ............................................................16

      2.      Jazz's second lawsuit asserting the '963 patent, filed solely to trigger a stay, is not shielded by *Noerr-Pennington* ....................................................................16

      3.      Even if the lawsuit itself were *Noerr*-protected, it would not immunize Jazz's anticompetitive listing and may be used to prove injury and damages ....................................................................................................................19

CONCLUSION..................................................................................................................20

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Abbott Lab'ys v. Teva Pharms. USA, Inc.*,
  432 F. Supp. 2d 408 (D. Del. 2006)...............................................................................10, 19

*In re Actos Antitrust Litig.*,
  No. 13-cv-09244, 2022 WL 4282294 (S.D.N.Y Sept. 16, 2022) ......................................8, 15

*In re Actos End-Payor Antitrust Litig.*,
  417 F. Supp. 3d 352 (S.D.N.Y. 2019)....................................................................................7

*Amphastar Pharms. Inc. v. Momenta Pharms., Inc.*,
  850 F.3d 52 (1st Cir. 2017) ..................................................................................................19

*Astra Aktiebolag v. Kremers Urban Dev. Co.*,
  Nos. 99-cv-08928, 2001 WL 1807917 (S.D.N.Y. Oct. 26, 2001) ...........................................8

*Bagic v. Univ. of Pittsburgh*,
  773 Fed. App'x 84 (3d Cir. 2019)..........................................................................................10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................................5

*Broadcom Corp. v. Qualcomm Inc.*,
  501 F.3d 297 (3d Cir. 2007)....................................................................................................6

*In re Buspirone Patent Litig.*,
  185 F. Supp. 2d 363 (S.D.N.Y. 2002)...............................................................................16, 18

*Carcieri v. Salazar*,
  555 U.S. 379 (2009)..............................................................................................................12

*City of Columbia v. Omni Outdoor Advert., Inc.*,
  499 U.S. 365 (1991)..............................................................................................................17

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*,
  690 F.2d 1240 (9th Cir. 1982) ..............................................................................................19

*FTC v. AbbVie Inc.*,
  976 F.3d 327 (3d Cir. 2020)..................................................................................................17

*Goldenberg v. Indel, Inc.*,
  741 F. Supp. 2d 618 (D.N.J. 2010) ........................................................................................6

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
  527 F. Supp. 2d 1084 (N.D. Cal. 2007) ................................................................19

*Intel Corp. v. Fortress Inv. Grp. LLC*,
  No. 19-cv-07651, 2020 WL 6390499 (N.D. Cal. July 15, 2020) ......................................19, 20

*Intell. Ventures I LLC v. Capital One Fin. Corp.*,
  No. 18-1367 (Fed. Cir.) (Docket No. 41) (FTC/DOJ Amicus Br. ) ....................................19

*Kroger Co. v Sanofi-Aventis*,
  701 F. Supp. 2d 938 (S.D. Ohio 2010) .................................................................8

*Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Corp.*,
  26 F.3d 375 (3d Cir. 1994).............................................................................10

*In re Lantus Direct Purchaser Antitrust Litig.*,
  950 F.3d 1 (1st Cir. 2020)..................................................................... *passim*

*LePage's Inc. v. 3M*,
  324 F.3d 141 (3d Cir. 2003).............................................................................5

*Lifewatch Servs. Inc. v. Highmark Inc.*,
  902 F.3d 323 (3d Cir. 2018).............................................................................5

*In re Lipitor Antitrust Litig.*,
  868 F.3d 231 (3d Cir. 2017)...........................................................................5, 7

*Microsoft Mobile Inc. v. Interdigital, Inc.*,
  No. 15-cv-00723, 2016 WL 1464545 (D. Del. Apr. 13, 2016) ........................................20

*Nat'l Gerimedical Hosp. & Gerontology Ctr. v. Blue Cross of Kansas City*,
  452 U.S. 378 (1981)....................................................................................15

*Nobelpharma AB v. Implant Innovations, Inc.*,
  141 F.3d 1059 (Fed. Cir. 1998).........................................................................6

*Organon, Inc. v. Mylan Pharms., Inc.*,
  293 F. Supp. 2d 453 (D.N.J. 2003) ..................................................................7, 16

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993).........................................................................6

*Phillips v. Cnty. of Allegheny*,
  515 F.3d 224 (3d Cir. 2008)...........................................................................5

*Phonetele, Inc. v. AT&T Co.*,
  664 F.2d 716 (9th Cir. 1981) .........................................................................15

*Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n*,
    814 F.2d 358 (7th Cir. 1987) ..................................................................19

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ...............................................................................17

*Schmidt v. Skolas*,
    770 F.3d 241 (3d Cir. 2014) ...............................................................5, 7

*Times-Picayune Publ'g Co. v. United States*,
    345 U.S. 594 (1953) ................................................................................6

*United Airlines v. Transp. Sec. Admin.*,
    20 F.4th 57 (D.C. Cir. 2021) ................................................................12

*United Food and Com. Workers Local 1776 & Participating Emps. Health and Welfare Fund v.*
    *Takeda Pharm. Co. Ltd.*,
    11 F.4th 118 (2d Cir. 2021) ....................................................................7

*United States v. Grinnell Corp.*,
    384 U.S. 563 (1966) ................................................................................6

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
    382 U.S. 172 (1965) ..............................................................................17

*Xechem, Inc. v. Bristol-Myers Squibb Co.*,
    372 F.3d 899 (7th Cir. 2004) ..................................................................7

## STATUTES

21 U.S.C.
    § 355-1(f)(8) .........................................................................................9
    § 355(b)(1) ...........................................................................................11
    § 355(b)(1)(A) ......................................................................................18
    § 355(c)(2) ............................................................................................14
    § 355(j)(5)(C)(ii)(I) ..............................................................................11

## RULES

Fed. R. Civ. P. 12(b)(6)...............................................................................7

## REGULATIONS

21 C.F.R.
    § 314.53.................................................................................................13
    § 314.53(b)(1) .......................................................................................14

68 Fed. Reg. 36,687 (June 18, 2003) ...........................................................14

# OTHER AUTHORITIES

FDA, "The Listing of Patent Information in the Orange Book,"
　　https://www.fda.gov/media/155200/download, at 1 ................................................................14

*Intell. Ventures I LLC v. Capital One Fin. Corp.*,
　　No. 18-1367 (Fed. Cir.) (Docket No. 41) (FTC/DOJ Amicus Br. ).........................................19

## NATURE AND STAGE OF THE PROCEEDINGS

Jazz filed its first patent infringement action against Avadel asserting the '963 patent on May 21, 2021.  Ex. A, C.A. No. 21-691, D.I. 1.  In that lawsuit, Jazz sought declaratory relief, preliminary and permanent injunctive relief, and damages in the event that Avadel obtains FDA approval for and launches its innovative, once-nightly narcolepsy treatment, LUMRYZ.

Because Jazz improperly listed the '963 patent in the Orange Book and submitted a false use code describing the '963 patent as being directed to a method of treating a patient, Avadel was forced to file a Paragraph IV certification on June 6, 2022, in connection with its NDA for LUMRYZ.  On July 15, 2022, Jazz filed this second patent infringement action *solely* to trigger an automatic, statutory stay of the FDA's ability to approve LUMRYZ.  D.I. 1.[1]

Before Jazz filed this second suit, Avadel moved to delist the '963 patent from the Orange Book on July 23, 2021.  C.A. No. 21-691, Ex. B, D.I. 20; Ex. C, D.I. 21.  Jazz delayed resolution of Avadel's delisting motion by over a year by arguing that the Court must first construe the patent claims to determine whether they are directed to methods or systems.  *Id.*, Ex. D, D.I. 43 at 9–10. Following a *Markman* hearing, the Court determined that "the claims of the '963 patent are directed to systems, not methods" and granted Avadel's motion to delist.  *Id.*, Ex. E, D.I. 229 at 17; Ex. F, D. I. 231 at 6.  Jazz has appealed that order.

Avadel answered Jazz's complaint in the second action on October 21, 2022, asserting antitrust counterclaims based on Jazz's improper listing of—and refusal to delist—the '963 patent in the Orange Book.  D.I. 14.  Jazz moved to dismiss on December 9, 2022.  *Id.*, D.I. 21, 22.

---

[1] Unless otherwise specified, all "D.I." citations refer to this matter, C.A. No. 22-941-GBW.

## SUMMARY OF ARGUMENT

1. Jazz does not dispute that Avadel has properly pleaded the elements of monopolization or attempted monopolization, including market definition, monopoly power, and harm to competition. Instead, Jazz seeks dismissal on two narrow affirmative defenses, both of which turn on factual questions unsuitable for resolution on a motion to dismiss.

2. **First,** Jazz's motion relies on a "reasonable, good faith" defense that the Third Circuit has not recognized, contradicts the allegations in the counterclaims, and relies on a clearly erroneous reading of the law governing its listing of the '963 patent. The purported defense requires Jazz to show both good faith and a reasonable basis to conclude its conduct was required by FDA regulations. Avadel pleaded facts showing Jazz's bad faith; Jazz fails to discuss this element altogether. Even if Jazz attempts improperly to argue good faith for the first time in its reply brief, whether it acted in good faith is a question of fact.

3. Avadel's pleading shows that Jazz acted unreasonably. Jazz was never permitted (let alone required) to list the '963 patent in the Orange Book because that patent does not claim a drug or a method of using a drug. Jazz's argument that it was "permitted" to list the '963 patent is irrelevant, and in any event belied by the regulatory text, unsupported by any case law, and contradicted by Jazz's principal case, *In re Lantus Direct Purchaser Antitrust Litig.*, 950 F.3d 1 (1st Cir. 2020). If Jazz had a reasonable basis to list a patent on a drug distribution system, of course, it would not have had to craft a use code to a method of treatment or argue that the patent's system claims were really directed to methods.

4. **Second**, Jazz wrongly invokes the *Noerr-Pennington* doctrine to argue that its scheme to delay competition is immune from antitrust scrutiny. That doctrine does not apply to the ministerial act of Orange Book listing, which itself harmed competition. Nor is Jazz exempt from antitrust liability for leveraging that listing to obtain a statutory stay by filing this lawsuit.

Though unnecessary, Avadel adequately alleged that the litigation is a sham.  It is both objectively baseless and brought for the purpose of excluding competition.  Further, it was not filed to seek relief through the judicial process, but merely to leverage the sham listing into an automatic stay.  Jazz's triggering of the automatic stay by filing this case is also actionable because it is predicated on a misrepresentation to the FDA about the patent at issue.  Finally, even *Noerr*-protected litigation can form the basis for antitrust injury and damages if it is filed pursuant to separate, anticompetitive conduct, as alleged here.

## STATEMENT OF FACTS

Jazz is a monopolist with a history of improperly listing patents in the Orange Book to shut down new entrants before they can challenge Jazz's billion-dollar-a-year XYREM franchise.  For 17 years, Jazz has sold the only FDA-approved treatment option for narcolepsy patients suffering from EDS and cataplexy, XYREM and, more recently, XYWAV.  Jazz's business has long depended on the success of its oxybate monopoly, and the company has taken all steps to keep competition at bay.  And it has been remarkably successful in doing so.  Despite raising the price of XYREM more than 1000% since 2007, Jazz has staved off all entry.  D.I. 14 ¶ 108.

Avadel poses a unique threat to Jazz's monopoly.  In 2014, analysts characterized Avadel's candidate drug, LUMRYZ, as "Jazz Pharmaceuticals' Worst Nightmare" and "not just . . . a competitor but [a drug that] could displace XYREM's market share completely."  *Id*. ¶ 42.  Jazz conceded to investors in 2017 that "[i]f Avadel is successful in developing a[n] oxybate formulation that could be effectively used with its delivery technology . . . [it] could have a material adverse effect on our business, financial conditions, results of operations and growth prospects."  *Id*. ¶ 75.

Jazz fears Avadel for good reason.  Avadel developed a far superior oxybate formulation than Jazz's two drugs, both of which require patients to take one dose before going to bed and then

forcibly awaken to take a second dose 2.5 to 4 hours later, which is especially challenging for narcolepsy patients suffering from disrupted sleep. *Id*. ¶¶ 62, 64. Patients have long sought a once-at-bedtime oxybate formulation, like LUMRYZ. *Id*. ¶ 63.

Jazz thus set out to delay competition from Avadel for as long as possible. In 2014, only weeks after Avadel announced a successful study for the drug that would become LUMRYZ, Jazz listed the '963 patent in the Orange Book. *Id*. ¶ 72. That patent, by its own express terms, claims a "computer-implemented system" with a central database to manage prescriptions. *Id*. ¶ 85. Knowing that the FDA does not review whether a use code accurately represents patent claims, Jazz sought to obscure the plain fact that the '963 patent could not be listed by drafting an incorrect use code, which misrepresented that the patent claims were directed to a "method of treating a patient with a prescription drug[.]" *Id*. ¶¶ 53, 90, 93.

Jazz's listing of the '963 patent continued a course of conduct that it had followed for years. Indeed, Jazz previously faced antitrust litigation for implementing the same exclusionary tactics. In 2010, Roxane Laboratories sought FDA approval for a generic version of XYREM, but Jazz listed patents in the Orange Book and sued Roxane to trigger an automatic stay. *Id*. ¶ 50. Roxane then sued Jazz for its anticompetitive listing of REMS patents, "improperly serving to block or delay approval of Roxane's ANDA." *Id*. Jazz's settlement with Roxane preserved its monopoly. *Id*.

As Jazz intended, its anticompetitive scheme delayed the launch of LUMRYZ by at least one and a half years (and counting). *Id*. ¶ 44. If Jazz had not improperly listed and maintained the '963 listing, the FDA would likely have approved the NDA for LUMRYZ by October 2021. *Id*. ¶ 114. Avadel would have launched LUMRYZ in April 2022. *Id*. ¶ 115. This would have finally toppled Jazz's monopoly, giving patients a superior treatment and pressuring Jazz to reduce prices

4

for its inferior drug. *Id.* Instead, LUMRYZ's launch has been delayed, both directly as a function of the Orange Book listing, and further due to the automatic stay, denying Avadel revenue and causing Avadel to lay off half its workforce, all the while incurring costs and attorneys' fees to defend against Jazz's lawsuit and litigate Avadel's delisting claims. *Id.* ¶ 117. Avadel now seeks relief for the antitrust injury it suffered from Jazz's anticompetitive acts. *Id.* ¶ 118.

## LEGAL STANDARD

A court evaluating a motion to dismiss must accept all factual allegations as true and construe the complaint in the light most favorable to the claimant. *Lifewatch Servs. Inc. v. Highmark Inc.*, 902 F.3d 323, 332, 335 (3d Cir. 2018). The motion must be denied if the pleading contains "enough factual matter (taken as true) to . . . raise a reasonable expectation that discovery will reveal evidence of" the elements of the claim. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)) (internal quotations omitted). In an antitrust case, "[t]he relevant inquiry is the anti-competitive effect of [the dominant firm's] exclusionary practices considered together," and "courts must look to the monopolist's conduct taken as a whole rather than considering each aspect in isolation." *LePage's Inc. v. 3M*, 324 F.3d 141, 162 (3d Cir. 2003).

In the Third Circuit, "a complaint need not anticipate or overcome affirmative defenses." *Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2014); *see also In re Lipitor Antitrust Litig.*, 868 F.3d 231, 257 (3d Cir. 2017) ("*Twombly* does not require an antitrust plaintiff to plead facts that, if true, definitively rule out all possible innocent explanations."). "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the

complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).[2]

Monopolization requires "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 306–07 (3d Cir. 2007) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966)); *see also Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1067 (Fed. Cir. 1998) (applying regional circuit law with respect to antitrust issues). The "completed offense of monopolization . . . demands only a general intent to do the act, for 'no monopolist monopolizes unconscious of what he is doing.'" *Times-Picayune Publ'g Co. v. United States*, 345 U.S. 594, 626 (1953). Attempted monopolization requires "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Broadcom*, 501 F.3d at 317.

## ARGUMENT

Jazz does not contest that Avadel has plausibly alleged facts sufficient to state each element of its monopolization claims. Instead, Jazz's motion asks this Court to dismiss Avadel's claims based on two premature and meritless affirmative defenses. Jazz's motion should be denied.

---

[2] Jazz suggests that the Court should disregard any allegation that "judicially noticeable documents" contradict. D.I. 22 at 9. Jazz points to no contradiction, however, let alone one that might have any bearing on the ultimate merits. Regardless, the case on which Jazz relies for its proposition, *Goldenberg v. Indel, Inc*, 741 F. Supp. 2d 618, 624 (D.N.J. 2010), merely states that, where documents referenced in or attached to a complaint contradict the allegations in the complaint about those materials, the documents will control. *Id*. Here, none of the documents cited by Jazz appears in Avadel's Counterclaim and none of the documents suggests—much less establishes as a judicially noticeable fact—that Jazz was reasonable and lacked anticompetitive intent in listing, and then refusing to delist, the '963 patent.

## I.      Jazz's "Reasonable, Good Faith" Defense Provides No Basis for Dismissal

Jazz invokes a defense based on its "reasonable, good faith" conduct in listing the '963 patent in 2014.  The Third Circuit does not require a plaintiff to plead facts defeating an affirmative defense, so the issue is premature.  Even were it to be considered on the merits, the defense is predicated on questions of fact that cannot be resolved on a Rule 12(b)(6) motion.

### 1.      Avadel was not required to plead facts overcoming an affirmative defense

Jazz's argument presumes that Avadel had to plead facts showing that any affirmative defense is unavailable.  But that is not the law in the Third Circuit.  *See In re Lipitor*, 868 F.3d at 261–62 (plaintiffs are not "required to counter potential defenses at the pleading stage."); *Schmidt*, 770 F.3d at 248 ("a complaint need not anticipate or overcome affirmative defenses"); *see also United Food and Com. Workers Local 1776 & Participating Emps. Health and Welfare Fund v. Takeda Pharm. Co. Ltd.*, 11 F.4th 118, 137–38 (2d Cir. 2021) (plaintiffs are "not required to aver that 'the listing decision was unreasonable' in order to allege a monopolization claim"); *Xechem, Inc. v. Bristol-Myers Squibb Co*., 372 F.3d 899, 901 (7th Cir. 2004) (noting in action alleging improper Orange Book listing that "[c]omplaints need not contain *any* information about defenses and may not be dismissed for that omission.").

Jazz relies heavily on *Organon, Inc. v. Mylan Pharms., Inc.*, 293 F. Supp. 2d 453 (D.N.J. 2003), an outlier decision that the Third Circuit never considered, conflicts with the controlling law cited above, has no precedential value, and has not otherwise been adopted.  *See, e.g.*, *In re Actos End-Payor Antitrust Litig*., 417 F. Supp. 3d 352, 373 (S.D.N.Y. 2019) ("The *Organon* court cites no authority, and it does not appear to articulate a rationale as to why the reasonableness of

the defendant's interpretation precluded the plaintiff from stating a monopolization claim.").[3]

### 2. Jazz fails to argue that its filing was in good faith, and could not do so without creating a question of fact that would require discovery

Though not a cognizable basis for dismissal, the defense at issue has two elements: a reasonable belief that listing the patent was required, and good faith in undertaking to list it. Jazz completely ignores the second element.

### a. Good faith is a necessary element of Jazz's claimed defense

Even if the Third Circuit followed the First Circuit, a reasonable basis for concluding that a listing was objectively required would not suffice. Jazz would also have to show that a good-faith effort to comply with the Hatch-Waxman regulatory scheme—as distinct from a desire to exclude competition—motivated that listing. *Lantus*, 950 F.3d at 13 (rejecting defendant's request "for immunity if its proffered reading of the statute was objectively reasonable," and instead requiring that "the challenged conduct be both reasonable *and in good faith*") (emphasis added); *see also In re Actos Antitrust Litig.*, No. 13-cv-09244, 2022 WL 4282294, at *8 (S.D.N.Y Sept. 16, 2022).

### b. Avadel has alleged abundant facts plausibly showing that Jazz listed, and refused to delist, the '963 patent in bad faith

Avadel pleaded detailed facts showing that Jazz listed the '963 patent with *anticompetitive intent*. Improper Orange Book listing has been a "favorite exclusionary tactic"

---

[3] *Astra Aktiebolag v. Kremers Urban Dev. Co.*, Nos. 99-cv-08928, 2001 WL 1807917 (S.D.N.Y. Oct. 26, 2001) and *Kroger Co. v Sanofi-Aventis*, 701 F. Supp. 2d 938 (S.D. Ohio 2010) are of no help to Jazz either. In *Astra*, unlike here, the defendant failed to allege that "either Astra's listing the patents . . . or Astra's attempt to enforce those patents against KUDCo was done in bad faith or with an improper purpose." *Astra*, 2001 WL 1807917 at *1. And in *Kroger*, plaintiffs pleaded that Sanofi's lawsuit for patent infringement against Apotex succeeded—undermining their claims that the Orange Book listing was in bad faith. *Kroger*, 701 F. Supp. 2d at 964.

deployed by Jazz as early as 2010 to exclude competition with its sodium oxybate monopoly.[4]   D.I. 14 ¶ 50.   Jazz ignores those allegations, and improperly maintained its listing in the face of the unambiguous language of the delisting statute, which also warrants denial of Jazz's motion.

Jazz was sued for antitrust violations in 2010 based on identical conduct—improper listings of REMS patents in the Orange Book—and the FTC had made clear more than a decade previously that wrongfully listing patents in the Orange Book can unlawfully exclude competition.  *Id.* ¶¶ 50, 83.  And, notably, Congress passed 21 U.S.C. § 355-1(f)(8) in 2007 to prevent companies from using REMS requirements to "block or delay" new entry, which is precisely what Jazz did here.

Against this background, in 2014, "[d]espite knowing that the '963 patent does not claim the active pharmaceutical ingredient in XYREM, the formulation or composition of XYREM, or a method of using XYREM, Jazz nevertheless listed and maintained the '963 patent in the Orange Book."  *Id.* ¶ 86.  "Jazz's decision to list the '963 patent in the Orange Book was no mistake or good-faith misreading of applicable law but a deliberate attempt to preserve its monopoly[.]"  *Id.* ¶ 144.  That listing came less than two months after Avadel published a clinical study showing the clinical significance of FT218's single-dose solution.  *Id.* ¶¶ 71–72.

Jazz knew the '963 patent did not fall within the narrow categories of patents that could be listed in the Orange Book, so it made up a use code asserting that the '963 patent claimed a method of treating a patient using a REMS, a misstatement of the system language in the patent claims.  *Id.* ¶¶ 52–53.   Jazz has continued to maintain this improperly listed patent despite multiple opportunities to delist it over the intervening years, and Jazz brought this suit to obtain an automatic stay on the basis of that listing.  *Id.* ¶¶ 54, 91, 95, 98, 99, 117, 136, 145, 149.

---

[4] Tellingly, when it was sued for improperly listing a different patent in the Orange Book in 2010, Jazz did not even attempt to move to dismiss and instead answered the counterclaim.  Ex. G, Case No. 10-cv-06108-ES-JAD, D.I. 22.

Finally, even if, contrary to these allegations, Jazz had made a good faith determination to list the '963 patent in 2014, Avadel's claims are not limited to Jazz's actions at that time. Avadel filed its NDA for LUMRYZ on December 15, 2020, three weeks before the Orange Book Transparency Act ("OBTA") took effect. *Id.* ¶ 55. Even if Jazz truly were confused back in 2014 about whether the '963 patent should be listed, Jazz could have asked the FDA to delist the '963 patent in January 2021. And Jazz was fully aware of the unambiguous language of the delisting statute in 2021, when Avadel answered Jazz's initial complaint and sought judgment on the pleadings under the delisting statute. Ex. H, C.A. No. 21-691, D.I. 11. Instead, Jazz improperly maintained its listing to maintain its monopoly position. D.I. 14 ¶¶ 54, 55, 145, 149.

### c. A dispute around Jazz's "good faith" would require discovery

Jazz does not try to argue around these factual allegations, instead limiting its argument to the supposed reasonableness of its 2014 listing decision. That failure itself warrants denying Jazz's motion, regardless of what Jazz tries to concoct in reply. *See Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief[.]").

Even if Jazz were allowed to argue good faith for the first time in reply, it would create a fact question that could not be resolved on a motion to dismiss. *Bagic v. Univ. of Pittsburgh*, 773 Fed. App'x 84, 88 (3d Cir. 2019) (holding that the need to resolve material questions of fact precludes dismissal); *Abbott Lab'ys v. Teva Pharms. USA, Inc.*, 432 F. Supp. 2d 408, 425–26 (D. Del. 2006) (accepting plaintiffs' allegations as true and denying motion to dismiss sham litigation claims). Indeed, even the First Circuit decision to which Jazz looks for recognition of an antitrust defense based on a good faith, reasonable mistake makes clear that dismissal would be improper. *Lantus*, 950 F.3d at 10 ("further proceedings beyond a Rule 12 motion are necessary to determine

10

whether Sanofi should be held liable . . . for . . . its improper submission of the '864 patent").[5]

### 3.   Jazz did not have a "reasonable basis" for listing the '963 patent in 2014

Jazz's motion to dismiss is likewise predicated on the familiar argument that it "had a reasonable basis for concluding that it was permitted to list the '963 patent" in 2014. D.I. 22 at 3 (emphasis omitted).   Nothing could be further from the truth.   Avadel's factual allegations demonstrate that Jazz did not do "what any sensible company would have done," *id.* at 3; it misrepresented its patent rights and flouted black-letter law, providing another independent basis to deny Jazz's motion.

### a.   Jazz was only permitted to list a patent covering a drug or method of using a drug

First, Jazz's motion is predicated on an objectively erroneous view of the statutory regime. The listing statute provides that a new drug applicant like Jazz "shall submit" with its new drug application any patent that claims "the drug for which the applicant submitted the application" as well as any patent that "claims a method of using such drug." 21 U.S.C. § 355(b)(1).  The delisting statute parallels that statutory provision, permitting a Hatch-Waxman defendant to:

> assert a counterclaim seeking an order requiring the [brand] to correct or delete the patent information submitted by the [brand] under subsection (b) or (c) [of § 355] on the ground that the patent does not claim either (aa) the drug for which the [brand's NDA] was approved; or (bb) an approved method of using the drug.

21 U.S.C. § 355(j)(5)(C)(ii)(I).

---

[5] Jazz tries to distinguish *Lantus* on the ground that "overwhelming judicially noticeable materials confirm Jazz's decision to list the '963 Patent was reasonable." D.I. 22 at 14 n.11. Not so. The materials alleged in the Counterclaims, along with the materials Jazz cites, merely confirm that "no close reader could have reasonably thought that submitting the ['963 patent] was so clearly proper as to obviate the need for inquiry and advice." *Lantus*, 950 F.3d at 14. And if there were any dispute about this, then it would be ultimately a question for the jury.

The only natural reading of the Hatch-Waxman Act, and the one used by courts addressing this statutory provision, is that *only* the enumerated categories of patents—a drug substance, drug product, or method of using the drug—can be listed in the Orange Book, and those outside the ambit are subject to delisting. *Lantus*, 950 F.3d at 4 ("[T]he agency requires the manufacturer to declare that the submitted patent claims the 'drug substance,' 'drug product (composition/formulation),' or 'one or more methods of using' the drug for which it is listed."). *Lantus* recognized that the statute's requirement that NDA applicants "*shall*" list each patent that claims a drug or "a method of using [a] drug" is an exclusive list. *See, e.g.*, *Carcieri v. Salazar*, 555 U.S. 379, 391–92 (2009) (holding that where Congress directed that the definition of "Indian" for purposes of the Indian Reorganization Act "shall" include persons meeting three discrete qualifications, Congress "explicitly and comprehensively defined the term" by reference to those qualifications). Given the foregoing, Jazz's claim that it was permitted to list the '963 patent is baseless and cannot qualify for Jazz's suggested defense.

Second, Jazz invokes FDA regulations supposedly "permitting" the listing of the '963 patent. D.I. 22 at 13. But that claim is unavailing for multiple reasons. As set forth *supra*, the statutory framework is clear, and Jazz's argument posits that the FDA's regulations alter that framework. *Id*. at 13–14. But that cannot be correct. The FDA's guidance cannot alter the plain import of the Hatch-Waxman Act, and, to the extent Jazz suggests otherwise, it would conflict with the statute and therefore could not be applied. *See United Airlines v. Transp. Sec. Admin.*, 20 F.4th 57, 63 n.3 (D.C. Cir. 2021).

Further, contrary to Jazz's suggestion, the FDA's guidance is consistent with the statutory scheme. Since 2003, the FDA's rules have made clear that only patents that "consist of drug substance (active ingredient) patents, drug product (formulation and composition) patents, and

method-of-use patents" can be listed in the Orange Book.  21 C.F.R. § 314.53.  The '963 patent

does not meet those criteria, which ends the analysis.  As this Court has held, and as is obvious

from the face of the patent itself, the '963 patent is "directed to systems, not methods."  C.A. No.

21-691, Ex. E, D.I. 229, Ex. F, D.I. 231.  A patent claiming "[a] computer-implemented system"

does not claim a drug substance, drug product, or method of use.  *Accord* Ex. I, FTC Amicus Brief,

C.A. No. 21-691, D.I. 227 at 11 ("As a general matter . . . patents that merely claim a

pharmaceutical distribution system . . . do not meet the Orange Book criteria[.]").

Third, Jazz asserts that it had a reasonable basis for listing the '963 patent because no court,

law, or agency had indicated by 2014 that it was improper to list a "REMS-related patent."  D.I.

22 at 14.  Here, Jazz is trying to distract from the relevant question, which is whether the '963

patent was listable.  REMS refers to risk evaluation and mitigation strategies.  Under the FDA

regulations, REMS is not a category of patent eligible for listings.  A patent directed to a method

of using a drug may be part of a REMS, and thus may be listable, but just being part of a REMS

does not render a patent listable.

Jazz points to FDA counsel's comment in *Becerra*, attached as Exhibit A of Jazz's motion,

that uses in a REMS document can, in some cases, be used for method-of-use patents.  But that

comment, which is outside the pleadings, must be read in context (the issue was whether Avadel

was required to submit a certification rather than a statement) and in conjunction with counsel's

earlier statement that "our position isn't that the REMS document blocks approval here.  It's that

a patent blocks approval.  There's an Orange Book-listed *method of use patent* here that Avadel

was required to certify to[.]"  D.I. 22, Ex. A at 80 (emphasis added).  The transcript confirms only

that Jazz's representation worked.  The FDA accepted Jazz's certification that the '963 patent was

"a method-of-use patent listed for XYREM in the Orange Book," a statement the FDA analyzed by "taking it at face value . . . ." *Id.* at 81.

Fourth, Jazz does not cite a single case endorsing its "permissive listing" argument. The case that Jazz cites in support of its defense, *Lantus*, establishes the opposite. The patent at issue in *Lantus* was listed in 2013, also before the OBTA, and covered a drive mechanism for enabling administration of medicinal products from an injector pen. *Lantus*, 950 F.3d at 5. The defendant argued that the patent was properly listed because (as a finished dosage form) the pen fit within the FDA definition of "drug." *Id.* at 7. The First Circuit held that the listed patent claimed only the drive mechanism, not the pen or a method of using the pen, and was not listable. *Id.* at 8.

Jazz argues that the '963 patent did not fall within an exemplary list of patents ineligible for listing. That list included "[p]rocess patents, patents claiming packaging, patents claiming metabolites, and patents claiming intermediates." 21 C.F.R. § 314.53(b)(1). The FDA did not list *every* excluded patent type, but its regulations already spelled out the only three listable categories of patents. *See* Ex. J, Applications for FDA Approval to Market a New Drug, 68 Fed. Reg. 36,687 (June 18, 2003). *Lantus* again proves the point. Jazz's argument would entitle that NDA holder to properly list the drive-mechanism patent—although it did not claim a drug substance, drug product, or method of using the drug—because it *was* not identified under 21 C.F.R. § 314.53(b)(1). The First Circuit disagreed.

Next, Jazz claims that the 2021 OBTA "changed the law as to what patents 'shall not' be listed[.]" D.I. 22 at 3. But that is not correct. The OBTA's requirement that "[p]atent information that is not the type of patent information required by subsection (b)(1)(A)(viii) shall not be submitted," 21 U.S.C. § 355(c)(2), did not change the listing requirements. It merely responded to abuses like the one perpetrated by Jazz here. *See* FDA, "The Listing of Patent Information in

14

the Orange Book," https://www.fda.gov/media/155200/download, at 1 (the OBTA is "generally consistent with existing regulations and practices of the [FDA][.]").

In any event, Jazz's proposed defense fails on its own terms.  Specifically, nothing in the text of the statute or regulations creates a "permissive" listing category.  Even if construed to do so, it would not support Jazz's affirmative defense.  Where recognized, the defense applies only to a "good-faith attempt to comply with the *regulatory demands* of the Hatch-Waxman Amendments." *Lantus*, 950 F.3d at 12 (emphasis added); *accord Actos*, 2022 WL 4282294, at *8 (defense applies to actions "*required* by regulation") (emphasis added).  Antitrust defendants have no immunity where their actions are "neither compelled nor approved by any governmental regulatory body." *Nat'l Gerimedical Hosp. & Gerontology Ctr. v. Blue Cross of Kansas City*, 452 U.S. 378, 389 (1981); *see also Phonetele, Inc. v. AT&T Co.*, 664 F.2d 716, 737–38 (9th Cir. 1981) (defense applies only if the defendant has "a reasonable basis to conclude that its actions were necessitated" by the regulatory regime).  Nothing compelled Jazz's listing, and by Jazz's own words, its action was—at best—"permissive."  D.I. 22 at 13.  Nor did the FDA approve the propriety of the listing because it does not "police" the Orange Book.  *Lantus*, 950 F.3d at 12. Jazz's attempt to tease an imaginary loophole from the text of the statute undermines the Hatch-Waxman Act's effort to promote drug competition.

In short, Jazz did not make reasonable efforts to comply with the requirements of the listing statute.  Ample FTC precedent warned of the antitrust implications of improper patent listings. D.I. 14 ¶ 83.  Jazz was not reasonable in concluding that it had to list the '963 patent in 2014.  And even if it were, the Counterclaim pleads numerous facts demonstrating Jazz's anticompetitive refusal to delist the '963 patent in the intervening years.  *See id.* ¶¶ 54, 91, 95, 98, 99, 117, 136,

145, 149.  Avadel has adequately alleged its monopolization claims, and the Court should deny Jazz's motion.

## II.      Jazz Is Not Entitled to *Noerr-Pennington* Immunity

Jazz claims that filing this lawsuit immunizes its course of anticompetitive conduct under the *Noerr-Pennington* doctrine.  That is not the law, and Jazz's argument ignores that Avadel pleaded that this lawsuit is a sham.

### 1.      Jazz concedes that *Noerr-Pennington* provides no protection for improperly listing the '963 Patent in the Orange Book

Jazz has not argued, and cannot argue, that the *Noerr-Pennington* doctrine immunizes its improper listing of (and refusal to delist) the '963 patent in the Orange Book.  Conduct merely seeking "ministerial" action from the government does not qualify as protected petitioning activity. Courts uniformly hold that *Noerr-Pennington* does not apply to Orange Book listings because the FDA does not determine whether a patent is properly listed in the Orange Book.  Even the criticized *Organon* opinion holds that listing a patent in the Orange Book is not protected "petitioning activity" because the FDA's role is "purely ministerial."  *Organon*, 293 F. Supp. 2d at 458–59; *see also In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 371 (S.D.N.Y. 2002).  Because the *Noerr-Pennington* doctrine provides no immunity for Jazz's improper listing and maintenance of the '963 patent, Avadel's antitrust claims should proceed, even if the Court were to accept all of Jazz's arguments.

### 2.      Jazz's second lawsuit asserting the '963 patent, filed solely to trigger a stay, is not shielded by *Noerr-Pennington*

Jazz attempts to immunize itself from antitrust liability by arguing that *Noerr-Pennington* shields it from the consequences of the filing of this lawsuit.  Not so.

First, the premise of Jazz's argument is incorrect.  Jazz argues that Avadel did not allege that this lawsuit is objectively baseless.  D.I. 22 at 19.  That is wrong.  Avadel alleged that Jazz's

16

lawsuit is "objectively baseless and clearly brought for the purposes of excluding competition." D.I. 14 ¶ 144; *see also id.* ¶¶ 151, 153.

The Supreme Court has held that conduct does not qualify for *Noerr* immunity where "persons use the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991) (emphasis in original). In the Hatch-Waxman context, "[t]he automatic, 30-month stay is a collateral injury the defendant's use of legal process invariably inflicts. . . . Thus, a plaintiff may be able to show a defendant was indifferent to the outcome of its infringement suit, and the automatic, 30-month stay was an anticompetitive weapon[.]" *FTC v. AbbVie Inc.*, 976 F.3d 327, 361 (3d Cir. 2020).

That is the case here. Jazz filed this lawsuit "despite having already asserted infringement of the '963 patent in an ongoing litigation (C.A. No. 21-691-GBW)." D.I. 14 at 1. The *only* incremental effect from this lawsuit was to trigger the automatic stay to exclude Avadel. That exclusion does not depend on obtaining a favorable judgment from the Court. "Jazz's decision to file this case in order to secure an automatic stay on the FDA's ability to approve the NDA for LUMRYZ was . . . undertaken not to secure a judgment from this Court, but simply to trigger the statutory automatic stay." *Id.* ¶ 144. "Indeed, Jazz did not even bother to serve the complaint in this case on Avadel until September 20, 2022—more than two months after filing the case." *Id.*

*Noerr-Pennington* immunity does not apply here for other reasons. First, Jazz's underlying Orange Book listing was fraudulent under *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965). Second, this patent infringement suit is a "sham" under *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993) ("*PRE*"), that is, the lawsuit is "objectively baseless and subjectively motivated by a desire to impose collateral, anti-

competitive injury rather than to obtain a justifiable legal remedy." *Buspirone*, 185 F. Supp. 2d at 369.

As the counterclaim alleges, "[d]espite knowing" that the '963 patent was ineligible for listing because it does not claim XYREM or a method of using it, "Jazz nevertheless listed and maintained the '963 patent in the Orange Book in contravention of 21 U.S.C. § 355(b)(1)(A), (c)(2)." D.I. 14 ¶ 86. Jazz did so by submitting a use code that misrepresented the scope of the '963 patent. *Id*. ¶ 90. Not only did Jazz submit a use code misrepresenting the scope of the claims, but it did not correct the use code when Avadel challenged it in 2019. *Id.* ¶¶ 54, 99. Where, as here, a party with "intimate legal knowledge about a patent has made knowingly false statements about its scope" to the FDA, the *Walker Process* exception applies. *See Buspirone*, 185 F. Supp. 2d at 373–75 (holding that the defendant's patent infringement lawsuit was not entitled to *Noerr* immunity where the defendant misled the FDA by listing a patent in the Orange Book that did not cover approved uses of the drug).

Jazz's infringement allegations are also a sham because they hinge on an objectively baseless and failed claim construction position. Disregarding plain claim language reciting a "computer-implemented system" with various components, Jazz tried to "rewrite[] the claim language, omitt[ed] the recited components . . . and insert[ed] verbs where they do not exist" in a baseless attempt to argue that the patent claims are directed to a method of treatment. Ex. E, C.A. No. 21-691, D.I. 229 at 15–16. And because Avadel's REMS has multiple databases (a fact well known to Jazz from discovery in the C.A. 21-691 action), Jazz baselessly attempted to argue that a "single computer database" actually means multiple databases. *Id.* at 17–19.

### 3. Even if the lawsuit itself were *Noerr*-protected, it would not immunize Jazz's anticompetitive listing and may be used to prove injury and damages

Finally, *Noerr-Pennington* does not shield Jazz's overall scheme to forestall competition. "The mere existence of a lawsuit does not retroactively immunize prior anti-competitive conduct." *Amphastar Pharms. Inc. v. Momenta Pharms., Inc.*, 850 F.3d 52, 57 (1st Cir. 2017) (collecting authorities); *see also Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n*, 814 F.2d 358, 374 (7th Cir. 1987) (noting that *Walker Process* and *Singer* support denying *Noerr-Pennington* immunity where litigation is used to enforce a scheme that may violate the Sherman Act); *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc*., 690 F.2d 1240, 1264 (9th Cir. 1982) (antitrust violations "do not become immune simply because" the violators subsequently "used legal means . . . to enforce the violations."); *Abbott*, 432 F. Supp. 2d at 429 ("an unlawful overall scheme, do[es] not become lawful because [it] may be enforced by immunized litigation.") (internal citation omitted); Ex. K, *Intell. Ventures I LLC v. Capital One Fin. Corp.*, No. 18-1367 (Fed. Cir.) (Docket No. 41) (FTC/DOJ Amicus Br. at 10) (a defendant is not "protected from the antitrust laws just because it may subsequently exercise its unlawfully obtained market power through litigation").

*Noerr*-protected litigation is actionable "as part of an anticompetitive scheme" and may be used to prove antitrust injury and damages if there is "an explicit linkage between [the] antitrust violation and the litigation." *Hynix Semiconductor Inc. v. Rambus, Inc.*, 527 F. Supp. 2d 1084, 1095 (N.D. Cal. 2007). This "approach recognizes that . . . if a defendant engages in anticompetitive conduct which does not constitute petitioning activity, it cannot immunize itself from liability for litigation-related damages if it asserts or tries to assert its unwarranted accumulation of market power through litigation." *Intel Corp. v. Fortress Inv. Grp. LLC*, No. 19-cv-07651, 2020 WL 6390499, at *16 (N.D. Cal. July 15, 2020).

Numerous courts have endorsed the *Hynix* approach, including in this District, and it is consistent with both the First Circuit's opinion in *Amphastar* and the position of the federal antitrust agencies. *Microsoft Mobile Inc. v. Interdigital, Inc.,* No. 15-cv-00723, 2016 WL 1464545, at *4 (D. Del. Apr. 13, 2016) (endorsing *Hynix* and noting that "a plaintiff that can prove an antitrust violation without the use of protected petitioning can recover damages caused by that petitioning as well as damages by the conduct that proved the violation"); *Intel*, 2020 WL 6390499, at *16.

Here, there is clearly an "explicit linkage" between the anticompetitive Orange Book listing and the subsequent lawsuit Jazz filed to trigger the stay. Indeed, the Orange Book listing is the but-for cause of Jazz's anticompetitive delay: Without the improper listing, which itself delayed FDA approval, Jazz's lawsuit could not have triggered the automatic stay. Accordingly, even if the lawsuit itself were *Noerr*-protected activity, Avadel would be entitled to receive all damages caused by both Jazz's improper listing and the stay-triggering lawsuit.

## CONCLUSION

For the foregoing reasons, the Court should deny Jazz's motion to dismiss.

Respectfully submitted,

Dated: December 27, 2022

By: */s/ Daniel M. Silver*

Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
405 N. King Street, 8th Floor
Wilmington, DE 19801
MCCARTER & ENGLISH, LLP
(302) 984-6331
dsilver@mccarter.com
ajoyce@mccarter.com

Kenneth G. Schuler
Marc N. Zubick
Sarah W. Wang
Alex Grabowski

LATHAM & WATKINS LLP
330 N. Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: kenneth.schuler@lw.com
Email: marc.zubick@lw.com
Email: sarah.wang@lw.com
Email: alex.grabowski@lw.com

Herman Yue
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
Herman.Yue@lw.com

Ian R. Conner
Alan J. Devlin
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Washington, D.C. 20004
(202) 637-2200
Alan.Devlin @lw.com
Ian.Conner@lw.com

Daralyn J. Durie
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
(415) 365-6666
ddurie@durietangri.com

Kira A. Davis
Katherine E. McNutt
W. Henry Huttinger
DURIE TANGRI LLP
953 East 3rd Street
Los Angeles, CA 90013
(213) 992-4499
kdavis@durietangri.com
kmcnutt@durietangri.com
hhuttinger@durietangri.com

Alexander Okuliar
Haydn Forrest
MORRISON & FOERSTER LLP

21

2100 L Street, NW Suite 900
Washington, DC 20037, USA
(202) 887-1500
aokuliar@mofo.com
hforrest@mofo.com

*Attorneys for Defendant*