IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAZZ PHARMACEUTICALS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 22-941 (GBW) |
| ) | |
| AVADEL CNS PHARMACEUTICALS, LLC, ) | |
| ) | |
| Defendant. ) | |

### JAZZ'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO STAY

OF COUNSEL:

F. Dominic Cerrito
Eric C. Stops
Evangeline Shih
Steig D. Olson
Andrew S. Chalson
Gabriel P. Brier
Frank C. Calvosa
Nicholas A. LoCastro
Krista M. Rycroft
Quentin Jorgensen
QUINN EMANUEL URQUHART
  &amp; SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000

William R. Sears
QUINN EMANUEL URQUHART
  &amp; SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017

June 29, 2023

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Plaintiff Jazz Pharmaceuticals, Inc.*

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | NATURE AND STAGE OF THE PROCEEDINGS | 1 |
| II. | SUMMARY OF ARGUMENT | 2 |
| III. | STATEMENT OF FACTS | 6 |
| | A. Jazz's Orphan Drug Exclusivities For XYREM And XYWAV | 6 |
| | B. The Newly Produced FDA Materials Related To LUMRYZ's FDA Approval | 7 |
| IV. | LEGAL STANDARD | 8 |
| V. | ARGUMENT | 8 |
| | A. Jazz's Supplemental Brief In Support Of Its Motion To Dismiss Would Resolve The Entire Case If Granted | 8 |
| | B. The Court Should Grant The Stay Because Discovery Is In Its Infancy | 10 |
| | C. A Stay Would Not Unduly Prejudice Or Present A Clear Tactical Disadvantage To Avadel | 11 |
| VI. | CONCLUSION | 12 |

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
　2021 WL 616992 (D. Del. Feb. 17, 2021) ...............................................................................8

*In re Avandia Mktg. Sales Pracs. & Prod. Liab. Litig.*,
　588 F. App'x 171 (3d Cir. 2014) ...........................................................................................11

*Bataan Licensing LLC v. DentalEZ, Inc.*,
　2023 WL 143991 (D. Del. Jan. 10, 2023) ...............................................................9, 10, 11, 12

*Bechtel Corp. v. Local 215, Laborers' Int'l Union*,
　544 F.2d 1207 (3d Cir. 1976) .................................................................................................10

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 ........................................................................................................................5, 10

*CallWave Commc'ns, LLC v. AT & T Mobility, LLC*,
　2015 WL 1284203 (D. Del. Mar. 18, 2015) ...........................................................................12

*Celorio v. On Demand Books LLC*,
　2013 WL 4506411 (D. Del. Aug. 21, 2013) ...........................................................................12

*Cost Bros., Inc. v. Travelers Indem. Co.*,
　760 F.2d 58 (3d Cir. 1985) .......................................................................................................8

*Eagle View Techs., Inc. v. Xactware Sols., Inc.*,
　2016 WL 7165695 (D.N.J. Dec. 7, 2016) ...............................................................................11

*In re Egalet Corp. Sec. Litig.*,
　340 F. Supp. 3d 479 (E.D. Pa. 2018),
　aff'd sub nom. *Spizzirri v. Zyla Life Scis.*, 802 F. App'x 738 (3d Cir. 2020) .........................11

*Ethicon LLC v. Intuitive Surgical, Inc.*,
　2019 WL 1276029 (D. Del. Mar. 20, 2019) .............................................................................8

*Ever Win Int'l Corp. v. Radioshack Corp.*,
　902 F. Supp. 2d 503 (D. Del. 2012) .......................................................................................11

*Mann v. Brenner*,
　375 F. App'x 232 (3d Cir. 2010) ..............................................................................................9

*MEI, Inc. v. JCM Am. Corp.*,
　2009 WL 3335866 (D.N.J. Oct. 15, 2009) .............................................................................10

*In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*,
    868 F.3d 132 (3d Cir. 2017) .................................................................................................4, 9

**Statutes**

21 U.S.C. § 360cc .............................................................................................................................3

The 1983 Orphan Drug Act,
    Pub. L. No. 97-414, § 1(b)(5), 96 Stat. 2049 (1983) .................................................................3

**Rules**

Fed. R. Civ. P. 12 .........................................................................................................................1, 2

**Other Authorities**

GLOBALNEWSWIRE (June 5, 2023), available at
    https://www.globenewswire.com/news-
    release/2023/06/05/2681807/0/en/Avadel-Pharmaceuticals-Announces-U-S-
    Commercial-Launch-of-LUMRYZ-sodium-oxybate-for-the-Treatment-of-
    Cataplexy-or-Excessive-Daytime-Sleepiness-in-Adults-Living-with-
    Narcolepsy.html ........................................................................................................................7

## I.     NATURE AND STAGE OF THE PROCEEDINGS

On May 23, 2023, weeks after its approval of Avadel CNS Pharmaceuticals, LLC's ("Avadel's") LUMRYZ (sodium oxybate) product, the FDA publicly posted documents on its website demonstrating that LUMRYZ only overcame Jazz Pharmaceuticals, Inc.'s ("Jazz's") orphan-drug exclusivity ("ODE"), and therefore became finally approvable, on May 1, 2023. May 1, 2023, is months after Jazz requested delisting of the '963 patent that is the subject of this case. And it is *more than one year* after the date by which Avadel alleges it would have launched LUMRYZ absent Jazz's purported anticompetitive conduct—April 2022. These recently released FDA documents, of which the Court can take judicial notice, doom Avadel's antitrust counterclaims, because they show that Jazz's patent listing did not delay Avadel's launch of LUMRYZ. Accordingly, alongside the present motion, Jazz is filing a request for leave to file a supplemental motion to dismiss, based on these newly discovered, judicially noticeable facts.

Jazz filed this '963 patent infringement action against Avadel for its sodium oxybate product, LUMRYZ, on July 15, 2022. D.I. 1. On October 21, 2022, Avadel filed its answer and counterclaims, which included both patent and antitrust counterclaims. D.I. 14. On December 9, 2022, Jazz moved to dismiss Avadel's antitrust counterclaims under Federal Rule of Civil Procedure 12(b)(6). D.I. 21. That motion remains pending. On March 6, 2023, the parties stipulated to the dismissal of Jazz's patent infringement claims against Avadel as well as Avadel's counterclaims for declarations of noninfringement, invalidity, and patent delisting. D.I. 32. Therefore, only Avadel's antitrust counterclaims remain in this action, although Jazz continues to litigate patent claims unrelated to the '963 patent against Avadel in separate actions, Case Nos. 21-691, 21-1138, and 21-1594. The parties submitted a proposed scheduling order on March 9, 2023, D.I. 34, which the Court entered on May 19, 2023, D.I. 44. No trial date has been set.

Discovery remains at the early stages, and the parties have just begun written discovery. The parties have exchanged initial requests for production and related responses and objections, (D.I. 35, 37, 39, 42), initial disclosures (D.I. 40, 41), and ESI disclosures (D.I. 46, 47). Avadel has also served, and Jazz has responded to, three interrogatories. D.I. 38, 43. Other than that, very little has happened. Neither side has produced any custodial documents; nor have the parties reached agreement on the document custodians, search terms, or, indeed, the basic parameters of written discovery such as what types of responsive documents to produce. No depositions have been noticed, much less taken. And no discovery disputes have been briefed.

## II.  SUMMARY OF ARGUMENT

Discovery on Avadel's antitrust counterclaims should be stayed until the Court resolves Jazz's motion to dismiss. Newly released, judicially noticeable FDA documents show that Avadel's antitrust counterclaims suffer from dispositive flaws. Jazz should have the opportunity to brief the impact of this development before spending millions of dollars on antitrust discovery.

In its antitrust counterclaims, Avadel alleges that Jazz delayed the launch of LUMRYZ by listing Jazz's '963 patent related to its own oxybate product, XYREM, in the FDA's Orange Book. D.I. 14 ¶¶ 97-98. According to Avadel, but for Jazz's listing of the '963 patent, the FDA would have approved LUMRYZ to enter the market by October 15, 2021, and Avadel would have launched that product by April 2022. *Id.*

The FDA has recently released documents on its website, however, showing that Avadel's allegations are baseless and wholly implausible. These documents demonstrate that the duly authorized experts within the FDA had concluded as of August 30, 2021, that LUMRYZ could not be approved because there was no evidence that LUMRYZ would be clinically superior to Jazz's product XYWAV and, therefore, was blocked by the unexpired orphan-drug exclusivity protecting XYWAV. The documents further demonstrate that the August 30, 2021 determination that

2

LUMRYZ could not be approved was not reconsidered and reversed until May 1, 2023—long after the October 15, 2021 date on which Avadel alleges approval would have occurred.

Under the 1983 Orphan Drug Act, Pub. L. No. 97-414, § 1(b)(5), 96 Stat. 2049 (1983), a drug designated and approved to treat a rare disease can receive seven years of market exclusivity beginning from the time of New Drug Application ("NDA") approval. 21 U.S.C. § 360cc(a). During this period of ODE, a drug containing the same active moiety cannot be approved for the same intended use. XYREM earned ODE on multiple occasions, though most of those ODE periods have since expired. Ex. B[1] at 13-14. In June 2021, the FDA granted ODE to XYWAV, recognizing that XYWAV is clinically superior to XYREM by means of greater safety because of its significantly lower sodium content. Jazz's ODE meant that LUMRYZ, which has the same active moiety as XYREM and XYWAV, could not be approved until July 2027. The FDA has taken the position that it is possible to "break" an award of ODE if the FDA determines that a later drug with the same active moiety is "clinically superior" to the prior drug that had secured ODE. Jazz is challenging this position, and the FDA's decision to break Jazz's ODE and approve LUMRYZ, in an action filed on June 22, 2023, in the District of Columbia. Ex. I. In that action, Jazz alleges that the FDA's May 2023 decision to break Jazz's ODE and approve LUMRYZ exceeded the FDA's statutory authority, disregarded the FDA's own regulations and policies, and violated the FDA's obligations under the Administrative Procedure Act. *Id.*

Avadel alleges in its antitrust counterclaims that, absent Jazz's allegedly improper listing of the '963 patent in the Orange Book, the FDA would have made its final decision about whether to approve LUMRYZ in October 2021 and the FDA would have granted approval for LUMRYZ

---

[1] All exhibits cited herein refer to exhibits attached to Jazz's supplemental brief in support of its motion to dismiss. D.I. 48, Ex. 1.

3

to enter the market. The newly released FDA materials show, however, that this allegation is baseless and implausible. As of October 2021, the duly authorized experts in the FDA's Department of Neurology 1 (the "Review Division") had found that LUMRYZ was *not* clinically superior to XYREM or XYWAV and therefore was *not* approvable. Ex. A at 12. Moreover, the Review Division would not revisit that decision until May 1, 2023, after numerous additional submissions by Avadel and further deliberations within the agency. *Id.* Given those judicially noticeable facts, it is incorrect for Avadel to claim that the FDA's final approval of LUMRYZ was in any way delayed by Jazz's listing of the '963 patent in the Orange Book.

Although Avadel claims the FDA would have granted final approval of LUMRYZ by October 15, 2021, that is plainly not correct. As of that time, the FDA's internal experts had concluded that LUMRYZ was *not* clinically superior to XYREM or XYWAV and thus could not overcome Jazz's ODE. The FDA, therefore, could not have granted final approval for LUMRYZ by October 2021, and Avadel could not have launched LUMRYZ by April 2022, as it alleges in its counterclaims. Jazz's listing of the '963 patent, therefore, did not delay Avadel's launch of LUMRYZ. This breaks the causal chain between Jazz's alleged anticompetitive actions and Avadel's purported harm, and warrants dismissal of Avadel's claims. *See In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 163 (3d Cir. 2017) ("[N]o antitrust standing exists when a plaintiff's grievance is caused by a regulatory scheme rather than by the defendant's actions."). In short, the newly released FDA materials are a game changer. Jazz is thus also seeking leave to file a supplemental brief in support of its motion to dismiss based on the new FDA materials concurrently with this motion.

Given this backdrop, each factor relevant to this motion to stay strongly favors pausing what the Supreme Court has described as "sprawling, costly, and hugely time-consuming" antitrust

4

discovery until the Court has resolved Jazz's pending motion to dismiss, including the supplemental brief that Jazz seeks leave to file. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59, 560 n.6 (2007) (collecting cases).

*First*, if granted, Jazz's motion to dismiss would resolve the entire case. Only Avadel's antitrust counterclaims against Jazz remain at issue, and Jazz's motion to dismiss challenges the plausibility of Avadel's antitrust standing, a necessary element of Avadel's claims. Therefore, Jazz's motion to dismiss should be decided before the parties pour millions of dollars (if not tens of millions of dollars) into antitrust discovery and the Court expends further resources on case management and discovery-related motion practice.

*Second*, the Court only recently set a case schedule and the parties have not yet finished negotiating the scope of document productions or agreed on document custodians or search terms.[2] Additionally, the motion to dismiss does not require the Court to resolve any factual disputes because it relies on judicially noticeable material. The potential for saving both judicial and party resources is great at this early stage.

*Third*, any postponement of antitrust discovery would not prejudice Avadel or give Jazz any tactical advantage. After being granted ODE in May 2023, Avadel has entered the market with LUMRYZ; therefore, a discovery stay would not affect Avadel's ongoing sales and marketing of LUMRYZ. In fact, given its ODE status, Avadel currently has seven years to market LUMRYZ free of generic competition. And the duration of the stay would be limited to the time it takes the

---

[2] After Jazz notified Avadel it intended to move for a stay, Avadel began sending Jazz a flurry of discovery correspondence in an apparent attempt to make a record that discovery was far along. No matter how much ink Avadel spills on the subject, the fact remains that the substantial completion deadline is months away and the parties have done little on the discovery front.

5

Court to rule on Jazz's motion to dismiss, including Jazz's supplemental brief in support of its motion, minimizing any conceivable prejudice to Avadel.

### III. STATEMENT OF FACTS

#### A. Jazz's Orphan Drug Exclusivities For XYREM And XYWAV

Jazz's XYREM product is the first oxybate drug approved by the FDA. D.I. 14 ¶ 60. XYREM earned ODE on several occasions—first for the treatment of cataplexy associated with narcolepsy, and then for the treatment of excessive daytime sleepiness ("EDS") associated with narcolepsy. Ex. B at 13. Those ODE periods have since expired, though XYREM currently has ODE for the treatment of cataplexy or EDS in pediatric patients seven years of age and older with narcolepsy. *Id.* at 13-14.

To address the high levels of sodium in XYREM, Jazz developed a low-sodium alternative, XYWAV. Jazz obtained ODE for XYWAV in June 2021, even though another oxybate product (XYREM) had previously been granted ODE, by demonstrating to the FDA that XYWAV was clinically superior to XYREM "by means of greater safety, because XYWAV provides a greatly reduced chronic sodium burden compared to XYREM." *Id.* at 2.

XYWAV's ODE runs until July 2027. *Id.* Although not provided for in the relevant statute, the FDA takes the position that it can break an unexpired period of ODE if it deems a later drug to be "clinically superior" on the basis of greater efficacy, greater safety, or a major contribution to patient care ("MCTPC") because the FDA does not view that later drug as the "same drug." *Id.* at 2. Therefore, for Avadel to receive final approval for LUMRYZ and break Jazz's ODE, the FDA had to determine that LUMRYZ was clinically superior to XYREM and XYWAV.

6

### B.      The Newly Produced FDA Materials Related To LUMRYZ's FDA Approval

Avadel's counterclaims rest on its assertion that, if Jazz had not listed the '963 patent in the Orange Book, "the FDA likely would have approved the NDA for LUMRYZ by October 15, 2021," the FDA's target action date for LUMRYZ. D.I. 14 ¶ 55. According to Avadel, Jazz's listing of the '963 patent "caused the FDA not to reach its deadline" for approval, because the FDA allegedly "will not grant final approval while the '963 patent remains listed." D.I. 14 ¶¶ 97-98.

On May 22, 2023, the FDA published materials related to its review of LUMRYZ on its website. These materials expose as baseless Avadel's allegations that, absent the patent listing, the FDA "likely" would have approved LUMRYZ in October 2021. Most notably, one of the documents released by the FDA was an August 30, 2021 Review Division Consult (the "August 2021 Review Division Consult") finding that Avadel had provided "no evidence" that LUMRYZ was clinically superior to XYREM or XYWAV, and concluding that LUMRYZ, therefore, could not break Jazz's ODE and be granted final FDA marketing approval. Ex. A at 12.

Jazz does not know whether Avadel knew of this information at the time that it filed its counterclaims. However, Jazz brought this information to Avadel's attention soon after it was released, and the parties met and conferred regarding its impact on this case. Jazz now seeks leave to file a supplemental motion to dismiss concurrently with this motion to stay.

On June 5, 2023, Avadel launched LUMRYZ.[3]  On June 22, 2023, Jazz filed an action against the FDA in the United States District Court for the District of Columbia challenging the FDA's May 2023 decision to break Jazz's ODE and approve LUMRYZ. Ex. I.

---

[3] *Avadel Pharmaceuticals Announces U.S. Commercial Launch of LUMRYZ™ (sodium oxybate) for the Treatment of Cataplexy or Excessive Daytime Sleepiness in Adults Living with Narcolepsy*, GLOBALNEWSWIRE (June 5, 2023), available at https://www.globenewswire.com/news-release/2023/06/05/2681807/0/en/Avadel-Pharmaceuticals-Announces-U-S-Commercial-

As mentioned, this case has just begun, and Jazz's original motion to dismiss remains pending. The scheduling order has been in place for only one month, the parties are in the early stages of discussing the scope of discovery, no depositions have been taken or scheduled, and no trial date has been set. Nor has Avadel moved expediently with discovery. For example, after the parties met and conferred about Avadel's document requests on May 9 and 10, Avadel waited nearly a month—until June 7—to follow up with Jazz, and did so only after Jazz notified Avadel that it planned to file the present motion to stay.

## IV.     LEGAL STANDARD

The decision whether to grant a stay "is a matter of the court's inherent power to conserve judicial resources by controlling its own docket." *Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985). Courts generally consider three factors to determine whether a stay is appropriate: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage. *See Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 2021 WL 616992, at *2 (D. Del. Feb. 17, 2021) (citing *Ethicon LLC v. Intuitive Surgical, Inc.*, 2019 WL 1276029, at *1 (D. Del. Mar. 20, 2019)).

## V.     ARGUMENT

### A.     Jazz's Supplemental Brief In Support Of Its Motion To Dismiss Would Resolve The Entire Case If Granted

The first factor strongly favors a stay because, if granted, Jazz's motion to dismiss, including its supplemental brief in support of its motion, would resolve this entire case. This Court

---

Launch-of-LUMRYZ-sodium-oxybate-for-the-Treatment-of-Cataplexy-or-Excessive-Daytime-Sleepiness-in-Adults-Living-with-Narcolepsy.html ("Avadel Announcement").

8

recently found this factor favors a stay where, as here, a party's motion to dismiss, "if resolved in its favor, would be entirely case-dispositive as to the **only** claim." *Bataan Licensing LLC v. DentalEZ, Inc.*, 2023 WL 143991, at *1 (D. Del. Jan. 10, 2023) (emphasis in original) (Williams, J.). Similarly, the Third Circuit has stated that "it may be appropriate to stay discovery while evaluating a motion to dismiss where, if the motion is granted, discovery would be futile." *Mann v. Brenner*, 375 F. App'x 232, 239 (3d Cir. 2010).

That reasoning applies here. Since the parties jointly dismissed all patent-related claims and counterclaims in this case, only Avadel's antitrust counterclaims against Jazz remain at issue. But as Jazz explains in its supplemental brief in support of its motion to dismiss, the August 2021 Review Division Consult conclusively shows that LUMRYZ was not approvable in October 2021 due to Jazz's unexpired ODE, not Jazz's listing of the '963 patent in the Orange Book. Avadel thus lacks antitrust standing—a necessary element of its counterclaims—because the Orange Book listing did not delay LUMRYZ's entry into the market. *See In re Wellbutrin*, 868 F.3d at 163 ("In order to maintain an antitrust suit, a plaintiff must establish antitrust standing, which is distinct from Article III standing.").[4] Avadel's barebones allegations to the contrary are fundamentally implausible because they do not explain how Avadel could have overcome the Review Division's finding that LUMRYZ was *not* approvable in August 2021, due to the unexpired ODE for XYWAV.

The implausibility of Avadel's claims is further underscored by Jazz's suit seeking to reverse the FDA's decision to break XYWAV's ODE and grant final approval to LUMRYZ. If successful, that case would revoke LUMRYZ's approval entirely. Indeed, Jazz would have strong

---

[4] The arguments in Jazz's pending motion to dismiss are independently case-dispositive as well. *See* D.I. 24.

9

grounds to seek a stay pending resolution of that entire case. *See, e.g.*, *Bechtel Corp. v. Local 215, Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976) (a court may "hold one lawsuit in abeyance to abide the outcome of another which may ***substantially affect*** it or be ***dispositive*** of the issues") (emphasis added); *MEI, Inc. v. JCM Am. Corp.*, 2009 WL 3335866, at *4 (D.N.J. Oct. 15, 2009) ("A stay is particularly appropriate, and within the court's 'sound discretion,' where the outcome of another case may 'substantially affect' or 'be dispositive of the issues' in a case pending before a district court.") (citations omitted). Thus, at a minimum, the Court should grant this motion to stay pending resolution of Jazz's supplemental motion to dismiss so that the Court can resolve this threshold issue before the parties plunge into costly antitrust discovery. *See Twombly*, 550 U.S. 544 at 558-59.

### B. The Court Should Grant The Stay Because Discovery Is In Its Infancy

The early stage of the case also favors a stay. This Court recently entered a stay in strikingly similar circumstances. In *Bataan*, similar to here, (1) the Court and parties had "invested relatively few resources" and the parties had only exchanged their initial disclosures; (2) the defendant's motion to dismiss did not require resolution of any fact disputes, which obviated the need for discovery prior to its resolution; and (3) discovery would ultimately be unnecessary if defendant's motion to dismiss were granted. *Bataan*, 2023 WL 143991 at *2 (Williams, J.).

Here, the scheduling order was entered only last month (D.I. 44), and the parties have invested relatively few resources in discovery. They have merely exchanged initial (D.I. 40, 41) and ESI (D.I. 46, 47) disclosures as well as document requests (D.I. 35, 37, 39, 42), and Avadel has served three interrogatories (D.I. 38, 43). The parties have not finished negotiating the scope of their document productions, no depositions have been scheduled, the deadline for dispositive motions is months away, and no trial date has been set. Indeed, Jazz's original motion to dismiss remains pending. D.I. 21.

Additionally, Jazz's supplemental brief in support of its motion to dismiss does not require the Court to resolve any factual disputes because the August 2021 Review Division Consult is judicially noticeable material as a Center for Drug Evaluation and Research ("CDER") memo that is publicly available on the FDA's website. *See In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d 479 (E.D. Pa. 2018), *aff'd sub nom. Spizzirri v. Zyla Life Scis.*, 802 F. App'x 738 (3d Cir. 2020) (finding that because "the public has unqualified access to the CDER Memo, which is accessible to the public via the FDA website" the court would take judicial notice of it); *In re Avandia Mktg. Sales Pracs. & Prod. Liab. Litig.*, 588 F. App'x 171, 174 n.14 (3d Cir. 2014) (taking judicial notice of drug label that was publicly available on the FDA's website).

### C. A Stay Would Not Unduly Prejudice Or Present A Clear Tactical Disadvantage To Avadel

The third factor favors a stay because any delay would not prejudice Avadel. This Court has stated that delay "does not, by itself, amount to undue prejudice." *Bataan*, 2023 WL 143991 at *2 (Williams, J.) (quoting *Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 509 (D. Del. 2012)). Although courts are "generally reluctant to grant a stay where the parties are direct competitors on the rationale that a stay would likely cause the non-movant to lose substantial profits and goodwill on the market," *Eagle View Techs., Inc. v. Xactware Sols., Inc.*, 2016 WL 7165695, at *5 (D.N.J. Dec. 7, 2016), this reasoning is inapplicable here. The stay Jazz seeks would not in any way affect Avadel's ability to market LUMRYZ, as it is currently doing, because Avadel entered the market last month and is currently free of generic competition from LUMRYZ for seven years.[5]

---

[5] *See* Avadel Announcement, *supra* n.3.

Further, this Court and others have found that prejudice concerns that "can be adequately addressed and remedied through monetary damages" weigh in favor of granting a stay. *Bataan*, 2023 WL 143991, at *2 (Williams, J.) (citing *Celorio v. On Demand Books LLC*, 2013 WL 4506411, at *1 n.1 (D. Del. Aug. 21, 2013)). This case is about money damages, confirming a stay will not prejudice Avadel. Thus, even if Avadel could credibly argue that a short stay of discovery somehow causes harm (which it cannot do), any such harm could be redressed through money damages. *See CallWave Commc'ns, LLC v. AT & T Mobility, LLC*, 2015 WL 1284203, at *1 (D. Del. Mar. 18, 2015) ("Any purported harm that [plaintiff] suffers from a stay can be fully compensated by monetary damages. This factor therefore has little impact.").

## VI. CONCLUSION

For these reasons, this Court should stay discovery in this matter pending resolution of Jazz's original and supplemental motion to dismiss.

|  |  |
|---|---|
| | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | */s/ Jeremy A. Tigan* |
| OF COUNSEL: | Jack B. Blumenfeld (#1014) |
| | Jeremy A. Tigan (#5239) |
| F. Dominic Cerrito | 1201 North Market Street |
| Eric C. Stops | P.O. Box 1347 |
| Evangeline Shih | Wilmington, DE  19899 |
| Steig D. Olson | (302) 658-9200 |
| Andrew S. Chalson | jblumenfeld@morrisnichols.com |
| Gabriel P. Brier | jtigan@morrisnichols.com |
| Frank C. Calvosa | |
| Nicholas A. LoCastro | *Attorneys for Plaintiff Jazz Pharmaceuticals, Inc.* |
| Krista M. Rycroft | |
| Quentin Jorgensen | |
| QUINN EMANUEL URQUHART | |
|    & SULLIVAN, LLP | |
| 51 Madison Avenue, 22nd Floor | |
| New York, NY  10010 | |
| (212) 849-7000 | |
| | |
| William R. Sears | |
| QUINN EMANUEL URQUHART | |
|    & SULLIVAN, LLP | |
| 865 S. Figueroa St., 10th Floor | |
| Los Angeles, California 90017 | |
| | |
| June 29, 2023 | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 29, 2023, upon the following in the manner indicated:

| | |
|---|---|
| Daniel M. Silver, Esquire<br>Alexandra M. Joyce, Esquire<br>MCCARTER & ENGLISH, LLP<br>Renaissance Centre<br>405 N. King Street, 8th Floor<br>Wilmington, DE  19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Kenneth G. Schuler, Esquire<br>Marc N. Zubick, Esquire<br>Alex Grabowski, Esquire<br>Sarah W. Wang, Esquire<br>LATHAM & WATKINS LLP<br>330 North Wabash Avenue, Suite 2800<br>Chicago, IL  60611<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Herman H. Yue, Esquire<br>Franco Benyamin, Esquire<br>LATHAM & WATKINS LLP<br>1271 Avenue of the Americas<br>New York, NY  10020<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Sarah Propst, Esquire<br>Audra Sawyer, Esquire<br>Alan J. Devlin, Esquire<br>Ian Conner, Esquire<br>LATHAM & WATKINS LLP<br>555 Eleventh Street, NW, Suite 1000<br>Washington, D.C.  20004-1304<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

| | |
|---|---|
| Yi Ning, Esquire<br>LATHAM & WATKINS LLP<br>200 Clarendon Street<br>Boston, MA 02116<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Daralyn J. Durie, Esquire<br>Eric P. Berger, Esquire<br>Rebecca E. Weires, Esquire<br>DURIE TANGRI LLP<br>217 Leidesdorff Street<br>San Francisco, CA 94111<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Kira A. Davis, Esquire<br>Katherine E. McNutt, Esquire<br>Andrew T. Jones, Esquire<br>DURIE TANGRI LLP<br>953 East 3rd Street<br>Los Angeles, CA 90013<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

/s/ *Jeremy A. Tigan*

Jeremy A. Tigan (#5239)

2