IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAZZ PHARMACEUTICALS, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 22-941 (GBW) |
| AVADEL CNS PHARMACEUTICALS, LLC, | ) ) ) |
| Defendant. | ) |

**JAZZ'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR LEAVE
TO FILE ITS SUPPLEMENTAL BRIEF IN SUPPORT OF ITS
<u>MOTION TO DISMISS AVADEL'S ANTITRUST COUNTERCLAIMS</u>**

OF COUNSEL:

F. Dominic Cerrito
Eric C. Stops
Evangeline Shih
Steig D. Olson
Andrew S. Chalson
Gabriel P. Brier
Frank C. Calvosa
Nicholas A. LoCastro
Krista M. Rycroft
Quentin Jorgensen
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000

William R. Sears
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Plaintiff Jazz Pharmaceuticals, Inc.*

August 10, 2023

**TABLE OF CONTENTS**

**Page**

I. AVADEL'S PROCEDURAL OBJECTIONS ARE MERITLESS ...................................2

    A. The Arguments At Issue Were Not Previously Available To Jazz..........................2

    B. The Court May Take Judicial Notice Of The Review Division Consult.................3

    C. Allowing Jazz To File Its Supplemental Brief Will Not Prejudice Avadel.............4

II. AVADEL FAILS TO ESTABLISH THAT ITS CLAIMS ARE PLAUSIBLE..................5

    A. Avadel's Core Allegations Are Now Plainly Implausible......................................5

    B. The Caselaw Amply Supports Jazz's Arguments....................................................9

III. CONCLUSION................................................................................................................10

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*3Shape TRIOS A/S v. Align Tech., Inc.*,
  2020 WL 2559777 (D. Del. May 20, 2020) .............................................................................10

*Ambriz v. Coca Cola Co.*,
  2014 WL 296159 (N.D. Cal. Jan. 27, 2014) ..........................................................................2, 3

*Anspach ex rel. Anspach v. City of Phila., Dep't of Pub. Health*,
  503 F.3d 256 (3d Cir. 2007) .....................................................................................................3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................5

*Brader v. Allegheny Gen. Hosp.*,
  64 F.3d 869 (3d Cir. 1995) .....................................................................................................10

*Bristol-Myers Squibb Co. v. Ben Venue Labs.*,
  90 F. Supp. 2d 540 (D.N.J. 2000) ............................................................................................9

*In re Canadian Imp. Antitrust Litig.*,
  470 F.3d 785 (8th Cir. 2006) ..................................................................................................10

*City of Oakland v. Oakland Raiders*,
  20 F.4th 441 (9th Cir. 2021) ...................................................................................................10

*City of Pittsburgh v. West Penn. Power Co.*,
  147 F.3d 256 (3d Cir. 1998) .....................................................................................................9

*Doe v. Princeton Univ.*,
  30 F.4th 335 (3d Cir. 2022) ......................................................................................................3

*In re Egalet Corp. Sec. Litig.*,
  340 F. Supp. 3d 479 (E.D. Pa. 2018) .......................................................................................4

*In re Gabapentin Patent Litig.*,
  649 F. Supp. 2d 340 (D.N.J. 2009) ..........................................................................................9

*Glater v. Eli Lilly & Co.*,
  712 F.2d 735 (1st Cir. 1983) ....................................................................................................2

*Holzsager v. Valley Hosp.*,
  646 F.2d 792 (2d Cir. 1981) .....................................................................................................3

*In re K-Dur Antitrust Litig.*,
    338 F. Supp. 2d 517 (D.N.J. 2004) ..................................................................................9

*King Drug Co. of Florence v. Cephalon, Inc.*,
    702 F. Supp. 2d 514 (E.D. Pa. 2010) ...............................................................................9

*Leyse v. Bank of America National Association*,
    804 F.3d 316 (3d Cir. 2015)..............................................................................................3

*In re Metoprolol Succinate Direct Purchaser Antitrust Litig.*,
    2010 WL 1485328 (D. Del. Apr. 13, 2010)......................................................................9

*Otsuka Pharm. Co. v. Apotex Corp.*,
    2016 WL 6246801 (D.N.J. Aug. 26, 2016) ......................................................................4

*Perrigo Co. v. AbbVie Inc.*,
    2021 WL 4551397 (D.N.J. Sept. 30, 2021) ......................................................................9

*In re Remicade Antitrust Litig.*,
    345 F. Supp. 3d 566 (E.D. Pa. 2018) .............................................................................10

*Roxane Lab'ys, Inc. v. SmithKline Beecham Corp.*,
    2010 WL 331704 (E.D. Pa. Jan. 26, 2010) ......................................................................4

*RSA Media, Inc. v. AK Media Grp., Inc.*,
    260 F.3d 10 (1st Cir. 2001)............................................................................................10

*In re Seroquel XR (Extended Release Quetiapine Fumarate) Antitrust Litig.*,
    2022 WL 2438934 (D. Del. July 5, 2022) ..............................................................6, 10

*State Farm Mutual Automobile Insurance Co. v. Delaware Diagnostic &
    Rehabilitation Center, P.A.*,
    2021 WL 1929365 (D. Del. May 13, 2021).................................................................2, 3

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
    2017 WL 4910673 (E.D. Pa. Oct. 30, 2017)....................................................................9

*Takeda Pharm. Co. Ltd. v. Zydus Pharms. (USA) Inc.*,
    358 F. Supp. 3d 389 (D.N.J. 2018) ............................................................................4, 10

*Value Drug Co. v. Takeda Pharms., U.S.A., Inc.*,
    2022 WL 952896 (E.D. Pa. Mar. 30, 2022) ..................................................................10

*In re Viropharma, Inc. Sec. Litig.*,
    2003 WL 1824914 (E.D. Pa. Apr. 7, 2003) .................................................................3, 4

*In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*,
    868 F.3d 132 (3d Cir. 2017)...............................................................................5, 9, 10

*Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
    836 F.2d 173 (3d Cir. 1988)..................................................................................................8

**Rules**

Fed. R. Civ. P. Rule 12 ................................................................................................2, 3, 10

**Other Authorities**

Wright & Miller, Fed. Prac. & Proc. Civ. (3d ed.) .........................................................................3

Avadel's opposition brief fails to contest the straightforward facts that demonstrate why the Court should allow Jazz to file its supplemental brief in support of its motion to dismiss: After Jazz filed its original motion to dismiss, the FDA released documents relating to its consideration of whether Avadel could overcome Jazz's Orphan Drug Exclusivity ("ODE"), and those documents demonstrate that Avadel's antitrust counterclaims are implausible. While Avadel's operative pleading alleges that the FDA would have cast aside Jazz's ODE by October 15, 2021, clearing the way for final approval of LUMRYZ, the FDA's internal documents reveal otherwise. Those documents show, instead, that the FDA's Division of Neurology 1 (the "Review Division"), which has responsibility for oxybate products like LUMRYZ, concluded in August 2021—just six weeks earlier—that Avadel could *not* overcome Jazz's ODE because Avadel had presented *no evidence* of clinical superiority for LUMRYZ. The Review Division, and the FDA as a whole, did not find clinical superiority until May 2023—after they considered information that did not exist in October 2021, including submissions made by both Avadel and Jazz in 2022 and 2023, and internal FDA consults, dated April 29, 2023, and May 1, 2023, that the FDA itself deemed "integral" to its new finding.

Unable to dispute these critical facts, Avadel resorts to procedural objections to Jazz's proposed brief. For example, Avadel argues that Jazz should have made its new argument earlier. But Jazz could not have raised this specific argument before the FDA released the records that provide the basis for it. Avadel also argues that the Court cannot take judicial notice of the Review Division's August 2021 consult, but the caselaw clearly provides that such notice is appropriate. Lastly, Avadel tries to contest Jazz's arguments on the merits, but fails to show its claims are plausible. At a minimum, the Court should evaluate Jazz's challenge to Avadel's counterclaims based on these new developments after full briefing and, if it will assist the Court, oral argument.

## I.     AVADEL'S PROCEDURAL OBJECTIONS ARE MERITLESS

### A.     The Arguments At Issue Were Not Previously Available To Jazz

Contrary to Avadel's assertions, the arguments in Jazz's supplemental brief were not "available" to Jazz until recently. Jazz's argument is based on an August 30, 2021 consultation memo (the "August 2021 Review Division Consult"), which Jazz did not have until May 22, 2023, when the FDA released it on its website. Prior to that time, Jazz had ***no*** visibility into the timing or substance of the FDA's consideration of the effect of Jazz's ODE on the approval of LUMRYZ. None of Jazz's statements cited by Avadel (D.I. 53 at 7-8) suggest otherwise.

Avadel tries to recast Jazz's argument as a general antitrust standing challenge about Jazz's ODE blocking LUMRYZ's approval, untethered to new facts. *Id.* But Jazz's argument is far more specific: Avadel's allegation that the FDA would have discarded Jazz's ODE in favor of granting final approval to LUMRYZ in October 2021 is implausible because it cannot be reconciled with the August 2021 Review Division Consult and other materials released by the FDA in May 2023.

The First Circuit's decision in *Glater v. Eli Lilly & Co.*, 712 F.2d 735 (1st Cir. 1983) is instructive. There, the court allowed the defendant to bring a new motion to dismiss based on lack of personal jurisdiction after new facts emerged about the plaintiff's residence. *Id.* at 737-39. Although the defendant could have raised a ***general*** argument about lack of personal jurisdiction earlier, the ***specific argument based on the new facts*** was not previously "available" within the meaning of Rule 12. *Id.*; *see also Ambriz v. Coca Cola Co.*, 2014 WL 296159, at *3 (N.D. Cal. Jan. 27, 2014) (permitting subsequent motion to dismiss for lack of venue based on new factual revelations). Here too, Jazz's specific argument was not previously available.

Avadel confirms this by citing (D.I. 53 at 8) *State Farm Mutual Automobile Insurance Co. v. Delaware Diagnostic & Rehabilitation Center, P.A.*, 2021 WL 1929365 (D. Del. May 13, 2021), in which the court reasoned that an argument was previously available because there was a

2

straightforward way for the defendants to discover the underlying facts at the time of their original motion. Here, unlike in *State Farm*, Jazz could not have learned about the August 2021 Review Division Consult before the FDA released it without "clairvoyance." *Holzsager v. Valley Hospital*, 646 F.2d 792, 796 (2d Cir. 1981). Avadel also cites (D.I. 53 at 6) *Leyse v. Bank of America National Ass'n*, 804 F.3d 316 (3d Cir. 2015), but that case is distinguishable as well because the argument there was not based on any new facts at all. *Id.* at 320-21.

Jazz's supplemental brief is proper "especially" because Jazz "raise[d] the objections as soon as their cognizability [was] made apparent." *Holzsager*, 646 F.2d at 796. Jazz thus steered well clear of the "unnecessary delay" that Rule 12 is intended to prevent. *See* Wright & Miller, Fed. Prac. & Proc. Civ. § 1384 (3d ed.); *see also Ambriz*, 2014 WL 296159, at *3 (allowing second motion to dismiss where the defendant "acted immediately upon the revelation").

**B.     The Court May Take Judicial Notice Of The Review Division Consult**

Avadel next argues that the August 2021 Review Division Consult is not "judicially noticeable." D.I. 53 at 9-11. Avadel is wrong. Jazz cites this document for a proposition that is uncontroversial and undisputed: in August 2021, the Review Division concluded, in its own words, that Avadel had provided "no evidence" of clinical superiority, and so it could not overcome Jazz's ODE. Indeed, Avadel admits that, "[i]n August 2021, DN1 provided an initial opinion in a 'Consult Letter' that LUMRYZ was not clinically superior to Xywav." D.I. 54 at 7. Avadel cannot reasonably question the authenticity of this document, or that it reflects the Review Division's conclusion as of August 2021, making it judicially noticeable. *See* D.I. 48-1 at 11 (collecting cases). Avadel's own authorities (D.I. 53 at 9-10) confirm that the Court may take judicial notice of such a document "as evidence of the information provided." *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Anspach ex rel. Anspach v. City of Phila., Dep't of Pub. Health*, 503 F.3d 256, 273 n.11 (3d Cir. 2007)); *see also In re Viropharma, Inc. Sec. Litig.*,

3

2003 WL 1824914, at *1 (E.D. Pa. Apr. 7, 2003) (taking judicial notice "for the limited purpose of showing that a particular statement was made by a particular person").

To argue otherwise, Avadel pretends that Jazz has cited the August 2021 Review Division Consult for something more than the Review Division's opinion as of August 2021—namely, for the "highly disputable 'fact'" that LUMRYZ would not be approved by October 15, 2021. D.I. 53 at 9-10. While that is certainly the only plausible inference from the Review Division Consult, Jazz is not asking the Court to take "judicial notice" of that ultimate conclusion. Rather, Jazz simply asks the Court to take judicial notice of the Review Division's expressed position as of August 2021, which, again, Avadel does not dispute.[1]

For the same reasons, Avadel's argument that Jazz's supplemental brief is an improper "summary judgment" motion fails. D.I. 53 at 9. Courts in the Third Circuit consistently hold that public FDA records are judicially noticeable for facts "not subject to reasonable dispute," and that this does not convert a motion to dismiss into a motion for summary judgement. *In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d 479, 496-97 (E.D. Pa. 2018) (collecting cases). So too here.

### C.     Allowing Jazz To File Its Supplemental Brief Will Not Prejudice Avadel

Avadel protests that allowing Jazz to file a supplemental brief would "prejudice" Avadel. D.I. 53 at 20. But there is no prejudice. LUMRYZ is currently on the market, and thus, if Avadel has any plausible claim (which Jazz disputes), that claim is solely about damages. Allowing Jazz

---

[1]   Avadel cites (D.I. 53 at 10) inapposite cases where courts declined to take judicial notice or cases that do not concern judicial notice at all. *See Takeda Pharm. Co. Ltd. v. Zydus Pharms. (USA) Inc.*, 358 F. Supp. 3d 389, 399 n.7 (D.N.J. 2018) (declining to resolve dispute between the parties over whether FDA correspondence disproves causation); *Otsuka Pharm. Co. v. Apotex Corp.*, 2016 WL 6246801, at *4 (D.N.J. Aug. 26, 2016) (declining to take judicial notice of a ***private*** FDA letter); *Roxane Lab'ys, Inc. v. SmithKline Beecham Corp.*, 2010 WL 331704, at *4 (E.D. Pa. Jan. 26, 2010) (making no finding on judicial notice and containing no language "expressing doubt" that the document at issue was judicially noticeable, as Avadel claims).

4

to file its supplemental brief will not interfere with Avadel's efforts to sell LUMRYZ, disproving Avadel's accusation that this motion is an "attempt[] to prevent LUMRYZ from interrupting Jazz's decades-long monopoly." D.I. 53 at 3. Nor has Jazz used this motion to slow down discovery, as Jazz explains in its stay reply brief. D.I. 57 § III.B. Moreover, briefing this issue will not meaningfully slow down this case. Avadel has already previewed its opposition arguments, so the Court can direct it to file a brief in short order, and Jazz will be prepared to file its reply in one week. Under these circumstances, it would prejudice *Jazz* to subject Jazz to months of "sprawling, costly, and hugely time-consuming" antitrust discovery when judicially noticeable materials show Avadel's counterclaims are implausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560 n.6 (2007).

## II. AVADEL FAILS TO ESTABLISH THAT ITS CLAIMS ARE PLAUSIBLE

### A. Avadel's Core Allegations Are Now Plainly Implausible

As noted, Avadel's counterclaims rest on the premise that, by October 15, 2021, the FDA would have cast aside Jazz's ODE in favor of granting final approval to LUMRYZ. D.I. 14 ¶¶ 55, 95, 97, 99, 114-15; D.I. 53 at 1. But the August 2021 Review Division Consult shows that there is no basis to accept that as true. To the contrary, as of October 15, 2021, LUMRYZ was not approvable because the Review Division had just concluded that Avadel had not made the necessary showing of clinical superiority. D.I. 48-1 at 12-13. Avadel provides no plausible way to overcome this straightforward conclusion.

Avadel thus cannot "nudge[]" its speculative claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Nor would requiring Avadel to plausibly plead antitrust standing turn the motion to dismiss standard on its head, as Avadel asserts. D.I. 53 at 14. Rather, *Avadel* bears the burden of plausibly alleging antitrust standing, and it cannot sidestep that burden by suggesting that Jazz has "failed to disprove causation." *In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 166 (3d Cir. 2017). Avadel's own authorities (D.I. 53 at

5

13, 18) confirm this. *See In re Seroquel XR (Extended Release Quetiapine Fumarate) Antitrust Litig.*, 2022 WL 2438934, at *14 (D. Del. July 5, 2022) (dismissing claim where plaintiffs "allege[d] no facts in support" of their causation theory).

Indeed, Avadel's concessions confirm that its allegation that LUMRYZ would have been approved by October 15, 2021, is implausible. Avadel acknowledges that it had to overcome Jazz's ODE before the FDA could approve LUMRYZ. D.I. 53 at 13. It does not dispute that the FDA would not approve LUMRYZ in contravention of that ODE unless and until the Review Division agreed that LUMRYZ was clinically superior to XYWAV.[2] D.I. 48-1 at 14-15. And Avadel concedes that the FDA's decision to approve LUMRYZ involved alignment among the Review Division and the Office of Orphan Products Development ("OOPD"). D.I. 53 at 5, 15-16. Indeed, OOPD's decision letter explicitly relied on the Review Division's agreement. D.I. 48-1 at 10. Avadel cannot explain how it is plausible that the FDA would have approved LUMRYZ in October 2021, when the Review Division had just concluded in August that it had seen no evidence in support of clinical superiority to overcome Jazz's ODE.

Avadel focuses on the wrong issue, arguing that it is plausible that the FDA would have made *a* final decision by October 15, 2021, if not for Jazz's patent listing. But the premise of Avadel's counterclaims is not that *any* decision would have been made—but that the FDA would have made a specific decision—*i.e.*, it would have decided to grant final approval to LUMRYZ which, because of Jazz's ODE, would necessarily require it to find that LUMRYZ was clinically superior. And there is not one allegation in Avadel's pleadings that makes that conclusion

---

[2] Contrary to Avadel's assertions (D.I. 53 at 4-5, 7, 14), there is no inconsistency between this reasoning and Jazz's observations that the FDA had not reached a final decision on ODE by October 2021. Rather, the point is that the Review Division's approval was a *prerequisite* to the FDA's decision to break Jazz's ODE. Avadel does not dispute that the Review Division and OOPD needed to align before breaking Jazz's ODE and approving LUMRYZ. *Id.* at 15-16.

plausible. Again, if the FDA had rendered an ODE decision by October 15, 2021—six weeks after the Review Division found no evidence of clinical superiority—the only plausible inference is that the FDA would have *declined* to break Jazz's ODE and *declined* to approve LUMRYZ.

For similar reasons, Avadel's reliance on statements by the FDA (D.I. 53 at 3, 16) and Jazz's counsel (*id.* at 7-8, 13-14) suggesting that the FDA sometimes delays its final decisions regarding ODE in light of Orange Book listings is misplaced. Avadel mistakes Jazz's counsel as stating that the FDA would allow LUMRYZ to overcome Jazz's ODE, but Jazz's counsel did not say that. D.I. 53-1 at 60:13-17. Avadel's cites may suggest that the FDA could have *made a decision* by October 15, 2021, absent Jazz's Orange Book listing, but none of them suggest that the FDA would have *approved* LUMRYZ by then. Again, the Review Division Consult represents the only judicially noticeable facts about what the FDA's decision in October 2021 would have been, and Avadel has no allegations (much less judicially noticeable facts) going the other way.

Avadel distorts the record by claiming (D.I. 53 at 17) that when the FDA decided in May 2023 that LUMRYZ could overcome Jazz's ODE, the FDA did not rely on materials submitted after September 2021. That is not what occurred. Instead, OOPD expressly said the FDA's finding of clinical superiority was "based on," among other things, "the materials submitted by outside parties," while listing a host of materials that were submitted after September 2021. D.I. 48-2 at 16-17. OOPD never indicated that the FDA did not rely on those recent materials, as Avadel claims.³ In fact, entire passages of OOPD's letter respond to arguments Jazz made in December

---

³ The portion of OOPD's letter that Avadel references (D.I. 53 at 17) disclaims reliance only on *specific* letters from a patient advocacy organization and a Dr. Kushida. D.I. 48-2 at 17 n.14. Likewise, Avadel references (D.I. 53 at 17) a statement Jazz made in litigation against the FDA (D.I. 48-2 at 169 ¶ 201), referencing a part of OOPD's letter that disclaims reliance on particular "market research and prescriber surveys." *Id.* at 53. But the fact that the FDA singled out these specific materials and disclaimed reliance on them only highlights that the FDA *did* rely on the other materials noted in the OOPD letter, many of which post-dated 2021.

2022 and January 2023. *Id.* at 17-18 n.118. Moreover, OOPD emphasized its reliance upon the April 29, 2023 CDRH consult and the May 1, 2023 Review Division consult. *Id.* at 2, 27, 33-34. In turn, the CDRH consult cited a variety of scientific publications from *2022*, and the May 1, 2023 Review Division consult heavily relied on the CDRH consult. D.I. 48-1 at 9-10, 15.

It is thus Avadel, not Jazz, that "asks the Court to follow a chain of dubious inferences." D.I. 53 at 14. Avadel asserts that the FDA would have rendered a decision by October 15, 2021, absent Jazz's patent listing. Avadel then suggests (D.I. 53 at 16) that the Review Division would have made the same decision in October 2021 that it later made in 2023—despite the fact that the Review Division, and the FDA as a whole, relied on information post-dating 2021 in making that 2023 decision. And Avadel then asks the Court to overlook the Review Division's conclusion just prior to that time, in August 2021, that Avadel had provided no evidence of clinical superiority.

Avadel's assertion that it can establish antitrust standing if it alleges that "Jazz's anticompetitive conduct delayed the launch of LUMRYZ 'by a single day'" (D.I. 53 at 11) misses the mark. Having expressly pleaded that the FDA would have approved LUMRYZ by the October 15, 2021 target date but for Jazz's Orange Book listing, Avadel cannot now disown that allegation. It is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

Even looking beyond Avadel's current allegations, to plead plausible antitrust claims, Avadel must plausibly allege that Jazz did something unlawful to delay the approval of LUMRYZ beyond the time when its ODE *independently barred* that approval. At this point, if Avadel is backing away from its October 15, 2021 allegations, then its theory of what "single day" beyond the ODE period is at issue is entirely unclear. Jazz should not have to go through costly antitrust discovery without specific plausible allegations, which do not exist in Avadel's counterclaims.

### B. The Caselaw Amply Supports Jazz's Arguments

Finally, Avadel's argument that Jazz's challenge to its antitrust standing cannot be resolved at this stage also fails. The August 2021 Review Division Consult shows that ODE remained a "regulatory or legislative bar" to LUMRYZ's approval that broke "the chain of causation" and precludes Avadel from establishing antitrust standing under Third Circuit law. *Wellbutrin*, 868 F.3d at 165; *see also City of Pittsburgh v. West Penn. Power Co.*, 147 F.3d 256, 268 (3d Cir. 1998).

Avadel cannot distinguish Jazz's authorities. Avadel tries to distinguish *West Penn* based on Avadel's allegations that Jazz "deliberately manipulated a regulatory process to exclude competition" (D.I. 53 at 18), but those allegations are about Jazz's Orange Book listing, not ODE, a separate regulatory bar that deprives Avadel of antitrust standing. The cases Avadel cites (*id.* at 19) that distinguished *West Penn* all similarly involved allegations that the defendant allegedly manipulated the regulatory bar at issue, which Avadel has not alleged here with respect to ODE. *See In re Metoprolol Succinate Direct Purchaser Antitrust Litig.*, 2010 WL 1485328, at *6-7 (D. Del. Apr. 13, 2010); *King Drug Co. of Florence v. Cephalon, Inc.*, 702 F. Supp. 2d 514, 537 n.14 (E.D. Pa. 2010); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 535 (D.N.J. 2004).[4]

Avadel also seeks to distinguish *Wellbutrin*, a summary judgment case, by asserting Avadel needs discovery to develop a "full record," but fails to specify what evidence it hopes to obtain. D.I. 53 at 15, 18-20. No discovery could alter the Review Division's August 2021 conclusion, or the plain fact that ODE was an independent bar to LUMRYZ's approval. In contrast, discovery

---

[4] Avadel cites cases (D.I. 53 at 12-13, 20) denying motions to dismiss where there were allegations of delay of the FDA approval process. But these cases are inapposite because they did not involve situations where a ***separate*** regulatory bar broke the causal chain, as ODE does here. *See In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 2017 WL 4910673, at *13 (E.D. Pa. Oct. 30, 2017); *In re Gabapentin Patent Litig.*, 649 F. Supp. 2d 340, 356 (D.N.J. 2009); *Bristol-Myers Squibb Co. v. Ben Venue Labs.*, 90 F. Supp. 2d 540, 545 (D.N.J. 2000); *Perrigo Co. v. AbbVie Inc.*, 2021 WL 4551397, at *7 (D.N.J. Sept. 30, 2021).

9

was necessary in *Wellbutrin* to determine whether a generic drug could have been launched without running afoul of a blocking patent. *Wellbutrin*, 868 F.3d at 166-70; *see also Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869, 875-76 (3d Cir. 1995) (discovery necessary to assess "injury to competition"); *3Shape TRIOS A/S v. Align Tech., Inc.*, 2020 WL 2559777, at *10 n.7 (D. Del. May 20, 2020) (citing *Wellbutrin*). None of Avadel's other cited cases (D.I. 53 at 17-19) involved judicially noticeable facts establishing that an independent regulatory bar undermined antitrust standing, as is the case here.[5]

In any event, Avadel ignores the other authorities cited by Jazz which demonstrate that Avadel lacks antitrust standing because its alleged injury was caused by a "statutory and regulatory scheme adopted by the United States government, not by the conduct of the defendant[]." *In re Canadian Imp. Antitrust Litig.*, 470 F.3d 785, 791 (8th Cir. 2006); *see also RSA Media, Inc. v. AK Media Grp., Inc.*, 260 F.3d 10, 12 (1st Cir. 2001) (state regulatory scheme prevented antitrust standing); *In re Remicade Antitrust Litig.*, 345 F. Supp. 3d 566, 582 (E.D. Pa. 2018) (dismissing claims for lack of antitrust standing); *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 459 (9th Cir. 2021) (finding "too many speculative links in the chain of causation" for antitrust standing). Indeed, Avadel never alleges, nor could it, that there was anything improper regarding Jazz's ODE.

## III. CONCLUSION

For the foregoing reasons, the Court should permit Jazz to file its supplemental brief seeking dismissal of Avadel's counterclaims pursuant to Rule 12(b)(6).

---

[5] *See Takeda*, 358 F. Supp. 3d at 398 (FDA indicated that it would have approved the ANDA absent the alleged anticompetitive conduct); *Seroquel*, 2022 WL 2438934, at *11-12 (same); *Value Drug Co. v. Takeda Pharms., U.S.A., Inc.*, 2022 WL 952896, at *7 (E.D. Pa. Mar. 30, 2022) (it was "reasonable to infer" from FDA materials that alleged misconduct caused the antitrust injury).

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|  | */s/ Jeremy A. Tigran* |
| OF COUNSEL: | Jack B. Blumenfeld (#1014)<br>Jeremy A. Tigan (#5239)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>jtigan@morrisnichols.com |
| F. Dominic Cerrito<br>Eric C. Stops<br>Evangeline Shih<br>Steig D. Olson<br>Andrew S. Chalson<br>Gabriel P. Brier<br>Frank C. Calvosa<br>Nicholas A. LoCastro<br>Krista M. Rycroft<br>Quentin Jorgensen<br>QUINN EMANUEL URQUHART<br>   & SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, NY  10010<br>(212) 849-7000 |  |
|  | *Attorneys for Plaintiff Jazz Pharmaceuticals, Inc.* |

William R. Sears
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017

August 10, 2023

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 10, 2023, upon the following in the manner indicated:

| | |
|---|---|
| Daniel M. Silver, Esquire<br>Alexandra M. Joyce, Esquire<br>MCCARTER & ENGLISH, LLP<br>Renaissance Centre<br>405 N. King Street, 8th Floor<br>Wilmington, DE  19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Kenneth G. Schuler, Esquire<br>Marc N. Zubick, Esquire<br>Alex Grabowski, Esquire<br>Sarah W. Wang, Esquire<br>LATHAM & WATKINS LLP<br>330 North Wabash Avenue, Suite 2800<br>Chicago, IL  60611<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Herman H. Yue, Esquire<br>Franco Benyamin, Esquire<br>LATHAM & WATKINS LLP<br>1271 Avenue of the Americas<br>New York, NY  10020<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Sarah Propst, Esquire<br>Audra Sawyer, Esquire<br>Alan J. Devlin, Esquire<br>Ian Conner, Esquire<br>Anna M. Rathbun, Esquire<br>LATHAM & WATKINS LLP<br>555 Eleventh Street, NW, Suite 1000<br>Washington, D.C.  20004-1304<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

| | |
|---|---|
| Daralyn J. Durie, Esquire<br>Eric P. Berger, Esquire<br>Rebecca E. Weires, Esquire<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA  94105<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Kira A. Davis, Esquire<br>Henry Huttinger, Esquire<br>Katherine E. McNutt, Esquire<br>Rose S. Lee, Esquire<br>MORRISON & FOERSTER LLP<br>707 Wilshire Boulevard<br>Los Angeles, CA  90017<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| David F. McGowan, Esquire<br>MORRISON & FOERSTER LLP<br>12531 High Bluff Drive, Suite 100<br>San Diego, CA  92130<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Andrew T. Jones, Esquire<br>MORRISON & FOERSTER LLP<br>2100 L Street, NW, Suite 900<br>Washington, D.C.  20037<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Stacy Cline Amin, Esquire<br>Haydn Forrest, Esquire<br>Alexander Okuliar, Esquire<br>MORRISON & FOERSTER LLP<br>2100 L Street, NW, Suite 900<br>Washington, D.C.  20037<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)