IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAZZ PHARMACEUTICALS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 22-941 (GBW) |
| | ) |
| AVADEL CNS PHARMACEUTICALS, LLC, | ) |
| | ) |
| Defendant. | ) |

## JAZZ'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO STAY

OF COUNSEL:

F. Dominic Cerrito
Eric C. Stops
Evangeline Shih
Steig D. Olson
Andrew S. Chalson
Gabriel P. Brier
Frank C. Calvosa
Nicholas A. LoCastro
Krista M. Rycroft
Quentin Jorgensen
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000

William R. Sears
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017

August 10, 2023

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Plaintiff Jazz Pharmaceuticals, Inc.*

**TABLE OF CONTENTS**

**Page**

I.  JAZZ'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS WOULD RESOLVE THE ENTIRE CASE IF GRANTED ................................. 2

II.  DISCOVERY REMAINS IN ITS INFANCY ....................................................................... 5

III. A STAY WOULD NOT PREJUDICE AVADEL .................................................................. 8

    A.  Jazz Did Not Time Its Motion To Gain A Tactical Advantage ............................... 8

    B.  A Stay Will Not Unfairly Prejudice Avadel .............................................................. 9

IV. CONCLUSION ................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bataan Licensing LLC v. DentalEZ, Inc.*,
   2023 WL 143991 (D. Del. Jan. 10, 2023)...................................................................................7, 9

*Belden Techs. Inc. v. Superior Essex Commc'ns LP*,
   2010 WL 3522327 (D. Del. Sept. 2, 2010).....................................................................................8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).......................................................................................................................4

*CallWave Commc'ns, LLC v. AT & T Mobility, LLC*,
   2015 WL 1284203 (D. Del. Mar. 18, 2015) ...............................................................................6, 8

*In re Canadian Imp. Antitrust Litig.*,
   470 F.3d 785 (8th Cir. 2006) .........................................................................................................4

*Celorio v. On Demand Books LLC*,
   2013 WL 4506411 (D. Del. Aug. 21, 2013)...................................................................................9

*Cooper Notification, Inc. v. Twitter, Inc.*,
   2010 WL 5149351 (D. Del. Dec. 13, 2010)...................................................................................6

*In re Egalet Corp. Sec. Litig.*,
   340 F. Supp. 3d 479 (E.D. Pa. 2018), *aff'd sub nom.*
   *Spizzirri v. Zyla Life Scis.*, 802 F. App'x 738 (3d Cir. 2020) ......................................................7

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
   2019 WL 3943058 (D. Del. Aug. 21, 2019) ...............................................................................6, 8

*LG Elecs., Inc. v. Toshiba Samsung Storage Tech. Korea Corp.*,
   2015 WL 8674901 (D. Del. Dec. 11, 2015)...................................................................................8

*Mission Abstract Data L.L.C. v. Beasley Broad. Grp., Inc.*,
   2011 WL 5523315 (D. Del. Nov. 14, 2011) ...............................................................................6, 8

*SenoRx, Inc. v. Hologic, Inc.*,
   2013 WL 144255 (D. Del. Jan. 11, 2013).......................................................................................8

*St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*,
   2003 WL 25283239 (D. Del. Jan. 30, 2003)..................................................................................8

*Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*,
   193 F. Supp. 3d 345 (D. Del. 2016)...............................................................................................8

*In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*,
    868 F.3d 132 (3d Cir. 2017) ............................................................................................... 3

**Rules**

Fed R. Civ. P. 11 ............................................................................................................................ 9

**Other Authorities**

Fed. R. Civ. P. 11 Advisory Committee's Note to 1993 Amendments ........................................... 9

Avadel's opposition fails to overcome Jazz's showing that a stay is warranted under the applicable factors. As Jazz has shown, the FDA recently released documents relating to its consideration of whether Avadel could overcome Jazz's Orphan Drug Exclusivity ("ODE"), and those documents demonstrate that Avadel's antitrust counterclaims are implausible and thus should be dismissed in their entirety. While Avadel's operative pleading alleges that the FDA would have cast aside Jazz's ODE by October 15, 2021, clearing the way for final approval of LUMRYZ, the documents released by the FDA reveal otherwise. Those documents show, instead, that the FDA's Division of Neurology 1 (the "Review Division"), the division with responsibility for oxybate products like LUMRYZ, had concluded in an August 30, 2021 consultation memo (the "August 2021 Review Division Consult")—just six weeks earlier—that Avadel could ***not*** overcome Jazz's ODE because Avadel had presented ***no evidence*** of clinical superiority for LUMRYZ. And while the Review Division, and the FDA as a whole, later found clinical superiority based on new information, that did not happen until May 2023.

These judicially noticeable documents are game changers. At a minimum, they warrant staying discovery for the Court to resolve Jazz's motion to dismiss. Avadel acknowledges that where a motion to dismiss has a "reasonable likelihood" of ending an entire lawsuit, a stay is appropriate. Jazz's motion to dismiss has such a likelihood, because it raises a serious and dispositive challenge to Avadel's antitrust standing and the basic plausibility of its counterclaims.

To resist a stay, Avadel asserts that this case is in its advanced stages. That is inaccurate. Discovery has just begun. Indeed, Avadel has itself not produced ***any*** custodial documents and it served new document requests and interrogatories last week. There is no trial date. This is an ideal time to stay discovery in this complex antitrust case which threatens to be extremely costly and burdensome. Nor can Avadel identify any prejudice from a limited stay while Jazz's motion

to dismiss is decided.  LUMRYZ is currently on the market, so Avadel's antitrust counterclaims are purely about money damages, and a discovery stay will not impact them in any manner.

## I. JAZZ'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS WOULD RESOLVE THE ENTIRE CASE IF GRANTED

Avadel does not dispute that a stay of discovery is warranted where, as here, a motion to dismiss has a "reasonable likelihood" of exposing a complaint as legally deficient and rendering discovery futile.  D.I. 54 at 9.  As Jazz explains in in its proposed supplemental brief, documents recently released by the FDA concerning the timeline for its consideration of the approval of LUMRYZ disprove the central premise of Avadel's antitrust counterclaims.

Specifically, Avadel alleges that, by October 15, 2021, the FDA would have cast aside Jazz's ODE in favor of granting final approval to LUMRYZ, if Jazz had not listed the '963 patent in the Orange Book.  The FDA's Review Division Consult shows, however, that in August 2021, the Review Division determined that ***Avadel could not overcome Jazz's ODE*** because it had failed to demonstrate that LUMRYZ was clinically superior to XYWAV.  D.I. 48-2 at 12-13.  Avadel cannot reconcile this judicially noticeable fact with its claims as currently pled.  Avadel acknowledges that the FDA needed to reach alignment between the Review Division and the Office of Orphan Products Development ("OOPD") before it could approve LUMRYZ notwithstanding Jazz's ODE.  D.I. 53 at 15-16.  And when the FDA did find in May 2023 that Avadel could overcome Jazz's ODE, it was only after it considered new information that it did not have in October 2021, including an April 29, 2023 CDRH consult and submissions by both Jazz and Avadel in 2022 and 2023.  *See* D.I. 48-2 at 16-17, 41, 46-47.  The newly released FDA materials thus render implausible Avadel's speculative claim that the FDA would have approved LUMRYZ on October 15, 2021, absent Jazz's listing of the '963 patent in the Orange Book.  And they show, instead, that approval of LUMRYZ faced an independent regulatory bar—the ODE

awarded to Jazz for XYWAV—which Avadel has not challenged, and could not challenge, as anticompetitive in any manner.

To avoid the conclusion that a stay is warranted in light of these revelations, Avadel characterizes Jazz's arguments as merely disputing the quantum of damages. D.I. 54 at 11. Avadel is mistaken. As Jazz has explained, these new facts about ODE demonstrate that Avadel cannot plausibly allege antitrust standing. That is because Avadel has not plausibly alleged that the patent listing delayed the approval of LUMRYZ beyond the period in which Jazz's ODE was an independent regulatory bar to the FDA's approval of LUMRYZ. Avadel speculates that the FDA may have approved LUMRYZ at some other, undefined point after October 2021. *Id.* at 11. But Avadel never pleaded this theory in its counterclaims, and it cannot be squared with Avadel's allegation that the FDA would have decided whether to approve LUMRYZ by October 15, 2021, absent Jazz's Orange Book listing. D.I. 56 at 8. If the FDA had made a final decision on whether to approve LUMRYZ in October 2021, as Avadel alleges, it is implausible that it would have decided to approve LUMRYZ over Jazz's ODE when the Review Division had just found that there was no basis for doing so.

Moreover, Avadel's suggestion that Jazz must affirmatively rule out the possibility that the FDA would have approved LUMRYZ on any given day between October 15, 2021, and May 1, 2023, ignores that it is ***Avadel's*** burden to plead a plausible theory of antitrust injury. Avadel cannot shirk that burden by "saying that the defendants have failed to disprove causation." *In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 166 (3d Cir. 2017).

In an attempt to salvage its counterclaims, Avadel invites the Court to adopt an even more speculative theory: Avadel posits that (D.I. 54 at 11-12), had Jazz delisted the '963 patent earlier, the FDA would have rushed to jump through regulatory hoops after the August 2021 Review

3

Division Consult, promptly found that LUMRYZ overcame Jazz's ODE, and approved LUMRYZ within six weeks—a decision that actually took the FDA twenty months and was based on information that did not exist until after October 15, 2021.  But Avadel has not pleaded such allegations in its counterclaims.  And even if it had, such wishful conjecture does not render Avadel's claims plausible, especially since it goes against the grain of judicially noticeable facts.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *In re Canadian Imp. Antitrust Litig*., 470 F.3d 785, 792 (8th Cir. 2006) ("'[V]aguely defined links' in the chain of causation, even if alleged by the plaintiffs, would be insufficient to establish antitrust standing.").

Unable to defend its own allegations, Avadel claims that "Jazz's public admissions" (D.I. 54 at 4-5) somehow contradict its current arguments.  Not so.  The statements Avadel cites, which predate the release of the Review Division Consult in May 2023, merely show that Jazz understood that the FDA had not finally resolved the ODE issue.  That is true, but it says nothing about what the FDA would have decided about Jazz's ODE if that issue had been resolved in October 2021.  To sustain its claims, Avadel must plausibly allege that, in October 2021, the FDA would have cast aside Jazz's ODE in favor of final approval of LUMRYZ.  But the materials recently released by the FDA show that any such allegation is implausible, as its Review Division had just recently concluded that there was no basis for overcoming Jazz's ODE because Avadel had provided no evidence that LUMRYZ was clinically superior to XYWAV.  Avadel provides nothing with which to patch up that gaping hole in its claims.

Avadel next suggests, without explanation or citation to any authority, that a stay request based on a proposed supplemental brief is somehow less compelling than one based on a "pending"

4

motion to dismiss.  D.I. 54 at 10.[1]  That is not the law, and Avadel's proposed rule makes no sense, as Jazz's proposed supplemental brief based on these new FDA disclosures reveals that Avadel's claims lack merit.  *See* D.I. 56 § II.

Similarly, Avadel attacks a strawperson by arguing that Jazz's prior, pending motion to dismiss does not provide a basis for a stay.  D.I. 54 at 9-10.  Whether or not Jazz could have sought a stay based on its prior motion is irrelevant to the issue of whether Jazz's proposed supplemental brief warrants one.  Indeed, the fact that Jazz has put forward multiple, independent bases for dismissal of Avadel's counterclaims in their entirety strengthens its request for a stay.

## II.     DISCOVERY REMAINS IN ITS INFANCY

In arguing that the case status weighs against a stay (D.I. 54 at 14-16), Avadel vastly exaggerates the discovery that has taken place.  The Court entered a Scheduling Order less than three months ago, on May 19, 2023, and discovery remains in the early stages.  *See* D.I. 44.  When Jazz filed its opening brief, the parties had merely exchanged initial and ESI disclosures (D.I. 40, 41, 46, 47) and document requests (D.I. 35, 37, 39, 42), and Avadel had served just three interrogatories (D.I. 38, 43).  To date, Avadel has not produced *any* custodial documents.

It was not until after Jazz informed Avadel that it intended to request a stay of discovery (D.I. 54-1 at 74) that Avadel began writing a series of letters and serving more document requests and interrogatories in an attempt to make it appear that discovery is "well underway" (D.I. 54 at 14).  These tactical maneuvers do not weigh against a stay.  The bulk of discovery is still to come.  The parties have not finished negotiating the scope of their document productions, no depositions are scheduled, the fact discovery cutoff is months away, the expert discovery cutoff is nearly a

---

[1] Avadel's authorities (D.I. 54 at 10-11) merely stand for the uncontroversial proposition that *if* the Court denies Jazz's motion to dismiss, then there is no basis for a stay; they do not say a meritorious proposed supplemental brief, like Jazz's here, cannot provide the basis for a stay.

5

year away, the deadline for dispositive motions remains over a year away, and no trial date has been set. D.I. 44. This is precisely the sort of early-stage litigation at which a stay is favored. *See, e.g.*, *Mission Abstract Data L.L.C. v. Beasley Broad. Grp., Inc*., 2011 WL 5523315, at *3-4 (D. Del. Nov. 14, 2011) (granting a stay where discovery had just begun and would not be complete for another six months, and a trial date had not been set).

Given this posture, that some limited discovery has taken place does not warrant denying a stay, because "the most burdensome stages of the cases—completing discovery, preparing expert reports, filing and responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future." *IOENGINE, LLC v. PayPal Holdings, Inc*., 2019 WL 3943058, at *4-5 (D. Del. Aug. 21, 2019) (rejecting arguments against stay where significant fact discovery, including the production of over 100,000 pages of documents, had already taken place); *see also CallWave Commc'ns, LLC v. AT & T Mobility, LLC*, 2015 WL 1284203, at *1 (D. Del. Mar. 18, 2015) (granting stay where "few depositions have been taken and expert discovery has not yet begun").

Avadel relies on *Cooper Notification, Inc. v. Twitter, Inc*., 2010 WL 5149351 (D. Del. Dec. 13, 2010), to argue that the entry of a scheduling order weighs against granting a stay, even at the incipient stages of discovery, but that case is inapposite. In *Cooper*, the court denied a stay because the patent reexamination that formed the basis for the stay request would likely have taken 6.5 to 8 years. *Id.* at *3-4. Further, unlike here, a trial had been calendared in *Cooper*, making it all but certain that the proposed stay would push back the trial date by several years. *Id.*

In contrast, Jazz seeks a limited stay only until the motion to dismiss is decided. Avadel's assertion that Jazz seeks a stay of indefinite length is inaccurate. D.I. 54 at 18-19. As stated in

Jazz's opening brief, the proposed stay "would be limited to the time it takes the Court to rule on Jazz's motion to dismiss, including Jazz's supplemental brief in support of its motion, minimizing any conceivable prejudice to Avadel." D.I. 50 at 5-6. Given the serious and case-dispositive nature of the issues raised by Jazz's motion, this limited stay is appropriate.

Avadel cites situations where courts have denied motions to dismiss that prematurely raised factual disputes. D.I. 54 at 16. Those cases are distinguishable, because Jazz's proposed motion raises no factual disputes. Rather, it rests on the undisputed fact that the Review Division concluded in August 2021 that Avadel had not made any showing to overcome Jazz's ODE. Avadel admits that "[i]n August 2021, DN1 provided an initial opinion in a 'Consult Letter' that LUMRYZ was not clinically superior to Xywav." *Id.* at 7. It is appropriate for the Court to take judicial notice of the August 2021 Review Division Consult for purposes of demonstrating the Review Division's views as of August 2021, especially since Avadel does not dispute that point. *See In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d 479, 497 (E.D. Pa. 2018), *aff'd sub nom. Spizzirri v. Zyla Life Scis.*, 802 F. App'x 738 (3d Cir. 2020) (taking judicial notice of a Center for Drug Evaluation and Research memo publicly available on the FDA's website for the purpose of showing that the FDA wrote and signed a particular decision on a particular date); *see also* D.I. 56 § I.B.

This Court recently entered a stay under similar circumstances, where the parties had "invested relatively few resources" and the defendant's motion to dismiss did not require resolution of any factual disputes, meaning there was no need for discovery pending resolution of the motion. *See Bataan Licensing LLC v. DentalEZ, Inc.*, 2023 WL 143991, at *2 (D. Del. Jan. 10, 2023). Avadel's attempt to distinguish *Bataan* by noting that no scheduling order had been entered in that case (D.I. 54 at 16) rings hollow in light of the plethora of cases ordering a stay

7

notwithstanding that fact.  *See IOENGINE*, 2019 WL 3943058, at *5; *CallWave*, 2015 WL 1284203, at *1; *Mission Abstract Data*, 2011 WL 5523315, at *3.

## III.  A STAY WOULD NOT PREJUDICE AVADEL

### A.  Jazz Did Not Time Its Motion To Gain A Tactical Advantage

Avadel's suggestion that Jazz's motion for a stay was driven by "tactical" considerations is wrong.  D.I. 54 at 16-18.  Jazz promptly moved for a stay and to supplement its motion to dismiss after the FDA released previously unavailable materials on May 22, 2023, which showed Avadel lacked antitrust standing.  Nothing in this timeline suggests dilatory intent.  *Cf. Belden Techs. Inc. v. Superior Essex Commc'ns LP*, 2010 WL 3522327, at *2 (D. Del. Sept. 2, 2010) (denying motion to stay filed 11 days before trial); *St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*, 2003 WL 25283239, at *1 (D. Del. Jan. 30, 2003) (denying motion to stay "filed after the close of discovery and weeks before" trial).  Nor did Jazz's request "come on the heels of any negative case event."  *SenoRx, Inc. v. Hologic, Inc.*, 2013 WL 144255, at *7 (D. Del. Jan. 11, 2013).

To the contrary, Jazz seeks this stay because its supplemental brief based on the newly released materials should dispose of Avadel's antitrust counterclaims in their entirety while this case is at a nascent stage, obviating the need for costly discovery and motion practice.  Where a stay motion is "brought at [an] understandable juncture[]" such as here, the timing of the request does not suggest dilatory motive.  *Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*, 193 F. Supp. 3d 345, 351 (D. Del. 2016); *see also*, *LG Elecs., Inc. v. Toshiba Samsung Storage Tech. Korea Corp.*, 2015 WL 8674901, at *6 (D. Del. Dec. 11, 2015) (defendant in patent case properly sought a stay at a natural juncture, after it had become certain that there would be an appeal regarding the status of the at-issue patents which would clarify the scope of the claims).

Avadel insinuates that Jazz's decision to seek a stay now is somehow improper because Jazz did not previously seek one in connection with its initial motion to dismiss (D.I. 54 at 17), but

8

that argument ignores the significance of the newly released FDA materials. While Jazz firmly believes in the merits of its initial motion-to-dismiss arguments, Jazz's supplemental brief based on lack of antitrust standing is a game changer because it shows that Avadel's core allegations are contradicted by judicially noticeable documents and are fundamentally implausible.

Lastly, Jazz respectfully disagrees with Avadel's accusation that Jazz "baselessly threatened" Rule 11 sanctions. *Id.* Jazz did not make any such threat. Rather, following the release of the FDA materials, Jazz informed Avadel that it believed that the central premise of its counterclaims was now untenable in light of the newly available evidence. *See* D.I. 54-1 at 74. In doing so, Jazz merely pointed out that, under Rule 11 and supporting caselaw, a litigant has an obligation to correct or withdraw pleadings "after learning that they cease to have any merit." *Id.* at 74 & n.2 (citing Fed. R. Civ. P. 11 Advisory Committee's note to 1993 amendments).

### B.     A Stay Will Not Unfairly Prejudice Avadel

Lastly, Avadel argues that a stay would prejudice Avadel (D.I. 54 at 18-20), but Avadel does not point to any reason other than a putative delay to final judgment that it would suffer any prejudice from a stay. However, this Court has noted that delay "does not, by itself, amount to undue prejudice." *Bataan*, 2023 WL 143991, at \*2. Here, in particular, a potential delay, in and of itself, would not cause Avadel unfair prejudice. As Jazz explained in its opening brief—and Avadel does not refute—any delay would not affect Avadel's ability to market LUMRYZ because Avadel has already entered the market and seeks monetary damages. D.I. 50 at 11-12. Where, as here, concerns about undue prejudice may be fully redressed by monetary damages, this factor weighs in favor of a stay. *Bataan*, 2023 WL 143991, at \*2 (citing *Celorio v. On Demand Books LLC*, 2013 WL 4506411, at \*1 n.1 (D. Del. Aug. 21, 2013)).

Avadel's claims that Jazz is slow-rolling discovery are baseless, are irrelevant to the merits of Jazz's stay request, and ignore Avadel's own dilatory approach to discovery. D.I. 54 at 19. In

the month leading up to June 5, 2023, when Jazz informed Avadel that it would likely seek a stay in this case, Avadel did virtually nothing to move discovery forward. The only discovery that took place in the month of May were three meet-and-confers to discuss the parties' document requests. Avadel then went silent for a month, and only began sending Jazz a series of discovery letters demanding immediate responses *after* Jazz informed Avadel it was planning to move for a stay.

Moreover, Jazz has not missed a single deadline or refused to engage on a single discovery issue. What Jazz has taken issue with is Avadel's attempt to unilaterally expedite the discovery schedule in an effort to stave off this stay motion, as Jazz has repeatedly told Avadel. *See* D.I. 54-1 at 105. At the same time, as Jazz has made clear to Avadel, unless and until a stay is granted, Jazz will continue to comply with the Court-ordered deadlines. Avadel's purported concerns about delays to discovery are conjectural at best and provide no reason to force Jazz to spend millions of dollars on discovery before the Court resolves whether Avadel even has antitrust standing.

## IV. CONCLUSION

For these reasons and those set forth in Jazz's opening brief (D.I. 50), the Court should stay discovery in this matter pending resolution of Jazz's motion to dismiss.

|  |  |
|---|---|
| OF COUNSEL:<br><br>F. Dominic Cerrito<br>Eric C. Stops<br>Evangeline Shih<br>Steig D. Olson<br>Andrew S. Chalson<br>Gabriel P. Brier<br>Frank C. Calvosa<br>Nicholas A. LoCastro<br>Krista M. Rycroft<br>Quentin Jorgensen<br>QUINN EMANUEL URQUHART<br>  & SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, NY  10010<br>(212) 849-7000<br><br>William R. Sears<br>QUINN EMANUEL URQUHART<br>  & SULLIVAN, LLP<br>865 S. Figueroa St., 10th Floor<br>Los Angeles, California 90017<br><br>August 10, 2023 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Jeremy A. Tigan*<br><br>Jack B. Blumenfeld (#1014)<br>Jeremy A. Tigan (#5239)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>jtigan@morrisnichols.com<br><br>*Attorneys for Plaintiff Jazz Pharmaceuticals, Inc.* |

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 10, 2023, upon the following in the manner indicated:

| | |
|---|---|
| Daniel M. Silver, Esquire<br>Alexandra M. Joyce, Esquire<br>MCCARTER & ENGLISH, LLP<br>Renaissance Centre<br>405 N. King Street, 8th Floor<br>Wilmington, DE  19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Kenneth G. Schuler, Esquire<br>Marc N. Zubick, Esquire<br>Alex Grabowski, Esquire<br>Sarah W. Wang, Esquire<br>LATHAM & WATKINS LLP<br>330 North Wabash Avenue, Suite 2800<br>Chicago, IL  60611<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Herman H. Yue, Esquire<br>Franco Benyamin, Esquire<br>LATHAM & WATKINS LLP<br>1271 Avenue of the Americas<br>New York, NY  10020<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Sarah Propst, Esquire<br>Audra Sawyer, Esquire<br>Alan J. Devlin, Esquire<br>Ian Conner, Esquire<br>Anna M. Rathbun, Esquire<br>LATHAM & WATKINS LLP<br>555 Eleventh Street, NW, Suite 1000<br>Washington, D.C.  20004-1304<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

| | |
|---|---|
| Daralyn J. Durie, Esquire<br>Eric P. Berger, Esquire<br>Rebecca E. Weires, Esquire<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA 94105<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Kira A. Davis, Esquire<br>Henry Huttinger, Esquire<br>Katherine E. McNutt, Esquire<br>Rose S. Lee, Esquire<br>MORRISON & FOERSTER LLP<br>707 Wilshire Boulevard<br>Los Angeles, CA 90017<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| David F. McGowan, Esquire<br>MORRISON & FOERSTER LLP<br>12531 High Bluff Drive, Suite 100<br>San Diego, CA 92130<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Andrew T. Jones, Esquire<br>MORRISON & FOERSTER LLP<br>2100 L Street, NW, Suite 900<br>Washington, D.C. 20037<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Stacy Cline Amin, Esquire<br>Haydn Forrest, Esquire<br>Alexander Okuliar, Esquire<br>MORRISON & FOERSTER LLP<br>2100 L Street, NW, Suite 900<br>Washington, D.C. 20037<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)