IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JAZZ PHARMACEUTICALS, INC.,           )
                                      )
                  Plaintiff,          )
                                      )
            v.                        )      C.A. No. 22-941 (GBW)
                                      )
AVADEL CNS PHARMACEUTICALS LLC,       )
                                      )
                  Defendant.          )

**LETTER TO THE HONORABLE GREGORY B. WILLIAMS FROM JEREMY A. TIGAN**
**REGARDING JAZZ'S OPPOSITION TO AVADEL'S MOTION TO COMPEL**

OF COUNSEL:

F. Dominic Cerrito
Eric C. Stops
Evangeline Shih
Steig D. Olson
Andrew S. Chalson
Gabriel P. Brier
Frank C. Calvosa
Nicholas LoCastro
Krista M. Rycroft
Nicolas Siebert
Avi Grunfeld
Marissa Smith
Andrew Faisman
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000

William R. Sears
Lynette Lim
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

November 1, 2023

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Plaintiff Jazz Pharmaceuticals, Inc.*

Dear Judge Williams:

The Court should deny Avadel's request that Jazz be forced to decide and formally declare by November 22, 2023, whether it will rely on the advice of counsel, and thus waive some scope of privilege over communications related to that advice, in order to defend against Avadel's antitrust counterclaims. Avadel's argument rests on the incorrect assertion that "Jazz has raised two principal defenses," one of which purportedly implicates the advice of counsel. D.I. 72 at 1. In fact, Jazz has not raised *any* defenses yet, because it has not even answered Avadel's counterclaims. Rather, Jazz has merely identified two dispositive *pleading* defects with Avadel's counterclaims, and Jazz's motion to dismiss on those issues is pending. Avadel identifies no case in which a court required a party to make a formal declaration about whether it would rely on the advice of counsel before that party had to answer the complaint, as Avadel seeks here. A defendant should be able to see whether any claims survive a motion to dismiss and, if any do survive, to make an informed decision about what defenses it will advance in light of the court's ruling on the motion to dismiss. Avadel's request that Jazz be forced to make a declaration on the advice-of-counsel defense now, before Jazz has even had to serve an answer, is thus meritless.

Moreover, Avadel's professed concerns about the timing of discovery are a problem of its own making. Jazz has moved to stay discovery until the Court can rule on its motion to dismiss which, in part, explains that materials recently released by the FDA show that Avadel's claims are implausible and should be dismissed. Avadel opposed the stay motion, which created the very concerns about which it now complains. Avadel's request that the Court require Jazz to make a *pre*-decision, *pre*-answer declaration on the advice of counsel should be denied.

**Background**: Avadel's antitrust counterclaims allege that but-for Jazz's listing of the '963 patent in the FDA's Orange Book, the FDA would have approved Avadel's LUMRYZ product by October 15, 2021. In its initial motion to dismiss, Jazz highlighted one pleading defect with Avadel's claims: Avadel cannot plausibly allege that Jazz's listing of the '963 patent was objectively unreasonable. D.I. 22 § V.A. Notwithstanding Avadel's suggestion that liability in this case is a foregone conclusion, *see* D.I. 72 at 1-2, the law requires Avadel to plausibly allege that the listing was objectively baseless when it occurred. D.I. 22 at 14-16 (citing *Organon Inc. v. Mylan Pharms., Inc.*, 293 F. Supp. 2d 453, 459-60 (D.N.J. 2003)).

In May 2023, after Jazz filed its initial motion to dismiss, another pleading-stage problem with Avadel's counterclaims emerged when the FDA released documents that unequivocally disprove Avadel's allegations that the FDA would have approved LUMRYZ by October 15, 2021, but-for Jazz's listing of the '963 patent. These judicially noticeable materials show, instead, that the FDA's prior award of orphan drug exclusivity ("ODE") to Jazz for its XYWAV product posed an *independent regulatory bar* to LUMRYZ's approval. Specifically, the FDA's award of ODE meant that it could not approve LUMRYZ unless and until, in the FDA's view, Avadel was able to demonstrate that LUMRYZ was "clinically superior" to XYWAV. And, as the FDA materials further show, Avadel was unable to demonstrate that to the FDA's satisfaction until *May 2023*. This means that the ODE award, on its own, prevented the FDA from approving LUMRYZ until May 2023, and the '963 patent listing did not delay LUMRYZ's approval date at all.

Avadel's pleading fails to allege otherwise (and could not plausibly do so). Accordingly, Jazz moved for leave to file a supplemental brief in support of its motion to dismiss on the basis that Avadel lacks antitrust standing, because it cannot plead causation, and also moved to stay discovery in light of these developments. D.I. 48, 48-1, 48-2. Avadel opposed the motions. Jazz's

motion to dismiss as well as its motion to stay discovery, remain pending.  Thus, although Avadel has pushed Jazz to proceed with discovery, none of Avadel's counterclaims or theories have survived the pleading stage, and there is no deadline for Jazz to serve an answer.  Moreover, the substantial completion deadline remains almost two months away, no depositions have been scheduled, and no trial date has been set.  D.I. 44.

**Argument**:  Avadel's request for the Court to order Jazz to disclose whether it will rely on the advice of counsel at the pre-answer stage is unprecedented and unwarranted.  Avadel cites no authority that would require Jazz to make a formal election as to how it intends to defend against Avadel's antitrust counterclaims before any of those counterclaims have survived the pleading stage and before Jazz has had to serve its answer.

*First*, Avadel is mistaken in arguing that "Jazz has raised two principal defenses," which supposedly oblige Jazz to waive privilege.  D.I. 72 at 1, 3.  As noted, Jazz has not had to raise any defenses yet, as it has not had to answer any claims, and none have yet survived the pleading stage.  Rather, Jazz has identified *pleading defects*, which Jazz believes should dispose of Avadel's claims in their entirety.  Moreover, while Avadel suggests that its claims will inevitably survive the pleading stage because Jazz's liability "has already been established," *id.* at 1, this is plainly not the case.  Indeed, Avadel has improperly used its letter on the advice-of-counsel issue to make new arguments and to cite new authority in an effort to resist the dismissal of its counterclaims, which only highlights their precarious status.  Avadel now claims, for the first time, that "the law does not allow a monopolist to argue that its efforts to exclude a competitor may not have succeeded," with the suggestion being that Jazz (and presumably any other pharmaceutical company) is strictly liable under the antitrust laws for any Orange Book listing later found to be improper, even if the listing did not actually delay or exclude any competition.  D.I. 72 at 1.  This new argument is mistaken:  as the antitrust plaintiff, Avadel has the burden of establishing that Jazz's Orange Book listing *actually caused* an injury to Avadel by excluding competition; absent plausible allegations on this point, Avadel's counterclaims must be dismissed.  D.I. 48-1 at 11.

Avadel newly cites *United States v. Microsoft Corp.*, 253 F.3d 34, 78-79 (D.C. Cir. 2001) for its argument that Jazz can be liable for a patent listing that did not actually exclude competition.  But *Microsoft* is inapposite.  There was no argument in *Microsoft* that a separate regulatory bar prevented the nascent competitor from entering the market.  Thus, the court did not consider or address that argument.  On the other hand, a case that Avadel did cite previously (*Lantus*) rejects Avadel's claim that the antitrust laws operate as a strict liability statute, subjecting any company that is later instructed to delist an Orange Book patent to antitrust liability, even if its listing decision was objectively reasonable at the time it was made.  *In re Lantus Direct Purchaser Antitrust Litig.*, 950 F.3d 1, 11 (1st Cir. 2020) ("Sanofi has a fair point in arguing that the plaintiffs' version of what would essentially be strict liability for improper Orange Book submissions could slightly tilt the regulatory balance Congress sought in this bespoke scheme at the intersection of the FDCA and patent law.").  Moreover, Third Circuit law establishes that a company is not liable under Section 2 unless it takes actions that were objectively wrongful and "taken for no legitimate business reasons." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 393 (3d Cir. 2016).  Avadel must plausibly allege, therefore, that Jazz's decision to list the patent was objectively wrongful and illegitimate when it was done—and Avadel has failed to do so.[1]

---

[1]  Avadel resorts to mischaracterizing statements made by Jazz's CEO to support its claim that Jazz listed the '963 patent "with the express goal of delaying competition from Avadel."  D.I. 72

**Second**, Avadel is unable to cite any cases requiring a party, like Jazz, to make a pre-answer declaration on whether to rely on the advice of counsel. In *In re Buspirone Antitrust Litigation*, 208 F.R.D. 516 (S.D.N.Y. 2002), the plaintiffs did not move to compel on the issue until *after* the defendant had filed its answers. *See* Case No. 01-MD-01410 (S.D.N.Y.), D.I. 63-66 (answers), 76 (motion to compel). The court then set an election deadline that was several months after its answers were filed and after "dispositive motions ha[d] been *filed and decided*." *Buspirone*, 208 F.R.D. at 523 (emphasis added). In *LG.Philips LCD Co. v. Tatung Co.*, 243 F.R.D. 133 (D. Del. 2007), the plaintiffs moved to compel *years* after the defendants filed their answers—s*ee* Case No. 04-CV-343 (D. Del.), D.I. 26 (three years), 186 (two years)—and the court imposed an election deadline after the close of fact discovery. Similarly, in *Intervet, Inc. v. Merial Ltd.*, 256 F.R.D. 229 (D.D.C. 2009), the Court imposed an advice-of-counsel disclosure deadline nearly three years after the operative complaint was filed and after summary judgment motions were fully briefed. Case No. 06-CV-658 (D.D.C.), D.I. 197, 201. Finally, in *In re Actos Antitrust Litigation*, 628 F. Supp. 3d 524 (S.D.N.Y. 2022), the defendant did not decide to waive privilege until *eight months* after the motion to dismiss was decided. *Id.* at 531.

**Third**, contrary to Avadel's assertions, Jazz has not "indicated that it will rely on advice of counsel and waive privilege." D.I. 72 at 2. Instead, Jazz has told Avadel that it is *unlikely* that Jazz will rely on an advice-of-counsel defense. This case is therefore unlike *Buspirone*, where "the defendant ha[d] given a number of indications that it intend[ed] to rely on" factual assertions or corresponding defenses that would require a waiver of the attorney-client privilege, including its assertion of certain defenses in its answer. 208 F.R.D. at 522. And while Avadel apparently believes that Jazz will be obliged to waive privilege to defend itself, Jazz disagrees that it has to prove subjective good faith. Even if Jazz later chooses to raise a good faith defense, doing so would not require Jazz to rely on the advice of counsel. *See SmithKline Beecham Corp. v. Apotex Corp.*, 2005 WL 2436662, at *3 (E.D. Pa. Sept. 28, 2005) (antitrust defendant had "not automatically place[d] advice of counsel at issue" when asserting a good faith defense).

**Finally**, Avadel tries to justify its request that the Court force Jazz to make a formal declaration about the advice-of-counsel defense before Jazz has even had to answer by stating that not doing so "would potentially imperil the case schedule." D.I. 72 at 3. But this does not justify the unprecedented relief Avadel is seeking. As noted above, any problem is at least partly attributable to Avadel's decision to oppose Jazz's motion to stay discovery while the Court considers its motion to dismiss. In any event, courts that impose a deadline to invoke an advice-of-counsel defense typically do so at the *end* of discovery. *See, e.g.*, *In re WorldCom, Inc. Sec. Litig.*, 2004 WL 936320, at *1 (S.D.N.Y. May 3, 2004) (setting deadline five months after answer); *Plasmanet, Inc. v. Apax Partners, Inc.*, 2003 WL 21800981, at *3 (S.D.N.Y. Aug. 5, 2003) (considering advice-of-counsel dispute six months after answer was filed); *Flex Prods. Inc. v. BASF Corp.*, 1998 WL 425475, at *2 (E.D. Mich. May 12, 1998) (declining to address issue until last two weeks of discovery). Here, discovery does not close for five months, and no trial date has been set. Particularly where Jazz has made serious challenges to the sufficiency of Avadel's pleading, Jazz should be given the ability to see whether any of Avadel's claims survive the pleading stage before having to formally disclose what defenses it will advance.

---

at 1. The quote shows no such intent. Rather, when asked about LUMRYZ, Jazz's CEO stated that Jazz would not "comment on other people's products" and merely described the patent certification process at a high level. D.I. 54-1, Ex. C at 14.

Respectfully,

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)

JAT:lo
cc:    Clerk of the Court (via hand delivery)
       All Counsel of Record (via CM/ECF and e-mail)