IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAZZ PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-941 (GBW) |
| | ) | |
| AVADEL CNS PHARMACEUTICALS LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## JAZZ'S SUPPLEMENTAL MOTION TO STAY

Jazz respectfully submits this supplemental motion to stay because an important new development—specifically, the jury's finding that Avadel's LUMRYZ product infringes a valid Jazz patent (U.S. Patent No. 11,147,782, "the '782 patent")—provides further and strong support for Jazz's pending motion to stay these proceedings. D.I. 49, 50, 57.

Avadel's antitrust counterclaims allege that Jazz delayed the launch of Avadel's LUMRYZ product. Specifically, Avadel alleges that, if Jazz had not improperly listed a separate patent (U.S. Patent No. 8,731,963, "the '963 patent") in the FDA's Orange Book in 2014, then the FDA would have approved LUMRYZ in October 2021 and Avadel would have begun selling LUMRYZ by April 2022, before its actual launch date in June 2023. Jazz previously moved for a stay because materials publicly released by the FDA on its website revealed a regulatory barrier to the approval of LUMRYZ that had nothing to do with the '963 patent: The FDA had previously awarded orphan drug exclusivity ("ODE") to Jazz, and the FDA materials showed that Avadel was not able to overcome Jazz's ODE until May 1, 2023—months *after* Jazz took steps to delist the '963 patent from the Orange Book in February 2023. Jazz's motion to stay remains pending, and the reasons for a stay addressed therein remain valid.

Now another event supports this pending motion and, in fact, makes Avadel's inability to prove its counterclaims even more clear.  As noted, the jury recently found that Jazz's asserted claim 24 of the '782 patent is valid, and rejected all of Avadel's various attacks on this patent.  C.A. No. 21-691, D.I. 579 (jury verdict).  Avadel stipulated that LUMRYZ infringes that asserted claim.  C.A. No. 21-691, D.I. 550.  Under black-letter antitrust law, Avadel could not have ***legally*** entered the market with LUMRYZ in April 2022 because that entry would have infringed the claim of a valid patent.  Accordingly, Avadel lacks antitrust standing to bring its antitrust counterclaims.

Binding Third Circuit law holds that Avadel must prove that its hypothetical earlier launch of LUMRYZ "***would have been legal***" to sustain any antitrust claim alleging that Jazz delayed the launch of LUMRYZ.  *In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 165 (3d Cir. 2017) (emphasis added).  Given the jury's verdict, Avadel cannot prove this necessary element of its counterclaims, because Avadel's launch of LUMRYZ in April 2022 would have infringed a valid claim of the '782 patent.  Jazz's '782 patent is an independent "regulatory or legislative bar" to LUMRYZ's market entry that "break[s] the chain of causation" on which Avadel's antitrust counterclaims rest.  *Id.*  As a result, those counterclaims fail as a matter of law.

This development clearly justifies a stay.[1]  It makes no sense to force the parties to plow ahead with months of additional document, data, and written discovery, take more than 20 depositions of the parties' current and former employees (many of whom are now employed by disinterested non-parties), and engage in costly expert discovery, when Avadel's antitrust counterclaims cannot succeed unless it is able to overturn the jury's verdict.  Each relevant factor strongly favors staying this "sprawling, costly, and hugely time-consuming" antitrust case at least

---

[1]  For the avoidance of doubt, the only relief Jazz seeks in the present motion is to stay the case pending final resolution of the jury's verdict that claim 24 of the '782 patent is valid.

until Avadel's appeal of the jury's verdict is resolved.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59, 560 n.6 (2007) (collecting cases); *see also DSM IP Assets, B.V. v. Honeywell Int'l, Inc.*, 2024 WL 639991, at *5-6 (D. Del. Feb. 15, 2024) ("[A]ntitrust claims are notoriously complex and typically involve expensive discovery.").

Pursuant to District of Delaware Local Rule 7.1.1, Jazz asked Avadel to agree to stay discovery pending the resolution of any appeal of the jury's verdict.  Avadel refused.  Jazz also asked Avadel to identify a single case that holds that antitrust claims alleging delayed entry can move forward when earlier entry would have infringed a valid patent.  Avadel failed to identify a single case.  Avadel should not be able to force Jazz to spend millions of dollars to conduct burdensome discovery on claims that, if they were tried now, would be guaranteed to fail.  Rather, the sensible course of action at this point is to stay discovery at least until Avadel's appeal of the jury's verdict is resolved.

## **ARGUMENT**

As Jazz explained in its opening brief in support of its prior motion to stay (D.I. 50), courts consider three factors to determine whether a stay is appropriate:  (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage.  *See Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 2021 WL 616992, at *2 (D. Del. Feb. 17, 2021). The jury's verdict confirms that each of these factors favors a stay pending appeal.

### A.    **The Jury's Verdict Regarding The '782 Patent Resolved The Entire Case**

Granting a stay will greatly simplify the issues in this case because, if the jury's verdict stands, this case must end.  As noted, Avadel's counterclaims rely on the theory that Avadel would have brought LUMRYZ to market in April 2022 but-for Jazz's purported anticompetitive conduct.

A necessary premise of Avadel's counterclaims is that it could have ***legally*** entered the market in April 2022.  Avadel stipulated that LUMRYZ infringes on Jazz's asserted claim 24 of the '782 patent.  C.A. No. 21-691, D.I. 550.  Avadel's only hope, therefore, was to prove that the claim was invalid.  But that effort failed, as the jury upheld the validity of claim 24.  C.A. No. 21-691, D.I. 579.  Thus, any earlier launch of LUMRYZ would have been ***illegal***.

To have antitrust standing, "[i]t is not enough" that Avadel "wanted to launch its drug" at an earlier time; Avadel "***must also show that the launch would have been legal***." *Wellbutrin*, 868 F.3d at 165 (emphasis added).  Under *Wellbutrin*, Avadel cannot make this required showing.  The valid and infringed claim of the '782 patent is an independent "regulatory or legislative bar" against market entry that "break[s] the chain of causation in [this] antitrust case." *Id.*

The Third Circuit applied *Wellbutrin* in *Fresenius Kabi USA, LLC v. Par Sterile Products., LLC*, 841 F. App'x 399 (3d Cir. 2021).  There, the Third Circuit described *Wellbutrin* as "recogniz[ing] that when a product infringes a valid patent, that patent blocks the plaintiff's entry into the market and ***precludes a claim*** that the defendant's allegedly anticompetitive conduct caused the plaintiff's injury." *Fresenius*, 841 F. App'x 399, 403 (emphasis added) (citing *Wellbutrin*, 868 F.3d at 165).  Simply put, the jury's verdict regarding the '782 patent ***precludes*** Avadel's antitrust counterclaims and deprives Avadel of antitrust standing.  Numerous courts in other circuits have applied *Wellbutrin* to reach the same result.[2]

---

[2]  *See, e.g.*, *In re Nexium (Esomeprazole) Antitrust Litig.*, 842 F.3d 34, 63 (1st Cir. 2016) ("The district court thus did not err by requiring some evidence of the patents' invalidity or noninfringement before allowing the plaintiffs to pursue an at-risk launch theory."); *In re Androgel Antitrust Litig. (No. II)*, 2018 WL 2984873, at *13 (N.D. Ga. June 14, 2018) ("[I]f the patent was valid, any at-risk launch would have been unlawful if it infringed on the patent, and the law will not allow the Private Plaintiffs to use illegal behavior as a link in their chain of causation."); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2018 WL 563144, at *13 (D. Mass. Jan. 25, 2018) ("To succeed on an at-risk launch theory, Plaintiffs must show that Impax could have launched at-risk lawfully, i.e., without infringing any lawful patent held by Medicis.").

*Wellbutrin*'s black-letter rule flows from the fact that a valid patent confers upon the patent holder "the right to exclude others from profiting by the patented invention." 868 F.3d at 160 (quoting *Dawson Chem. Co. v. Rohm & Haas Co.*, 448 U.S. 176, 215 (1980)). Stated differently, "a lawfully acquired patent creates a monopoly that does not violate the antitrust laws." *Axis, S.p.A. v. Micafil, Inc.*, 870 F.2d 1105, 1111 (6th Cir. 1989). Because Jazz acquired the '782 patent lawfully, it is illegal for Avadel to enter the market with an infringing product, and it cannot accuse Jazz of monopolization. A legion of other authorities makes this clear as well.[3]

Avadel has not been able to identify a single case reaching a contrary position. Instead, in the parties' March 12 meet-and-confer and the Joint Post-Trial Status Report in the patent case, Avadel argued that its counterclaims can move forward notwithstanding the jury's verdict unless Jazz secures an injunction "prohibiting the launch." This argument is wrong, and unsupported by any authority. *Wellbutrin*'s holding that an antitrust plaintiff alleging delayed entry must prove that the earlier entry "would have been lawful" does not turn on the specific type of relief for infringement that the patent holder ultimately obtains. Rather, under *Wellbutrin*, Avadel must prove that it could have launched LUMRYZ in April 2022 "without running afoul" of Jazz's '782 patent. 868 F.3d at 169. Avadel cannot prove that now, because, in light of the jury's verdict,

---

[3]    *See, e.g.*, *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006) ("[T]he 'encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude.'" (quoting *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 599 (Fed. Cir. 1985))); *Apotex, Inc. v. Cephalon, Inc.*, 255 F. Supp. 3d 604, 613 (E.D. Pa. 2017) ("[A] plaintiff must demonstrate that a generic defendant's decision to launch at-risk would be 'lawful'—meaning that the brand company's patent is invalid or not infringed by the generic product launched at-risk . . . ."); *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 2010 WL 925864, at *2 n.10 (D. Del. Mar. 11, 2010) ("A patent gives a patent owner the right to exclude others from the marketplace for a statutory number of years" and is therefore "the very antithesis of a prime purpose of antitrust legislation."); *Hoffman-La Roche Inc. v. Genpharm Inc.*, 50 F. Supp. 2d 367, 378 (D.N.J. 1999) ("A patent grants a patentee a lawful monopoly over 'the invention described in the claims of his patent.'" (quoting *Motion Picture Patents Co. v. Universal Film Mfg. Co.*, 243 U.S. 502 (1917))).

Avadel's hypothetical earlier launch would have "run afoul" of claim 24 of the '782 patent, just as its actual launch did. As the district court decision in *Wellbutrin* explained, "an 'at risk' launch is unlawful absent a later finding of patent invalidity or non-infringement." *In re Wellbutrin XL Antitrust Litig.*, 133 F. Supp. 3d 734, 764-65 (E.D. Pa. 2015), *aff'd*, 868 F.3d 132.

Notably, in *Wellbutrin*, the Third Circuit determined that the plaintiffs lacked antitrust standing by looking at the patent holder's hypothetical chances of prevailing only on infringement, validity, and inequitable conduct. *Wellbutrin*, 868 F.3d 132, 169 & n.61.[4] The court did not consider the specific type of relief the patent holder might have obtained if it would have prevailed. *Id.* Here, Avadel stipulated to infringement, validity was determined in the jury's verdict, and Avadel is no longer pursuing its inequitable conduct claim in light of the jury's verdict. All three issues the *Wellbutrin* court considered in a hypothetical patent trial have been resolved in Jazz's favor in the real world.

There are many reasons why a party might prefer one remedy for illegal conduct (such as a reasonable royalty) over another (such as an injunction). But the ultimate remedy that Jazz decides to seek or ultimately obtains is irrelevant to the more fundamental, decisive point: whatever remedy is secured, it is a remedy for Avadel's ***illegal conduct***. Whether an adjudged infringer's antitrust case can proceed does not turn on the patent holder's choice of remedy. To hold otherwise would not only be contrary to black-letter law, but would also encourage patent holders to seek injunctive relief when they might not otherwise do so, solely to overcome baseless antitrust claims. This would be an unwarranted waste of judicial and party

---

[4]  The patent at issue in *Wellbutrin* was not an Orange Book listed patent and thus the patent holder would not have been entitled to the automatic injunctive relief provision in 35 U.S.C. § 271(e)(4).

resources.  Because Avadel could not have ***legally*** launched LUMRYZ in April 2022 in light of the '782 patent, its antitrust counterclaims cannot proceed.

An analogous case applying *Wellbutrin* is *In re Opana ER Antitrust Litigation*, 2021 WL 2291067 (N.D. Ill. June 4, 2021), where the court held that an expert's damages model could not take into account the profits associated with at-risk market entry because a court found that the at-risk entrant infringed valid patents.  2021 WL 2291067, at *10-11.  The court agreed with the defendants (citing *Wellbutrin*) that the plaintiffs' expert's model improperly "incorporate[d] 'illegal' conduct."  *Id.*  The court noted that although the at-risk entrant "was not acting in a criminal manner" by entering the market before patent validity was adjudicated, "the fact indisputably remains that the later acquired patents' validity is now settled."  *Id.*  Similarly, Avadel's counterclaims "incorporate[] 'illegal' conduct"—the sale of a product that infringes Jazz's valid patent.

A stay is therefore appropriate.  Indeed, courts in this District have often "stayed antitrust litigation where there was ***a possibility*** that the resolution of underlying patent claims could moot, narrow, or otherwise simplify the antitrust claims."  *Apotex, Inc. v. Senju Pharm. Co.*, 921 F. Supp. 2d 308, 314 (D. Del. 2013) (emphasis added) (collecting cases).  Such a stay is appropriate when patent litigation may yield a finding that an antitrust-plaintiff infringed a valid patent, and thus the antitrust-plaintiff "may not have an antitrust claim, because [its] product was lawfully prohibited from going on the market."  *Eagle Pharms., Inc. v. Eli Lilly & Co.*, 2018 WL 6201704, at *2 (D. Del. Nov. 27, 2018) (citing *Wellbutrin*, 868 F.3d at 151-52, 165).

Antitrust claims often fail because of insufficient evidence that, in a ***hypothetical*** patent trial, the alleged infringer "would have been more likely than not to prevail."  *See, e.g.*, *Wellbutrin*, 868 F.3d at 169.  But here, there is no need to speculate about a hypothetical patent trial because

the trial *actually happened*, and Avadel lost.  Avadel's antitrust counterclaims therefore fail as a matter of law.

By any measure, Avadel faces an uphill battle in overturning the jury's determination that claim 24 of the '782 patent is valid.  "Thus, the issues in the antitrust case will at least be narrowed, if not disposed of entirely, by the resolution of the patent case."  *Eagle Pharms.*, 2018 WL 6201704, at *2 (staying antitrust case pending resolution of patent case); accord *Apotex*, 921 F. Supp. 2d at 315-16 (same).  This factor, therefore, strongly weighs in favor of a stay.

**B.    Discovery Has Been On Pause For Weeks And Depositions Have Not Begun**

A stay will not be disruptive given the status of this case.  As noted, the parties *agreed* to stay discovery from January 22, 2024 to March 5, 2024, pending the conclusion of the patent trial.  D.I. 78.  Thus, this case has been on pause since January.  Although that stipulated stay is no longer in effect, nothing prevents Jazz from requesting an extension of the stay now that the jury's verdict clearly warrants it.

The parties are also at a logical point to stay further discovery.  While the parties had substantially completed document productions prior to the stay, no depositions have been noticed or taken.  Depositions are burdensome and expensive, and staying discovery before they begin in earnest makes sense.  Without a stay, the parties' deadline to complete fact discovery is June 20, 2024.  *Id.*  Proceeding with fact discovery would require the parties to spend millions of dollars preparing for and taking approximately two dozen depositions across the country over the next three months.  This likely unnecessary discovery would include depositions of numerous former employees of Jazz who are now employees of non-parties or have retired, and who have no interest in this matter, making Avadel's opposition to a stay even more unreasonable.  The parties would also need to rapidly spend resources on expert discovery, with initial expert disclosures and reports due on August 2, 2024.  *Id.*

This flurry of expense and activity is wholly unnecessary because Avadel lacks antitrust standing under black-letter law, and can resurrect this case only in the unlikely event that it overturns the jury's verdict. Thus, there is a high probability—indeed, an overwhelming likelihood—that, in the absence of a stay, the parties will spend untold millions of dollars "conducting discovery that will ultimately prove unnecessary." *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 2010 WL 925864, at *3 (D. Del. Mar. 11, 2010).

### C. A Stay Would Not Prejudice Avadel Or Present A Tactical Advantage To Jazz

In general, courts in this Circuit have found no "tactical advantage" or prejudice where, as here, a party seeks a stay in an antitrust action pending resolution of an appeal in a related patent litigation. *See Apotex*, 921 F. Supp. 2d at 316 n.15. The court in *Apotex* noted that the party requesting the stay had a "legitimate concern to minimize the potential burdens and expenses of complex antitrust litigation." *Id.* The same concern applies here. Jazz and Avadel are both on the precipice of undertaking a large slate of burdensome and expensive depositions and expert work, which are often the most costly and time-consuming parts of discovery. It makes no sense to spend significant resources litigating claims that, as of today, are impossible for Avadel to maintain. Nor would a stay put Avadel at risk of losing "substantial profits and goodwill on the market." *Eagle View Techs., Inc. v. Xactware Sols., Inc.*, 2016 WL 7165695, at *5 (D.N.J. Dec. 7, 2016). LUMRYZ has been on the market for almost a year (albeit infringing the '782 patent), and this stay would in no way affect Avadel's ability to continue marketing LUMRYZ. Avadel has agreed to stay this case for the last several weeks, and agreed to stay the trade secrets case.

### CONCLUSION

For these reasons, discovery in this matter should be stayed pending the resolution of post-trial briefing and the appeal, if any, of the jury's verdict finding claim 24 of the '782 patent valid.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

OF COUNSEL:

F. Dominic Cerrito
Steig D. Olson
Gabriel P. Brier
Frank C. Calvosa
Avi Grunfeld
Nicolas Siebert
Marissa Smith
Andrew Faisman
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000

William R. Sears
Lynette Lim
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA  90017
(213) 443-3000

March 13, 2024

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Plaintiff Jazz Pharmaceuticals, Inc.*

## **RULE 7.1.1 CERTIFICATE**

      I hereby certify that counsel for the parties, including Delaware and lead counsel, discussed

the subject of the foregoing motion and were unable to reach agreement.

                               */s/ Jeremy A. Tigan*

                               Jeremy A. Tigan (#5239)

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 13, 2024, upon the following in the manner indicated:

Daniel M. Silver, Esquire                                              *VIA ELECTRONIC MAIL*
Alexandra M. Joyce, Esquire
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
*Attorneys for Defendant*

Kenneth G. Schuler, Esquire                                           *VIA ELECTRONIC MAIL*
Marc N. Zubick, Esquire
Alex Grabowski, Esquire
Sarah W. Wang, Esquire
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
*Attorneys for Defendant*

Herman H. Yue, Esquire                                                *VIA ELECTRONIC MAIL*
Franco Benyamin, Esquire
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
*Attorneys for Defendant*

Audra Sawyer, Esquire                                                 *VIA ELECTRONIC MAIL*
Alan J. Devlin, Esquire
Ian Conner, Esquire
Anna M. Rathbun, Esquire
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
*Attorneys for Defendant*

Daralyn J. Durie, Esquire                                                    *VIA ELECTRONIC MAIL*
Eric P. Berger, Esquire
Rebecca E. Weires, Esquire
Tannyr Pasvantis, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Defendant*

Kira A. Davis, Esquire                                                        *VIA ELECTRONIC MAIL*
Henry Huttinger, Esquire
Katherine E. McNutt, Esquire
Rose S. Lee, Esquire
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
*Attorneys for Defendant*

David F. McGowan, Esquire                                          *VIA ELECTRONIC MAIL*
David F. Kowalski, Esquire
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, CA  92130
*Attorneys for Defendant*

Andrew T. Jones, Esquire                                              *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, D.C.  20037
*Attorneys for Defendant*

Stacy Cline Amin, Esquire                                            *VIA ELECTRONIC MAIL*
Haydn Forrest, Esquire
Alexander Okuliar, Esquire
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, D.C.  20037
*Attorneys for Defendant*

Matthew C. Hans, Esquire                                            *VIA ELECTRONIC MAIL*
POLSINELLI PC
100 S. Fourth Street, Suite 1000
St. Louis, MO  63102
*Attorneys for Defendant*

*/s/ Jeremy A. Tigan*
_____
Jeremy A. Tigan (#5239)

2