**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JAZZ PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 22-941-GBW |
| v. | ) | |
| | ) | |
| AVADEL CNS PHARMACEUTICALS, LLC, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**AVADEL CNS PHARMACEUTICALS, LLC'S OPPOSITION TO JAZZ
PHARMACEUTICALS, INC.'S SUPPLEMENTAL MOTION TO STAY**

# TABLE OF CONTENTS

**Page**

THE NATURE AND STAGE OF THE PROCEEDINGS................................................................1

SUMMARY OF ARGUMENT .........................................................................................................3

STATEMENT OF FACTS ................................................................................................................7

ARGUMENT .....................................................................................................................................8

I.  A STAY WILL NOT SIMPLIFY THE ISSUES BECAUSE AVADEL CLEARLY
    HAS ANTITRUST STANDING ...........................................................................................9

    A.  Jazz's Improper Patent Listing Resulted In Anticompetitive Harm To
        Avadel ........................................................................................................................9

    B.  Courts Recognize That Patent Infringement Does Not, In Itself, Deprive
        Market Participants Of Antitrust Injury..................................................................11

    C.  The Jury Verdict Does Not Deprive Avadel Of Antitrust Standing .......................14

    D.  Jazz's Claim That A Valid Patent Gives Jazz Antitrust Immunity
        Contradicts Long-Established Principles Of Antitrust Law ...................................17

II. THE STATUS OF THE LITIGATION COUNSELS AGAINST A STAY
    BECAUSE THE PARTIES HAVE NEARLY COMPLETED FACT DISCOVERY
    UNDER THE SCHEDULING ORDER THAT JAZZ ITSELF PROPOSED .................18

III. A STAY WOULD PREJUDICE AVADEL AND GRANT JAZZ A TACTICAL
     ADVANTAGE ......................................................................................................................19

CONCLUSION................................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Abbott Cardiovascular Sys., Inc. v. Edwards Lifesciences Corp.*,
No. 19-149, 2019 WL 2521305 (D. Del. June 6, 2019) ........................................14

*Anesta AG v. Mylan Pharms., Inc.*,
No. 08-889, 2014 WL 3976456 (D. Del. Aug. 14, 2014) ...................................6, 16

*Apple, Inc. v. Samsung Elecs. Co.*,
No. 12-630, 2018 WL 905943 (N.D. Cal. Feb. 15, 2013) .....................................15

*Arista Networks, Inc. v. Cisco Sys., Inc.*,
No. 16-00923, 2018 WL 11606358 (N.D. Cal. Feb. 14, 2018) ..............4, 11, 12, 18

*BASF Plant Sci. v. Commonwealth Sci. & Indus. Rsch. Org.*,
No. 17-503, 2019 WL 8108116 (E.D. Va. Dec. 23, 2019) .....................................15

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) .............................................................................................18

*Baxalta Inc. v. Genentech, Inc.*,
No. 17-509, 2018 WL 3742610 (D. Del. Aug. 7, 2018) .......................................14

*Bigelow v. RKO Radio Pictures, Inc.*,
327 U.S. 251 (1946) .............................................................................................18

*Broadcom Corp. v. Qualcomm Inc.*,
501 F.3d 297 (3d Cir. 2007).................................................................................17

*Cooper Notification, Inc. v. Twitter, Inc.*,
No. 09-865, 2010 WL 5149351 (D. Del. Dec. 13, 2010) .....................................19

*Danny Kresky Enters. Corp. v. Magid*,
716 F.2d 206 (3d Cir. 1983).............................................................................10, 18

*Dexon v. Cisco Sys., Inc.*,
No. 22-53, 2023 WL 9065490 (E.D. Tex. Dec. 8, 2023) ...................................4, 12

*Evans v. Yum Brands, Inc.*,
326 F. Supp. 2d 214 (D.N.H. 2004)........................................................................9

*FMC Corp. v. Summit Agro USA, LLC*,
No. 14-51, 2014 WL 3703629 (D. Del. July 21, 2014) ......................................9, 18

ME1 48000977v.1

*Fresenius Kabi USA, LLC v. Par Sterile Prod.*,
    LLC, 841 F. App'x 399 (3d Cir. 2021)........................................................................13

*FTC v. AbbVie, Inc.*,
    976 F.3d 327 (3d Cir. 2020)....................................................................................14

*Handgards, Inc. v. Ethicon, Inc.*,
    743 F.2d 1282 (9th Cir. 1984) ................................................................................10

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
    527 F. Supp. 2d 1084 (N.D. Cal. 2007) .................................................................10

*ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*,
    No. 12–054, 2013 WL 663535 (D. Del. Feb. 25, 2013) ........................................20

*In re Androgel Antitrust Litig. (No. II)*,
    No. 09-955, 2018 WL 2984873 (N.D. Ga. June 14, 2018).....................................13

*In re Gabapentin Patent Litig.*,
    649 F. Supp. 2d 340 (D.N.J. 2009) ...........................................................................4

*In re Neurontin Antitrust Litig.*,
    No. 1479, 2009 WL 2751029 (D.N.J. Aug. 28, 2009)...........................................11

*In re Nexium (Esomeprazole) Antitrust Litig.*,
    842 F.3d 34 (1st Cir. 2016) ....................................................................................13

*In re Opana ER Antitrust Litig.*,
    No. 14-10150, 2021 WL 2291067 (N.D. Ill. June 4, 2021)..............................13, 14

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
    No. 14-02503, 2018 WL 563144 (D. Mass. Jan. 25, 2018)....................................13

*In Re Suboxone Antitrust Litig.*,
    No. 2445, 2017 WL 4910673 (E.D. Pa. Oct. 30, 2017)..........................................10

*In re Thalomid & Revlimid Antitrust Litig.*,
    No. 14-6997, 2015 WL 9589217 (D.N.J. Oct. 29, 2015) .......................................11

*In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*,
    868 F.3d 132 (3d Cir. 2017)............................................................................. *passim*

*In re Zetia Antitrust Litig.*,
    655 F. Supp. 3d 406 (E.D. Va. 2023) ....................................................................12

*Innogenetics, N.V. v. Abbott Labs.*,
    512 F.3d 1363 (Fed. Cir. 2008).............................................................................14

iii

*Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC*,
  60 F.4th 1373 (Fed. Cir. 2023) ...................................................................................7

*Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC*,
  No. 21-1594 (D. Del. Mar. 15, 2023), D.I. 191 ..........................................................6

*Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC*,
  No. 21-691 (D. Del. Nov. 18, 2022), D.I. 232, *aff'd*, 60 F.4th 1373 (Fed. Cir.
  2023) ............................................................................................................................2

*Jazz Pharms., Inc. v. Roxane Labs., Inc.*,
  No. 10-6108 (D.N.J. Dec. 29, 2010), D.I. 10 ..............................................................7

*Kobe, Inc. v. Dempsey Pump Co.*,
  198 F.2d 416 (10th Cir. 1952) ...................................................................................18

*LEGO A/S v. ZURU Inc.*,
  799 F. App'x 823 (Fed. Cir. 2020) .......................................................................6, 15

*Memorex Corp. v. IBM*,
  555 F.2d 1379 (9th Cir. 1977) ..............................................................................5, 18

*Paice LLC v. Toyota Motor Corp.*,
  504 F.3d 1293 (Fed. Cir. 2007) .................................................................................15

*Perma Life Mufflers v. Int'l Parts Corp.*,
  392 U.S. 134 (1968), *overruled on other grounds by Copperweld Corp. v.
  Indep. Tube Corp.*, 467 U.S. 752 (1984) ....................................................................5

*Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n*,
  814 F.2d 358 (7th Cir. 1987) .....................................................................................10

*Rossi v. Std. Roofing, Inc.*,
  156 F.3d 452 (3d Cir. 1998).......................................................................................15

*Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*,
  758 F.2d 613 (Fed. Cir. 1985)....................................................................................14

*Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*,
  193 F. Supp. 3d 345 (D. Del. 2016)..............................................................................9

*United Food & Comm'l Workers Loc. 1776 v. Teikoku Pharma USA*,
  296 F. Supp. 3d 1142 (N.D. Cal. 2017) .....................................................................16

*United States v. Singer*,
  374 U.S. 174 (1963).....................................................................................................17

iv

*Value Drug Co. v. Takeda Pharms., U.S.A., Inc.*,
  No. 21-3500, 2022 WL 952896 (E.D. Pa. Mar. 30, 2022) ...................................................4, 13

*Voith Paper GMBH & Co. KG v. Johnsonfoils, Inc.*,
  No. 07-226, 2008 WL 874311 (D. Del. Mar. 31, 2008) ...........................................................9

*Westinghouse Air Brake Techs. Corp. v. Siemens Mobility, Inc.*,
  No. 17-1687, 2019 WL 126192 (D. Del. Jan. 8, 2019) ...........................................................9

*White Knuckle, IP, LLC v. Elec. Arts Inc.*,
  No. 15- 00036, 2015 WL 5022579 (D. Utah Aug. 24, 2015) ...................................................9

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
  395 U.S. 100 (1969) ...........................................................................................................10, 15

## RULES

Fed. R. Civ. P. 1 ...............................................................................................................20

## OTHER AUTHORITIES

Phillip E. Areeda & Herbert Hovenkamp, Fundamentals of Antitrust Law, §
  3.04(b) (rev. 4th ed. Supp. 2015) .............................................................................................17

ME1 48000977v.1

## THE NATURE AND STAGE OF THE PROCEEDINGS

Jazz's new motion to stay is yet another attempt to avoid accountability for unlawfully delaying competition from Avadel's superior, once-nightly oxybate drug by improperly maintaining the '963 patent listing in the Orange Book. After agreeing to a schedule under which document productions are now substantially complete and fact discovery closes in less than three months, Jazz now seeks a baseless, potentially years-long delay. Jazz's motion will not simplify any issue for trial—it is a thinly-veiled request that the Court rule on the *merits* of Avadel's antitrust claims in the guise of a discovery stay. Jazz's premature merits argument is also wrong: The jury verdict awarding a *de minimis* royalty to Jazz for infringement of the '782 patent cannot deprive Avadel of antitrust injury resulting from its market exclusion for more than a year due to Jazz's regulatory abuse using the '963 patent. Fact discovery is nearly complete and should proceed on the schedule agreed to by the parties and ordered by the Court. A potentially years-long stay would give Jazz a clear tactical advantage and prejudice Avadel by denying it the ability to secure a timely judgment and accountability for Jazz's unlawful conduct.

This litigation began on July 15, 2022, when Jazz sued Avadel for the second time claiming infringement of the '963 patent. Jazz brought this lawsuit for the sole purpose of protecting its monopoly by triggering an automatic stay of the FDA's ability to approve the New Drug Application ("NDA") for LUMRYZ. On October 21, 2022, Avadel filed antitrust counterclaims, alleging that Jazz had improperly listed in the Orange Book, and refused to delist, the '963 patent. D.I. 14. That unlawful patent listing delayed both the FDA's approval of LUMRYZ and, hence, competition from Avadel. Jazz's greed and unlawful manipulation of the Orange Book process delayed patients' access to Avadel's superior narcolepsy drug for more than a year.

On November 18, 2022—after the FTC had filed an amicus brief warning that improper patent listings can harm competition—this Court ordered Jazz to delist the '963 patent. Instead of

doing so, Jazz decided to appeal to the U.S. Court of Appeals for the Federal Circuit, which unanimously affirmed this Court's ruling on February 24, 2023. *Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC*, No. 21-691 (D. Del. Nov. 18, 2022), D.I. 232, *aff'd*, 60 F.4th 1373, 1376, 1379 (Fed. Cir. 2023). In this case, Jazz stipulated to the dismissal of its claim for infringement of its then-expired '963 patent on March 6, 2023. D.I. 32.

Jazz moved to dismiss Avadel's antitrust counterclaims on December 9, 2022. D.I. 21. It did not argue that Avadel had failed to plead sufficient facts with respect to any element of the relevant claims. Indeed, Jazz did not argue that Avadel had failed to allege facts plausibly showing that it suffered antitrust injury in light of Jazz's separate patent infringement claims pending before the Court. Avadel opposed Jazz's motion to dismiss, which remains pending before the Court.

Importantly, even though it had brought patent infringement claims against Avadel in two separate litigations before this Court, *Jazz did not move for a stay of the antitrust claims.* Instead, it proposed a discovery schedule to which Avadel agreed. On May 19, 2023, the Court entered Jazz's proposal as an order. D.I. 44.

Six months later, on June 29, 2023, Jazz filed a motion to stay discovery in this case and sought leave to file a supplemental motion to dismiss. D.I. 49. Jazz's argument was that, because a non-binding, internal FDA consultation letter from August 2021 tentatively stated that LUMRYZ was not clinically superior to Xywav (a view that the FDA did not adopt), Avadel somehow lacks antitrust injury. D.I. 50 at 9. Jazz did not argue that the antitrust case should be stayed pending the outcome of the patent trial. Avadel opposed Jazz's motion to stay, D.I. 54, which remains pending before the Court.

The parties substantially completed document discovery on December 22, 2023, and exchanged privilege logs in late January 2024. Because the patent case had been scheduled for

trial two weeks before the close of discovery in the antitrust case, Avadel and Jazz agreed to pause discovery for six weeks. The rationale was to avoid subjecting the companies' witnesses to depositions in the antitrust case immediately before, during, and after the patent trial. *See* Ex. 1, Email from K. Wu to A. Grunfeld (Jan. 16, 2024).[1]

On January 23, 2024, the parties filed a joint stipulation that provided for discovery to recommence on March 5, 2024, with fact discovery cut-off set for June 20, 2024. D.I. 78. As Jazz acknowledges, at no point did Jazz or Avadel tie the resumption of discovery to the result in the patent trial. *See, e.g.*, Ex. 2, Email from S. Olson to A. Devlin (Mar. 14, 2024) ("It is true that Jazz did not expressly spell out in the prior stay stipulation that a jury verdict in Jazz's favor would likely end Avadel's antitrust claims, but we considered that to be self-evident."); Ex. 3, Email from N. Siebert to K. Wu (Jan. 18, 2024). On January 24, 2024, the Court set a trial date for November 3, 2025. D.I. 79.

The patent trial concluded on March 4, 2024. The jury found that Jazz's '782 patent was valid and that Jazz was entitled to a small royalty. Per the parties' stipulation, discovery in the antitrust case resumed on March 5, 2024. *See* D.I. 78. Since then, Avadel has tried to schedule depositions, but Jazz has refused. *See* Ex. 2 at 5–6, 8–9.

Jazz has now moved to stay this case for a second time, potentially for years, pending "resolution of post-trial briefing and the appeal, if any, of the jury's verdict" in the patent case. D.I. 80-1. Jazz argues that infringement of a valid patent deprives the victim of anticompetitive conduct of antitrust injury as a matter of law, even absent an injunction. *See* D.I. 80 at 3–8.

## SUMMARY OF ARGUMENT

1.      The verdict in the patent case provides no basis for a stay in this antitrust action.

---

[1] The exhibits referenced herein are to those in the concurrently filed Declaration of Alan J. Devlin.

2.      Jazz's latest motion is predicated on the unsupported theory that it is "unlawful" for a competitor, in the absence of an injunction, to make infringing sales subject to paying reasonable royalties set by a court. That is not the law. *See, e.g.*, *Arista Networks, Inc. v. Cisco Sys., Inc.*, No. 16-00923, 2018 WL 11606358, at *7, 10 (N.D. Cal. Feb. 14, 2018) (observing that "a patent infringer may participate in the market so long as it pays damages assessed and future license fees *and it is not subject to an injunction*" and concluding that "patent infringement is not a defense against antitrust standing and injury" (emphasis added)); *see also Dexon v. Cisco Sys., Inc.*, No. 22-53, 2023 WL 9065490, at *8–9 (E.D. Tex. Dec. 8, 2023) (praising the *Arista* court's "well-reasoned analysis" that, in itself, "patent infringement is not a defense against antitrust standing and injury"), *report and recommendation adopted*, 2024 WL 38274 (E.D. Tex. Jan. 3, 2024). Absent Jazz's unlawful patent listing, Avadel would have entered and competed beginning in April 2022—subject to a small royalty consistent with the jury's verdict (assuming that verdict ultimately stands). Even after accounting for any such payment, Avadel obviously suffered "injury [that was] . . . caused . . . by the [unlawful patent listing]" rather than "by the patent laws prohibiting the launch." *Cf. In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 165 (3d Cir. 2017).

3.      Jazz's refusal to delist the '963 patent delayed competition from Avadel's superior drug, LUMRYZ, by over a year. By preserving its monopoly in this way, Jazz deprived thousands of narcolepsy patients of a life-changing, once-nightly drug. In doing so, Jazz inflicted antitrust injury on Avadel. *In re Gabapentin Patent Litig.*, 649 F. Supp. 2d 340, 355 (D.N.J. 2009) (when an incumbent "manipulate[s] the regulatory advantages afforded by its patents to prevent [ ] entry into the [ ] marketplace," such conduct "creates the type of anticompetitive effect that the antitrust laws were designed to prevent, and therefore constitutes antitrust injury"); *see also Value Drug*

*Co. v. Takeda Pharms., U.S.A., Inc.*, No. 21-3500, 2022 WL 952896, at *7 n.48 (E.D. Pa. Mar. 30, 2022) ("[W]hen a defendant has engaged in conduct to delay regulatory approval in some manner, antitrust injury is met.").

4.      Jazz's motion also would wreak procedural havoc on district courts. Jazz cites no case that entitles a litigant to a stay of discovery whenever it believes (in this case, wrongly) that it has a winning dispositive motion. Granting a stay in such circumstances would, among other things, subject district courts to a series of disruptive stay motions, in lieu of an orderly discovery process to be followed by dispositive motions, as envisioned by the Scheduling Order.

5.      Jazz's antitrust-standing theory also flies in the face of decades of established jurisprudence. Under Jazz's newly minted theory, technical acts of infringement would give patentees a get-out-of-jail-free card for the most egregious—even criminal—violations of antitrust law. *See infra* at 17–18. The Supreme Court long ago foreclosed this possibility, holding that any wrongdoing by an antitrust plaintiff is "not to be recognized as a defense" given the need to preserve "the usefulness of the private action as a bulwark of antitrust enforcement." *Perma Life Mufflers v. Int'l Parts Corp.*, 392 U.S. 134, 139–40 (1968), *overruled on other grounds by Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984); *accord Memorex Corp. v. IBM*, 555 F.2d 1379, 1382 (9th Cir. 1977) ("A wrongful act committed against one who violates the antitrust laws must not become a shield in the violator's hands against operation of the antitrust laws.").

6.      At best, Jazz would need to prove that, in a world in which it had not listed the '963 patent, Jazz would have successfully obtained an injunction using the '782 patent, completely blocking LUMRYZ from the market. *See Wellbutrin*, 868 F.3d at 146, 164–65 (no antitrust injury at summary judgment because "Andrx's blocking patent," as to which "Andrx [had] sought . . . an injunction against the sale of infringing products," would "have *prevented* market entry" (emphasis

added)). As the Third Circuit explained, "if the launch were *stopped*," then plaintiffs' "injury (if it could still be called that) would be caused not by the settlement but by the patent laws prohibiting the launch." *Id.* at 165 (emphasis added).

7.       But, empirically, the '782 patent *did not* block LUMRYZ's launch. *See* Stip & Proposed Or. Modifying Case Schedule at 2, *Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC*, No. 21-1594 (D. Del. Mar. 15, 2023), D.I. 191 (referring to "a representation from Jazz that it does not presently intend to seek a preliminary injunction enjoining sales of the accused product if approved by the FDA"). Moreover, Jazz has no realistic prospect of obtaining a permanent injunction and has made no showing otherwise in its stay motion. In the absence of an injunction, Avadel can lawfully sell LUMRYZ on terms set by the court. *See, e.g., LEGO A/S v. ZURU Inc.*, 799 F. App'x 823, 834 (Fed. Cir. 2020) ("[T]he result of not being enjoined necessarily entails allowing the alleged infringer to continue selling their accused products in every case."); *Anesta AG v. Mylan Pharms., Inc.*, No. 08-889, 2014 WL 3976456, at *2 (D. Del. Aug. 14, 2014) ("I agree with defendants that, although their launch was at risk, it was not illegal when it took place[.]"). Jazz acknowledges this in its motion, noting that a "stay would in no way affect Avadel's ability to continue marketing LUMRYZ." D.I. 80 at 9.

8.       Jazz's motion is the latest, unavailing effort to evade liability after having fought so hard to exclude LUMRYZ from the market. Jazz is not entitled to a discovery stay whenever it points to a fact that it believes absolves it of liability. Jazz has in effect already granted its own motion for a stay by refusing to schedule depositions. This Court should not permit Jazz to continue engaging in such self-help and gamesmanship.

## STATEMENT OF FACTS

This antitrust case stems from the playbook Jazz has used to successfully defend its oxybate monopoly for almost 20 years—improperly listing REMS patents in the Orange Book.[2] Jazz has known for a long time that this conduct is anticompetitive. In 2014, Jazz warned its investors that "the FTC or others could claim that our REMS or other practices are being used in an anticompetitive manner" and that three potential competitors had already "asserted that our patents covering the distribution system for Xyrem should not have been listed in the Orange Book, and that the Xyrem REMS is blocking competition." Ex. 5, Form 10-K (Jazz Dec. 31, 2014) at 33. Months later, Jazz nevertheless listed the '963 patent, which the Federal Circuit found was improperly listed because it "relates to Jazz's single-pharmacy distribution system" and not "an approved method of using the drug." *Jazz Pharms.*, 60 F.4th at 1376, 1379. Shortly after that listing, in an earnings call, Jazz's CEO bragged that Avadel would need to certify to Jazz's Orange Book-listed patent, and that, "yes[,] that would trigger a 30-month stay." Ex. 6, Q2 Earnings Call (Jazz Aug. 5, 2014) at 11.

On August 8, 2019, Avadel submitted a patent listing dispute regarding the '963 patent to the FDA. Jazz did not delist its '963 patent. On December 15, 2020, Avadel submitted an NDA for LUMRYZ. In doing so, Avadel included a patent statement explaining why it did not have to certify to the '963 patent listed in Orange Book. Throughout this entire period, Jazz had not yet obtained the '782 patent, which it now claims immunizes it from any liability for its past

---

[2] In 2010, Roxane Laboratories alleged that Jazz had "listed in the Orange Book [three patents] relating to [Jazz's] XYREM® drug product, thereby improperly serving to block or delay approval of Roxane's" competitive drug application. Ex. 4, Ans., Affirma. Defs., & Countercl. to Compl. at 11 ¶ 12, *Jazz Pharms., Inc. v. Roxane Labs., Inc.*, No. 10-6108 (D.N.J. Dec. 29, 2010), D.I. 10. Those patents, Roxane alleged, "must be removed from the Orange Book because these patents do not claim an approved indication or method of using the drug." *Id.* ¶ 9. Rather, they "attempt[ ] to cover, or claim some or all aspects of [Jazz's] REMS Program." *Id.* ¶ 11.

anticompetitive conduct. The PTO issued the '782 patent *after* the FDA's target date of October 15, 2021—the date by when the FDA would likely have approved the NDA for LUMRYZ but-for Jazz's refusal to delist the '963 patent.

Avadel filed its first delisting motion on July 23, 2021. It filed a renewed delisting motion on June 23, 2022. Jazz opposed both motions, refusing to delist the '963 patent.

On May 24, 2022, the FDA determined that Avadel had to certify to the '963 patent. Avadel did so under protest on June 6, 2022. Jazz filed this case on July 15, 2022, thus triggering an automatic stay. Three days later, the FDA tentatively approved the LUMRYZ NDA.

Mere weeks after Jazz was finally forced to delist the '963 patent, the FDA approved the NDA for LUMRYZ on May 1, 2023. Despite having every opportunity to file a preliminary injunction to try to stop the launch of LUMRYZ, including notice of Avadel's intention to begin making sales, Jazz elected not to do so. *See* Or. at 2–3, C.A. No. 21-691, D.I. 31 (Aug. 6, 2021) (scheduling order laying out procedures "to ensure that the Court has adequate time to consider and rule on any potential preliminary injunction motion, should such a need arise"); Stip. & Proposed Or., at 2–3, No. 21-691, D.I. 91 (Apr. 1, 2022) (stipulation providing that "Jazz will provide the Court with a status report regarding whether preliminary injunction proceedings may be necessary"); Stip. & Proposed Or. at 2, No. 21-691, D.I. 304 (Mar. 15, 2023) at 2 (reciting a "representation from Jazz that it does not presently intend to seek a preliminary injunction enjoining sales of [Lumryz] . . . if approved by the FDA").

Avadel launched LUMRYZ in the United States on June 5, 2023. By the end of January 2024, more than 2,200 patients had enrolled in Avadel's patient support services program and over 1,200 patients had initiated therapy using LUMRYZ.

## ARGUMENT

Decisions whether to stay a case pending the resolution of a motion to dismiss "are firmly

within the discretion of district courts." *Westinghouse Air Brake Techs. Corp. v. Siemens Mobility, Inc.*, No. 17-1687, 2019 WL 126192, at *1–2 (D. Del. Jan. 8, 2019) (denying motion to stay discovery pending resolution of a motion to dismiss antitrust counterclaims). Jazz bears the burden of showing that the equities favor granting a stay and that good cause supports its motion. *See id.* at *1; *Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*, 193 F. Supp. 3d 345, 353 (D. Del. 2016).

Courts typically evaluate three factors: (1) whether a stay would simplify the issues for trial; (2) the status of the litigation; and (3) whether a stay would unduly prejudice the non-movant or allow the movant to gain a clear tactical advantage. *See FMC Corp. v. Summit Agro USA, LLC*, No. 14-51, 2014 WL 3703629, at *2 (D. Del. July 21, 2014). Each factor warrants denying Jazz's motion.

## I. A STAY WILL NOT SIMPLIFY THE ISSUES BECAUSE AVADEL CLEARLY HAS ANTITRUST STANDING

Jazz's motion is a thinly-veiled request that the Court rule on the merits of Avadel's antitrust claims in the guise of a discovery stay. Jazz's motion therefore is facially improper. *Voith Paper GMBH & Co. KG v. Johnsonfoils, Inc.*, No. 07-226, 2008 WL 874311, at *2 (D. Del. Mar. 31, 2008) (denying stay and motion for leave to file early summary judgment motion pending PTO reexamination proceedings); *Evans v. Yum Brands, Inc.*, 326 F. Supp. 2d 214, 226 (D.N.H. 2004) ("A defendant's confidence that it will prevail on a dispositive motion does not in and of itself justify holding discovery in abeyance."); *White Knuckle, IP, LLC v. Elec. Arts Inc.*, No. 15- 00036, 2015 WL 5022579, at *2 (D. Utah Aug. 24, 2015) ("A party is not entitled to a stay by merely filing a dispositive motion and then claiming it is 'highly likely' the motion will be successful.").

### A. Jazz's Improper Patent Listing Resulted In Anticompetitive Harm To Avadel

Jazz's argument is also wrong on the law. Jazz's motion hinges on a single proposition, namely that the infringement and validity finding as to the '782 patent, unless overturned, deprives Avadel of antitrust injury. Because that premise is wrong, the Court should deny the motion.

In order to prove antitrust injury, Avadel need only show that it experienced *some* harm as a result of Jazz's anticompetitive patent listing. *See Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 114 n.9 (1969) ("Zenith's burden of proving the fact of damage under s 4 of the Clayton Act is satisfied by its proof of some damage flowing from the unlawful conspiracy; inquiry beyond this minimum point goes only to the amount and not the fact of damage."). "As the Supreme Court has stated in explaining its 'traditional rule excusing antitrust plaintiffs from an unduly rigorous standard of proving antitrust injury', 'it does not "come with very good grace" for the wrongdoer to insist upon specific and certain proof of the injury which it has itself inflicted.'" *Danny Kresky Enters. Corp. v. Magid*, 716 F.2d 206, 213 (3d Cir. 1983).

Avadel has plausibly alleged, and will present evidence showing, that Jazz's wrongful '963 patent listing delayed FDA approval and thus excluded Avadel's competitive LUMRYZ product from the market. These facts present a straightforward example of antitrust injury.[3] *See, e.g.*, *In Re Suboxone Antitrust Litig.*, No. 2445, 2017 WL 4910673, at *13 (E.D. Pa. Oct. 30, 2017) ("[W]here a complaint alleges that a defendant has attempted to delay FDA approval in some manner, courts have held that 'such conduct creates the anticompetitive effect that the antitrust laws were designed

---

[3] Avadel suffered other harms (many preceding the grant of the '782 patent) as a result of Jazz's improper patent listing, including attorneys' fees and costs associated with the patent-listing dispute that it filed with the FDA, '963-patent-related correspondence with the FDA about its 505(b)(2) NDA application, briefing two delisting motions in federal district court and on appeal to the Federal Circuit, and other costs that inflicted antitrust injury and that also necessitate denying Jazz's motion. *See Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n*, 814 F.2d 358, 371–73 (7th Cir. 1987); *Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1297–98 (9th Cir. 1984); *Hynix Semiconductor Inc. v. Rambus, Inc.*, 527 F. Supp. 2d 1084, 1088 (N.D. Cal. 2007).

10

to prevent, and therefore constitutes antitrust injury.'" (quoting *In re Neurontin Antitrust Litig.*, No. 1479, 2009 WL 2751029, at *13 (D.N.J. Aug. 28, 2009)); *In re Thalomid & Revlimid Antitrust Litig.*, No. 14-6997, 2015 WL 9589217, at *14 (D.N.J. Oct. 29, 2015) (allegations that "Celgene manipulated the FDA regulatory scheme, particularly the Hatch-Waxman Act, to 'block[ ] and delay[ ] . . . competition'" plausibly showed antitrust injury).

> **B.     Courts Recognize That Patent Infringement Does Not, In Itself, Deprive Market Participants Of Antitrust Injury**

Jazz's motion posits that, "[u]nder black-letter antitrust law, Avadel could not have legally entered the market with LUMRYZ in April 2022 because that entry would have infringed the claim of a valid patent." D.I. 80 at 2. That is wrong because Avadel was not (and would not have been) enjoined. Courts that have considered this specific question reject Jazz's position.

In *Arista*, Cisco faced antitrust claims that it had monopolized a market for high-speed Ethernet switches by deterring customers from buying Arista's products. Cisco pleaded an affirmative defense that Arista lacks antitrust standing on account of infringing eleven Cisco patents, several of which the ITC had found to be infringed. *Arista*, 2018 WL 11606358, at *1–2. Like Jazz, Cisco argued that "an antitrust plaintiff cannot show antitrust injury where its participation in the market is predicated on infringing the antitrust defendant's patents . . . because Cisco's patents legally excluded Arista from the market[.]" *Arista*, No. 16-923, 2017 WL 6941769, at 9–10 (N.D. Cal. Dec. 19, 2017) (mem.). Also like Jazz, Cisco argued that antitrust liability "would ignore the 'right to exclude' conferred by Cisco's patents and enable Arista to recover 'lost profits' to which it had no rights at all[.]" *Id.* at 14. Cisco further argued that "the sale of infringing products is not protected by the antitrust laws." *Id.* at 15.

In a detailed and carefully reasoned opinion, the Northern District of California rejected those arguments. *Arista*, 2018 WL 11606358. Judge Freeman distinguished Cisco's cases because,

like the ones that Jazz cites here, they "do not address the issue of whether a patent infringer who is actually participating in the market is precluded from bringing an antitrust suit." *Id.* at *9. The court explained that, "in the antitrust context, courts have referred to the patentee's 'right to exclude others' as a tool to lawfully threaten competition by enforcing the patent, but not as a tool that strips the infringing seller's status as a market participant." *Id.* at *7 (citation omitted). The court observed that "*a patent infringer may participate in the market so long as it pays damages assessed and future license fees and it is not subject to an injunction.*" *Id.* (emphasis added).

On that basis, the *Arista* court held that, in itself, "patent infringement is not a defense against antitrust standing and injury[.]" *Id.* at *10. As the court explained, "the public is best served by holding the antitrust defendant liable for engaging in anticompetitive conduct as well as subjecting the infringing plaintiff to its own penalties. The antitrust defendant can resort to available remedies to recover from the infringing plaintiff." *Id.* (citations omitted).

This *Arista* decision has been lauded for its "well-reasoned analysis" in holding that "patent infringement is not a defense against antitrust standing and injury." *Dexon*, 2023 WL 9065490, at *8–9. Similarly, in *In re Zetia Antitrust Litig.*, 655 F. Supp. 3d 406, 435 (E.D. Va. 2023), the court rejected the argument at summary judgment that a plaintiff is "precluded from establishing antitrust injury because [the incumbent manufacturer's] patent was valid and infringed," explaining that the fact that the incumbent "won its patent litigation" against the generic manufacturer did not "weigh on the question" of whether the plaintiff suffered an antitrust injury.[4] *Id.* (citation omitted).

_____

[4] These cases are, of course, consistent with *Wellbutrin*, where a patentholder in the underlying ANDA litigation had sought an injunction, and the record evidence showed that the injunction would have "prevented market entry." 868 F.3d at 165. That is the opposite of the facts here.

Jazz does not cite any of these cases. Instead, it focuses on decisions made at a different procedural posture (summary judgment) and that did not address the relevant question of whether an on-market plaintiff, which had been unlawfully delayed from launching its competitive product, suffers antitrust injury when it makes sales subject to any due payments that may be set by court and absent an injunction.[5] D.I. 80 at 4–7.

In none of Jazz's cited authorities did a party even raise this argument. Rather, with the exception of one case in which the patent court had enjoined infringement (thus making Avadel's point), those decisions arose in the context of past, hypothetical, or settled patent litigation as to which the courts lacked any reason to believe that infringing sales would not have been enjoined based on a fulsome discovery record. *See, e.g.*, *Wellbutrin*, 868 F.3d at 165 (holding in the context of past, settled litigation in which the patentee had sought an injunction that the plaintiff had failed to disprove that the infringed, valid patent at issue "would have prevented market entry" because "the launch [would have been] . . . stopped"); *Fresenius Kabi USA, LLC v. Par Sterile Prod.*, LLC, 841 F. App'x 399, 404 (3d Cir. 2021); *In re Nexium (Esomeprazole) Antitrust Litig.*, 842 F.3d 34, 63 (1st Cir. 2016); *In re Androgel Antitrust Litig. (No. II)*, No. 09-955, 2018 WL 2984873, at *13–14 (N.D. Ga. June 14, 2018); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-02503, 2018 WL 563144, at *13–20 (D. Mass. Jan. 25, 2018).

Jazz describes *Opana* as "analogous." D.I. 80 at 7 (citing *In re Opana ER Antitrust Litig.*, No. 14-10150, 2021 WL 2291067 (N.D. Ill. June 4, 2021)). But that case supports *Avadel's* position. There, in limiting plaintiffs' damages (as distinct from antitrust standing) with respect to infringing sales, the court held that plaintiffs' expert's damages model could not analyze the at-

---

[5] The summary judgment posture is important because issues regarding antitrust causation and injury "involve[ ] complex questions of fact [that are] ill-suited for resolution on a motion to dismiss." *Value Drug*, 2022 WL 952896, at *7 n.48 (internal quotation marks omitted).

risk sales of a third-party competitor's generic drug because, in underlying patent litigation between the third party and the incumbent manufacturer, the third party was "enjoined from selling its generic [drug] until the later acquired patents' expirations." *Id.* at *10–11.

Unlike the courts in *Wellbutrin*, *Fresinus Kabi*, *Nexium*, *Androgel*, and *Solodyn*, the Court need not make any "prediction" as to whether Avadel would have been enjoined from entering the market. Jazz declined to seek a preliminary injunction, and plainly did not "stop" the launch of LUMRYZ or "prevent" its market entry through enforcement of the '782 patent. Jazz has provided no reason to believe that it is likely to obtain a permanent injunction. Nor could it do so given the public interest in preserving thousands of oxybate patients' access to a superior drug and the fact that the jury set a royalty in order to adequately compensate Jazz for any infringement.[6]

### C.    The Jury Verdict Does Not Deprive Avadel Of Antitrust Standing

The preceding case law refutes Jazz's predicate assertion that Avadel lacks antitrust standing because infringing sales are necessarily "illegal." D.I. 80 at 4–7. And, of course, Jazz's argument ignores that infringers may lawfully compete in the absence of an injunction, whether under a compulsory or voluntary license. *See, e.g.*, *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1380–81 (Fed. Cir. 2008) (when a patentholder fails to obtain an injunction in a patent infringement lawsuit but secures a royalty, the infringer's "future sales [are] subject to . . . a compulsory license"); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 616,

---

[6] Indeed, the cases that Jazz points to involved generic drugs under ANDAs, not Section 505(b)(2) NDA drugs like LUMRYZ. That distinction is important because generic drugs are materially identical to incumbent drugs. *See FTC v. AbbVie, Inc.*, 976 F.3d 327, 339 (3d Cir. 2020). By contrast, the public interest weighs heavily against enjoining superior drugs such as Avadel's LUMRYZ, which was filed under the 505(b)(2) pathway. *See, e.g., Baxalta Inc. v. Genentech, Inc.*, No. 17-509, 2018 WL 3742610, at *12 (D. Del. Aug. 7, 2018); *see also Abbott Cardiovascular Sys., Inc. v. Edwards Lifesciences Corp.*, No. 19-149, 2019 WL 2521305, at *27 (D. Del. June 6, 2019) (explaining that "courts have refused to grant an injunction when doing so would eliminate 'an important alternative for patients'" and that both healthcare providers and patients "benefit[ ] from having different products with different features available").

628 (Fed. Cir. 1985) (rejecting challenge to "court-ordered 5% royalty for the compulsory patent license for continuing operations"); *see also Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1315 (Fed. Cir. 2007) (remanding to the district court to reevaluate the ongoing royalty rate imposed upon the parties after declining to issue injunction).

It is well settled that a company may lawfully make infringing sales on terms set by the court (or agreed to by the parties). *See, e.g.*, *LEGO*, 799 F. App'x at 834 ("[T]he result of not being enjoined necessarily entails *allowing* the alleged infringer to continue selling their accused products in every case." (emphasis added)); *BASF Plant Sci. v. Commonwealth Sci. & Indus. Rsch. Org.*, No. 17-503, 2019 WL 8108116, at *21 (E.D. Va. Dec. 23, 2019) (the court may "impose an ongoing royalty for the adjudged infringer to pay *in order to use* the infringing products" (emphasis added)); *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-630, 2018 WL 905943, at *3 (N.D. Cal. Feb. 15, 2013) ("An ongoing royalty *permits* an adjudged infringer to continue using a patented invention for a price." (emphasis added)).

Thus, even if the jury verdict in the patent case were upheld, Jazz's improper listing unlawfully denied Avadel the opportunity to sell LUMRYZ subject to, at most, payment of a small royalty consistent with the jury verdict. The remaining profit, which Jazz unlawfully prevented Avadel from obtaining, constitutes antitrust injury. At worst, Avadel's total damages will need to account for royalty payments that would have been due on sales during the period of unlawful exclusion—but such an accounting would "go[] only to the amount and not the fact of damage." *Zenith*, 395 U.S. at 114 n.9. Any ostensible need for such an accounting certainly does not deprive Avadel of antitrust injury. *See, e.g.*, *Rossi v. Std. Roofing, Inc.*, 156 F.3d 452, 485 (3d Cir. 1998) ("Rossi's inability to consummate those sales (leading to a loss of business and therefore injury)

is a direct result of the alleged antitrust violation . . . [and] supports Rossi's allegations that he suffered antitrust injury[.]").

In short, Jazz asserts that Avadel's "antitrust counterclaims cannot succeed unless it is able to overturn the jury's verdict," D.I. 80 at 2, but that claim ignores the relevant case law. Jazz declined to seek a preliminary injunction in the patent litigation to try to stop the launch of LUMRYZ—presumably because it was well aware that any such effort would fail.[7] *See* Stipulation at 2, C.A. No. 21-1594, D.I. 191. Because the '782 patent empirically did not stop the launch of LUMRYZ, the verdict is merely something for antitrust damages experts to consider for purposes of damages calculation. *Cf. United Food & Comm'l Workers Loc. 1776 v. Teikoku Pharma USA*, 296 F. Supp. 3d 1142, 1153 n.4 (N.D. Cal. 2017) (distinguishing "cases holding that plaintiffs cannot prove antitrust injury where an existing law or regulation would prevented the competition" because "Watson would have been expressly permitted by regulation to enter the market upon ANDA approval and because patent law does not require a competitor to obtain permission *before* entering the market, but instead allows the patentee to seek an injunction stopping that competition."); *Anesta*, 2014 WL 3976456, at *2 ("I agree with defendants that, although their launch was at risk, it was not illegal when it took place and, absent a directive from the Federal Circuit to recall their generic products, defendants had no legal obligation to do so."). Notably, Jazz has not even attempted to show in its motion that it is entitled to a permanent injunction.

Jazz's principal case, *Wellbutrin*, is in accord. There, the Third Circuit held that a "blocking patent" for which "an injunction against the sale of infringing products" had been sought meant that "the launch [would have been] . . . stopped," such that the plaintiffs' "injury . . . would be

---

[7] Jazz's request for a permanent injunction based on the '782 patent should be denied swiftly, at which point Jazz would lack any basis to sustain its factual claim that the '782 patent would have prevented the launch of LUMRYZ.

16

caused not by the settlement but by the patent laws prohibiting the launch." *Wellbutrin*, 868 F.3d at 146, 165. But here—judged by the terms of the patent verdict itself, Jazz's failure to seek a preliminary injunction, and the lack of any basis to believe that a permanent injunction will be issued—Avadel was clearly injured because its launch of LUMRYZ would not have been stopped by Jazz's ostensible patent rights. As the same passage of the antitrust treatise on which the Third Circuit relied makes clear, *id.* at 165 (quoting Phillip E. Areeda & Herbert Hovenkamp, Fundamentals of Antitrust Law, § 3.04(b) (rev. 4th ed. Supp. 2015)), a plaintiff loses antitrust injury only when "a force other than the antitrust violation *fully accounts* for the plaintiff's injury." Areeda, Fundamentals of Antitrust, § 338b (2023) (emphasis added). That is not the case here.

### D.  Jazz's Claim That A Valid Patent Gives Jazz Antitrust Immunity Contradicts Long-Established Principles Of Antitrust Law

Finally, Jazz's extreme position cannot be reconciled with basic principles of antitrust law. For example, competitors that pool their patents in order to assert them against a mutual rival commit a *per se* violation of the antitrust laws. *United States v. Singer*, 374 U.S. 174, 196–97 (1963). In Jazz's view, the competitor targeted by that conspiracy would lack antitrust injury if even a single claim of one of those patents were found to be valid and infringed. Similarly, the Third Circuit has held that "a patent holder's intentionally false promise to license essential proprietary technology on FRAND terms" to a standard-setting body, coupled with reliance and breach of promise, "is actionable anticompetitive conduct." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007). But if Jazz were correct, then every firm "locked in to a standard requiring the use of a competitor's patented technology" would lack antitrust injury when faced with the "patent holder's . . . demand [for] supracompetitive royalties." *Id.* That is plainly not the case, and is fatal to Jazz's suggestion that "Avadel's antitrust counterclaims cannot succeed unless it is able to overturn the jury's verdict." D.I. 80 at 2.

Similarly, it has long been the law that a company violates the antitrust laws by acquiring substitutable patents in order to create a patent-licensing monopoly and then suing its rivals using those illegally obtained, but otherwise presumably valid, patents. *Cf. Kobe, Inc. v. Dempsey Pump Co.*, 198 F.2d 416, 425 (10th Cir. 1952). But, again, Jazz's reading of the law would deny a claim to any competitor harmed by those illegal patent acquisitions.

In short, Jazz advocates for a get-out-of-jail-free card for antitrust violators, so long as they have a patent—and even if that patent would not itself preclude competition. This is not the law. *See, e.g.*, *Danny Kresky*, 716 F.2d at 213 ("Any other rule would enable the wrongdoer to profit by his wrongdoing at the expense of his victim. It would be an inducement to make wrongdoing so effective and complete in every case as to preclude any recovery." (quoting *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264 (1946))).

Ultimately, Jazz claims that infringement deprives a competitor of antitrust injury as a matter of law, regardless of the circumstances. That view defies common sense, is contrary to the relevant case law, and makes a mockery of the Supreme Court's holding that "the doctrine of *in pari delicto* . . . is not to be recognized as a defense to an antitrust action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 308 (1985). As the courts have explained, a "wrongful act committed against one who violates the antitrust laws must not become a shield in the violator's hands against operation of the antitrust laws." *Memorex*, 555 F.2d at 1382–83; *accord Arista*, 2018 WL 11606358, at *4–7.

## II.   THE STATUS OF THE LITIGATION COUNSELS AGAINST A STAY BECAUSE THE PARTIES HAVE NEARLY COMPLETED FACT DISCOVERY UNDER THE SCHEDULING ORDER THAT JAZZ ITSELF PROPOSED

Courts typically decline to order a stay where, as here, discovery is nearly complete. *FMC*, 2014 WL 3703629, at *4. Even where "[d]iscovery has just begun and will not be complete for another eleven months," the existence of a scheduling order and a firm trial date in place weighs

18

against granting a stay. *Cooper Notification, Inc. v. Twitter, Inc.*, No. 09-865, 2010 WL 5149351, at *3 (D. Del. Dec. 13, 2010).

It is perhaps no surprise that Jazz seeks a stay of this case right before its witnesses are deposed under oath about Jazz's unlawful conduct. But this is a singularly inopportune time to stay the antitrust case, which is less than three months from the close of fact discovery. The parties have substantially completed document productions, exchanged privilege logs, answered interrogatories (though, in Jazz's case, inadequately), and identified witnesses whom they intend to depose.[8] Indeed, both of Jazz's pending requests for a stay are premised on factual questions that require discovery to properly resolve (here, the nature and extent of antitrust injury).

Finally, Jazz tries to latch onto the now-expired, 6-week pause to which the parties agreed before the patent trial. D.I. 80 at 8. The rationale for that pause was limited to relieving both companies of the burden of depositions at the same time businesspeople were focused on the patent litigation or testifying in court. It has no bearing on Jazz's request for a stay now, save for the fact that at no point in negotiating the 6-week pause or in agreeing to the requisite stipulation did Jazz make recommencement of antitrust discovery contingent on the outcome of the patent case.

## III.   A STAY WOULD PREJUDICE AVADEL AND GRANT JAZZ A TACTICAL ADVANTAGE

Avadel has a compelling interest in promptly resolving its meritorious antitrust claims and proceeding to trial in October 2025. There can be little doubt that Jazz unlawfully delayed competition from Avadel's superior drug by improperly maintaining a bogus patent listing. As the

---

[8] The status of the litigation now stands in contrast to when Jazz first requested a stay in June 2023. Jazz had argued that the stage of the case then favored a stay because, among other factors, "the scheduling order was entered only last month . . . , the parties have invested relatively few resources in discovery[,] . . . [t]he parties have not finished negotiating the scope of their document productions, . . . and no trial date has been set." D.I. 50 at 10. None of these facts remains true.

Chair of the FTC observed in September, Jazz's '963 patent "had nothing to do with the drug itself or an approved method of using the drug," but Jazz used it to trigger a stay (by filing this case), "blocking Avadel from the market . . . In the intervening period, Jazz continued to rake in monopoly profits and patients were deprived of a potentially superior formulation of a critical narcolepsy drug." Ex. 7, Lina M. Khan, FTC Chair, Statement at the September Open Commission Meeting at 2 (Sept. 14, 2023), at 2.

Jazz's actions harmed Avadel, forcing the company to lay off half its workforce and delaying its ability to sell LUMRYZ to long-suffering patients. Avadel deserves to secure timely relief, including injunctive relief and just compensation. Fed. R. Civ. P. 1 (requiring "the just, *speedy*, and inexpensive determination of every action and proceeding." (emphasis added)). A stay in these circumstances, potentially for years, would obviously prejudice Avadel. The passage of time would also cause witnesses' memories to fade, depriving Avadel of relevant, informed testimony. Some witnesses have apparently already left employment at Jazz, making them more difficult for Avadel to depose. D.I. 80 at 8. This prejudice to Avadel would, of course, be Jazz's gain. In these circumstances, a stay on the terms sought by Jazz would clearly bestow on it an unfair, tactical advantage. *See ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, No. 12–054, 2013 WL 663535, at *6 (D. Del. Feb. 25, 2013) ("[C]ourts are generally reluctant to stay proceedings where the parties are direct competitors." (internal citation omitted)), *report and recommendation adopted*, 2013 WL 1743854 (D. Del. Apr. 22, 2013).

## CONCLUSION

For the foregoing reasons, the Court should deny Jazz's supplemental motion to stay.

MCCARTER & ENGLISH, LLP

Dated: March 27, 2024

/s/ *Daniel M. Silver*
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6331
dsilver@mccarter.com
ajoyce@mccarter.com

Kenneth G. Schuler
Marc N. Zubick
Sarah W. Wang
Alex Grabowski
LATHAM & WATKINS LLP
330 N. Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
kenneth.schuler@lw.com
marc.zubick@lw.com
sarah.wang@lw.com
alex.grabowski@lw.com

Herman Yue
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
Herman.Yue@lw.com

Ian R. Conner
Alan J. Devlin
Anna Rathbun
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Washington, D.C. 20004
(202) 637-2200
Ian.Conner@lw.com
Alan.Devlin@lw.com
Anna.Rathbun@lw.com

Daralyn J. Durie
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-6055
ddurie@mofo.com

Kira A. Davis
Katherine E. McNutt
W. Henry Huttinger
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5200
kiradavis@mofo.com
kmcnutt@mofo.com
hhuttinger@mofo.com

Alexander Okuliar
Haydn Forrest
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037, USA
(202) 887-1500
aokuliar@mofo.com
hforrest@mofo.com

*Attorneys for Defendant*

ME1 48000977v.1