IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAZZ PHARMACEUTICALS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 22-941 (GBW) |
| | ) |
| AVADEL CNS PHARMACEUTICALS, LLC, | ) |
| | ) |
| Defendant. | ) |

**JAZZ'S REPLY BRIEF IN SUPPORT OF ITS SUPPLEMENTAL MOTION TO STAY**

OF COUNSEL:

F. Dominic Cerrito
Steig D. Olson
Gabriel P. Brier
Frank C. Calvosa
Avi Grunfeld
Nicolas Siebert
Marissa Smith
Andrew Faisman
QUINN EMANUEL URQUHART
  &amp; SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

William R. Sears
Lynette Lim
QUINN EMANUEL URQUHART
  &amp; SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

April 2, 2024

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Plaintiff Jazz Pharmaceuticals, Inc.*

**TABLE OF CONTENTS**

**Page**

I. AVADEL'S ANTITRUST COUNTERCLAIMS CANNOT PROCEED UNLESS IT SOMEHOW OVERTURNS THE JURY'S VERDICT ................................................. 2

    A. Avadel Lacks Standing Under *Wellbutrin* If The Jury's Verdict Stands ................. 2

    B. Avadel's Own Cited Case Confirms Its Lack Of Antitrust Standing ...................... 5

II. ALL THE RELEVANT FACTORS FAVOR A STAY ....................................................... 8

    A. A Stay Would Greatly Simplify This Case ............................................................. 8

    B. The Status Of The Litigation Strongly Favors A Stay ............................................ 9

    C. A Stay Would Not Prejudice Avadel Or Present A Tactical Advantage To Jazz ................................................................................................................... 10

III. CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Androgel Antitrust Litig. (No. II)*,
  2018 WL 2984873 (N.D. Ga. June 14, 2018) .................................................................4

*Anesta AG v. Mylan Pharms., Inc.*,
  2014 WL 3976456 (D. Del. Aug. 14, 2014) ....................................................................5

*Apotex Inc. v. Cephalon, Inc.*,
  255 F. Supp. 3d 604 (E.D. Pa. 2017) ...............................................................................7

*Apotex, Inc. v. Senju Pharm. Co.*,
  921 F. Supp. 2d 308 (D. Del. 2013) ...........................................................................8, 10

*Arista Networks, Inc. v. Cisco Systems, Inc.*,
  2016 WL 4440245 (N.D. Cal. Aug. 23, 2016) .................................................................6

*Arista Networks, Inc. v. Cisco Systems, Inc.*,
  2018 WL 11606358 (N.D. Cal. Feb. 14, 2018) ...............................................1, 2, 5, 6

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985) .........................................................................................................7

*Broadcom Corp. v. Qualcomm Inc.*,
  501 F.3d 297 (3d Cir. 2007) .............................................................................................7

*CallWave Commc'ns, LLC v. AT & T Mobility, LLC*,
  2015 WL 1284203 (D. Del. Mar. 18, 2015) ....................................................................9

*City of Pittsburgh v. W. Penn Power Co.*,
  147 F.3d 256 (3d Cir. 1998) .............................................................................................8

*Danny Kresky Enters. Corp. v. Magid*,
  716 F.2d 206 (3d Cir. 1983) .....................................................................................2, 3, 7

*Eagle Pharms., Inc. v. Eli Lilly & Co.*,
  2018 WL 6201704 (D. Del. Nov. 27, 2018) ....................................................................8

*Evans v. Yum Brands, Inc.*,
  326 F. Supp. 2d 214 (D.N.H. 2004) .................................................................................8

*Fresenius Kabi USA, LLC v. Par Sterile Prods., LLC*,
  841 F. App'x 399 (3d Cir. 2021) .....................................................................................4

*In re Glumetza Antitrust Litig.*,
  2021 WL 1817092 (N.D. Cal. May 6, 2021) ...................................................................7

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
  2019 WL 3943058 (D. Del. Aug. 21, 2019) ................................................................. 9

*Kobe, Inc. v. Dempsey Pump Co.*,
  198 F.2d 416 (10th Cir. 1952) ..................................................................................... 7

*LEGO A/S v. ZURU Inc.*,
  799 F. App'x 823 (Fed. Cir. 2020) .............................................................................. 5

*Masimo Corp. v. Philips Elecs. N. Am. Corp.*,
  2010 WL 925864 (D. Del. Mar. 11, 2010) ................................................................ 10

*Memorex Corp. v. IBM*,
  555 F.2d 1379 (9th Cir. 1977) ..................................................................................... 7

*In re Opana ER Antitrust Litigation*,
  2021 WL 2291067 (N.D. Ill. June 4, 2021) .............................................................. 4, 5

*Paice LLC v. Toyota Motor Corp.*,
  504 F.3d 1293 (Fed. Cir. 2007) .................................................................................. 5

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.*,
  392 U.S. 134 (1968) .................................................................................................... 7

*In re Suboxone Antitrust Litig.*,
  2017 WL 4910673 (E.D. Pa. Oct. 30, 2017) ............................................................... 3

*In re Tamoxifen Citrate Antitrust Litig.*,
  466 F.3d 187 (2d Cir. 2006) .................................................................................... 2, 6

*In re Thalomid & Revlimid Antitrust Litig.*,
  2015 WL 9589217 (D.N.J. Oct. 29, 2015) .................................................................. 3

*TWM Mfg. Co. v. Dura Corp.*,
  789 F.2d 895 (Fed. Cir. 1986) ..................................................................................... 5

*United Food & Commercial Workers Local 1776 v. Teikoku Pharma USA*,
  296 F. Supp. 3d 1142 (N.D. Cal. 2017) ................................................................... 6, 7

*United States v. Singer Mfg. Co*,
  374 U.S. 174 (1963) .................................................................................................... 7

*Voith Paper GMBH & Co. KG v. Johnsonfoils, Inc.*,
  2008 WL 874311 (D. Del. Mar. 31, 2008) .................................................................. 8

*In re Wellbutrin XL Antitrust Litig.*,
  133 F. Supp. 3d 734 (E.D. Pa. 2015), *aff'd*, 868 F.3d 132 ........................................ 3

*In re Wellbutrin XL Antitrust Litigation Indirect Purchaser Class*,
  868 F.3d 132 (3d Cir. 2017) ...................................................................................1, 2, 3, 4, 7, 8

*White Knuckle, IP, LLC v. Elec. Arts Inc.*,
  2015 WL 5022579 (D. Utah Aug. 24, 2015) ..........................................................................9

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
  395 U.S. 100 (1969) ................................................................................................................2

*In re Zetia (Ezetimibe) Antitrust Litigation*,
  655 F. Supp. 3d 406 (E.D. Va. 2023) .....................................................................................7

**Statutes**

35 U.S.C. § 154 ...................................................................................................................................4

Avadel tries to resist a stay by arguing that the recent jury verdict upholding the validity of Jazz's '782 patent has no major impact on this antitrust case, but that is sheer fiction. The stark reality is that, as a matter of black-letter law, unless Avadel somehow overturns the jury's verdict, its antitrust claims cannot go forward because Avadel lacks antitrust standing. Indeed, Avadel's opposition brief confirms that there is not a single case that has allowed delayed-entry antitrust claims like Avadel's to proceed where, as here, the alleged earlier entry would have infringed the claims of a valid patent. Not one. Every court that has addressed this circumstance—including the Third Circuit in *In re Wellbutrin XL Antitrust Litigation Indirect Purchaser Class*, 868 F.3d 132 (3d Cir. 2017)—has held that such claims cannot proceed.

To avoid this result, Avadel argues that, even if the jury's verdict stands, Avadel could still have antitrust standing to bring its delayed-entry antitrust claims if Jazz cannot show that it would have been able to secure an injunction barring Avadel from making the infringing sales. That is also fiction. No court has adopted Avadel's "proof of injunction" requirement. Rather, under *Wellbutrin*, the sole dispositive question for antitrust standing is whether Avadel's alleged earlier entry ***would have been legal***. Avadel alleged that without Jazz's listing of the '963 patent in the Orange Book, it would have launched LUMRYZ by April 2022, rather than its actual launch date in June 2023. D.I. 14 ¶ 57. But, in light of the jury's verdict, Avadel's hypothetical earlier entry would not have been legal because it would have infringed Jazz's valid '782 patent.

Avadel claims that one case (an unpublished, out-of-circuit, district court case) has adopted its position—*Arista Networks, Inc. v. Cisco Systems, Inc.*, 2018 WL 11606358, (N.D. Cal. Feb. 14, 2018). But *Arista* was not a delayed-entry case. In fact, *Arista* specifically distinguished itself from delayed-entry cases. And, in the process, it stated with approval the very black-letter rule that dooms Avadel's claims here if the jury's verdict stands—a plaintiff lacks antitrust standing to

bring a delayed-entry claim where the allegedly delayed entrant "would not have been able to enter the market" with their own product "*without infringing*" a valid patent. *Id.* at *8 (quoting *In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 220 (2d Cir. 2006)).[1]  Thus, Avadel's lead case expressly rejects its argument.

Accordingly, the only reasonable path is to stay this case pending the resolution of Avadel's expected appeal of the jury's verdict, as that appeal could (and likely will) be decisive. This is also an appropriate time for a stay. The pleadings have not yet closed, Jazz's motions to dismiss remain pending, and the issues relevant to discovery are not fully defined. Meanwhile, the parties are at the precipice of highly burdensome and expensive deposition and expert discovery. A litany of cases have stayed discovery where related patent cases will provide clarity about whether the case can move forward, as the ongoing proceedings regarding the '782 patent certainly will here.

## I. AVADEL'S ANTITRUST COUNTERCLAIMS CANNOT PROCEED UNLESS IT SOMEHOW OVERTURNS THE JURY'S VERDICT

### A. Avadel Lacks Standing Under *Wellbutrin* If The Jury's Verdict Stands

Under *Wellbutrin*, to establish antitrust standing for its claims alleging that its earlier launch was delayed by Jazz's anticompetitive conduct, Avadel "***must [] show that the launch would have been legal***." 868 F.3d at 165. As *Wellbutrin* makes clear, Avadel cannot do this if the hypothetical earlier launch would have infringed a valid patent. *See id.* A valid and infringed patent—which the jury found Jazz has here—is an independent "regulatory or legislative bar" against lawful market entry that "break[s] the chain of causation." *Id.* No court has reached a contrary conclusion.[2]

---

[1]  All emphasis is added unless stated otherwise.

[2]  The generalized standing cases that Avadel cites (D.I. 82 at 10-11) did not face this issue and are not on point. *See Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 105 (1969) (no infringement found in underlying patent suit); *Danny Kresky Enters. Corp. v. Magid*, 716 F.2d

Avadel's assertion that *Wellbutrin* bars antitrust standing only if Jazz proves that it "would have successfully obtained an injunction using the '782 patent, completely blocking LUMRYZ from the market," distorts *Wellbutrin*. D.I. 82 at 5. *Wellbutrin* never states that its holding turns on the possibility of the patentholder securing an injunction stopping "at risk" entry, and it clearly does not. To the contrary, *Wellbutrin* assessed antitrust standing solely by looking at the patentholder's hypothetical chances of prevailing on infringement, validity, and inequitable conduct—without ***any*** consideration of whether it would have obtained an injunction. 868 F.3d at 169 & n.61.³ *Wellbutrin* squarely holds that a delayed-entry plaintiff lacks antitrust standing unless it could have launched earlier "***without running afoul***" of a valid patent. *Id.* at 166, 169. Similarly, as the district court in *Wellbutrin* explained, "***an 'at risk' launch is unlawful absent a later finding of patent invalidity or non-infringement***." *In re Wellbutrin XL Antitrust Litig.*, 133 F. Supp. 3d 734, 764-65 (E.D. Pa. 2015), *aff'd*, 868 F.3d 132.

As Jazz pointed out, a legion of cases applied *Wellbutrin* without requiring proof of an injunction. D.I. 80 at 4 & n.2. Avadel claims, without citation, that the courts in these cases "lacked any reason to believe that infringing sales would not have been enjoined." D.I. 82 at 13. In fact, the courts in these cases were silent on whether the patentholder would have obtained injunctive relief because the presence or absence of an injunction is irrelevant to the inquiry of whether a hypothetical earlier launch would have been legal. As Jazz explained (D.I. 80 at 4), the Third Circuit has stated that *Wellbutrin* "recognized that when a product infringes a valid patent,

---

206, 213 (3d Cir. 1983) (unrelated to patent law); *In re Suboxone Antitrust Litig.*, 2017 WL 4910673, at *2-4 (E.D. Pa. Oct. 30, 2017) (no indication that earlier entry would have infringed valid patent); *In re Thalomid & Revlimid Antitrust Litig.*, 2015 WL 9589217, at *13 & n.11 (D.N.J. Oct. 29, 2015) (no judicially noticeable finding of patent validity).

³ That the patentee in *Wellbutrin* merely ***sought*** an injunction (D.I. 82 at 5, 12 n.4, 13) is thus irrelevant. Notably, however, Jazz is seeking a permanent injunction in the patent case as well.

that patent blocks the plaintiff's entry into the market and ***precludes a claim*** that the defendant's allegedly anticompetitive conduct caused the plaintiff's injury." *Fresenius Kabi USA, LLC v. Par Sterile Prods., LLC*, 841 F. App'x 399, 403 (3d Cir. 2021). *Fresenius*, like *Wellbutrin*, does not contain any "proof of injunction" requirement.

Avadel also fails to distinguish *In re Opana ER Antitrust Litigation*, 2021 WL 2291067 (N.D. Ill. June 4, 2021), by noting its passing reference to an injunction in the underlying patent litigation. D.I. 82 at 13-14. *Opana*'s holding did not turn on that fact in any way. *Opana*'s reasoning turns solely on whether the allegedly delayed "launch would have been legal." 2021 WL 2291067, at *10 (quoting *Wellbutrin*, 868 F.3d at 165). The court explained that "the fact indisputably remains that the later acquired patents' validity is now settled," so "the patents were also valid while Actavis was selling its product 'at-risk.'" 2021 WL 2291067, at *11. Thus, the court barred the plaintiffs from "benefit[ting] from generic entrants who infringed on Endo's patents." *Id.*

As yet another court put it, *Wellbutrin* holds that "if the patent was valid, ***any at-risk launch would have been unlawful if it infringed on the patent***, and the law will not allow [antitrust plaintiffs] to use illegal behavior as a link in their chain of causation." *In re Androgel Antitrust Litig. (No. II)*, 2018 WL 2984873, at *13 (N.D. Ga. June 14, 2018). Many other examples abound and establish that, if the jury's verdict holds, Avadel lacks antitrust standing. *See* D.I. 80 at 4 n.2.

Avadel's argument that its hypothetical earlier launch of LUMRYZ would somehow have been legal because, so far, Avadel has only been ordered to pay Jazz damages, also defies basic patent-law principles. Patents confer a lawful right to "exclude others." 35 U.S.C. § 154. Infringement of a valid patent is illegal, whether or not it is enjoined. A damages award does not extinguish the infringement's illegality. As Avadel's own authority states, courts impose royalties

4

as damages "in light of the ***ongoing infringement***"—*i.e.*, Avadel must pay damages because its sales are illegal. *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1315 (Fed. Cir. 2007). Avadel's approach would run contrary to patent law by "mak[ing] an election to infringe a handy means for competitors to impose a 'compulsory license' policy upon every patent owner." *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 900 (Fed. Cir. 1986) (citation omitted).

None of Avadel's cases (D.I. 82 at 15-16) reach a contrary conclusion. In *LEGO A/S v. ZURU Inc.*, 799 F. App'x 823 (Fed. Cir. 2020), the court found that the accused infringer could continue selling its products prior to the parties' patent trial because, unlike here, there was no patent infringement verdict. *Id.* at 833-34. And in *Anesta AG v. Mylan Pharmaceuticals, Inc.*, 2014 WL 3976456 (D. Del. Aug. 14, 2014), the court ruled that the plaintiff's patent was invalid, so the defendant's product launched lawfully after that finding and before the Federal Circuit overturned the lower court's finding of invalidity. *Id.* at *1-2. In contrast, here, the '782 "patent['s] validity is now settled" (unless the jury's verdict is overturned), and thus Avadel's hypothetical earlier launch would have been "illegal." *Opana*, 2021 WL 2291067, at *10-11.

B. **Avadel's Own Cited Case Confirms Its Lack Of Antitrust Standing**

Avadel claims (D.I. 82 at 4, 11-12) that one case supports its view that it can bring delayed-entry antitrust claims even though its hypothetical earlier launch would have infringed the valid claims of the '782 patent: *Arista Networks, Inc. v. Cisco Systems, Inc.*, 2018 WL 11606358 (N.D. Cal. Feb. 14, 2018). *Arista* obviously cannot overrule *Wellbutrin*; it is an unpublished, district court case from another circuit. But, confirming just how meritless Avadel's position about the impact of the patent proceedings is, *Arista* is not even a delayed-entry case, and its discussion of delayed-entry cases reaffirms that Avadel's claims cannot proceed if the jury's verdict stands.

In *Arista*, the plaintiff (Arista) alleged that the defendant (Cisco) had misused its intellectual property in deceptive ways, including by encouraging and pressuring Arista and others

5

to adopt Cisco's technology, and then turning around and suing them for violating its intellectual property rights. 2017 WL 4933957 (N.D. Cal. Oct. 31, 2017) (Am. Compl.). *Arista* holds that the fact that Arista might have violated Cisco's intellectual property did not categorically bar Arista from bringing these particular antitrust claims about the deceptive misuse of that very intellectual property. *Arista*, 2018 WL 11606358, at *7. Such claims are, of course, nothing like those here (or in *Wellbutrin*). Avadel is not alleging that Jazz deceptively misused the '782 patent. Rather, that patent's validity is an ***independent*** bar from lawful market entry.[4]

Moreover, *Arista* expressly distinguished delayed-entry cases like this one. Citing the delayed-entry case *In re Tamoxifen Citrate Antitrust Litigation*, 466 F.3d 187 (2d Cir. 2006), *Arista* explained that in delayed-entry cases where the hypothetical earlier entry would have infringed a valid patent, "***there was no antitrust injury because '[earlier entrants] would not have been able to enter the market . . . without infringing the [] patent***.'" *Arista*, 2018 WL 11606358, at *8 (quoting *Tamoxifen*, 466 F.3d at 220). In other words, Avadel's lead case explains exactly why its claims cannot proceed in light of the jury's verdict, unless that verdict is overturned, and thus confirms that a stay is warranted. And *Arista* itself was stayed pending the resolution of a related patent infringement action because its outcome would "impact the scope and viability" of the "antitrust allegations." 2016 WL 4440245, at *3 (N.D. Cal. Aug. 23, 2016).

Another case cited by Avadel (D.I. 82 at 16) also confirms that *Arista* does not apply to delayed-entry cases. In *United Food & Commercial Workers Local 1776 v. Teikoku Pharma USA*, 296 F. Supp. 3d 1142 (N.D. Cal. 2017), the same court as *Arista* held that in a delayed-entry case, the plaintiff "must show 'some evidence' that [the generic] could have won at trial . . . or on

---

[4] Avadel's point (D.I. 82 at 7-8) that Jazz obtained the '782 patent after the FDA's target date of October 15, 2021 is irrelevant because Jazz obtained the patent before Avadel's alleged but-for launch date of April 2022.

appeal." *Id.* at 1155-56; *see also In re Glumetza Antitrust Litig.*, 2021 WL 1817092, at *13 (N.D. Cal. May 6, 2021) (agreeing with defendants that "[t]he clear import of *Nexium* and *Wellbutrin* is that a plaintiff must offer some evidence of non-infringement or patent invalidity in order to proceed on an at-risk launch theory of causation" (quoting *Apotex Inc. v. Cephalon, Inc.*, 255 F. Supp. 3d 604, 614 (E.D. Pa. 2017)).

*In re Zetia (Ezetimibe) Antitrust Litigation*, 655 F. Supp. 3d 406 (E.D. Va. 2023) also does not salvage Avadel's position. D.I. 82 at 12. The patent in that case did not defeat antitrust standing because it was not independent from the alleged anticompetitive conduct. Rather, the patent in question was allegedly used to facilitate a "reverse payment" settlement to artificially delay generic entry. 655 F. Supp. 3d 406 at 416, 434-35. Thus, *Zetia* does not contradict the black-letter rule that a valid patent that is ***independent*** from the alleged unlawful conduct—such as the '782 patent—is "a regulatory or legislative bar [that] can break the chain of causation in an antitrust case." *See Wellbutrin*, 868 F.3d at 165.

Avadel claims that Jazz "advocates for a get-out-of-jail-free card for antitrust violators, so long as they have a patent." D.I. 82 at 17-18. This is a strawman. *Wellbutrin* and its progeny simply hold that a plaintiff cannot complain that its entry was delayed when its earlier entry would have been unlawful. None of Avadel's cases implicate that uncontroversial holding.[5]

---

[5] *United States v. Singer Mfg. Co*, 374 U.S. 174, 196-97 (1963); *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007); and *Kobe, Inc. v. Dempsey Pump Co.*, 198 F.2d 416, 425 (10th Cir. 1952) are all inapposite because none involve delayed-entry claims. D.I. 82 at 17-18. Avadel also cites to *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 139-40 (1968); *Memorex Corp. v. IBM*, 555 F.2d 1379, 1382 (9th Cir. 1977); *Danny Kresky Enterprises Corp. v. Magid*, 716 F.2d 206, 213 (3d Cir. 1983); and *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 308 (1985) to suggest that Jazz's arguments fall under the doctrine of unclean hands or *in pari delicto*. D.I. 82 at 5, 18. Here, however, Jazz is not arguing that some generalized past wrong precludes Avadel's antitrust claims, but rather is arguing that Avadel's infringement of Jazz's valid patent breaks an essential link in the "chain of causation" and

7

## II.     ALL THE RELEVANT FACTORS FAVOR A STAY

### A.     A Stay Would Greatly Simplify This Case

Under the black-letter rule of *Wellbutrin*, it is undeniable that the patent proceedings, including Avadel's expected appeal of the jury's verdict, will have a major (and likely dispositive) impact on this antitrust case. Avadel argues that Jazz is prematurely arguing "the merits." D.I. 82 at 9. But the Court need not resolve the merits to recognize a stay is warranted. Rather, the point is that the outcome of Avadel's appeal of the jury's verdict will indisputably "moot, narrow, or otherwise simplify the antitrust claims." *Apotex, Inc. v. Senju Pharm. Co.*, 921 F. Supp. 2d 308, 314 (D. Del. 2013) (collecting cases). Even Avadel appears to agree that it will have no antitrust standing if Jazz obtains an injunction in the patent case—which Jazz is currently seeking. *See* D.I. 82 at 5-6.

Moreover, courts routinely stay antitrust cases when a related patent case implies that the plaintiff "may not have an antitrust claim, because [its] product was lawfully prohibited from going on the market." *Eagle Pharms., Inc. v. Eli Lilly & Co.,* 2018 WL 6201704, at *2 (D. Del. Nov. 27, 2018) (citing *Wellbutrin*, 868 F.3d at 151-52, 165). Jazz easily meets this standard. The cases Avadel cites in which the court did not grant a stay (D.I. 82 at 9) are not remotely comparable, as none involved facts bearing on antitrust standing that emerged while the case was still at the pleadings stage. *Voith Paper GMBH & Co. KG v. Johnsonfoils, Inc.*, 2008 WL 874311, at *2 (D. Del. Mar. 31, 2008) (denying stay because it would unduly prejudice victim of ongoing patent infringement); *Evans v. Yum Brands, Inc.*, 326 F. Supp. 2d 214, 226 (D.N.H. 2004) (denying stay where defendant's primary justification was to "await a decision on their planned summary

---

constitutes an independent "regulatory or legislative bar" to antitrust standing. *Wellbutrin*, 868 F.3d at 165; *see also City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 265 (3d Cir. 1998).

8

judgment motion"); *White Knuckle, IP, LLC v. Elec. Arts Inc.*, 2015 WL 5022579, at *2 (D. Utah Aug. 24, 2015) (denying stay where sole justification was defendant's pending motion for judgment on the pleadings).

### B. The Status Of The Litigation Strongly Favors A Stay

This case remains at the pleadings stage. Jazz still has not answered Avadel's antitrust counterclaims or asserted any affirmative defenses. Now, Avadel has lost the patent trial with respect to the infringement and validity of the '782 patent and is no longer pursing its inequitable conduct claim. Both parties also have motions pending before the Court that may significantly impact the scope of discovery when resolved, including Jazz's two motions to dismiss. "[T]he most burdensome stages of the cases—completing discovery, preparing expert reports, filing and responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future." *IOENGINE, LLC v. PayPal Holdings, Inc.*, 2019 WL 3943058, at *5 (D. Del. Aug. 21, 2019); *see also CallWave Commc'ns, LLC v. AT & T Mobility, LLC*, 2015 WL 1284203, at *1 (D. Del. Mar. 18, 2015) (finding status of litigation favored a stay where "few depositions ha[d] been taken and expert discovery ha[d] not yet begun").

The parties are at the precipice of significant fact and expert discovery deadlines, while trial is still 18 months away. The parties have so far identified 23 individuals for deposition, but not a single deposition has been noticed. The fact that the parties have participated in document discovery (D.I. 82 at 18-19), does not make it reasonable or efficient to plow ahead with up to 200 hours of fact depositions, with expert discovery immediately following that, all amounting to millions of dollars in discovery costs. Plunging into such burdensome discovery, even though the jury's verdict undermines Avadel's standing to bring its claims, would be baseless, illogical, and contrary to the "need to prevent [] parties from conducting discovery that will ultimately prove

9

unnecessary." *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 2010 WL 925864, at *3 (D. Del. Mar. 11, 2010).

Avadel's assertion that the parties did not previously agree to stay the case if Jazz prevailed in the patent trial is irrelevant. D.I. 82 at 19. Jazz was under no obligation to negotiate a stay in advance of the jury's verdict. Moreover, as Jazz explained in an email cited by Avadel (D.I. 82 at 3), Jazz thought it was self-evident that this case would have no reason to proceed if Jazz won the patent trial, because that outcome would, if upheld, deprive Avadel of antitrust standing as a matter of black-letter law.

### C. A Stay Would Not Prejudice Avadel Or Present A Tactical Advantage To Jazz

Avadel identifies no discernible prejudice it would suffer from a stay. Avadel's unsubstantiated concerns (D.I. 82 at 20) about fading recollections or vanishing witnesses do not establish prejudice. *See Apotex*, 921 F. Supp. 2d at 316. Jazz would likewise receive no tactical advantage from a stay: in the unlikely event that Avadel prevails on appeal, the parties will pick up this case where it left off, with neither side receiving any advantage.

### III. CONCLUSION

For these reasons and those set forth in Jazz's supplemental motion (D.I. 80), discovery in this matter should be stayed pending the resolution of post-trial briefing and the appeal, if any, of the jury's verdict finding claim 24 of the '782 patent valid.

|  |  |
|---|---|
| OF COUNSEL:<br><br>F. Dominic Cerrito<br>Steig D. Olson<br>Gabriel P. Brier<br>Frank C. Calvosa<br>Avi Grunfeld<br>Nicolas Siebert<br>Marissa Smith<br>Andrew Faisman<br>QUINN EMANUEL URQUHART<br>  & SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>(212) 849-7000<br><br>William R. Sears<br>Lynette Lim<br>QUINN EMANUEL URQUHART<br>  & SULLIVAN, LLP<br>865 S. Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>(213) 443-3000<br><br>April 2, 2024 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Jeremy A. Tigan*<br><br>Jack B. Blumenfeld (#1014)<br>Jeremy A. Tigan (#5239)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>jtigan@morrisnichols.com<br><br>*Attorneys for Plaintiff Jazz Pharmaceuticals, Inc.* |

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on April 2, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Daniel M. Silver, Esquire<br>Alexandra M. Joyce, Esquire<br>MCCARTER & ENGLISH, LLP<br>Renaissance Centre<br>405 N. King Street, 8th Floor<br>Wilmington, DE  19801<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Kenneth G. Schuler, Esquire<br>Marc N. Zubick, Esquire<br>Alex Grabowski, Esquire<br>Sarah W. Wang, Esquire<br>LATHAM & WATKINS LLP<br>330 North Wabash Avenue, Suite 2800<br>Chicago, IL  60611<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Herman H. Yue, Esquire<br>Franco Benyamin, Esquire<br>LATHAM & WATKINS LLP<br>1271 Avenue of the Americas<br>New York, NY  10020<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Audra Sawyer, Esquire<br>Alan J. Devlin, Esquire<br>Ian Conner, Esquire<br>Anna M. Rathbun, Esquire<br>LATHAM & WATKINS LLP<br>555 Eleventh Street, NW, Suite 1000<br>Washington, D.C.  20004-1304<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

| | |
|---|---|
| Daralyn J. Durie, Esquire<br>Eric P. Berger, Esquire<br>Rebecca E. Weires, Esquire<br>Tannyr Pasvantis, Esquire<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA  94105<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Kira A. Davis, Esquire<br>Henry Huttinger, Esquire<br>Katherine E. McNutt, Esquire<br>Rose S. Lee, Esquire<br>MORRISON & FOERSTER LLP<br>707 Wilshire Boulevard<br>Los Angeles, CA  90017<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| David F. McGowan, Esquire<br>David F. Kowalski, Esquire<br>MORRISON & FOERSTER LLP<br>12531 High Bluff Drive, Suite 100<br>San Diego, CA  92130<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Andrew T. Jones, Esquire<br>MORRISON & FOERSTER LLP<br>2100 L Street, NW, Suite 900<br>Washington, D.C.  20037<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Stacy Cline Amin, Esquire<br>Haydn Forrest, Esquire<br>Alexander Okuliar, Esquire<br>MORRISON & FOERSTER LLP<br>2100 L Street, NW, Suite 900<br>Washington, D.C.  20037<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |
| Matthew C. Hans, Esquire<br>POLSINELLI PC<br>100 S. Fourth Street, Suite 1000<br>St. Louis, MO  63102<br>*Attorneys for Defendant* | *VIA ELECTRONIC MAIL* |

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)