# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|   |   |   |
|---|---|---|
| JAZZ PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 22-941-GBW |
| v. | ) | |
| | ) | |
| AVADEL CNS PHARMACEUTICALS, LLC, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**AVADEL CNS PHARMACEUTICALS, LLC'S OPPOSITION TO JAZZ PHARMACEUTICALS, INC.'S MOTION FOR REARGUMENT OR, IN THE ALTERNATIVE, TO CERTIFY AN APPEAL UNDER 28 U.S.C. § 1292(b)**

**TABLE OF CONTENTS**

Page

INTRODUCTION ...............................................................................................................................1

ARGUMENT .....................................................................................................................................2

I.     JAZZ'S MOTION FOR REARGUMENT IS PROCEDURALLY IMPROPER ...............3

II.    JAZZ'S MOTION FOR REARGUMENT FAILS ON THE MERITS ..............................4

     A.     Jazz Fails To Identify Any Intervening Change In The Controlling Law ...............4

     B.     Jazz Has Not Identified Any New Evidence.............................................................5

     C.     The Court's Opinion Contains No Error Of Law Or Fact ........................................5

III.   THE COURT SHOULD NOT CERTIFY AN APPEAL TO THE THIRD CIRCUIT..............................................................................................................................10

CONCLUSION .................................................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Arbor Glob. Strategies LLC v. Xilinx, Inc.*,
  C.A. No. 19-1986, 2020 WL 6384205 (D. Del. Oct. 30, 2020) ........................................11, 12

*Arista Networks, Inc. v. Cisco Sys., Inc.*,
  C.A. No. 16-00923, 2018 WL 11606358 (N.D. Cal. Feb. 14, 2018)......................................10

*Baychar, Inc. v. Salomon N. Am.*,
  C.A. No. 04-136, 2006 WL 2061400 (D. Me. July 19, 2006) ................................................10

*Brader v. Allegheny Gen. Hosp.*,
  64 F.3d 869 (3d Cir. 1995)......................................................................................................13

*Brambles USA, Inc. v. Blocker*,
  735 F. Supp. 1239 (D. Del. 1990).............................................................................................5

*Cirba Inc. v. VMware, Inc.*,
  C.A. No. 19-742-GBW, 2023 WL 2428716 (D. Del. Mar. 9, 2023)....................................4, 5

*eBay Inc. v. MercExchange L.L.C.*,
  547 U.S. 388 (2006)............................................................................................................8, 12

*Ethicon, Inc. v. U.S. Surgical Corporation*,
  135 F.3d 1456 (Fed. Cir. 1998)................................................................................................9

*Holliday v. City of Elizabeth*,
  C.A. No. 13-1006, 2019 WL 325541 (D.N.J. Jan. 23, 2019) ..................................................6

*In re Fine Paper Antitrust Litig.*,
  685 F.2d 810 (3d Cir. 1982)......................................................................................................3

*In re Revlimid & Thalomid Purchaser Antitrust Litig.*,
  C.A. No. 19-7532, 2024 WL 2861865 (D.N.J. June 6, 2024) .............................................4, 5

*In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*,
  868 F.3d 132 (3d Cir. 2017)............................................................................................ passim

*Itron, Inc. v. Benghiat*,
  C.A. No. 99-501, 2003 WL 22037710 (D. Minn. Aug. 29, 2003) .........................................10

*Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC*,
  C.A. No. 21- 00691 (D. Del. Nov. 10, 2022), D.I. 222-3 .......................................................12

ii

ME1 48921969v.1

*King Instrument Corp. v. Otari Corp.*,
    814 F.2d 1560 (Fed. Cir. 1987)..................................................................................1, 9, 10

*Matter of Magic Rests., Inc.*,
    202 B.R. 24 (D. Del. 1996).................................................................................................12, 13

*Microsoft Mobile Inc. v. Interdigital, Inc.*,
    C.A. No. 15-723, 2016 WL 8302609 (D. Del. June 13, 2016)..........................................11, 14

*MobileMedia Ideas, LLC v. Apple Inc.*,
    966 F. Supp. 2d 433 (D. Del. 2013).......................................................................................3

*Polara Eng'g, Inc. v. Campbell Co.*,
    237 F. Supp. 3d 956 (C.D. Cal. Feb. 27, 2017), *vacated in part on other
    grounds*, 894 F.3d 1339 (Fed. Cir. 2018) .................................................................................10

*Transportes Aereos Pegaso, S.A. de C.V. v. Bell Helicopter Textron Inc.*,
    C.A. No. 08-959, 2009 WL 2059084 (D. Del. July 10, 2009)...............................................5, 6

*W.R. Grace & Co. Conn. v. Elysium Health, Inc.*,
    C.A. No. 20-1098, 2023 WL 6200280 (D. Del. Sept. 22, 2023) ..............................................4

*Webb v. Frawley*,
    906 F.3d 569 (7th Cir. 2018) ...............................................................................................13

*Wulah v. Equifax, Inc.*,
    C.A. No. 22-1187-GBW, 2022 WL 11110542 (D. Del. Oct. 19, 2022)...................................5

**STATUTES**

28 U.S.C.
    § 284................................................................................................................................9
    § 1292............................................................................................................................11, 14
    § 1292(b)...........................................................................................................................10

**RULES**

Fed. R. Civ. P. 59(e) ......................................................................................................................3

Local Rule
    7.1.2....................................................................................................................................3
    7.1.5..............................................................................................................................3, 4, 14

# INTRODUCTION

In a careful and detailed Opinion, the Court denied Jazz's motion to dismiss Avadel's antitrust counterclaims as well as Jazz's motion to file a supplemental brief and accompanying motion to stay. D.I. 94. Jazz does not dispute those final orders. Instead, it asks the Court to reconsider statements in the Opinion about an antitrust standing argument raised by Jazz in a separate supplemental stay motion—for which the Court specifically deferred a decision. *Id.* at 22. There is no final order for the Court to reconsider or certify. That alone defeats Jazz's motion.

Even if there were an order to reconsider or certify, Jazz provides no basis for the Court to do so. Jazz identifies no change in controlling law, no new evidence, and no error of law—let alone a clear one. The Court's reading and analysis of *In re Wellbutrin XL Antitrust Litigation Indirect Purchaser Class*, 868 F.3d 132 (3d Cir. 2017) were correct. The Third Circuit has never held that a competitor is barred from recovery when a monopolist with a patent excludes a new entrant by anticompetitive means and the competitor can demonstrate it would have been able to compete subject to payment of a reasonable royalty. Opinion at 20. Jazz mistakenly suggests the *Wellbutrin* court considered these facts. Not so. Based on the facts and parties' arguments in that case, the *Wellbutrin* court evaluated the impact of an injunction on antitrust standing. Nothing more. No party argued (much less demonstrated, as Avadel can and will) that an injured competitor has antitrust standing when a court would have denied an injunction and allowed the entrant to compete on payment of any due royalty.

Jazz now concedes that infringing sales under a court-awarded license are indeed lawful, and that a competitor illegally excluded from making such sales would have antitrust standing. In doing so, Jazz overlooks that, were the Court to deny its request for a permanent injunction, an award of royalties for Avadel's past and future sales would operate both retroactively and prospectively. *See King Instrument Corp. v. Otari Corp.*, 814 F.2d 1560, 1564 (Fed. Cir. 1987).

Jazz's concession not only demonstrates a lack of clear error; it reinforces that the Court's interpretation of *Wellbutrin* was exactly right. Jazz also concedes that antitrust injury would exist if Jazz and Avadel would have negotiated a voluntary license in the but-for world—one in which Jazz had not acted with the specific intent to monopolize the narcolepsy market by listing, and repeatedly refusing to delist, the '963 patent. Avadel is entitled to take discovery on that issue and to present evidence indicating that Jazz—lacking any product that practiced any claim of the '782 patent—rationally would have licensed Avadel in order to maximize profits in that but-for world.

Jazz's arguments based on *Wellbutrin* cannot, in any event, bring Avadel's antitrust counterclaims to a halt. In opposing Jazz's supplemental stay motion, Avadel pointed to detailed factual allegations in the counter-complaint showing that it suffered antitrust injury apart from its exclusion from the market, including attorneys' fees and costs in responding to the illegal '963 patent listing, and cited case law demonstrating antitrust injury on this basis. Jazz did not even respond to that argument in reply and has therefore waived any contrary argument. Jazz's extreme and misguided *Wellbutrin* argument, even if ultimately accepted, would therefore not "end the entire litigation" as Jazz claims.

Jazz's motion to certify an interlocutory appeal should also be denied because deferring ruling on a motion to stay is firmly within the Court's discretion and provides no basis for an immediate appeal. Indeed, the Court's analysis of *Wellbutrin* would not be controlling even if it were otherwise ripe for certification. That is because Avadel's antitrust counterclaims will proceed regardless of the outcome. Because there is no basis for reargument or interlocutory appeal, Jazz's motion should be denied.

## ARGUMENT

Rather than abide by the scheduling order (D.I. 88), Jazz has filed successive stay motions *every* time it conjures a new potential summary judgment theory (*see* D.I. 49, 80). That is improper

ME1 48921969v.1

and a waste of the Court's and parties' resources. Jazz should follow the scheduling order and file any dispositive motion in accordance with that scheduling order.

The Court rightly denied Jazz's first motion to stay based on a causation argument relating to orphan drug exclusivity. *See* Opinion at 14–17. The Court has yet to rule, however, on Jazz's supplemental motion for a stay. Jazz's present motions are procedurally improper and, in any event, fail under the standards governing requests for reconsideration and interlocutory appeal.

## I.    JAZZ'S MOTION FOR REARGUMENT IS PROCEDURALLY IMPROPER

"A motion for reargument under Local Rule 7.1.5 is the 'functional equivalent' of a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e)." *MobileMedia Ideas, LLC v. Apple Inc.*, 966 F. Supp. 2d 433, 437 (D. Del. 2013).

Jazz's motion does not seek to alter or amend any judgment or order. Indeed, the Court did not issue a substantive ruling on Jazz's supplemental motion to stay—the Opinion specifically "defer[red] ruling" on the supplemental stay motion. Opinion at 22. As such, Jazz's motion should be denied as procedurally improper.

Jazz's motion is thus essentially either a supplemental brief in support, or a premature motion for reconsideration, of the anticipated outcome of Jazz's presently unresolved stay motion. This makes no sense, as even Jazz appears to concede. See D.I. 100 at 3 n.1. Filing a motion for reargument at this juncture would properly be directed only at the Court's decision to defer resolution of Jazz's supplemental motion for a stay. But Jazz cites no authority for the notion that it can seek reconsideration of the Court's timing of a decision on a motion, and Avadel is aware of none. To the contrary, "matters of docket control . . . are committed to the sound discretion of the district court." *See In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982). Jazz's disguised supplemental brief in support of its stay motion is similarly ill-fated. *See* L.R. 7.1.2 ("Except for the citation of subsequent authorities, no additional papers shall be filed absent Court

3

approval."). The Court can deny the instant motion on these procedural grounds alone, and need not reach the merits of Jazz's arguments.

## II. JAZZ'S MOTION FOR REARGUMENT FAILS ON THE MERITS

Motions for reargument are granted "sparingly," L.R. 7.1.5, and "only if the Court has patently misunderstood a party, made a decision outside the adversarial issues presented by the parties, or made an error not of reasoning but of apprehension." *Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-GBW, 2023 WL 2428716, at *1 (D. Del. Mar. 9, 2023). The movant "must demonstrate one of the following: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *W.R. Grace & Co. Conn. v. Elysium Health, Inc.*, C.A. No. 20-1098, 2023 WL 6200280, at *1 (D. Del. Sept. 22, 2023) (alteration in original). None of these factors is present here.

### A. Jazz Fails To Identify Any Intervening Change In The Controlling Law

Jazz does not even attempt to demonstrate any "intervening change in the controlling law" since the Court commented on Jazz's supplemental motion to stay on May 24, 2024. Nor could it. Although Jazz argues—wrongly, as discussed below—that the Court misapplied *Wellbutrin*, that case was decided in 2017, and the Court carefully considered Jazz's arguments as to it. *Wellbutrin* therefore cannot constitute an "intervening change in the controlling law" for purposes of reargument. The same holds true for any other pre-May 24, 2024 cases that Jazz cites. *See Cirba*, 2023 WL 2428716, at *3 ("The availability of [a decision] before the Court ruled on the earlier motion means that [the decision] cannot be a change in the controlling law to support reconsideration." (internal quotation marks omitted)).

Nor can Jazz claim that *In re Revlimid & Thalomid Purchaser Antitrust Litig.*, C.A. No. 19-7532, 2024 WL 2861865 (D.N.J. June 6, 2024), constitutes an intervening change, as district

court opinions are not "controlling law." *Cirba*, 2023 WL 2428716, at *3. In any event, *Revlimid* falls in the same category of distinguishable cases that Jazz previously relied upon for its contention that no set of facts would allow a competitor to show antitrust injury if it were found to infringe a valid patent claim (absent, Jazz now concedes, a voluntary or court-ordered license).

These decisions involve prospective, pay-for-delay antitrust claims in which courts must consider the outcome of hypothetical patent infringement actions (e.g., cases that were settled on allegedly anticompetitive terms). Those cases do not answer the antitrust question here. Jazz now invites the Court to "rethink" its analysis, but that is not a basis for reargument. *Cirba*, 2023 WL 2428716, at *1. *Revlimid* is simply inapposite to the issues before this Court.

### B.     Jazz Has Not Identified Any New Evidence

Similarly, Jazz cannot show that any new evidence has emerged since May 24, 2024 that would justify reargument. Jazz's motion, at best, raises new arguments and recycles ones that it raised in its supplemental motion to stay on which the Court has deferred ruling. *See Transportes Aereos Pegaso, S.A. de C.V. v. Bell Helicopter Textron Inc.*, C.A. No. 08-959, 2009 WL 2059084, at *2 (D. Del. July 10, 2009) (rejecting arguments raised anew in moving for reargument); *Wulah v. Equifax, Inc.*, C.A. No. 22-1187-GBW, 2022 WL 11110542, at *1 (D. Del. Oct. 19, 2022) ("Motions for reargument or reconsideration may not be used 'as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided.'" (citation omitted)).

### C.     The Court's Opinion Contains No Error Of Law Or Fact

The gravamen of Jazz's motion is that the Court's views concerning Jazz's supplemental motion to stay purportedly misinterpret *Wellbutrin*. But that provides "no basis for reargument." *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1241 (D. Del. 1990) (rejecting the movant's claim that "the Court's interpretation and application of [another case] was incorrect" as providing

5

"no basis for reargument," and noting that the court had "thoroughly considered" any "distinctions between this case and [the other case]"); *see also Holliday v. City of Elizabeth*, C.A. No. 13-1006, 2019 WL 325541, at *3 (D.N.J. Jan. 23, 2019) (a party "will not prevail on a motion for reconsideration when [it] is simply requesting the Court reevaluate cases previously cited to the Court").

Jazz's motion boils down to semantic nitpicking of the Opinion, which correctly observed:

> [T]he plaintiff's only argument in *In re Wellbutrin* for why it would have been able to enter the market in spite of the alleged blocking patent at-issue in that case was that the patent at-issue in that case was invalid or not infringed. As such, the Third Circuit did not have the opportunity to address whether a plaintiff could show that a valid and infringed patent does not break the causal chain between the plaintiff's delayed market-entry and defendant's allegedly anticompetitive conduct by pleading that (1) no injunction would have issued for plaintiff's infringement of defendant's patent, and (2) the hypothetical damages award would not have prevented plaintiff's entry.

Opinion at 19 (citation omitted). The Court's careful parsing of *Wellbutrin* was correct.

Jazz maintains that the Third Circuit in *Wellbutrin* was presented with the same argument for antitrust standing that Avadel raises here. Not so. Jazz's criticism merely points to a handful of references to "injunctions" in the *Wellbutrin* plaintiffs' 128-page opening brief and 114-page reply. *See* D.I. 100 at 4–7. As a threshold matter, those assertions plainly amount to a new argument that Jazz failed to make in its several, prior filings in support of its motion for a stay, and this fact alone requires denial of its motion for reargument. *See Transportes Aereos*, 2009 WL 2059084, at *2 (motions for reconsideration "may not be used as a vehicle for presenting new arguments that could have been advanced earlier").

Regardless, the positions taken in the *Wellbutrin* appellate briefing show that this Court was correct. There, the parties treated injunctive relief as being synonymous with a finding of infringement of a valid patent—the former inevitably flowed from the latter. Nowhere did the plaintiffs argue that, in the event of a finding that a valid patent claim was infringed, the evidence

6

showed that the courts would have denied an injunction and allowed the competitor to enter and remain in the market. Those are the issues presented here, and Jazz has cited no case, including *Wellbutrin*, holding that the excluded competitor in this scenario lacks antitrust standing. Indeed, the few cases that have had occasion to address this point go against Jazz.[1] *See* D.I. 82 at 11–12.

It is impossible to read the briefing in *Wellbutrin* any other way. The plaintiffs treated it as a given that an injunction would follow if Andrx had won its patent litigation but-for the allegedly unlawful settlement. *See, e.g.*, Ex. A at 114, Appellants' Redacted Opening Br., *Wellbutrin*, No. 15-3559 (3d Cir. Aug. 25, 2016) (arguing that Andrx had "only a 35% chance of prevailing" in the patent litigation, and thus "could not have obtained an injunction against Anchen"); *id.* at 226–27, Appellants' Redacted Reply Br., *Wellbutrin*, No. 15-3559 (3d Cir. Aug. 25, 2016) (stating that, because "Andrx [had] a mere 35% chance of prevailing against Anchen" in the patent litigation, Andrx would have likely been unable to obtain an injunction).

The defendants likewise saw the likelihood of success in the hypothetical patent litigation as coextensive with the likelihood of an injunction. *See, e.g.*, Ex. B at 54, Appellees' Redacted Opening Br., *Wellbutrin*, No. 15-3559 (3d Cir. Aug. 25, 2016) (noting that "[t]he District Court was especially persuaded by the fact that Anchen faced an injunction risk from the separate patent infringement suit brought by Andrx" and that the plaintiffs "offered no evidence that Anchen would have won the *Andrx* case"); *id.* at 112 (stating that the plaintiffs did not "argue that the generic manufacturers could have succeeded in the *Andrx* litigation" and that, if the manufacturers did not succeed, an injunction would issue "remov[ing] [Anchen's product] from the market for

---

[1] This is not surprising because, on Jazz's distorted view of antitrust standing, a monopolist could engage in the most unthinkable, even criminal, conduct to exclude an entrant that the courts would allow to compete subject to a royalty. The Court was correct to observe that the Third Circuit was not presented with this question and thus lacked an opportunity to address it.

the remaining 15 years of the patent"); *id.* at 123 ("[T]he District Court stood on firm ground concluding that the Andrx patent constituted an independent regulatory bar to Anchen's launch and would have rendered an at risk launch unlawful, subjecting Anchen to . . . injunctive relief, including removal of the product from the market.").

The fact that the briefing made no distinction between the merits of the underlying patent litigation and issuance of an injunction explains why the Third Circuit in *Wellbutrin* observed that an injunction had been requested and then presumed for the remainder of its analysis that a finding of infringement would have "prevented market entry" or "stopped" the launch. *See Wellbutrin*, 868 F.3d at 146, 165. That reasoning only makes sense if, as the Third Circuit concluded consistently with the parties' briefing, an injunction would automatically follow an infringement finding. The court was simply not presented with the argument—or the facts—at issue here, i.e., that an injunction would *not* follow an infringement determination. The Court's analysis of *Wellbutrin* is therefore entirely correct, and Jazz's purported basis for a "clear error" is meritless.[2]

Jazz's position is further undermined by its continued insistence that "a patent confers a lawful monopoly," D.I. 100 at 7, suggesting that there can be no lawful competition if a party infringes a single, valid patent claim. In support of that contention, Jazz cites decisions that predate *eBay Inc. v. MercExchange L.L.C.*, 547 U.S. 388 (2006), where the Supreme Court held that patentees are **not automatically entitled** to injunctive relief on showing infringement of a valid patent. D.I. 100 at 7. Indeed, *eBay* rejected the argument that the statutory text of "the right to exclude others . . . justifies [a] general rule in favor of permanent injunctive relief." 547 U.S. at 392. *eBay* is critical because it establishes that one may not conclusively presume—as Jazz's

---

[2] Notably, *Wellbutrin* focused on the plaintiffs' burden to produce evidence establishing antitrust injury at the summary judgment stage. 868 F.3d at 163–65.

8

standing argument requires—that injunctive relief flows automatically from the infringement of a valid patent. This point underlies the Court's correct distinction between infringement of a valid patent (which may—or may not—result in an injunction) from "categorical restrictions" like bans on foreign drug importations. Opinion at 20. That reasoning hardly warrants reargument.

At trial, Avadel expects to be able to prove that the '782 patent is not a barrier to market entry because (1) at least some of Avadel's sales will not be subject (or ever have been subject) to any form of injunction—whether permanent or preliminary—and (2) given its lack of any once-nightly product practicing the '782 patent, Jazz would have voluntarily licensed Avadel in order to commercialize the '782 patent and maximize profits in a world in which Jazz did not improperly list the '963 patent in a scheme to monopolize the oxybate narcolepsy market. By contrast, in *Wellbutrin*, the Third Circuit was not presented with any argument from the parties (let alone evidence) that a valid, infringed patent would not have excluded competition.

Jazz notably concedes—for the first time—that Avadel may lawfully make competing sales if the Court denies a permanent injunction and instead awards an ongoing royalty. *See* D.I. 100 at 8–9. While it claims that such a ruling would have no retroactive effect (thus purportedly allowing Jazz to violate the antitrust laws in the period before a permanent injunction is decided), Jazz cites no supportive case law for that proposition.[3] Section 284 itself recites that a royalty for past sales is one "adequate to compensate for the infringement." 28 U.S.C. § 284. As the Federal Circuit noted in *King Instrument*, given satisfaction of an award of "damages as to the past infringing [] sales," a defendant "has received an implied license on those sales." 814 F.2d at 1564.

---

[3] Jazz cites *Ethicon, Inc. v. U.S. Surgical Corporation*, 135 F.3d 1456, 1467 (Fed. Cir. 1998) for the proposition that a "license to a third party only operates prospectively." D.I. 100 at 9 n.4. But *Ethicon* involved a voluntary license entered into by a patentee and a licensee—not a license set by a court after denying a permanent injunction.

Accordingly, when a court denies an injunction and instead awards a reasonable royalty, the court grants an implied license for both *past* and future infringing sales. *See, e.g., id.*; *Baychar, Inc. v. Salomon N. Am.*, C.A. No. 04-136, 2006 WL 2061400, at *6 (D. Me. July 19, 2006) ("[T]he law treats the payment of full compensation for past sales and use as transforming those sales and uses into licensed sales and uses."), *report and recommendation adopted*, 2006 WL 3209934 (D. Me. Nov. 6, 2006); *Itron, Inc. v. Benghiat*, C.A. No. 99-501, 2003 WL 22037710, at *14 (D. Minn. Aug. 29, 2003) ("By paying the damages that it owes in full, [the infringer] will receive an implied license on its past infringing sales."); *see also Polara Eng'g, Inc. v. Campbell Co.*, 237 F. Supp. 3d 956, 991 (C.D. Cal. Feb. 27, 2017), *vacated in part on other grounds*, 894 F.3d 1339 (Fed. Cir. 2018). Jazz's concession is therefore fatal to its standing argument if this Court denies a permanent injunction in the relevant market at issue.

Jazz cannot credibly deny that, if it had moved unsuccessfully for a preliminary injunction and then later lost a motion for a permanent injunction, all of Avadel's competing sales would have been on terms consistent with a court order or, to use Jazz's terminology, a "compulsory license." *See Arista Networks, Inc. v. Cisco Sys., Inc.*, C.A. No. 16-00923, 2018 WL 11606358, at *7, 10 (N.D. Cal. Feb. 14, 2018) (observing that "a patent infringer may participate in the market so long as it pays damages assessed and future license fees and it is not subject to an injunction" and concluding that "patent infringement is not a defense against antitrust standing and injury"). Jazz's election not to move for preliminary injunction only weakens its position.

Finally, in Jazz's view, any illegal foreclosure before that point would not be redressable under the antitrust laws. That cannot be, and is not, the law. *See* D.I. 82 at 11–18.

### III. THE COURT SHOULD NOT CERTIFY AN APPEAL TO THE THIRD CIRCUIT

Certification under Section 1292(b) requires "an ***order*** not otherwise appealable under this section." 28 U.S.C. § 1292(b). Jazz cites no order from which it could possibly seek such an appeal.

10

Instead, Jazz is simply displeased with the Court's indication that it will "*defer ruling* on Jazz's supplemental motion to stay at this time." Opinion at 22 (emphasis added). Jazz seeks immediately to appeal the Court's initial views *of a single cited case* as part of a larger Opinion in which the Court exercised its discretion to defer resolution of a motion to stay. Jazz's request for certification under Section 1292 is facially inadequate and should be denied.

In any event, certification is "meant to be used sparingly and only in exceptional cases where the interests cutting in favor of immediate appeal overcome the presumption against piecemeal litigation." *Microsoft Mobile Inc. v. Interdigital, Inc.*, C.A. No. 15-723, 2016 WL 8302609, at *1 (D. Del. June 13, 2016); *see Arbor Glob. Strategies LLC v. Xilinx, Inc.*, C.A. No. 19-1986, 2020 WL 6384205, at *1 (D. Del. Oct. 30, 2020) (holding that "exceptional circumstances" must exist to "justify a departure from the basic policy of postponing review until after the entry of final judgment").

The relevant factors governing this kind of motion compel its denial. A party seeking certification of an interlocutory appeal must demonstrate that "the order at issue (1) involves a controlling question of law upon which there is (2) substantial ground for a difference of opinion as to its correctness and (3) if appealed immediately may materially advance the ultimate termination of the litigation." *Arbor Glob. Strategies*, 2020 WL 6384205, at *1. Putting aside the lack of any "order at issue," none of these factors supports certifying an interlocutory appeal.

***First***, as explained above, the ostensible question at issue is ***not*** controlling. *See supra* at 4–5. Jazz keeps saying that its standing argument under *Wellbutrin*, if accepted, would "end the entire litigation" or "resolve[] the entire case," (D.I. 100 at 10, D.I. 80 at 3), but that is simply incorrect. Avadel suffered antitrust injury beyond harm from its delayed entry, including in the form of attorneys' fees and costs that flowed from Jazz's unlawful listing of, and refusal to delist,

11

the '963 patent. *See supra* at 2. Further, Jazz agrees that its argument would fail if discovery revealed that the parties would likely have negotiated a voluntary license in a world but-for Jazz's monopolistic scheme. *Id.* Discovery remains ongoing, and it makes no sense to certify a legal question that could be rendered moot in the coming months following fact and expert discovery. In short, it is simply not correct that this legal question "goes to whether Avadel can demonstrate a threshold element of its claims." D.I. 100 at 10.

***Second***, Jazz wrongly claims that "there are substantial grounds for a difference of opinion on this issue because this Court credited arguments the Third Circuit has rejected." *Id.* at 10. But positing an extreme and incorrect legal position—as Jazz does here—does not make it a close question or otherwise create "substantial grounds for a difference of opinion." No court has ever recognized that a patentee can freely violate the antitrust laws by excluding a competitor that otherwise could compete pursuant to a voluntary or implied license. Contrary to Jazz's loud protestations, there is no reason to think that the appellate court would endorse Jazz's extraordinary legal position, ignore the Supreme Court's holding in *eBay* that infringement of a valid patent does not automatically exclude competition, and grant patentees *carte blanche* to resort to any anticompetitive, illegal methods that they wanted in order to delay competition. *Cf.* FTC's Brief as Amicus Curiae, *Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC,* C.A. No. 21- 00691 (D. Del. Nov. 10, 2022), D.I. 222-3 (explaining how improper patent listings harm competition and consumers).

To the extent that Jazz claims that "this Court credited arguments the Third Circuit has rejected," that is clearly not correct. *See supra* at 5–10. The Court correctly observed that the Third Circuit in *Wellbutrin* was not presented with the questions at issue here. And a mere lack of controlling precedent is insufficient to warrant an interlocutory appeal. *See Matter of Magic Rests.,*

*Inc.*, 202 B.R. 24, 26 (D. Del. 1996) ("[A] scarcity or void of judicial opinion alone is insufficient to justify an interlocutory appeal.").

**Third**, Jazz provides no reason why interlocutory review would advance the resolution of this litigation. Its only argument is that a "determination that Avadel lacks antitrust standing will end the entire litigation." D.I. 100 at 10. But this case will continue even if Jazz were otherwise correct about the consequences of the '782 patent verdict under *Wellbutrin* (it is not).

For example, as Avadel alleged in its counterclaims (D.I. 14 ¶ 117) and pointed out in opposing Jazz's supplemental motion for a stay, "Avadel suffered other harms (many preceding the grant of the '782 patent) as a result of Jazz's improper patent listing, including attorneys' fees and costs associated with the patent-listing dispute that it filed with the FDA, '963-patent-related correspondence with the FDA about its 505(b)(2) NDA application, briefing two delisting motions in federal district court and on appeal to the Federal Circuit, and other costs that inflicted antitrust injury and also necessitate denying Jazz's motion." D.I. 82 at 10 n.3. In reply, Jazz said *nothing* on that score. D.I. 84. Having failed to respond to that aspect of Avadel's antitrust injury, Jazz has ceded the point and cannot now deny that Avadel may continue with its antitrust claims even if Jazz ultimately prevailed on its view of *Wellbutrin*. *See Webb v. Frawley*, 906 F.3d 569, 582 (7th Cir. 2018) (when a party in a reply brief fails to respond to an argument made in opposition, it "waive[s] any counterarguments [it] could have raised").

Moreover, Jazz concedes that Avadel would have antitrust standing if it could "show that it would have actually been in a position to secure a [voluntary] license . . . to lawfully practice the '782 patent by its April 2022 alleged but-for launch date." D.I. 100 at 8. Avadel is entitled to discovery on that point, and the Court should not accept Jazz's invitation to err by deferring to Jazz's say-so on this genuine dispute of material fact. *See Brader v. Allegheny Gen. Hosp.*, 64 F.3d

13

869, 876–77 (3d Cir. 1995) ("The existence of antitrust injury is not typically resolved through motions to dismiss," but rather "after discovery, either on summary judgment or after trial.").

In short, certifying Jazz's requested legal question would create two parallel litigations within this one case, complicating and potentially delaying its final resolution, while exacerbating the parties' legal costs. That is precisely why certification of legal questions for interlocutory review is reserved for "exceptional" circumstances of the kind that are conspicuously absent here. "Piecemeal litigation" is, after all, inherently inefficient. *Microsoft*, 2016 WL 8302609, at *1.

The Court should deny Jazz's motion in the alternative to certify an interlocutory appeal.

## CONCLUSION

For the foregoing reasons, the Court should deny Jazz's motion for reargument or, in the alternative, to certify an appeal.[4]

---

[4] For the avoidance of doubt, this combined opposition responds to two, combined motions filed by Jazz (one for reargument and another, raised in the alternative, to certify an appeal under 28 U.S.C. § 1292). This combined opposition complies with Local Rule 7.1.5, as no more than ten (10) pages of it are devoted to opposing Jazz's motion for reargument.

| | |
|---|---|
| Dated: June 28, 2024 | Respectfully submitted, |
| | |
| Kenneth G. Schuler | MCCARTER & ENGLISH, LLP |
| Marc N. Zubick | |
| Sarah W. Wang | /s/ *Daniel M. Silver* |
| Alex Grabowski | Daniel M. Silver (#4758) |
| LATHAM & WATKINS LLP | Alexandra M. Joyce (#6423) |
| 330 N. Wabash Avenue, Suite 2800 | 405 N. King Street, 8th Floor |
| Chicago, IL 60611 | Wilmington, DE 19801 |
| Telephone: (312) 876-7700 | (302) 984-6331 |
| kenneth.schuler@lw.com | dsilver@mccarter.com |
| marc.zubick@lw.com | ajoyce@mccarter.com |
| sarah.wang@lw.com | |
| alex.grabowski@lw.com | *Attorneys for Defendant* |

Herman Yue
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
Herman.Yue@lw.com

Ian R. Conner
Alan J. Devlin
Anna Rathbun
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Washington, D.C. 20004
(202) 637-2200
Ian.Conner@lw.com
Alan.Devlin@lw.com
Anna.Rathbun@lw.com

Daralyn J. Durie
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-6055
ddurie@mofo.com

ME1 48921969v.1

Kira A. Davis
Katherine E. McNutt
W. Henry Huttinger
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5200
kiradavis@mofo.com
kmcnutt@mofo.com
hhuttinger@mofo.com

Alexander Okuliar
Haydn Forrest
Morrison & Foerster LLP
2100 L Street, NW Suite 900
Washington, DC 20037, USA
(202) 887-1500
aokuliar@mofo.com
hforrest@mofo.com

16