**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JAZZ PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 22-941-GBW |
| v. | ) | |
| | ) | PUBLIC VERSION |
| AVADEL CNS PHARMACEUTICALS, LLC, | ) | FILED SEPTEMBER 24, 2024 |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**AVADEL CNS PHARMACEUTICALS, LLC'S LETTER TO THE HONORABLE**
**GREGORY B. WILLIAMS REGARDING DISCOVERY DISPUTE**

Dear Judge Williams:

Pursuant to the Court's September 13, 2024 Oral Order (D.I. 155), Avadel CNS Pharmaceuticals, LLC ("Avadel") respectfully requests an order compelling Jazz Pharmaceuticals, Inc. ("Jazz") to produce a limited set of documents relating to the effects of the June 2023 launch of LUMRYZ on Jazz.

## I.  Introduction

In June 2023, Avadel launched LUMRYZ, and Jazz finally faced competition from the once-nightly sodium oxybate narcolepsy treatment it spent so many years trying to keep off of the market.  Both parties seek documents post-dating Avadel's launch of LUMRYZ, but disagree on the scope of supplemental discovery at this advanced stage of proceedings.  Avadel has already produced Quarterly Business Review documents from October 2023 through July 2024 that provide information regarding LUMRYZ's performance post-launch.  Avadel has repeatedly proposed a reciprocal production of targeted post-launch documents ("go-gets") that are relevant and minimally burdensome to collect from Jazz.  Jazz's post-launch documents are relevant to show the impact of LUMYRZ's launch on Jazz's strategic decisions, pricing and discounts, and market share.  Avadel's request is also consistent with the proportionality standard under the Federal Rules of Civil Procedure and the discovery schedule set by this Court.

Jazz rejected Avadel's proposal, insisting that its own documents relating to LUMRYZ's entry are not relevant at all.  Incredibly, however, Jazz is taking the irreconcilable position that the event requires Avadel to conduct an extensive forensic collection, processing, review, and production of documents from five custodians using broad search terms, less than two weeks before the close of fact discovery on September 27, 2024.  (D.I. 88.)  Moreover, Jazz refuses *any* reciprocal custodial production and refuses to even commit to producing the narrow, undeniably relevant "go-get" documents that Avadel has proposed.  Avadel respectfully submits that what is good for the goose is good for the gander, and that Jazz should also supplement its production with highly relevant and easily obtainable presentations, forecasts, and strategy documents.

## II.  Background

On July 19, 2024, Jazz requested that Avadel supplement its production to include documents "on the effect of authorized generic and multi-source generic competition on Avadel's pricing for LUMRYZ and Avadel's sales of LUMRYZ." Ex. 1 at 1.  During the parties' August 13, 2024 meet and confer, Avadel proposed a reciprocal production of post-launch documents, including forecasts and sales, volume, and pricing information.  On August 30, 2024, Jazz demanded a full custodial production of post-launch documents from five Avadel custodians, responsive to *all* of Jazz's RFPs served to date.[1]  On September 9, Avadel proposed that the parties make a reciprocal production of "go-get" documents post-dating the launch of LUMRYZ.  Ex. 2 at 3-4.  Considering the status of the case, Avadel limited its request to materials presented to Jazz's Executive Committee, Board of Directors, or other senior employees.  Ex. 2 at 3.  The requested documents include:

(1) Commercial strategy presentations relating to assessing the impact of LUMRYZ's market entry (responsive to Avadel's RFP Nos. 2, 3, 4, 5, 6, 10, 11, 12, 22, 40, 41, and 50);

---

[1] Jazz's broad request and refusal to even consider a reasonable compromise will be addressed more fully in Avadel's opposition to Jazz's letter brief due September 19, 2024. (D.I. 155.)

(2) Evaluations of patient switching from XYREM and XYWAV to LUMRYZ and XYREM authorized generics ("AGs") (responsive to Avadel's RFP Nos. 2, 5, 10, 23, 40, 51, and 85);

(3) Quarterly forecast presentations for XYREM and XYWAV and underlying financial models (responsive to Avadel's RFP Nos. 5, 10, and 13);

(4) Market research presentations on patient and prescriber preferences and behavior post-LUMRYZ and XYREM AG entry (responsive to Avadel's RFP Nos. 10, 23, 40, and 51);

(5) Pricing and contracting strategy presentations post LUMRYZ and XYREM AG entry (responsive to Avadel's RFP Nos. 4, 6, 11, 12, 77, 78, 79, and 82); and

(6) Communications with the FDA concerning Avadel and/or LUMRYZ (responsive to Avadel's RFP Nos. 24, 34, 35, and 83).

Ex. 2 at 3; Ex. 3 at 8-10, 12-14, 16; Ex. 4 at 8; Ex. 5 at 8.

During a September 10 meet and confer, Jazz rejected this proposal, insisting on a unilateral custodial production from Avadel without reciprocity. The next day, Jazz demanded that Avadel search for and produce custodial documents from five custodians, but Jazz would only agree to produce "go-get" documents from *some* of the categories identified by Avadel. Ex. 6 at 4-5. Jazz refused to identify which categories and refused to agree that it would not seek additional fact depositions based on Avadel's supplemental productions. Ex. 6 at 2. Jazz also refused to confirm that it would not seek to modify the case schedule. Ex. 6 at 2. On September 12, Avadel again offered to engage in a reciprocal production of targeted "go-get" documents. Ex. 6 at 1. Avadel noted that Jazz's request was unduly burdensome, one-sided, and would delay the September 27, 2024 fact discovery cutoff. Ex. 6 at 1. On September 13, the parties filed a joint letter on this dispute. (D.I. 154.)

## III. Argument

Under Federal Rule of Civil Procedure 26, discovery is permissible if it is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also Hess Fence & Supply Co. v. U.S. Fid. & Guar. Co.*, No. CIVA 4:04CV2648, 2006 WL 3325445, at *2 (M.D. Pa. Oct. 12, 2006) (finding that there is a duty to supplement document productions under Rule 26(e)(1) where the documents at issue were "not in existence at the time of the [discovery] deadline").[2] Jazz cannot seriously dispute that documents reflecting Jazz's pricing and commercial strategies, analysis of competition and patient switching, FDA communications, and financial projections post-dating the launch of its most feared competitor, LUMRYZ, are probative in this antitrust case. Indeed, Jazz represented in its letter regarding ongoing royalty filed with the Court yesterday that " ███████████████████████ ███████████████████████████████████████████ (D.I. 687 at 5.) This projection highlights Avadel's need for supplemental discovery regarding Jazz's post-launch documents. Just like the documents Jazz seeks from Avadel, the documents Avadel requests are clearly relevant to expert damages calculations, defining the relevant product market, and understanding the strategic,

---

[2] The parties similarly agreed to supplement their structured transactional and financial data productions to include data through August 31, 2024. The parties agreed to make these supplemental data productions months ago in connection with the stipulated amended case schedule filed on April 22, 2024. (D.I. 88.)

pricing, and market impacts post-LUMRYZ's launch.  As noted above, the requested documents are responsive to Requests for Production served long ago in this case.  *See Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*, No. 19-CV-513, 2021 WL 4037857, at *7 (E.D. Pa. Sept. 3, 2021) (finding that where "discovery of the documents presents a substantial likely benefit" and the responding party "identifies no special burden in responding to the RFPs," this "weighs in favor of producing any unproduced documents requested by the RFPs").

Unlike Jazz's request, however, Avadel's reasonably tailored request for "go-get" documents is also "proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), and aligns with the discovery schedule set by this Court (D.I. 88).  Avadel's request would yield highly relevant information without the undue burden or expense of supplemental custodial collections and concomitant delay to the case schedule.  Indeed, Avadel not only limited its request to six discrete categories that can be easily retrieved from non-custodial sources, but also limited its request to materials presented to high-level employees and board members.[3]  There is no principled basis for requiring lopsided discovery from one market participant and not the other, particularly when the participant seeking to avoid discovery is an entrenched monopolist whose post-launch documents reflect the effects of competition for the first time.

## IV.   Conclusion

Avadel respectfully requests that the Court compel Jazz to produce the post-launch, "go-get" documents identified in Section II, *supra*.

---

[3] Avadel remains willing to produce similar, targeted "go-get" documents.

3

Respectfully submitted,

Dated: September 17, 2024

By: */s/ Daniel M. Silver*
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
405 N. King Street, 8th Floor
Wilmington, DE 19801
MCCARTER & ENGLISH, LLP
(302) 984-6331
dsilver@mccarter.com
ajoyce@mccarter.com

Kenneth G. Schuler
Marc N. Zubick
Sarah W. Wang
Alex Grabowski
LATHAM & WATKINS LLP
330 N. Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: kenneth.schuler@lw.com
Email: marc.zubick@lw.com
Email: sarah.wang@lw.com
Email: alex.grabowski@lw.com

Herman H. Yue
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
Herman.Yue@lw.com

Ian R. Conner
Alan J. Devlin
Anna Rathbun
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Washington, D.C. 20004
(202) 637-2200
Ian.Conner@lw.com
Alan.Devlin@lw.com
Anna.Rathbun@lw.com

Daralyn J. Durie
Eliot A. Adelson
Helen He
Margaret A. Webb
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
eadelson@mofo.com
hhe@mofo.com
mwebb@mofo.com

Kira A. Davis
W. Henry Huttinger
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5200
kiradavis@mofo.com
hhuttinger@mofo.com

Alexander Okuliar
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037, USA
(202) 887-1500
aokuliar@mofo.com

*Attorneys for Defendant*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JAZZ PHARMACEUTICALS, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | C.A. No. 22-941-GBW |
| AVADEL CNS PHARMACEUTICALS, LLC, | ) ) ) | |
| Defendant. | ) ) | |

**[PROPOSED] ORDER**

At Wilmington, this __ day of _____, 2024, the Court having considered Avadel CNS

Pharmaceuticals, LLC's ("Avadel's") discovery motion and the papers submitted in connection

therewith;

IT IS HEREBY ORDERED that:

1. Avadel's motion is GRANTED.

2. On or before _____, 2024, Jazz Pharmaceuticals, Inc. ("Jazz") shall produce

   the following documents and communications dating from June 2023 through

   September ___, 2024:

   a. Commercial strategy presentations relating to assessing the impact of

      LUMRYZ's market entry;

   b. Evaluations of patient switching from XYREM and XYWAV to LUMRYZ and

      XYREM AGs;

   c. Quarterly forecast presentations for XYREM and XYWAV and underlying

      financial models;

   d. Market research presentations on patient and prescriber preferences and

1

behavior post-LUMRYZ and XYREM AG entry;

    e.   Pricing and contracting strategy presentations post LUMRYZ and XYREM AG entry; and

    f.   Communications with the FDA concerning Avadel and/or LUMRYZ.

3.  The documents searched for and produced shall be limited to those presented to Jazz's Executive Committee, Board of Directors, or other senior employees.

_____

The Honorable Gregory B. Williams

# EXHIBIT 1

| From: | Tyler Gruttadauria |
|---|---|
| To: | Kevin.Wu@lw.com; MoFo-Avadel-Jazz; avadelantitrust.lwteam@lw.com; jazzpatentlitigation.lwteam@lw.com; DSilver@McCarter.com; ajoyce@mccarter.com; Adelson, Eliot A.; Webb, Margaret A.; DiCunzolo, Alexa Rae; Huttinger, Henry; He, Helen; Alan.Devlin@lw.com; Anna.Rathbun@lw.com |
| Cc: | JazzAvadel; Jazz Avadel Antitrust; JTigan@morrisnichols.com; Jack Blumenfeld |
| Subject: | Jazz v. Avadel Antitrust – Jazz's RFPs |
| Date: | Friday, July 19, 2024 9:29:15 AM |

<mark>External Email</mark>



Hi Kevin,

We write to request prompt supplementation of Avadel's production on the following topics.

*First*, please supplement your production to include documents, through the present, on the effect of authorized generic and multi-source generic competition on Avadel's pricing for LUMRYZ and Avadel's sales of LUMRYZ.  This request is responsive to at least Jazz's RFP Nos. 2, 3, 10, 11, 15 and 54.

*Second*, please supplement your production to include all correspondence, through the present, with the FDA regarding Avadel's second drug product manufacturing site, Catalent.  Avadel produced AVDL_01271162, which is a CMC Information Amendment.  But Avadel failed to produce the FDA's response and any subsequent related correspondence between Avadel and the FDA.  This request is responsive to at least Jazz's RFP Nos. 45 and 48.

*Third*, please supplement your production to include documents, through the present, on LUMRYZ's labeling, clinical studies and patent statements and/or certifications relating to LUMRYZ's interaction with divalproex.  This request is responsive to at least Jazz's RFP Nos. 85 and 86.  The following are specific examples of deficiencies in Avadel's production.  Avadel's supplemental production should include, but not be limited to, the following examples.

- Avadel produced AVDL_AT_00288815, which identifies an FDA Response to Clinical Question No. 11 from the June 12, 2015 Pre-IND meeting.  Avadel's FDA Correspondence Log (AVDL_01452624 at row 41) indicates the FDA provided a response on 7/13/2015.  But Avadel failed to produce the official FDA response letter to Clinical Question No. 11 and any subsequent related correspondence between Avadel and the FDA.

- Avadel produced AVDL_AT_00295148, which poses the following questions to the FDA: "Does the Agency agree that based on the results of the DDI study that no information regarding dose adjustment will be required in Section 2 or Section 7 of the FT218 label?" and "Does the Agency agree that the default no-effect boundary of 80 to 125 percent can be used to interpret the results of the FT218-divalproex sodium interaction studies?"  But Avadel failed

to produce any FDA response(s), if any, to either question and any subsequent related correspondence between Avadel and the FDA.

- Avadel produced AVDL_AT_01018574, which identifies 314.53(f) Patent Listing Disputes in Appendices 3 and 4 submitted on Avadel's behalf on September 24, 2019.  But Avadel failed to produce complete versions of Avadel's 314.53(f) Patent Listing Disputes submissions, any FDA response(s) and any subsequent related correspondence between Avadel and the FDA.

- Avadel produced AVDL_AT_01018574, which identifies a "FDA Patent Statement Information Request (Attachment A)," a "FDA Labeling Information Request (Attachment B)" and a "FDA Labeling Information Request – Revised Patent Statements (Attachment C)."  But Avadel failed to produce complete copies of Avadel's submission(s), the corresponding FDA requests and any subsequent related correspondence between Avadel and the FDA.

- Avadel produced AVDL_AT_00905335, which identifies that "[o]n September 23, 2021, the Division issued an Information Request informing Avadel of its concern that, based on the data available for XYREM, a potential PD interaction between LUMRYZ and divalproex sodium could not be ruled out, and the LUMRYZ PI needed to be adjusted accordingly."  But Avadel failed to produce the Division's Information Request and any subsequent related correspondence between Avadel and the FDA.  AVDL_AT_00905335 also identifies that "[t]he following discussion sections are taken from the LUMRYZ NDA (SN0035), as provided in Avadel's submission to OCC on October 25, 2021, and are consistent with the patent statements provided at Section 1.3.5.2 of the NDA."  But Avadel failed to produce Avadel's submission to OCC on October 25, 2021 and any subsequent related correspondence between Avadel and the FDA.

- Avadel produced AVDL_AT_00144382, which identifies a Clinical Study Report (CSR) for PKFT218-1901.  Please produce the CSRs for the PKFT218-1702 and PKFT218-1901 DDI studies and any analysis regarding these CSRs.

For each production category described above, please supplement your production by July 26, 2024.

Thank you,
Tyler

**Tyler Gruttadauria**
**Quinn Emanuel Urquhart & Sullivan, LLP**
Associate
51 Madison Avenue, 25th Floor
New York, NY 10010
212-849-7284 Direct
212-849-7000 Main Office Number
212-849-7100 FAX
tylergruttadauria@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

# EXHIBIT 2

505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Tel: +1.415.391.0600  Fax: +1.415.395.8095
www.lw.com

**LATHAM&WATKINS** LLP

| | |
|---|---|
| FIRM / AFFILIATE OFFICES | |
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Silicon Valley |
| Hong Kong | Singapore |
| Houston | Tel Aviv |
| London | Tokyo |
| Los Angeles | Washington, D.C. |
| Madrid | |

September 9, 2024

**VIA E-MAIL**

Nicolas Siebert
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
nicolassiebert@quinnemanuel.com

> Re:   *Jazz Pharmaceuticals, Inc. v. Avadel CNS Pharmaceuticals, LLC*, C.A. No. 1:22-cv-000941-GBW (D. Del.)

Dear Nic,

We write in response to Jazz's letter dated August 30, 2024, in which you demanded that Avadel accede to a one-sided discovery obligation.  Specifically, you insist that Avadel—but not Jazz—commit to making a supplemental production of materials that post-date the launch of LUMRYZ.  A discovery position that abandons any pretense of reciprocity is difficult to entertain. But your correspondence went further still, espousing the view that, while Avadel's post-June 2023 documents would be probative, "Avadel has no basis for Jazz's post-June 2023 documents," which are ostensibly (and supposedly entirely) "irrelevant."  We disagree.

As addressed by emails post-dating your letter, we are ready to meet and confer in a further effort to address post-launch document productions.  We have consistently made clear that Avadel is willing to make a supplemental production under reasonable circumstances.  Asking that any such undertaking be reciprocated should hardly be grounds for controversy.  The relevance of Jazz's documents post-dating June 2023 is so apparent that it demeans both sides to have to spell it out.  Given your insistence, however, we do so below.

At tomorrow's meet and confer, we will be ready to discuss a less burdensome, reciprocal production of "go-get" documents that post-date the launch of LUMRYZ. These would include commercial strategy presentations, quarterly forecast presentations, market research reports, and other categories of documents to which both parties agree. We consider this path to be far more practical and efficient than conducting an expensive, forensic ESI collection from custodians. We are ready to commit to this path if you are willing to do the same.  In doing so, we would also be willing subsequently to meet and confer should either party be dissatisfied with the scope of the materials produced further to this supplemental production effort.

1

LATHAM&WATKINS LLP

## I.    Background

On July 19, 2024, Jazz sent Avadel three requests for supplemental document productions. *See* 7/19/2024 email from T. Gruttadauria to K. Wu.  Two of these requests sought documents that were already in Jazz's possession.  Despite having no obligation to do so, Avadel sent Jazz the bates-numbers for documents responsive to these two requests as a professional courtesy.  *See* 8/15/2024 email from C. Greeley to N. Siebert and A. Grunfeld (responding to Jazz's July 19, 2024 requests); 8/30/2024 email from C. Greeley to T. Gruttadauria (responding to Jazz's August 19, 2024 requests).  The third request asked for a supplemental production of documents "through the present, on the effect of authorized generic and multi-source generic competition on Avadel's pricing for LUMRYZ and Avadel's sales of LUMRYZ."  *See* 7/19/2024 email from T. Gruttadauria to K. Wu.  During the parties' August 13 meet and confer, Avadel asked Jazz to agree to a reciprocal production and to propose specific categories of documents (or search terms) to narrow the scope of the request.

Jazz waited about two and a half weeks to send Avadel a letter the evening before Labor Day weekend in which Jazz simply refused to work towards an amicable resolution.  *See* 8/30/2024 Ltr. from N. Siebert to C. Greeley ("[Jazz] considered Avadel's proposal and does not agree to it.").  In this letter, Jazz demanded that Avadel agree to make a full custodial production of "post-launch" documents by October 25, 2024.  *Id.*  When, on September 5, 2024, Avadel advised Jazz that it was working on a response to its August 30 letter, Jazz responded that the parties were "clearly at impasse" and threatened to file a letter with the Court on September 6, 2024.  *See* 9/5/2024 email from C. Greeley to J. Farley ("We are [] evaluating your letter and will respond next week"); 9/6/2024 email from A. Grunfeld to C. Greeley ("The parties are clearly at impasse here . . . . There is no basis for Avadel to need any more time to respond.  We would like to file the attached letter [with the Court] today.").  As discussed below, it is baffling how Jazz thought its August 30 letter, which demands a significantly broader supplemental production than Jazz has previously requested, could be resolved in a matter of days broken up by a holiday weekend.  Nevertheless, we appreciate Jazz's willingness to meet and confer on this issue before unnecessarily escalating something that would only be burdensome to the parties and to the Court.

## II.    The Scope of Jazz's Request

Jazz initially indicated it was seeking a production of documents regarding "the effect of authorized generic and multi-source generic competition on Avadel's pricing for LUMRYZ and Avadel's sales of LUMRYZ."  *See* 7/19/2024 email from T. Gruttadauria to K. Wu.  But Jazz's August 30 letter makes an entirely new request.  Jazz now seeks a production of "post-launch" documents generally.  Not only did Jazz not seek such an expansive supplemental production previously, it is mystifying that Jazz thinks Avadel can accept, absent further discussion or clarification, a brazen new request for the production of a very broad set of documents.  Worse, Jazz demands a full-scale custodial production spanning all of the search terms previously agreed to by the parties and going back over a year, which is completely disproportionate to any requests for supplementation that Avadel has made to date.

**LATHAM&WATKINS** LLP

### III.    Reciprocal Supplementation Is Warranted

Jazz claims that Avadel's post-launch documents are "uniquely relevant" and that reciprocal supplementation is "not warranted" because Avadel "has not even attempted to articulate" a rationale for wanting Jazz's post-launch documents.  8/30/2024 Ltr. from N. Siebert to C. Greeley.  Contrary to Jazz's representations, during the parties' August 13 meet and confer, Avadel clearly explained that a reciprocal production was necessary so that both parties would have the data inputs required for fulsome damages calculations.  Jazz's post-launch documents are also relevant because Avadel anticipates they will cover the following topics, all of which are central to Avadel's antitrust claims in this case: (a) defining the relevant product market in this case; for example, documents discussing which companies and drugs Jazz and market participants view as competing with XYREM, XYWAV, and LUMRYZ; (b) evaluating how the entry of LUMRYZ impacted Jazz's strategic decisions and pricing decisions; (c) evaluating how the entry of XYREM authorized generics ("AGs") impacted Jazz's strategic decisions and pricing decisions; (d) Jazz's market research on patient and prescriber preferences and behavior after the entry of LUMRYZ and XYREM AGs; (e) formulary competition and discounts after the entry of LUMRYZ and XYREM AG; (f) patient switching from XYREM and XYWAV to LUMRYZ and XYREM AGs; (g) documents and communications regarding the discontinuation rate for XYREM and XYWAV after the entry of LUMRYZ and XYREM AGs; (h) the impact of market entry on Jazz's monopoly pricing power; (i) the impact of market entry on benefits to patients, payors, physicians, and others; and (j) correspondence with the U.S. Food and Drug Administration ("FDA") concerning Avadel and/or LUMRYZ.  Given the pertinence of such materials to various issues in the case, we do not regard Jazz's assertion that such documents are irrelevant as tenable.

Notwithstanding our disagreements with your August 30 letter, we are willing to meet and confer to find a mutually acceptable path forward along the lines of the below, or such other path as the parties may mutually devise.

With respect to supplemental discovery from Jazz, below you will find a list of document categories amenable to a targeted collection.  We request that you produce documents from June 2023 to the present date.  To further mitigate any burden, we request that you produce only materials presented to members of Jazz's Executive Committee and/or Board of Directors.  If the requested materials were not presented to members of Jazz's Executive Committee or Board of Directors, we request that you produce versions presented to other, senior employees (*e.g.*, P.J. Honerkamp, Ernie Ross, etc.).

1.  Commercial strategy presentations relating to assessing the impact of LUMRYZ's entry (including but not limited to effects on XYREM, XYWAV, and the XYREM AGs)
2.  Commercial strategy presentations relating to evaluating patient switching from XYREM and XYWAV to LUMRYZ and XYREM AGs.
3.  Quarterly forecast presentations for XYREM and XYWAV (*i.e.*, FCT 1, FCT 2, FCT 3) and underlying financial models.
4.  Market research presentations on patient and prescriber preferences and behavior post-LUMRYZ and XYREM AG entry.
5.  Pricing and contracting strategy presentations evaluating formulary competition and discounts subsequent to LUMRYZ and XYREM AG entry, including analysis of any

LATHAM&WATKINS LLP

changes in utilization management practices generally and step edits and prior authorizations specifically.

We look forward to receiving Jazz's corresponding, targeted requests, which we will consider in good faith.

We also propose that both Jazz and Avadel produce all documents and communications with the FDA concerning Avadel and/or LUMRYZ that have not already been produced in this action or a related action through the present.

*     *     *     *     *

We look forward to our upcoming meet and confer, which we hope will be cooperative and productive.


Regards,

*/s/ Christine Greeley*
Christine Greeley

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JAZZ PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Docket No.: C.A. No. 22-941-GBW |
| v. | ) | |
| | ) | |
| AVADEL CNS PHARMACEUTICALS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COUNTERCLAIM-PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF
DOCUMENTS TO COUNTERCLAIM-DEFENDANT JAZZ PHARMACEUTICALS,
INC.**

Pursuant to Rule 26 and 34 of the Federal Rules of Civil Procedure and the applicable

Local Rules of the U.S. District Court for the District of Delaware, Counterclaim-Plaintiff Avadel

CNS Pharmaceuticals, LLC ("Counterclaim-Plaintiff" or "Avadel") by and through its attorneys

of record, requests that Counterclaim-Defendant Jazz Pharmaceuticals, Inc. ("Counterclaim-

Defendant" or "Jazz") respond to the following Requests for Production, in writing, and produce

Documents responsive to the Requests for Production within thirty (30) days from the date of

service at the office of Latham & Watkins LLP, 555 Eleventh St., NW, Suite 1000, Washington,

D.C. 20004, or at such other time and place as the parties may agree upon.

## <u>DEFINITIONS</u>

The definitions, instructions, and requirements of Federal Rules of Civil Procedure 26, 34,

and 37 are adopted and incorporated by reference.  For the purposes of these requests, the following

definitions apply:

1.	"All" means all or any, and the term "any" means all or any.  "Any" and "all" shall

be construed in their broadest form, and words imparting the singular shall include the plural and

vice versa, so as to bring within the scope of these requests any Documents that might otherwise be construed to be outside their scope.

2.      "And" and "or" shall be construed either disjunctively or conjunctively, and references shall be construed either as singular or plural, as necessary to bring within the scope of these requests any Documents that might otherwise be construed to be outside their scope.

3.      "Including" means "including but not limited to."

4.      "Communication" means, without limitation, any transmission, conveyance or exchange of a word, statement, Fact, thing, idea, Document, instruction, information, demand or question by any medium, whether by written, oral or other means.

5.      "Document" shall be construed in the broadest sense in light of Federal Rule of Civil Procedure 34 and includes, but is not limited to, any written, printed, typed, recorded, videotaped, filmed, transcribed, taped, electronically-stored or other matter of any kind or nature held or produced or reproduced, whether sent or received, including the original, and includes, but is not limited to, all correspondence, emails, text messages, instant messages, records, drawings, calculations, memoranda, reports, financial statements, contracts, tabulations, studies, analyses, evaluations, work appointment books, diaries, comparisons, questionnaires, surveys, charts, graphs, books, laboratory notebooks, pamphlets, booklets, articles, magazines, newspapers, microfilm, microfiche, photographs, tapes or other recordings, magnetic tapes, discs, flash media, printouts, computer generated reports and printouts, other data compilations from which information can be obtained, as well as copies, versions, or reproductions of the foregoing which differ in any way, including by the addition of handwritten notations or other written or printed matter of any nature, from the original, as well as all associated metadata, and includes all such documents that are in Your possession, custody or control, or to which You otherwise have access.

The foregoing specifically includes information stored in a computer database and capable of being generated in documentary form.

6.      "Reflect," "reflecting," "relate to," "related to," "refer to," "relating to," "referring to," and "concerning" mean relating to, referring to, concerning, mentioning, reflecting, pertaining to, evidencing, involving, demonstrating, describing, discussing, commenting on, comprising, embodying, responding to, supporting, contradicting, containing or constituting (in whole or in part), as the context makes appropriate.

7.       "Date" as used herein shall mean the exact day, month and year if so ascertainable or, if not, the best approximation (including relationship to seasons and other events).

8.      "Facts" shall have its ordinary meaning and, pursuant to Federal Rule of Civil Procedure 33(a)(2), also shall mean related opinions, related contentions, and the application of law to fact.

9.      "Person" or "entity" refers to any individual, natural person, and any other business or legal entity, including, but not limited to, corporations, proprietorships, associations, joint ventures, businesses, companies, consortiums, clubs, foundations, partnerships governmental bodies and agencies, societies, and orders.

10.      "Flamel" means Flamel Technologies SA; its subsidiaries, affiliates, divisions, predecessors, successors, and assigns; and all current officers, directors, employees, temporary employees, independent contractors, agents, and all other persons or organizations acting on behalf, or under the control, of the foregoing.

11.      "Jazz," "You," or "Your" means and includes any and all of Jazz Pharmaceuticals, Inc., and all subsidiaries, affiliates, divisions, predecessors, successors, and assigns, as well as and all current officers, directors, employees, temporary employees, independent contractors,

agents, and all other persons or organizations acting or purporting to act on behalf, or under the control, of each of the foregoing.

12.    "Roxane" means Roxane Laboratories, Inc. its subsidiaries, affiliates, divisions, predecessors, successors, and assigns (including Hikma Pharmaceuticals plc, West-Ward Pharmaceuticals Corp., or Eurohealth (USA), Inc.); and all current officers, directors, employees, temporary employees, independent contractors, agents, and all other persons or organizations acting on behalf, or under the control, of the foregoing.

13.    "Third party" and "third parties" refer to persons that are not a party to this action.

14.    The "'963 patent" means U.S. Patent No. 8,731,963.

15.    "Jazz's NDAs" means New Drug Application ("NDA") Nos. 21-196 and 212690 and any supplements or amendments thereof.

16.    "Jazz's NDA product" means any product for which Jazz sought approval by way of Jazz's NDAs.

17.    "Avadel's NDA" means New Drug Application ("NDA") No. 214755, including all supplements or amendments thereof.

18.    "XYREM" means the subject of Jazz's NDA No. 21-196, a sodium oxybate oral solution.

19.    "LUMRYZ" means the subject of Avadel's NDA No. 214755, a sodium oxybate formulation, previously known as "FT218."

20.    "Oxybate" means the chemical compound with the international nonproprietary name ("INN") oxybate, or any salt form of the compound, or any solvate (including, without limitation, any hydrate) of any of the aforementioned, or any polymorph of any of the aforementioned, or any other form of any of the aforementioned, or any mixture of two or more of

the aforementioned, and includes, without limitation, the active pharmaceutical ingredient ("API") in Jazz's NDA Product.

21.     "REMS" means a Risk Evaluation and Mitigation Strategy drug safety program required by the FDA for medications with certain safety risks.

22.     "Orange Book" means the FDA publication "Approved Drug Products with Therapeutic Equivalence Evaluations" which is a database that publishes certain information about patents associated with drugs that have been approved by the FDA.

23.     "Infringe" or any variant thereof, including but not limited to "infringing" and "infringement," refers to any infringement under 35 U.S.C. § 271, whether direct, indirect, by equivalents, contributory, by inducement, literal, or by the doctrine of equivalents.

24.     "Test" or "testing" shall be construed to include but not be limited to any test, analysis, evaluation, comparison, study, experiment or trial for any purpose, including pre-clinical and clinical tests and results, whether published or unpublished.

## **INSTRUCTIONS**

The definitions, instructions, and requirements of Federal Rules of Civil Procedure 26, 34, and 37 are adopted and incorporated by reference.  For the purposes of these requests, the following instructions apply:

A.     Unless otherwise specified, these requests seek all responsive Documents created, modified, sent, or received during the period January 1, 2014 to the present.

B.     Jazz's obligation to respond to these requests is continuing and Jazz's responses are to be supplemented to include subsequently generated or obtained further responsive documents in accordance with the requirements of Rule 26(e) of the Federal Rules of Civil Procedure.  Jazz shall produce any requested Document that is discovered by Jazz or comes within its possession,

custody, or control subsequent to its initial production, but before the conclusion of this case, immediately upon its discovery or receipt by Jazz or its counsel.

C.     Jazz shall answer fully each request unless it is in good faith objected to, in which event the reasons for the objection shall be stated in detail.  If an objection pertains to only a portion of a request, or a word, phrase, or clause contained within it, Jazz shall state its objection to that portion only and shall respond to the remainder of the request, using its best efforts to do so.

D.     If Jazz encounters any ambiguity in construing a request, or any definition or instruction relevant to the request, Jazz shall set forth the matter deemed ambiguous and the construction selected or used in responding to the request.

E.     If a request calls for a Document that Jazz declines to produce, in whole or in part, based on a claim of privilege or any other claimed protection from disclosure, provide a privileged document log pursuant to Fed. R. Civ. P. 26(b)(5)(A) that identifies for each document separately and specifies for each document at least the following:

1.     the date;

2.     the authors, creators, and sender(s) identified by position and entity with which they are employed or associated and, if any author or sender is an attorney, a statement so stating and, if any sender is a patent agent, a statement so stating and a statement as to whether the laws of the agent's country grant privileged status to a patent agent's communications;

3.     the recipient(s), including copy recipients, identified by position and entity with which they are employed or associated and, if any recipient is an attorney, a statement so stating and, if any recipient is a patent agent, a statement so stating

6

and a statement as to whether the laws of the agent's country grant privileged status to a patent agent's communications;

4.      the general subject matter of the document; and

5.      the portion(s) of the document as to which privilege is claimed; and the type of privilege asserted as well as a certification that all elements of the claimed privilege have been met and not waived.

F.      Each request that refers to "all Documents" includes all Documents that are either known by Jazz to exist, or that can be located or discovered with reasonably diligent efforts.

G.      Jazz must produce all responsive documents within Jazz's possession, custody, or control.  If any Document requested herein was, but no longer is, in Jazz's possession, custody, or control, state whether it has been lost, destroyed, or transferred, is missing, or otherwise has been disposed of, and for each instance, indicate the date and circumstances of the disposal.

H.      Jazz shall produce the original and each non-identical copy of each Document or electronically-stored information requested herein which is in Jazz's possession, custody, or control, or that of any of Jazz's agents, attorneys, accountants, employees, or representatives.  If the original or original carbon copy is not in Jazz's possession, custody, or control, or that of Jazz's agents, attorneys, accountants, employees, or representatives, Jazz shall produce a full, legible copy thereof.

I.      If no Documents are responsive to a particular request, state that no responsive Documents exist.

J.      Pursuant to Federal Rule of Civil Procedure 34, all Documents produced shall be produced as it is kept in the usual course of business, including all file folders, binders, notebooks, and/or other devices by which such Documents may be organized or separated, as well as any

labeling.  For example, a document that is part of a file, docket, or other grouping, should be physically produced together with all other documents from said file, docket or grouping, in the same order or manner of arrangement as the original.

      K.     As to each document produced in response hereto, Jazz shall identify the request in response to which the Document is being produced.

      L.     Jazz shall keep and produce a record of the source of each Document produced. This shall include the name and location of the file where each Document was located and the name of the person, group or department having possession, custody or control of each Document.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

All documents produced by Jazz in response to any request for production served on Jazz in the related actions, Case Nos. 1:21-cv-00691-GBW, 1:21-cv-01138-GBW, 1:21-cv-01594-GBW, 1:21-cv-00487-GBW, and 1:22-cv-02159-APM.

### REQUEST FOR PRODUCTION NO. 2:

All documents related to actual or potential competition to, including in the sale of, XYWAV or XYREM, including all documents related to LUMRYZ, Avadel, or Flamel, all documents that identify a competitor or competitive threat to XYWAV or XYREM, and any competitive intelligence reports or analyses generated by Jazz or any third party, financial analyst reports, or any other document tracking, monitoring, or evaluating any company, drug, or candidate drug that competes, or may compete, with XYWAV or XYREM.

### REQUEST FOR PRODUCTION NO. 3:

All documents relating to Jazz's response to the entry of LUMRYZ, including Jazz's strategy for retaining market share.

**REQUEST FOR PRODUCTION NO. 4:**

All documents related to Jazz's commercial strategy relating to XYWAV or XYREM, including business plans, strategy documents, portfolio reviews, brand plans, franchise plans, strength-weakness-opportunity-threat (SWOT) analyses, marketing plans, lifecycle management plans, plans related to maintaining or increasing sales, prices, market exclusivity, or market share, and any related materials presented to Jazz's board of directors or senior management.

**REQUEST FOR PRODUCTION NO. 5:**

All documents that quantify, reference, analyze, estimate, project, or discuss potential cannibalization of sales of XYWAV or XYREM by LUMRYZ, or other existing or candidate drug products, including all documents that quantify, reference, analyze, estimate, project, or discuss the effect of a launch of LUMRYZ, FT218, or other existing or candidate drug products on Jazz's sales, revenue, EBITDA, profits, market share, growth plans, or costs, whether in selling XYWAV or XYREM or for Jazz as a whole.

**REQUEST FOR PRODUCTION NO. 6:**

All documents reflecting or relating to any projected price decrease in XYREM and XYWAV in response to LUMRYZ's entry.

**REQUEST FOR PRODUCTION NO. 7:**

All documents regarding any allegation that Jazz violated or may have violated U.S. federal antitrust laws, state antitrust laws, or the competition laws of any other jurisdiction.

**REQUEST FOR PRODUCTION NO. 8:**

All documents produced by Jazz to any governmental entity in response to any antitrust investigation, including the Federal Trade Commission, U.S. Department of Justice Antitrust Division, any state Attorney General's Office, and the European Commission.

**REQUEST FOR PRODUCTION NO. 9:**

All documents that reference, analyze, estimate, project, or discuss the expected launch date of LUMRYZ.

**REQUEST FOR PRODUCTION NO. 10:**

All documents related to Jazz's market share in any market in which it sells XYWAV or XYREM, including documents relating to the number of patients who use XYREM or XYWAV as opposed to competing drug treatments for narcolepsy, cataplexy, and excessive daytime sleepiness.

**REQUEST FOR PRODUCTION NO. 11:**

All documents that reference, analyze, or discuss Jazz's monopoly, monopoly power, dominance, market power, ability to control price, or entry barriers in any market in which it sells XYWAV or XYREM.

**REQUEST FOR PRODUCTION NO. 12:**

Documents sufficient to show any process, method, policy, practice, strategy, or procedure used by Jazz in setting the price for XYWAV and XYREM, including whether and how Jazz considered or factored in the price of any other product.

**REQUEST FOR PRODUCTION NO. 13:**

Documents sufficient to show, on a quarterly and annual basis, gross sales, gross revenue, rebates and discounts, net sales, net revenue, cost of goods sold, marketing expenditures, royalty expenses, research and development costs, allocation of overhead costs, gross margin, EBITDA, and profit for XYREM and XYWAV, broken out separately for the United States and worldwide.

**REQUEST FOR PRODUCTION NO. 14:**

All documents related to Jazz's decision to list the '963 patent in the Orange Book, generated before or after the decision, including the rationale for that decision, any concerns

10

identified about listing the '963 patent in the Orange Book, and any analysis undertaken, views formed, or conclusions reached in making, or preparing to make, that decision, including but not limited to the impact of listing the '963 patent in the Orange Book on actual or potential competition.

**REQUEST FOR PRODUCTION NO. 15:**

All documents related to Jazz's claim that it had a reasonable, good-faith basis for listing the '963 patent in the Orange Book in 2014.

**REQUEST FOR PRODUCTION NO. 16:**

All documents related to any claim that Jazz has a reasonable, good-faith basis for not delisting the '963 patent in the Orange Book at any time since 2014.

**REQUEST FOR PRODUCTION NO. 17:**

All documents related to Jazz's decision not to request the FDA to delist the '963 patent from the Orange Book.

**REQUEST FOR PRODUCTION NO. 18:**

All documents related to a request by any Person that Jazz or the FDA delist the '963 patent from the Orange Book.

**REQUEST FOR PRODUCTION NO. 19:**

All documents relating to delisting any patent from the Orange Book, including but not limited to the '963 patent.

**REQUEST FOR PRODUCTION NO. 20:**

All documents that Jazz sent to, or received from, the FDA about the '963 patent.

**REQUEST FOR PRODUCTION NO. 21:**

All documents relating to the uses, benefits, and clinical attributes of LUMRYZ or once-nightly oxybate treatments.

**REQUEST FOR PRODUCTION NO. 22:**

All documents relating to the competitive advantages of LUMRYZ or any once-nightly oxybate product, including any analyses comparing LUMRYZ with XYREM or XYWAV.

**REQUEST FOR PRODUCTION NO. 23:**

All documents relating to demand, preference, or requests from patients for a once-nightly oxybate formulation, including any preference from customers for LUMRYZ over XYREM and XYWAV.

**REQUEST FOR PRODUCTION NO. 24:**

All documents and communications relating to clinical studies of FT218 in 2014, the results of clinical trials in 2016, the Orphan Drug designation for FT218, Avadel's NDA application to the FDA, and Avadel's announcement that it intended to market LUMRYZ as soon as possible in 2020.

**REQUEST FOR PRODUCTION NO. 25:**

All documents relating to the statement in Jazz's 2017 10-K statement that "If Avadel is successful in developing a[n] oxybate formulation that could be effectively used with its delivery technology and is able to obtain FDA or other regulatory approval for its product to treat patients with narcolepsy, we expect the launch of such a product would compete directly with Xyrem and could have a material adverse effect on our business, financial condition, results of operations and growth prospects."

**REQUEST FOR PRODUCTION NO. 26:**

All documents relating to the statement in Jazz's 2021 10-K statement "Avadel will have to show clinical superiority to Xywav and Xyrem," and that, "in any event, we expect to face competition from Avadel, if its product candidate is approved."

12

**REQUEST FOR PRODUCTION NO. 27:**

All documents relating to Jazz's use of Orange Book listings, including to prevent or delay competition.

**REQUEST FOR PRODUCTION NO. 28:**

All documents relating to the propriety of listing REMS patents in the Orange Book.

**REQUEST FOR PRODUCTION NO. 29:**

All documents relating to the propriety of listing patents that do not claim a drug, drug product, or method of using a drug in the Orange Book.

**REQUEST FOR PRODUCTION NO. 30:**

All documents relating to the OBTA, including but not limited to the OBTA's effect on Jazz's Orange Book listings.

**REQUEST FOR PRODUCTION NO. 31:**

All documents relating to Jazz's decision to list or not list any patents in the Orange Book, including any assessment or analysis of whether it was appropriate to list those patents in the Orange Book.

**REQUEST FOR PRODUCTION NO. 32:**

All documents or communications referring or relating to any opinions or analyses evaluating whether the '963 patent claims a method of using a drug.

**REQUEST FOR PRODUCTION NO. 33:**

All documents relating to the use code for the '963 patent listing in the Orange Book.

**REQUEST FOR PRODUCTION NO. 34:**

All documents relating to the statutory stay of final FDA approval of the LUMRYZ NDA.

**REQUEST FOR PRODUCTION NO. 35:**

All communications with FDA or any third party relating to the '963 patent, LUMRYZ, Avadel, or litigation between Jazz and Avadel.

**REQUEST FOR PRODUCTION NO. 36:**

All documents relating to Jazz's decision to sue any other oxybate entrants, from January 1, 2005 to the present, for infringing patents relating to XYREM and XYWAV listed in the Orange Book, including the 2010 lawsuit against Roxane Laboratories.

**REQUEST FOR PRODUCTION NO. 37:**

All documents Jazz produced to Roxane in any patent infringement action, including *Jazz Pharms., Inc. v. Roxane Lab'ys, Inc.*, No. 10-cv-6108-ES-JAD (D.N.J.), relating to Jazz's listing of patents in the Orange Book.

**REQUEST FOR PRODUCTION NO. 38:**

 All documents relating to Jazz's decision to file this lawsuit, including the effect of this lawsuit on Avadel's ability to obtain FDA approval for LUMRYZ.

**REQUEST FOR PRODUCTION NO. 39:**

All documents relating to alleging infringement of the '963 patent or any other patent related to XYREM and XYWAV sent to any party, and responses to such warning letters, regardless of whether or not litigation followed.

**REQUEST FOR PRODUCTION NO. 40:**

All documents sufficient to identify each product that is competitive with, a reasonable substitute for, or interchangeable with XYREM or XYWAV, including any documents containing the name and contact information of the seller, distributor, and manufacturer of such products.

**REQUEST FOR PRODUCTION NO. 41:**

All documents referring or relating to Jazz's competitors' products in treatments for patients suffering from narcolepsy, cataplexy, and excessive daytime sleepiness, including, but not limited to, oxybate treatments.

**REQUEST FOR PRODUCTION NO. 42:**

All documents relating to the properties, benefits, effects, risks, and purposes of drug treatments for narcolepsy, cataplexy, and excessive daytime sleepiness, including oxybate treatments.

**REQUEST FOR PRODUCTION NO. 43:**

All documents relating to the properties, benefits, effects, risks, and purposes of drug treatments for narcolepsy, including wakefulness promoting agents and stimulants.

**REQUEST FOR PRODUCTION NO. 44:**

All documents relating to the properties, benefits, effects, risks, and purposes of pitolisant.

**REQUEST FOR PRODUCTION NO. 45:**

All documents relating to prescribing other drug treatments for narcolepsy in conjunction with oxybate treatments.

**REQUEST FOR PRODUCTION NO. 46:**

All documents relating to assessing the competitive advantages and disadvantages of pitolisant, its revenues and sales, and its effect on the sales, revenue, and market share of XYREM and XYWAV.

**REQUEST FOR PRODUCTION NO. 47:**

All documents relating to the statement in Jazz's 2021 SEC Form 10-K that "Xywav and Xyrem are currently the only products approved by FDA and marketed in the U.S. for the treatment of both cataplexy and EDS in both adult and pediatric patients with narcolepsy[.]"

**REQUEST FOR PRODUCTION NO. 48:**

All documents relating to the statement by Jazz's Chief Executive Officer in 2011 at the Piper Jaffray Health Care Conference regarding XYREM:  "There's really no competition."

**REQUEST FOR PRODUCTION NO. 49:**

All documents sufficient to identify all requirements and barriers to entry into the manufacture and sale of oxybate drugs in the United States, including reputational and brand advantages, switching costs, regulatory approvals, intellectual property and patents, and time to market.

**REQUEST FOR PRODUCTION NO. 50:**

All documents referring or relating to Jazz's competitors' current or former products' FDA approval, failure to receive FDA approval, entry, or exit from the business related to oxybate products.

**REQUEST FOR PRODUCTION NO. 51:**

All documents referring or relating to the ability of Jazz's competitors' products to provide a substitute for XYREM or XYWAV and whether patients would switch to using other oxybate drugs.

**REQUEST FOR PRODUCTION NO. 52:**

All documents reflecting or relating to any benefits to Jazz from delaying entry of LUMRYZ.

**REQUEST FOR PRODUCTION NO. 53:**

All documents supporting, consulted, or relied upon in responding to any interrogatory served on you in this action, separating the documents by interrogatory number.

**REQUEST FOR PRODUCTION NO. 54:**

All Documents received pursuant to Rule 45 subpoenas issued in this case.

16

Respectfully submitted,

Dated:  March 14, 2023

MCCARTER & ENGLISH, LLP

/s/ *Alexandra M. Joyce*
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6331
dsilver@mccarter.com
ajoyce@mccarter.com

Kenneth G. Schuler
Marc N. Zubick
Sarah W. Wang
Alex Grabowski
LATHAM & WATKINS LLP
330 N. Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: kenneth.schuler@lw.com
Email: marc.zubick@lw.com
Email: sarah.wang@lw.com
Email: alex.grabowski@lw.com

Herman Yue
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
Herman.Yue@lw.com

Ian R. Conner
Alan J. Devlin
Anna M. Rathbun
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Washington, D.C. 20004
(202) 637-2200
Alan.Devlin @lw.com
Ian.Conner@lw.com
Anna.Rathbun@lw.com

Daralyn J. Durie
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com

Kira A. Davis
Katherine E. McNutt
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA 90017
(213) 892-5200
kiradavis@mofo.com
kmcnutt@mofo.com

Alex Okuliar
Haydn Forrest
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037
(202) 887-1500
aokuliar@mofo.com
hforrest@mofo.com

*Attorneys for Counter-Plaintiff*

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JAZZ PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Docket No.: C.A. No. 22-941-GBW |
| v. | ) | |
| | ) | |
| AVADEL CNS PHARMACEUTICALS, LLC, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COUNTERCLAIM-PLAINTIFF'S THIRD SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS TO COUNTERCLAIM-DEFENDANT JAZZ PHARMACEUTICALS,
INC.**

Pursuant to Rule 26 and 34 of the Federal Rules of Civil Procedure and the applicable

Local Rules of the U.S. District Court for the District of Delaware, Counterclaim-Plaintiff Avadel

CNS Pharmaceuticals, LLC ("Counterclaim-Plaintiff" or "Avadel") by and through its attorneys

of record, requests that Counterclaim-Defendant Jazz Pharmaceuticals, Inc. ("Counterclaim-

Defendant" or "Jazz") respond to the following Requests for Production, in writing, and produce

Documents responsive to the Requests for Production within thirty (30) days from the date of

service at the office of Latham & Watkins LLP, 555 Eleventh St., NW, Suite 1000, Washington,

D.C. 20004, or at such other time and place as the parties may agree upon.

## DEFINITIONS

The definitions, instructions, and requirements of Federal Rules of Civil Procedure 26, 34,

and 37 are adopted and incorporated by reference.  For the purposes of these requests, the following

definitions apply:

1.      "All" means all or any, and the term "any" means all or any.  "Any" and "all" shall

be construed in their broadest form, and words imparting the singular shall include the plural and

vice versa, so as to bring within the scope of these requests any Documents that might otherwise be construed to be outside their scope.

2.      "And" and "or" shall be construed either disjunctively or conjunctively, and references shall be construed either as singular or plural, as necessary to bring within the scope of these requests any Documents that might otherwise be construed to be outside their scope.

3.      "Including" means "including but not limited to."

4.      "Communication" means, without limitation, any transmission, conveyance or exchange of a word, statement, Fact, thing, idea, Document, instruction, information, demand or question by any medium, whether by written, oral or other means.

5.      "Document" shall be construed in the broadest sense in light of Federal Rule of Civil Procedure 34 and includes, but is not limited to, any written, printed, typed, recorded, videotaped, filmed, transcribed, taped, electronically-stored or other matter of any kind or nature held or produced or reproduced, whether sent or received, including the original, and includes, but is not limited to, all correspondence, emails, text messages, instant messages, records, drawings, calculations, memoranda, reports, financial statements, contracts, tabulations, studies, analyses, evaluations, work appointment books, diaries, comparisons, questionnaires, surveys, charts, graphs, books, laboratory notebooks, pamphlets, booklets, articles, magazines, newspapers, microfilm, microfiche, photographs, tapes or other recordings, magnetic tapes, discs, flash media, printouts, computer generated reports and printouts, other data compilations from which information can be obtained, as well as copies, versions, or reproductions of the foregoing which differ in any way, including by the addition of handwritten notations or other written or printed matter of any nature, from the original, as well as all associated metadata, and includes all such documents that are in Your possession, custody or control, or to which You otherwise have access.

The foregoing specifically includes information stored in a computer database and capable of being generated in documentary form.

6. "Facts" shall have its ordinary meaning and, pursuant to Federal Rule of Civil Procedure 33(a)(2), also shall mean related opinions, related contentions, and the application of law to fact.

7. "Date" as used herein shall mean the exact day, month and year if so ascertainable or, if not, the best approximation (including relationship to seasons and other events).

8. "Reflect," "reflecting," "relate to," "related to," "refer to," "relating to," "referring to," and "concerning" mean relating to, referring to, concerning, mentioning, reflecting, pertaining to, evidencing, involving, demonstrating, describing, discussing, commenting on, comprising, embodying, responding to, supporting, contradicting, containing or constituting (in whole or in part), as the context makes appropriate.

9. "Person" or "entity" refers to any individual, natural person, and any other business or legal entity, including, but not limited to, corporations, proprietorships, associations, joint ventures, businesses, companies, consortiums, clubs, foundations, partnerships governmental bodies and agencies, societies, and orders.

10. "Jazz," "You," or "Your" means and includes any and all of Jazz Pharmaceuticals, Inc., and all subsidiaries, affiliates, divisions, predecessors, successors, and assigns, as well as and all current officers, directors, employees, temporary employees, independent contractors, agents, and all other persons or organizations acting or purporting to act on behalf, or under the control, of each of the foregoing.

11. "XYREM" means the subject of Jazz's NDA No. 21-196, a sodium oxybate oral solution.

3

12.     "XYWAV" means the subject of Jazz's NDA No. 21-2690, a sodium oxybate oral solution.

13.     "LUMRYZ" means the subject of Avadel's NDA No. 214755, a sodium oxybate formulation, previously known as "FT218."

14.     "Azur Merger" means the merger transaction that occurred on January 18, 2012, in which Azur Pharma Public Limited Company combined with Jazz Pharmaceuticals, Inc., and in connection with which Azur Pharma Public Limited Company was re-named Jazz Pharmaceuticals plc and became the parent company of and successor to Jazz Pharmaceuticals, Inc.

15.     "Formulary" or "Formularies" means the list of products maintained by third party payors of health care services (including governmental payors, managed care organizations, and private health insurers) or their contracted Pharmacy Benefit Manager that are approved for coverage or reimbursement.

16.     "Pharmacy Benefit Manager" or "PBM" means any company that provides services related to the reimbursement of prescription drug purchases, creation and administration of Formularies, negotiation of reimbursement amounts or discounts with pharmacies and drug manufacturers, and any related administrative services, including but not limited to Ascent Health Services, LLC, CVS Caremark, Express Scripts, Inc., Elixir Rx Solutions, LLC, MedImpact Healthcare Systems, Inc.,  Navitus Health Solutions, LLC, OptumRx, Inc, Prime Therapeutics LLC, SelectHealth, Inc., and Zinc Health Services, LLC.

## INSTRUCTIONS

The definitions, instructions, and requirements of Federal Rules of Civil Procedure 26, 34, and 37 are adopted and incorporated by reference.  For the purposes of these requests, the following instructions apply:

A.      Unless otherwise specified, these requests seek all responsive Documents created, modified, sent, or received during the period January 1, 2010 to the present.

B.      Jazz's obligation to respond to these requests is continuing and Jazz's responses are to be supplemented to include subsequently generated or obtained further responsive documents in accordance with the requirements of Rule 26(e) of the Federal Rules of Civil Procedure.  Jazz shall produce any requested Document that is discovered by Jazz or comes within its possession, custody, or control subsequent to its initial production, but before the conclusion of this case, immediately upon its discovery or receipt by Jazz or its counsel.

C.      Jazz shall answer fully each request unless it is in good faith objected to, in which event the reasons for the objection shall be stated in detail.  If an objection pertains to only a portion of a request, or a word, phrase, or clause contained within it, Jazz shall state its objection to that portion only and shall respond to the remainder of the request, using its best efforts to do so.

D.      If Jazz encounters any ambiguity in construing a request, or any definition or instruction relevant to the request, Jazz shall set forth the matter deemed ambiguous and the construction selected or used in responding to the request.

E.      If a request calls for a Document that Jazz declines to produce, in whole or in part, based on a claim of privilege or any other claimed protection from disclosure, provide a privileged document log pursuant to Fed. R. Civ. P. 26(b)(5)(A) that identifies for each document separately and specifies for each document at least the following:

1.      the date;

2.      the authors, creators, and sender(s) identified by position and entity with which they are employed or associated and, if any author or sender is an attorney, a statement so stating and, if any sender is a patent agent, a statement so stating and

5

a statement as to whether the laws of the agent's country grant privileged status to a patent agent's communications;

3.      the recipient(s), including copy recipients, identified by position and entity with which they are employed or associated and, if any recipient is an attorney, a statement so stating and, if any recipient is a patent agent, a statement so stating and a statement as to whether the laws of the agent's country grant privileged status to a patent agent's communications;

4.      the general subject matter of the document; and

5.      the portion(s) of the document as to which privilege is claimed; and the type of privilege asserted as well as a certification that all elements of the claimed privilege have been met and not waived.

F.      Each request that refers to "all Documents" includes all Documents that are either known by Jazz to exist, or that can be located or discovered with reasonably diligent efforts.

G.      Jazz must produce all responsive documents within Jazz's possession, custody, or control.  If any Document requested herein was, but no longer is, in Jazz's possession, custody, or control, state whether it has been lost, destroyed, or transferred, is missing, or otherwise has been disposed of, and for each instance, indicate the date and circumstances of the disposal.

H.      Jazz shall produce the original and each non-identical copy of each Document or electronically-stored information requested herein which is in Jazz's possession, custody, or control, or that of any of Jazz's agents, attorneys, accountants, employees, or representatives.  If the original or original carbon copy is not in Jazz's possession, custody, or control, or that of Jazz's agents, attorneys, accountants, employees, or representatives, Jazz shall produce a full, legible copy thereof.

I.      If no Documents are responsive to a particular request, state that no responsive Documents exist.

J.      Pursuant to Federal Rule of Civil Procedure 34, all Documents produced shall be produced as it is kept in the usual course of business, including all file folders, binders, notebooks, and/or other devices by which such Documents may be organized or separated, as well as any labeling.  For example, a document that is part of a file, docket, or other grouping, should be physically produced together with all other documents from said file, docket or grouping, in the same order or manner of arrangement as the original.

K.      As to each document produced in response hereto, Jazz shall identify the request in response to which the Document is being produced.

L.      Jazz shall keep and produce a record of the source of each Document produced. This shall include the name and location of the file where each Document was located and the name of the person, group or department having possession, custody or control of each Document.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 71:**

All Documents constituting all audited financial statements for Jazz Pharmaceuticals, Inc., Jazz Pharmaceuticals Ireland Ltd, and Jazz Pharmaceutical plc prepared since January 1, 2020.

**REQUEST FOR PRODUCTION NO. 72:**

All Documents constituting all balance sheets, cash-flow statements, and profit-and-loss (P&L) statements for Jazz Pharmaceuticals, Inc., Jazz Pharmaceuticals Ireland Ltd, and Jazz Pharmaceutical plc prepared since January 1, 2020.

**REQUEST FOR PRODUCTION NO. 73:**

All Documents constituting all agreements relating to the Azur Merger.

**REQUEST FOR PRODUCTION NO. 74:**

All Documents relating to the corporate governance of Jazz Pharmaceuticals, Inc., Jazz Pharmaceuticals Ireland Ltd, and Jazz Pharmaceutical plc, including but not limited to articles of incorporation, constitutions, articles of association, bylaws, and any related documents.

**REQUEST FOR PRODUCTION NO. 75:**

All Documents consisting of all intercompany agreements between and among any of the following entities: Jazz Pharmaceuticals, Inc., Jazz Pharmaceuticals Ireland Ltd, and Jazz Pharmaceutical plc.

**REQUEST FOR PRODUCTION NO. 76:**

Documents sufficient to show Jazz's corporate structure, including but not limited to Jazz Pharmaceuticals, Inc.'s relationship to Jazz Pharmaceutical plc and Jazz Pharmaceuticals Ireland Ltd.

**REQUEST FOR PRODUCTION NO. 77:**

All Documents and Communications relating to LUMRYZ's inclusion in, listing on, or placement within Formularies.

**REQUEST FOR PRODUCTION NO. 78:**

All Documents and Communications with PBMs relating to LUMRYZ's inclusion in, listing on, or placement within Formularies.

**REQUEST FOR PRODUCTION NO. 79:**

All Documents and Communications relating to the position of XYREM or XYWAV on or within Formularies in relation to LUMRYZ.

**REQUEST FOR PRODUCTION NO. 80:**

All Documents constituting all final commercial rebate agreements and all other agreements relating to discounts, rebates, chargebacks, or other adjustments to price between Jazz and any PBM, group purchasing organization, healthcare provider, or other third-party payor relating to XYREM or XYWAV, in additional to any final amendments to such agreements.


Dated:  December 21, 2023

*Of Counsel*:

Kenneth G. Schuler
Marc N. Zubick
Alex Grabowski
Sarah W. Wang
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-7700
kenneth.schuler@lw.com
marc.zubick@lw.com
alex.grabowski@lw.com
sarah.wang@lw.com

Herman Yue
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
Herman.Yue@lw.com

McCARTER & ENGLISH, LLP

*/s/ Alexandra M. Joyce*
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Counterclaim-Plaintiff*

Ian Conner
Alan J. Devlin
Anna M. Rathbun
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Washington, D.C. 20004
(202) 637-2200
Ian.connor@lw.com
Alan.Devlin @lw.com
Anna.rathbun@lw.com

Daralyn J. Durie
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
415-568-6034
ddurie@mofo.com

Kira A. Davis
Katherine E. McNutt
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017
(213) 892-5200
kiradavis@mofo.com
kmcnutt@mofo.com

Alexander Okuliar
Haydn Forrest
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037, USA
(202) 887-1500
aokuliar@mofo.com
hforrest@mofo.com

# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| JAZZ PHARMACEUTICALS, INC., <br><br> Plaintiff, <br><br> v. <br><br> AVADEL CNS PHARMACEUTICALS, LLC, <br><br> Defendant. | C.A. No. 22-941-GBW |

**COUNTERCLAIM-PLAINTIFF'S FOURTH SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS TO COUNTERCLAIM-DEFENDANT
JAZZ PHARMACEUTICALS, INC.**

Pursuant to Rule 26 and 34 of the Federal Rules of Civil Procedure and the applicable Local Rules of the U.S. District Court for the District of Delaware, Counterclaim-Plaintiff Avadel CNS Pharmaceuticals, LLC ("Counterclaim-Plaintiff" or "Avadel") by and through its attorneys of record, requests that Counterclaim-Defendant Jazz Pharmaceuticals, Inc. ("Counterclaim-Defendant" or "Jazz") respond to the following Requests for Production, in writing, and produce Documents responsive to the Requests for Production within thirty (30) days from the date of service at the office of Latham & Watkins LLP, 555 Eleventh St., NW, Suite 1000, Washington, D.C. 20004, or at such other time and place as the parties may agree upon.

## DEFINITIONS

The definitions, instructions, and requirements of Federal Rules of Civil Procedure 26, 34, and 37 are adopted and incorporated by reference. For the purposes of these requests, the following definitions apply:

1.     "All" means all or any, and the term "any" means all or any. "Any" and "all" shall be construed in their broadest form, and words imparting the singular shall include the plural and

vice versa, so as to bring within the scope of these requests any Documents that might otherwise be construed to be outside their scope.

2.      "And" and "or" shall be construed either disjunctively or conjunctively, and references shall be construed either as singular or plural, as necessary to bring within the scope of these requests any Documents that might otherwise be construed to be outside their scope.

3.      "Including" means "including but not limited to."

4.      "Communication" means, without limitation, any transmission, conveyance or exchange of a word, statement, Fact, thing, idea, Document, instruction, information, demand or question by any medium, whether by written, oral or other means.

5.      "Document" shall be construed in the broadest sense in light of Federal Rule of Civil Procedure 34 and includes, but is not limited to, any written, printed, typed, recorded, videotaped, filmed, transcribed, taped, electronically-stored or other matter of any kind or nature held or produced or reproduced, whether sent or received, including the original, and includes, but is not limited to, all correspondence, emails, text messages, instant messages, records, drawings, calculations, memoranda, reports, financial statements, contracts, tabulations, studies, analyses, evaluations, work appointment books, diaries, comparisons, questionnaires, surveys, charts, graphs, books, laboratory notebooks, pamphlets, booklets, articles, magazines, newspapers, microfilm, microfiche, photographs, tapes or other recordings, magnetic tapes, discs, flash media, printouts, computer generated reports and printouts, other data compilations from which information can be obtained, as well as copies, versions, or reproductions of the foregoing which differ in any way, including by the addition of handwritten notations or other written or printed matter of any nature, from the original, as well as all associated metadata, and includes all such documents that are in Your possession, custody or control, or to which You otherwise have access.

The foregoing specifically includes information stored in a computer database and capable of being generated in documentary form.

6.      "Facts" shall have its ordinary meaning and, pursuant to Federal Rule of Civil Procedure 33(a)(2), also shall mean related opinions, related contentions, and the application of law to fact.

7.      "Date" as used herein shall mean the exact day, month and year if so ascertainable or, if not, the best approximation (including relationship to seasons and other events).

8.      "Reflect," "reflecting," "relate to," "related to," "refer to," "relating to," "referring to," and "concerning" mean relating to, referring to, concerning, mentioning, reflecting, pertaining to, evidencing, involving, demonstrating, describing, discussing, commenting on, comprising, embodying, responding to, supporting, contradicting, containing or constituting (in whole or in part), as the context makes appropriate.

9.      "Person" or "entity" refers to any individual, natural person, and any other business or legal entity, including, but not limited to, corporations, proprietorships, associations, joint ventures, businesses, companies, consortiums, clubs, foundations, partnerships governmental bodies and agencies, societies, and orders.

10.      "Jazz," "You," or "Your" means and includes any and all of Jazz Pharmaceuticals, Inc., and all subsidiaries, affiliates, divisions, predecessors, successors, and assigns, as well as and all current officers, directors, employees, temporary employees, independent contractors, agents, and all other persons or organizations acting or purporting to act on behalf, or under the control, of each of the foregoing.

11.      "Avadel" means Avadel CNS Pharmaceuticals, LLC; its subsidiaries, affiliates, divisions, predecessors, successors, and assigns (including Flamel Technologies SA); and all

3

current officers, directors, employees, temporary employees, independent contractors, agents, and all other persons or organizations acting on behalf, or under the control, of the foregoing.

12.     "Specialty Pharmacies" means pharmacies that handle drugs involving high complexity in distribution, administration, or patient management.

13.     "ESSDS" means Express Scripts Specialty Distribution Services, Inc.

14.     "LUMRYZ" means the subject of Avadel's NDA No. 214755, a sodium oxybate formulation, previously known as "FT218."

15.     "Pharmacy Benefit Manager" or "PBM" means any company that provides services related to the reimbursement of prescription drug purchases, creation and administration of Formularies, negotiation of reimbursement amounts or discounts with pharmacies and drug manufacturers, and any related administrative services, including but not limited to Ascent Health Services, LLC, CVS Caremark, Express Scripts, Inc., Elixir Rx Solutions, LLC, MedImpact Healthcare Systems, Inc., Navitus Health Solutions, LLC, OptumRx, Inc, Prime Therapeutics LLC, SelectHealth, Inc., and Zinc Health Services, LLC.

16.     "XYREM" means the subject of Jazz's NDA No. 21-196, a sodium oxybate oral solution.

17.     "XYWAV" means the subject of Jazz's NDA No. 21-2690, a sodium oxybate oral solution.

18.     "Formulary" or "Formularies" means the list of products maintained by third party payors of health care services (including governmental payors, managed care organizations, and private health insurers) or their contracted Pharmacy Benefit Manager that are approved for coverage or reimbursement.

19.     "FDA" means the United States Food and Drug Administration.

20.     "Adverse Events" means undesirable or negative outcomes to patients during the course of treatment with a drug product.

## INSTRUCTIONS

The definitions, instructions, and requirements of Federal Rules of Civil Procedure 26, 34, and 37 are adopted and incorporated by reference.  For the purposes of these requests, the following instructions apply:

A.      Unless otherwise specified, these requests seek all responsive Documents created, modified, sent, or received during the period January 1, 2010 to the present.

B.      Jazz's obligation to respond to these requests is continuing and Jazz's responses are to be supplemented to include subsequently generated or obtained further responsive documents in accordance with the requirements of Rule 26(e) of the Federal Rules of Civil Procedure.  Jazz shall produce any requested Document that is discovered by Jazz or comes within its possession, custody, or control subsequent to its initial production, but before the conclusion of this case, immediately upon its discovery or receipt by Jazz or its counsel.

C.      Jazz shall answer fully each request unless it is in good faith objected to, in which event the reasons for the objection shall be stated in detail.  If an objection pertains to only a portion of a request, or a word, phrase, or clause contained within it, Jazz shall state its objection to that portion only and shall respond to the remainder of the request, using its best efforts to do so.

D.      If Jazz encounters any ambiguity in construing a request, or any definition or instruction relevant to the request, Jazz shall set forth the matter deemed ambiguous and the construction selected or used in responding to the request.

E.      If a request calls for a Document that Jazz declines to produce, in whole or in part, based on a claim of privilege or any other claimed protection from disclosure, provide a privileged

5

document log pursuant to Fed. R. Civ. P. 26(b)(5)(A) that identifies for each document separately and specifies for each document at least the following:

    1.    the date;

    2.    the authors, creators, and sender(s) identified by position and entity with which they are employed or associated and, if any author or sender is an attorney, a statement so stating and, if any sender is a patent agent, a statement so stating and a statement as to whether the laws of the agent's country grant privileged status to a patent agent's communications;

    3.    the recipient(s), including copy recipients, identified by position and entity with which they are employed or associated and, if any recipient is an attorney, a statement so stating and, if any recipient is a patent agent, a statement so stating and a statement as to whether the laws of the agent's country grant privileged status to a patent agent's communications;

    4.    the general subject matter of the document; and

    5.    the portion(s) of the document as to which privilege is claimed; and the type of privilege asserted as well as a certification that all elements of the claimed privilege have been met and not waived.

F.    Each request that refers to "all Documents" includes all Documents that are either known by Jazz to exist, or that can be located or discovered with reasonably diligent efforts.

G.    Jazz must produce all responsive documents within Jazz's possession, custody, or control.  If any Document requested herein was, but no longer is, in Jazz's possession, custody, or control, state whether it has been lost, destroyed, or transferred, is missing, or otherwise has been disposed of, and for each instance, indicate the date and circumstances of the disposal.

H.      Jazz shall produce the original and each non-identical copy of each Document or electronically stored information requested herein which is in Jazz's possession, custody, or control, or that of any of Jazz's agents, attorneys, accountants, employees, or representatives.  If the original or original carbon copy is not in Jazz's possession, custody, or control, or that of Jazz's agents, attorneys, accountants, employees, or representatives, Jazz shall produce a full, legible copy thereof.

I.      If no Documents are responsive to a particular request, state that no responsive Documents exist.

J.      Pursuant to Federal Rule of Civil Procedure 34, all Documents produced shall be produced as it is kept in the usual course of business, including all file folders, binders, notebooks, and/or other devices by which such Documents may be organized or separated, as well as any labeling.  For example, a document that is part of a file, docket, or other grouping, should be physically produced together with all other documents from said file, docket or grouping, in the same order or manner of arrangement as the original.

K.      As to each document produced in response hereto, Jazz shall identify the request in response to which the Document is being produced.

L.      Jazz shall keep and produce a record of the source of each Document produced. This shall include the name and location of the file where each Document was located and the name of the person, group or department having possession, custody or control of each Document.

## **REQUESTS FOR PRODUCTION**

### **REQUEST FOR PRODUCTION NO. 81:**

All Documents related to any outreach by, or communication from, any of Avadel's Specialty Pharmacies to ESSDS regarding the attempted or actual fulfilment of a prescription of

LUMRYZ, including all Communications between Jazz and ESSDS in June 2023 related to that subject matter.

**REQUEST FOR PRODUCTION NO. 82:**

For each PBM with whom you discussed the placement of XYREM or XYWAV in Formularies, Documents sufficient to show the PBM's determination of the clinical benefit of XYREM or XYWAV as compared to other narcolepsy treatments.

**REQUEST FOR PRODUCTION NO. 83:**

All Documents and Communications regarding Your postmarketing studies, as required by the FDA, regarding XYREM or XYWAV.

**REQUEST FOR PRODUCTION NO. 84:**

Documents sufficient to show all Adverse Events associated with XYREM or XYWAV since Jazz's launch of XYREM or XYWAV, including reports of Adverse Events to Jazz and analyses of or Communications about Adverse Events associated with XYREM or XYWAV.

**REQUEST FOR PRODUCTION NO. 85:**

Documents sufficient to show discontinuance rates for XYREM or XYWAV.

**REQUEST FOR PRODUCTION NO. 86:**

All patent license agreements You have entered into from June 29, 2023 to the present.

**REQUEST FOR PRODUCTION NO. 87:**

All Documents, studies, reports, and analyses evaluating whether narcolepsy patients prefer twice- or three-times nightly dosing as opposed to a once-nightly dose of sodium oxybate.

**REQUEST FOR PRODUCTION NO. 88:**

All Documents and Communications constituting any FD-SXB Performance Tracker for each week since the launch of LUMRYZ through the present date.

8

Dated:  August 28, 2024

*Of Counsel*:

Kenneth G. Schuler
Marc N. Zubick
Alex Grabowski
Sarah W. Wang
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-7700
kenneth.schuler@lw.com
marc.zubick@lw.com
alex.grabowski@lw.com
sarah.wang@lw.com

Ian Conner
Alan J. Devlin
Anna M. Rathbun
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
ian.conner@lw.com
alan.devlin@lw.com
anna.rathbun@lw.com

Herman Yue
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
herman.yue@lw.com

Daralyn J. Durie
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com

McCARTER & ENGLISH, LLP

*/s/ Alexandra M. Joyce*
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Counterclaim-Plaintiff*

Kira A. Davis
Henry Huttinger
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017
(213) 892-5200
kiradavis@mofo.com
hhuttinger@mofo.com

Alexander Okuliar
Haydn Forrest
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037
(202) 887-1500
aokuliar@mofo.com
hforrest@mofo.com

Matthew C. Has
POLSINELLI
100 South Fourth Street, Suite 1000
St. Louis, MO 631002
(314) 552-6820
mhans@polsinelli.com

# EXHIBIT 6

| | |
|---|---|
| **From:** | Webb, Margaret A. |
| **To:** | Nicolas Siebert; Christine.Greeley@lw.com |
| **Cc:** | JazzAvadel; Jack Blumenfeld; JTigan@morrisnichols.com; MoFo-Avadel-Jazz; avadelantitrust.lwteam@lw.com; DSilver@McCarter.com; ajoyce@mccarter.com; jazzpatentlitigation.lwteam@lw.com |
| **Subject:** | RE: Jazz v. Avadel Antitrust - Document Supplementation |
| **Date:** | Thursday, September 12, 2024 3:00:57 PM |
| **Attachments:** | image001.png |
| | 2024.09.06 DRAFT Letter to Court re Request for MTC (Avadel Edits).docx |

Nic,

Avadel does not agree to Jazz's proposed framework.  Fact discovery closes in two weeks, on September 27, 2024.  Jazz's request for broad, supplemental custodial ESI collections, review, and productions is unduly burdensome and unwarranted at this late stage and would inevitably delay the stipulated case schedule.  Jazz's request is also highly unusual.  Jazz is proposing a one-sided discovery obligation that bizarrely – and wrongly – assumes that Avadel's documents are relevant, but that Jazz's are not.  However, as previously indicated in Avadel's letter dated September 9, 2024, Avadel is willing to engage in a reciprocal production of targeted "go-get" documents that post-date the launch of LUMRYZ.

Unless Jazz agrees to limit supplemental productions to "go-get" documents, Avadel agrees that the parties are at impasse.  Please find attached our edits to your proposed joint letter to the court.

Best,

**Margaret Webb**
Associate
mwebb@mofo.com
T: +1 (415) 268-7544

Morrison Foerster
425 Market St.
San Francisco, CA 94105



mofo.com | LinkedIn | Twitter

**From:** Nicolas Siebert <nicolassiebert@quinnemanuel.com>
**Sent:** Wednesday, September 11, 2024 6:58 PM
**To:** Christine.Greeley@lw.com
**Cc:** JazzAvadel <jazzavadel@quinnemanuel.com>; Jack Blumenfeld <jblumenfeld@morrisnichols.com>; JTigan@morrisnichols.com; MoFo-Avadel-Jazz <MoFo-Avadel-Jazz@mofo.com>; avadelantitrust.lwteam@lw.com; DSilver@McCarter.com; ajoyce@mccarter.com; jazzpatentlitigation.lwteam@lw.com
**Subject:** RE: Jazz v. Avadel Antitrust - Document Supplementation

External Email

 **This message could be suspicious**
• Similar name as someone in your company.
• You've never replied to this person.

Report or Mark Safe                    Powered by Mimecast

Thanks Christie.

Just to be clear, Jazz did not agree to consider the proposal by today.  Jazz agreed to either move forward on this framework by COB today, or to seek judicial intervention.  As explained on the meet and confer, we do not want to delay this issue any longer.  If we can't reach agreement promptly, we will involve the Court.

However, we will respond to your questions.  Jazz will not agree not to seek additional fact depositions based on supplemental productions.  But we note that if Jazz makes any such request, it would inevitably come in the future, likely after the close of fact discovery, and Avadel could of course object at that time.  Jazz also is not currently contemplating any additional depositions or re depositions based on supplementation.  For reasons you probably understand, we just cannot rule out the possibility that Jazz may need to seek depositions based on discovery it has not yet seen, so we cannot give up that right.  We do not see this as a holdup if the parties are otherwise in agreement on this framework, though.

On "go gets":  the purpose of this negotiation—as we discussed yesterday—is to get agreement on the framework below.  Once the parties have settled on the framework, we can negotiate Avadel's search terms and go gets and Jazz's go gets.  Some of Avadel's requests are likely available in non custodial sources, e.g., forecasting documents responsive to Number 3 in your September 9, 2024 letter.  Others may not be.  In general, Jazz does not maintain non custodial repositories of "presentations," which means some of Avadel's requests might not be "go gets."  We can commit that Jazz will produce responsive documents from non custodial sources, but the precise collection is something that will require detailed consultation with Jazz personnel.  Accordingly, we cannot commit to specifics now, just as we understand Avadel is not ready to commit to specific search terms tonight

Please confirm ASAP—and by no later than COB tomorrow—whether Avadel agrees to the framework laid out below.  If not, please confirm we can submit our joint letter to the Court Friday morning.

Regards,

**Nic Siebert**
he/him
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP

51 Madison Avenue, 22nd Floor

New York, NY 10010
212-849-7326 Direct
212-849-7000 Main Office Number
212-849-7100 FAX
nicolassiebert@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Christine.Greeley@lw.com <Christine.Greeley@lw.com>
**Sent:** Wednesday, September 11, 2024 5:47 PM
**To:** Nicolas Siebert <nicolassiebert@quinnemanuel.com>
**Cc:** JazzAvadel <jazzavadel@quinnemanuel.com>; Jack Blumenfeld <jblumenfeld@morrisnichols.com>; JTigan@morrisnichols.com; MoFo-Avadel-Jazz@mofo.com; avadelantitrust.lwteam@lw.com; DSilver@McCarter.com; ajoyce@mccarter.com; jazzpatentlitigation.lwteam@lw.com
**Subject:** RE: Jazz v. Avadel Antitrust - Document Supplementation

[EXTERNAL EMAIL from christine.greeley@lw.com]

Nic,

Thank you for your email. While we continue to disagree with Jazz's position, we are considering your proposal below. So that we can properly understand your proposal and discuss with our client, can you please let us know whether Jazz would be willing to stipulate that, if Avadel agrees to the supplemental document production requested by Jazz, Jazz will not seek any additional depositions, including 30(b)(6) depositions, and will not seek any modification of the existing case schedule?

We would also like to better understand what Jazz is agreeing to produce in exchange. Could you please explain which categories of information Jazz believes do not fall into the "go get" category?

Best,
Christie

**Christine Greeley**
Pronouns: She/Her/Hers

**LATHAM & WATKINS LLP**
505 Montgomery Street | Suite 2000 | San Francisco, CA 94111-6538
D: +1.415.395.8836

**From:** Nicolas Siebert <nicolassiebert@quinnemanuel.com>
**Sent:** Wednesday, September 11, 2024 10:35 AM

**To:** Greeley, Christine (Bay Area) <Christine.Greeley@lw.com>
**Cc:** JazzAvadel <jazzavadel@quinnemanuel.com>; Jack Blumenfeld
<jblumenfeld@morrisnichols.com>; JTigan@morrisnichols.com; MoFo-Avadel-Jazz@mofo.com; #C-
M AVADEL ANTITRUST - LW TEAM <avadelantitrust.lwteam@lw.com>; DSilver@McCarter.com;
ajoyce@mccarter.com; #C-M JAZZ PATENT LITIGATION - LW TEAM
<jazzpatentlitigation.lwteam@lw.com>
**Subject:** Jazz v. Avadel Antitrust - Document Supplementation

Christie,

On yesterday's meet and confer, we discussed document productions from both parties post-dating
the prior collections, which occurred around the time of LUMRYZ's launch.  As we explained on the
call, the proportional relevance-to-burden of Avadel's files warrants substantial supplementation.  As
the alleged delayed-entry Plaintiff in this case, Avadel bears the burden to show that Jazz's conduct
actually harmed competition and that Avadel's sales were in fact delayed by Jazz.  Both of these
elements of Avadel's claim—not to mention damages—require post-launch evidence.  Avadel has
also put at issue the efficacy and desirability of LUMRYZ and once-nightly oxybate products
generally; real-world behavior bears directly on Avadel's contention that patients, doctors, and
insurers want a once-nightly option.

On the other hand, the proportional relevance-to-burden of Jazz's files warrants no production from
Jazz.  Jazz's documents are primarily relevant to prove Avadel's liability theory, *e.g.* that Jazz
improperly listed the '963 patent in the Orange Book in 2014 (*i.e.*, over a decade ago).  Any
documents supporting that contention—if any exist—pre-date the parties' June/July collection
cutoff by many years.  Avadel already has those documents.  Indeed, over the past several months,
Avadel has repeatedly asked for more documents, from earlier timeframes going back as far as 2010,
and Jazz has obliged with productions.

Nonetheless, Avadel asked that Jazz produce certain "go-get" documents post-dating LUMRYZ's
launch.  We disagree that these documents are relevant.  What Jazz's employees thought or said
about LUMRYZ after it was on the market does not bear on how LUMRZY actually performed in the
real world.  In contrast, candid contemporaneous statements by Avadel's employees about their
product are relevant as they will shed light on a number of issues, including damages, whether Jazz's
conduct actually delayed or hindered LUMRYZ's launch, whether LUMRYZ is superior to XYREM and
XYWAV in the way Avadel, has argued, etc.  At a minimum, the burden of collecting and producing
such documents substantially outweighs their probative value.  Proving as much, Avadel did not
even ask for Jazz to supplement its production with documents post-dating LUMRYZ's launch until
Jazz asked Avadel to do so.

For the reasons articulated above and on the meet and confer, any supplementation from Avadel
must include custodial email searches.  Avadel's proposed "go-get" production would be incomplete
because that production would provide little more information than its data, which Avadel will
supplement later this month.  Avadel expressed its view that Jazz ought to conduct a custodial email
search as well, if Avadel did so.  But production parity makes little sense when Avadel's documents
are far more relevant.  No part of Federal Rule of Civil Procedure 26 requires parity for its own sake.

If any post-collection information from Jazz is relevant, that information could be gleaned from non-custodial documents.

We left the call yesterday with an agreement to speak with our clients about whether the following framework would be workable:  (1) Avadel collects, reviews, and produces both custodial email documents from five custodians and "go-get" documents, and (2) Jazz collects, reviews, and produces "go-get" documents.  As we explained, it makes little sense to hash out the specifics of search terms and non-custodial sources until the parties can agree on a framework.  If Avadel refuses to produce emails, or insists that any email production will be done by both parties, the parties will be at impasse.

We have discussed with Jazz.  Jazz agrees with this framework.  Jazz reserves the right to object to specific "go-get" searches; indeed, some of Avadel's categories are not "go-get" searches at all, but would instead require search terms and potentially custodial document review.  Jazz is not presently committing to produce any specific document or category of documents.  But, Jazz is willing to commit to produce some non-custodial documents, provided that Avadel will do the same and will conduct custodial collections, review, and productions for the five custodians identified in my August 30 letter.

Please provide your response by 6:00 PM ET today.  Absent Avadel's agreement to this framework, the parties are at impasse.  We will send a revised joint letter, noticing the dispute for the Court.  We would file that letter this week.

Thanks,

**Nic Siebert**
he/him
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP

51 Madison Avenue, 22nd Floor
New York, NY 10010
212-849-7326 Direct
212-849-7000 Main Office Number
212-849-7100 FAX
nicolassiebert@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

_____

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or

received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.