**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| JAZZ PHARMACEUTICALS, INC., | ) ) ) | REDACTED PUBLIC VERSION FILED OCTOBER 3, 2024 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| | ) | C.A. No. 22-941-GBW |
| AVADEL CNS PHARMACEUTICALS, LLC, | ) ) | |
| | ) | ▮▮▮▮▮▮▮▮▮▮▮ |
| Defendant. | ) ) | |
| | ) ) ) ) | |

**AVADEL CNS PHARMACEUTICALS, LLC'S**
**MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S ORDER**
**REGARDING PRODUCTION DEADLINE**

The Court's discovery Order, issued at 2:26 p.m. ET on Monday, requires that Avadel make supplemental, custodial productions by Friday, September 27.[1]  D.I. 162.  But it is simply not feasible to review voluminous documents for responsiveness and privilege in less than five days, no matter how many resources Avadel devotes to the effort, and especially when the parties have not yet aligned on search terms.  Indeed, yesterday afternoon, Jazz rejected the search terms that Avadel had proposed and that would have produced a review population of 90,485 documents.  Decl. of Anna M. Rathbun in Supp. of Avadel's Mot. for Partial Recons. of the Court's Order Regarding Produc. Deadline ("Rathbun Decl.") ¶ 4.  Avadel's vendor determined last night that Jazz's counterproposal hit upon an even larger review population of 126,483 documents.  *Id*. ¶ 5.

Given these circumstances, and pursuant to Local Rule 7.1.5, Avadel respectfully requests that the Court reconsider the aspect of its Order requiring production by September 27, 2024, D.I. 162 at 2, which is not possible.  Avadel does not seek reconsideration of any other aspect of the Court's Order, and merely requests the same production date that Jazz itself requested: October 25, 2024.  D.I. 158-1, Ex. 4 at 1  ("Jazz renews its request that Avadel supplement its document productions by **October 25, 2024** to include documents dated after June 2023.").

## I.      INTRODUCTION

Less than a month before the September 27, 2024 fact discovery cut-off in this case, Jazz requested that Avadel produce over a year's worth of custodial documents for five people: (1) Greg Divis, (2) Jennifer Gudeman, (3) Richard Kim, (4) Scott Macke, and (5) David O'Brien.  D.I. 158-1, Ex. 4 at 1-2.

On September 23, 2024, this Court ordered that Avadel produce its responsive "post-June

---

[1] For purposes of this motion, "Avadel" means Avadel CNS Pharmaceuticals, LLC; "Jazz" means Jazz Pharmaceuticals, Inc.; and "Order" means the Court's September 23, 2024 order entered in this case at D.I. 162.

2023 custodial documents" on or before Friday, September 27, 2024.  D.I. 162.  Since receiving the Court's Order on September 23, Avadel has acted diligently to comply by working to put a review team in place and developing search terms that will quickly provide Jazz with the documents it requested in its motion.  Yesterday morning, less than forty-eight hours after the Order was issued, Avadel sent Jazz proposed search terms with hit counts showing a review universe of 90,485 documents.  Rathbun Decl. ¶ 4.  Yesterday afternoon, Jazz rejected those search terms and provided a counterproposal that expanded the documents Avadel would be required to review to 126,483.  *Id*. ¶ 5.  Avadel is willing to work with Jazz in good faith to agree upon a reasonable set of search terms consistent with the Court's Order.

But Avadel cannot make a full custodial production by September 27, 2024.  To do so would require Avadel's counsel to produce what are likely to be many thousands of documents without having undertaken *any* meaningful responsiveness or privilege review at all.  The potential mass disclosure of privileged material would obviously inflict manifest injustice on Avadel.

Avadel respectfully requests that the Court set a new production deadline of October 25, 2024.  This is the production date that Jazz itself proposed.  D.I. 158-1, Ex. 4 at 1.  It provides ample time for Jazz to review and analyze these documents before the deadline for submitting dispositive motions and cross-examining Avadel's witnesses at trial—the purposes for which Jazz requested these documents in the first place.  *Id*. at 2.

Because requiring a custodial production of potentially tens of thousands of documents in the span of days would cause manifest injustice to Avadel, Avadel respectfully requests that this Court amend its Order to extend Avadel's production deadline to October 25, 2024.

## II.     FACTS AND PROCEDURAL HISTORY

On July 19, 2024, Jazz asked for a supplemental production of documents "on the effect of authorized generic and multi-source generic competition on Avadel's pricing for LUMRYZ and Avadel's sales of LUMRYZ." D.I. 158-1, Ex. 3 at 2.  Jazz's request made no reference to custodial documents and did not identify any custodians from which Jazz sought documents.  *Id*. at 2-3. During the parties' August 13 meet and confer, Avadel asked Jazz to propose specific categories of documents (or search terms) to narrow the scope of their request.  Two and a half weeks later, Jazz responded to Avadel in a letter in which it expanded the scope of its requests and demanded, for the first time, that Avadel agree to make a full custodial production of "post-launch" documents "by **October 25, 2024**."  *Id*. Ex. 4 at 1.

On September 9, 2024, Avadel countered Jazz's request by proposing that the parties exchange categories of non-custodial "go-get" documents.  *Id*. Ex. 5 at 1, 3-4.  During a meet and confer the next day, the parties discussed whether they could come to an agreement on the scope of both parties' productions.  Jazz pushed a discussion of search terms aside until *after* the parties had agreed on a production framework.  *Id*. Ex. 6 at 8 ("As [Jazz] explained, it makes little sense to hash out the specifics of search terms and non-custodial sources until the parties can agree on a framework.").  The parties were unable to arrive at a solution and, on September 13, 2024, brought this dispute to the Court.  D.I. 154.

Pursuant to this Court's order, D.I. 155, Jazz filed a motion to compel "supplemental **custodial documents** (including emails) post-dating the June 2023 launch of LUMRYZ."   D.I. 158 at 1 (emphasis added).[2]  Contrary to Jazz's representation, Avadel never "refused" to "run

---

[2] During the parties' September 24, 2024 meet and confer, Jazz requested that on top of the custodial productions Avadel has agreed to make, it must produce additional go-get documents. Jazz did not request go-get documents in its motion. *See, e.g.*, D.I. 158 at 2 ("Avadel's post-launch

search-term 'hit reports.'" D.I. 158.  In its opposition to Jazz's motion, which was filed two days

later, D.I. 161, Avadel explained that it was still working with its document vendor to process

hundreds of gigabytes of data that had been collected, *id*. at 3 n.1, from the five custodians Jazz

identified for the first time in its August 30 letter.  D.I. 158-1, Ex. 4 at 2.  During the parties'

September 24, 2024 meet and confer, Jazz itself admitted that it only determined that it would be

able to satisfy all of Avadel's requests with go-get documents rather than custodial productions

*after* briefing on both parties' motions to compel was complete.  *See* D.I. 160 at 2 (telling the Court

as late as September 19, 2024, that "some of Avadel's categories are not 'go-get' searches at all,

but would instead require search terms and potentially custodial document review").  Jazz did not

file a proposed order with its motion, D.I. 158.  Had it done so or otherwise requested a September

27 production date, Avadel would have taken the opportunity to explain why that production date

is unrealistic.

On September 23, 2024, the Court ordered Avadel to "make its responsive document

production" of "post-June 2023 custodial documents" on or before "September 27, 2024," the fact

discovery deadline in this case.  D.I. 162.  The Court also ordered Jazz to produce go-get

documents by September 27, and, based on Jazz's representation that some categories of

documents Avadel had requested would require custodial searches, allowed Avadel to renew its

motion as to those documents by October 4.  *Id.*

Avadel contacted Jazz on the same day as the Court's Order, proposing a framework for

Avadel's custodial production, asking Jazz to provide further information about the categories of

---

**custodial documents** are highly relevant" (emphasis added)); *id*. ("Avadel's **custodial documents, as opposed to centralized 'go-get' documents**, are particularly relevant" (emphasis added)); *id*. at 3 ("Avadel should be ordered to supplement its documents productions **with post-June 2023 custodial documents**." (emphasis added)).  This Court's Order only requires Avadel to produce custodial documents from the five custodians Jazz has identified.  D.I. 162.  Avadel will make productions in line with the Court's Order.

documents it contended would require a custodial search, and asking whether Jazz would stipulate that both parties complete their productions by the date Jazz itself suggested, October 25, 2024. The parties met and conferred about the Court's Order on the evening of September 24, 2024.

Avadel was disappointed when Jazz refused to stipulate to its own previously suggested production deadline of October 25, 2024. Jazz knows that Avadel cannot meet the Order's current deadline of September 27, 2024, and it did not suggest otherwise. Instead, during the meet and confer, Jazz sought to leverage the Order by suggesting that Avadel avoid the Order's impossible requirement by agreeing to stay its antitrust case, thus delaying—potentially by years—resolution of its meritorious claims. (Jazz has since filed yet another, unwarranted brief in pursuit of a stay, in which it mischaracterizes Avadel as seeking to extend the deadline for its own "convenience." D.I. 164 at 2.)

The refusal to stipulate is all the more regrettable because the parties have otherwise worked cooperatively and with due flexibility to accommodate fact discovery, even beyond the technical cut-off date of September 27, while preserving the existing schedule. For example, Jazz requested last Friday that Avadel agree to move the deposition of an Avadel witness to the "second half of October," so that Jazz could have the benefit of documents from her past employer at the time of her deposition. Rathbun Decl., Ex. A. Jazz justified that request on the ground that a third party it had subpoenaed back in July had yet to make document productions. *Id*. Avadel quickly agreed, and the parties settled on a deposition date of October 30—five days after the document production deadline that Jazz had previously suggested and that Avadel proposes here. *Id*. Moreover, Avadel has agreed to depose three Jazz witnesses in October: Roberta Bongers (October 1), Jana Gold (October 8), and Diana Pohle (October 22). These events in October are consistent with the schedule, which calls for first expert reports on November 8, 2024, and dispositive

motions, if any, by April 4, 2025.  D.I. 88.

Yesterday morning, Avadel sent a proposed list of search terms to Jazz.  These terms hit on 90,485 documents after deduplication.  Rathbun Decl. ¶ 4.  Jazz's counterproposal hit on 126,483 documents to review.  *Id.* ¶ 5.  Avadel is already assembling a team of more than thirty contract reviewers, at a minimum, so that it can begin reviewing documents for responsiveness and privilege as soon as the parties come to an agreement on search terms.  *Id.* ¶ 4.

## III.   ARGUMENT

An order may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).  Reargument is also justified if the Court "has made an error not of reasoning but of apprehension."  *TQ Delta LLC v. Dish Network Corp.*, Civil Action No. 15-614-GBW, 2024 WL 1112191, at *1 (D. Del. Mar. 14, 2024).

While the due date for the proposed production was not a focus of the parties' letter briefing, the belief that it is feasible for Avadel to make the requisite custodial productions by Friday is an error of apprehension that falls squarely within Local Rule 7.1.5.  Regardless, if Avadel were required to produce tens of thousands of custodial documents by this Friday, manifest injustice would ensue for two reasons.

*First*, the Order did not account for the fact that multiple steps must be put into place before Avadel can make a production.  Avadel must: (1) confer with Jazz and reach an agreement on search terms, (2) assemble a contract review team, which includes clearing conflicts for more than

6

thirty contract attorneys, (3) train that contract review team, (4) review all documents hitting on the agreed-to search terms for privilege and responsiveness, (5) conduct a second-level review of these documents, and (6) process and Bates-stamp these documents for production.  While this process is already well underway, it necessarily takes time.  Avadel is already in the midst of assembling its contract review team.  Depending on where the parties land in their search term negotiations, Avadel estimates that it will need anywhere from 3,144 to 4,414 hours to conduct first-level review.  Rathbun Decl. ¶¶ 4-5.  On top of this, Avadel requires time to run second-level review quality checks, work through any production hiccups that may arise, and process and Bates-stamp these documents for production.

Avadel's request for additional time is entirely reasonable in light of the volume of review it must conduct, Jazz's previous proposal of an October production date, and the fact that Avadel's proposed date is before the date of the final deposition of an Avadel witness in this case, which Avadel rescheduled at Jazz's request.  Rathbun Decl., Ex. A.  *See, e.g.*, *Rimini v. J.P. Morgan Chase & Co.*, No. 22-7768, 2022 WL 17345053, at \*2 (S.D.N.Y. Nov. 30, 2022) ("[T]he Court is ordinarily willing to consider discretionary requests for extensions of the deadlines it has imposed.")

The fact that this dispute came before the Court shortly before the discovery cut-off in this case is no fault of Avadel's.  Jazz has had more than a year since the launch of LUMRYZ on June 5, 2023 to request supplemental documents from Avadel.  But Jazz chose to wait and request broad, post-launch custodial productions for the first time on August 30, 2024.  D.I. 158-1, Ex. 4.  Avadel responded to this request promptly and began collecting and processing documents as soon as it learned Jazz would not agree to a production of go-get documents in lieu of a custodial production.  *See id*. Ex. 5.  Jazz's delay should not be rewarded by requiring Avadel to comply with impossibly

tight production deadlines, especially when Avadel is moving expeditiously towards a production.

*Second*, in order to determine whether the documents Avadel collected and processed contain information that needs to be redacted or withheld on the basis of attorney-client or attorney work product privileges, Avadel requires additional time to review and evaluate these documents before production. *See, e.g.*, *UPMC v. CBIZ, Inc.*, No. 3:16-CV-204, 2018 WL 2107777, at *2-3 (W.D. Pa. May 7, 2018) (holding that requiring "the production of plainly privileged documents in violation of the attorney-client privilege would result in manifest injustice" and emphasizing that this is especially true where potentially privileged materials consist of a large "volume and variety"); *see also Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 89-90 (3d Cir. 1992) (holding that the attorney-client privilege is the "oldest confidential communications privilege known to the common law" and that documents falling within the scope of this privilege are "zealously protected").

To require Avadel to make extensive custodial productions without allowing sufficient time for privilege review would put it in an untenable situation. *Haines*, 975 F.2d at 89 (explaining that the attorney-client, attorney work product, and joint defense privileges are "grounded in ethics, endorsed by centuries of tradition and enforced by codes of professional conduct and professional responsibility."). Lawyers have an ethical obligation to preserve confidentiality within the scope of the attorney-client relationship. *See, e.g.*, Am. Bar Ass'n Model Rules of Professional Conduct, Rule 1.06. Avadel's counsel cannot produce large volumes of documents without having first undertaken a meaningful privilege review. *See, e.g.*, *Irth Sols., LLC v. Windstream Comm'cns LLC*, No. 16-219, 2017 WL 3276021, at *13-14 (S.D. Ohio Aug. 2, 2017) (attorneys "made critical and reckless mistakes" in the absence of "any meaningful review of the documents"); *Mendenhall v. Barber-Greene Co.*, 531 F. Supp. 951, 955 (N.D. Ill 1982) ("Mendenhall's lawyer . . . might

8

well have been negligent in failing to cull the files of the letters before turning over the files").

## IV.    CONCLUSION

For the foregoing reasons, Avadel respectfully requests that this Court reconsider the production deadline in its Order, D.I. 162, and permit Avadel to produce the custodial documents requested by Jazz on or before October 25, 2024.


Dated: September 26, 2024                           MCCARTER & ENGLISH, LLP

                                                    By: */s/ Daniel M. Silver*
                                                    Daniel M. Silver (#4758)
                                                    Alexandra M. Joyce (#6423)
                                                    405 N. King Street, 8th Floor
                                                    Wilmington, DE 19801
                                                    (302) 984-6300
                                                    dsilver@mccarter.com
                                                    ajoyce@mccarter.com

                                                    Kenneth G. Schuler
                                                    Marc N. Zubick
                                                    Sarah W. Wang
                                                    Alex Grabowski
                                                    LATHAM & WATKINS LLP
                                                    330 N. Wabash Avenue, Suite 2800
                                                    Chicago, IL 60611
                                                    Telephone: (312) 876-7700
                                                    kenneth.schuler@lw.com
                                                    marc.zubick@lw.com
                                                    sarah.wang@lw.com
                                                    alex.grabowski@lw.com

                                                    Herman H. Yue
                                                    LATHAM & WATKINS LLP
                                                    1271 Avenue of the Americas
                                                    New York, NY 10020
                                                    (212) 906-1200
                                                    Herman.Yue@lw.com

9

Ian R. Conner
Alan J. Devlin
Anna Rathbun
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Washington, D.C. 20004
(202) 637-2200
Ian.Conner@lw.com
Alan.Devlin@lw.com
Anna.Rathbun@lw.com

Daralyn J. Durie
Eliot A. Adelson
Helen He
Margaret A. Webb
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
eadelson@mofo.com
hhe@mofo.com
mwebb@mofo.com

Kira A. Davis
W. Henry Huttinger
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5200
kiradavis@mofo.com
hhuttinger@mofo.com

Alexander Okuliar
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037, USA
(202) 887-1500
aokuliar@mofo.com

*Attorneys for Defendant*

10

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that true and correct copies of the foregoing document were caused to be served on September 26, 2024 on the following counsel in the manner indicated below.

### VIA EMAIL:

Jack B. Blumenfeld
Jeremy Tigan
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

William R. Sears
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Willsears@quinnemanuel.com

F. Dominic Cerrito
Eric C. Stops
Evangeline Shih
Andrew S. Chalson
Gabriel P. Brier
Frank C. Calvosa
Steig D. Olson
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
nickcerrito@quinnemanuel.com
ericstops@quinnemanuel.com
evangelineshih@quinnemanuel.com
andrewchalson@quinnemanuel.com
gabrielbrier@quinnemanuel.com
frankcalvosa@quinnemanuel.com
steigolson@quinnemanuel.com

*Attorneys for Plaintiff Jazz Pharmaceuticals, Inc.*

ME1 50025890v.1

Dated: September 26, 2024                    */s/ Daniel M. Silver*
                                             Daniel M. Silver (#4758)