IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAZZ PHARMACEUTICALS, INC., | ) |
| | ) |
| Counterclaim-Defendant, | ) |
| | ) |
| v. | ) C.A. No. 22-941 (GBW) |
| | ) |
| AVADEL CNS PHARMACEUTICALS LLC, | ) |
| | ) |
| Counterclaim-Plaintiff. | ) |

**JAZZ'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS
SUPPLEMENTAL MOTION TO STAY**

OF COUNSEL:

F. Dominic Cerrito
Steig D. Olson
Gabriel P. Brier
Frank C. Calvosa
Avi Grunfeld
Nicolas Siebert
Andrew Faisman
Maxwell Hawley
Kevin Adams
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000

William R. Sears
Monika Hara
Lynette Lim
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Counterclaim-Defendant
Jazz Pharmaceuticals, Inc.*

Confidential Version Filed: October 7, 2024
Public Version Filed: October 16, 2024

# **TABLE OF CONTENTS**

**Page**

I. NATURE AND STAGE OF THE PROCEEDINGS ............................................................1

II. SUMMARY OF ARGUMENT ..........................................................................................2

III. ARGUMENT......................................................................................................................4

    A. The Court's Injunction Opinion Demonstrates That LUMRYZ Would Have Been Enjoined From Entering The Narcolepsy Market In April 2022 ..........4

        1. Jazz Would Have Made A Strong Showing Of Irreparable Harm...............4

        2. Jazz Would Have Made A Strong Showing Of The Inadequacy Of Legal Remedies...........................................................................................5

        3. The Balance Of The Equities Would Have Tilted in Jazz's Favor..............6

        4. The Public Interest Would Have Tilted In Jazz's Favor..............................7

    B. It Is Impractical To Proceed With Discovery While The Scope Of Jazz's Relief For Avadel's Infringement Is Unsettled.........................................................9

IV. CONCLUSION.................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*eBay Inc. v. MercExchange, LLC*,
   547 U.S. 388 (2006)..................................................................................................................4

*In re Lipitor Antitrust Litig.*,
   2024 WL 2866654 (D.N.J. June 6, 2024) ............................................................................7, 8

*Masimo Corp. v. Philips Elecs. N. Am. Corp.*,
   2010 WL 925864 (D. Del. Mar. 11, 2010) ...............................................................................4

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
   59 F.3d 1142 (Fed. Cir. 2011)...................................................................................................6

## **Statutes**

28 U.S.C. § 1292(b) ........................................................................................................................1

35 U.S.C. § 154(a)(1).....................................................................................................................9

I.      **NATURE AND STAGE OF THE PROCEEDINGS**

Avadel's antitrust counterclaims allege that if Jazz had not listed U.S. Patent No. 8,731,963 ("the '963 patent") in the FDA's Orange Book in 2014, then the FDA would have approved LUMRYZ in October 2021 and Avadel would have begun selling LUMRYZ by April 2022, before its actual launch date in June 2023.

Jazz filed a supplemental motion to stay this action. Jazz explained that Avadel lacks antitrust standing in light of the jury's verdict upholding the validity of U.S. Patent No. 11,147,782 ("the '782 patent"), because the alleged earlier entry of LUMRYZ would have been unlawful as it would have infringed a valid patent. D.I. 80, 84. On May 24, 2024, the Court issued an opinion holding that an alleged earlier entry that would have infringed a valid patent may serve as the basis for antitrust standing if the plaintiff establishes: "that (1) an injunction would not have issued against the plaintiff's infringement, and (2) the plaintiff would have entered the relevant market even if it had to pay a hypothetical damages award for its infringement." D.I. 94 at 21.[1] The Court indicated it would rule on Jazz's supplemental motion to stay after it resolved Jazz's motion for a permanent injunction in the related patent case, and stated that more briefing or argument from the parties may be instructive. *Id.* at 22 & 22 n.8; Ex. A at 126:9-23; *see also* D.I. 182.

On August 27, 2024, the Court enjoined Avadel from making, selling, or using LUMRYZ, except for narcolepsy (for which LUMRYZ is already on the market), and granted Jazz an ongoing royalty as compensation for Avadel's infringing sales to narcolepsy patients. C.A. No. 21-691,

---

[1] Jazz disagrees with this holding, and filed a motion for reargument or, in the alternative, interlocutory appeal pursuant to 28 U.S.C. § 1292(b). D.I. 100, 114. As explained there and in Jazz's supplemental motion to stay (D.I. 80, 84), Avadel lacks antitrust standing to bring its delayed-entry antitrust claims under binding Third Circuit law regardless of what the remedy may be for Avadel's infringement, either in the actual world or in the but-for world. Nevertheless, even if the Court's holding stands, a stay is warranted at this juncture for the reasons set forth herein.

D.I. 665 ("Injunction Opinion," or "Injunction Op."). Avadel has appealed the Court's permanent injunction order to the Federal Circuit. C.A. No. 21-691, D.I. 678. The Federal Circuit has set oral argument for February 2025, and partially stayed the injunction only insofar as it prevents Avadel from "initiating new clinical trials or studies." C.A. No. 21-691, D.I. 714. The ongoing royalty has not yet been decided, and the reasonable royalty for past damages remains subject to post-trial briefing. C.A. No. 21-691, D.I. 687, 690.

Avadel has agreed to stay the trade secrets case between the parties. C.A. No. 22-487, D.I. 138. Yet Avadel refuses to stay proceedings in this action, even while delaying discovery when convenient for its own legal team. For example, Avadel unilaterally chose to postpone the deposition of a Jazz executive in this case so that its counsel could focus on the injunction appeal in the patent case. *See* Ex. B. Avadel also recently sought and obtained a one-month extension of the Court's deadline for supplementing discovery. *See* Ex. C; D.I. 168, 176.

On October 4, 2024, the Court granted Jazz's motion for leave to file this brief. The Court noted that, having issued the Injunction Opinion, it "agrees with Jazz that supplemental briefing will aid the Court in resolving the merits of Jazz's supplemental motion to stay." D.I. 182.

## II.     SUMMARY OF ARGUMENT

Jazz has previously explained that, unless the jury's verdict is overturned, Avadel lacks antitrust standing because the alleged earlier launch of LUMRYZ would have infringed a valid patent. D.I. 80, 84, 100, 114. Now, in light of recent developments, there are two additional and independently sufficient reasons that the Court should grant Jazz's supplemental motion to stay.

*First*, Avadel's claims cannot proceed under the standard for antitrust standing the Court set forth in its May 24, 2024 opinion. Based on the reasoning of the Court's Injunction Opinion, a court would have enjoined Avadel from making, selling, or using LUMRYZ for narcolepsy in April 2022, the date of Avadel's alleged earlier entry. Authorized generic versions of XYREM

were not yet available at that time, and Jazz was the only company selling oxybate products in the narcolepsy market. Jazz had recently launched XYWAV, such that XYWAV's nascent position in the narcolepsy market in April 2022 was similar to its position in the IH market today. Jazz's showing of irreparable harm and the inadequacy of legal remedies would thus have been even stronger in April 2022. The balance of the equities would also have tilted heavily in Jazz's favor, including because Jazz's unexpired Orphan Drug Exclusivity ("ODE") barred LUMRYZ from entering the market. Furthermore, LUMRYZ had not launched as of April 2022, and it would make little sense to conclude that the public interest favored the initial entry of an infringing drug that was not yet on the market. *See* Ex. A at 74:7-17. And the FDA materials that the Court considered in concluding that the public interest favors Avadel ***did not exist*** in April 2022, and therefore could not have factored into a court's determination.

*Second*, expert discovery is contingent on Jazz's real-world injunction and royalties award, which will likely remain unresolved until at least February 2025. The Court previously determined that Avadel's antitrust standing depends on the injunctive relief or royalties Jazz would have obtained at the time of Avadel's hypothetical launch, and that the injunction and royalties Jazz actually obtains are relevant to this analysis. But the scope of the injunction is on appeal, and both the future ongoing royalty and the reasonable royalty for past damages remain in dispute. Accordingly, proceeding on the current schedule would be an enormous waste of the Court's and the parties' resources. Opening expert reports are due on November 8, and the parties are about to spend millions on multiple rounds of expert reports and depositions. Much of this expert discovery, along with dispositive briefing and *Daubert* challenges, would likely need to be redone if the scope of Jazz's injunction or royalty changes. This case thus presents a textbook example of a situation where a stay will eliminate or reduce the need for costly and unnecessary discovery.

**III.   ARGUMENT**

  **A.   The Court's Injunction Opinion Demonstrates That LUMRYZ Would Have Been Enjoined From Entering The Narcolepsy Market In April 2022**

The Court's Injunction Opinion demonstrates that Jazz would likely have obtained an injunction blocking Avadel's launch of LUMRYZ in April 2022 under the test set forth in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006). The strong likelihood that Avadel lacks antitrust standing favors staying this case, because further discovery "will ultimately prove unnecessary." *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 2010 WL 925864, at *3 (D. Del. Mar. 11, 2010).

    **1.   Jazz Would Have Made A Strong Showing Of Irreparable Harm**

As the Court observed, Avadel's sales of LUMRYZ for narcolepsy have caused Jazz irreparable harm in the actual world. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

The evidence of irreparable harm would have been even stronger in April 2022. Authorized generic versions of XYREM were not yet available, as they only entered the market in January 2023.[2] Jazz was the only company that sold oxybate products to treat narcolepsy in April 2022, and Jazz was diligently working to increase sales of XYWAV due to the benefits of its reduced sodium content. Since XYWAV had launched as the first low-sodium oxybate product only 17 months prior, in November 2020,[3] XYWAV was even more nascent than it is in the IH market today. Thus, at least as much for IH today, Jazz was the "market leader" for narcolepsy in

---

[2] Hikma Pharmaceuticals, *Hikma launches authorized generic of Xyrem® (sodium oxybate) in the US*, available at https://www.hikma.com/news/hikma-launches-authorized-generic-of-xyrem-sodium-oxybate-in-the-us/.

[3] Jazz Pharmaceuticals, *Jazz Pharmaceuticals Announces Third Quarter 2020 Financial Results*, available at https://investor.jazzpharma.com/news-releases/news-release-details/jazz-pharmaceuticals-announces-third-quarter-2020-financial.

April 2022 and was at a "crucial inflection point." *See* Injunction Op. 23. Similar to the Court's reasoning for IH, "Avadel's entrance into the market would strip Jazz of a unique selling point critical to growing its reputation and goodwill," especially with respect to XYWAV. *See id.*

Moreover, the considerations that tempered the Court's assessment of Jazz's showing of harm to goodwill did not exist in April 2022. A court would not have found that Jazz's showing of irreparable harm was "undermined to a degree" by generic competition, which was not yet present in the market. Injunction Op. 5. The Court also found that an injunction today "will not stop doctors and patients from associating the innovation of LUMRYZ with Avadel," or could even *harm Jazz's* reputation "if doctors know they're trying to keep Lumryz from new patients" who had not yet been prescribed LUMRYZ despite its launch. Injunction Op. 8 (alterations omitted). But that reasoning would not apply in April 2022, when LUMRYZ had not yet been approved by the FDA, marketed to doctors, or sold to patients.

For the reasons described in the Court's Injunction Opinion, there would also have been a sufficiently strong causal nexus between Jazz's irreparable harm and Avadel's infringement. *See* Injunction Op. 8-11. LUMRYZ "wholly infringe[ed] claim 24, which mean[t] that Avadel could not launch Lumryz as a commercial product without Jazz's invention." Injunction Op. 9.

### 2. Jazz Would Have Made A Strong Showing Of The Inadequacy Of Legal Remedies

"The second *eBay* factor is nearly indistinguishable from irreparable injury." Injunction Op. at 11 (citation omitted). Because Jazz's showing of irreparable injury as to the narcolepsy market would have been stronger in April 2022, it follows that Jazz's showing that legal remedies are inadequate as to the narcolepsy market would have been stronger as well. The Court's analysis of this factor also highlights that it would favor Jazz more strongly at a time when Jazz's products were the only oxybate treatments for narcolepsy. Like LUMRYZ's proposed entry into the IH

5

market, a first-time entry of LUMRYZ into the narcolepsy market in April 2022 would have "significantly change[d] the relevant market." *See* Injunction Op. 24.

Moreover, Avadel was far less likely to have been able to adequately compensate Jazz for its infringement through monetary damages in April 2022 than today. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. And Avadel's market capitalization in April 2022 was less than a third of what it is today. Ex. F. Thus, Avadel's "questionable financial condition" in April 2022 would have necessitated an injunction. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155 (Fed. Cir. 2011) ("A district court should assess whether a damage remedy is a meaningful one in light of the financial condition of the infringer[.]").

### 3.   The Balance Of The Equities Would Have Tilted in Jazz's Favor

Although the Court found that the balance of the equities tilts in Avadel's favor as to the narcolepsy market today, that factor would have broken in Jazz's favor in April 2022. At that time, the FDA had just recently, in June 2021, recognized XYWAV as being clinically superior and therefore granted ODE to Jazz. D.I. 48-1 Ex. B at 15. A court would have recognized the importance of Jazz's newly-granted ODE—a lawful exclusivity that Congress created in the Orphan Drug Act of 1983 as a reward and "financial incentive" for the development of drugs that treat underserved patients. Pub. L. No. 97-414, § 1(b)(5), 96 Stat. 2049 (1983) (Congressional findings noting that, otherwise, "there is reason to believe that some promising orphan drugs will not be developed"). By contrast, LUMRYZ could not launch in April 2022, because the FDA had not yet determined that (in its view) LUMRYZ's launch should be permitted over Jazz's unexpired ODE, and Avadel therefore would not have been meaningfully harmed by an injunction.

Avadel can only resort to theorizing that, somehow, the FDA would have decided by April 2022 to make a finding of clinical superiority and "break" Jazz's ODE. But "nothing in the record

aside from speculation" supports the notion that the FDA would have done that by April 2022. *In re Lipitor Antitrust Litig.*, 2024 WL 2866654, at *23-27 (D.N.J. June 6, 2024) (rejecting "speculative" arguments that the FDA would have accelerated its review process). Instead, as of April 2022 the most recent conclusion of the FDA's internal experts was that Avadel had provided "***no evidence***" of clinical superiority, and thus had no basis to overcome Jazz's ODE. Ex. G at 12 (emphasis added). Even months *after* April 2022, in July 2022, the FDA was still not convinced that Avadel had demonstrated clinical superiority, stating that "the orphan drug exclusivity issues associated with this application remain under review." Ex. H. The available evidence thus shows that the FDA would *not* have concluded by April 2022 that LUMRYZ "breaks" Jazz's ODE.

The balance of the equities would also have tilted in Jazz's favor because Jazz had the only oxybate products in the market in April 2022, and was in the midst of a critical period soon after XYWAV's launch, when it was working to offer patients its safer, lower-sodium product. Thus, as for IH today, Jazz was clearly "working to grow its position and reputation" in the narcolepsy market and had "a pointed interest in protecting its market exclusivity." *See* Injunction Op. 25. Meanwhile, Avadel's hypothetical launch of LUMRYZ would have violated Jazz's '782 patent property rights and Jazz's ODE regulatory exclusivity rights.

### 4. The Public Interest Would Have Tilted In Jazz's Favor

The public interest as to the narcolepsy market would have favored Jazz in April 2022 as well. As the Court recognized, it would make little sense to conclude that the public interest favored Avadel at a time when it was not on the market because, under that reasoning, any infringing drug could seek to enter the market at any time. *See* Ex. A at 74:7-17 ("[I]f you don't put some limit on it at some point then that's just opening the door for infringement."). In fact, Avadel itself argued that whether a drug is present on the market factors into the public interest when it opposed an injunction in 2024. *See* C.A. No. 21-691, D.I. 601 at 1 ("An injunction taking

7

a clinically superior drug off the market is not in the public interest."). For example, Avadel pointed to the experience of patients who had been taking LUMRYZ after it launched (*id.* at 7-9) and expressed a concern that current patients could be deprived of LUMRYZ (*id.* at 10), to argue that the public interest tilted in its favor. Those arguments were not available in April 2022.

The Court's finding that the public interest favors Avadel today also heavily relied on the FDA's **May 2023** finding that LUMRYZ is clinically superior. But, aside from naked speculation, nothing suggests that the FDA would have concluded that LUMRYZ is clinically superior and "breaks" Jazz's ODE by April 2022. *See supra* Section III.A.3. What the available evidence actually shows is that, as of April 2022, the FDA concluded that Avadel had provided "no evidence" of clinical superiority. Ex. G at 12. If anything, had the FDA reached a decision on ODE by April 2022, it would have declined to approve LUMRYZ. *Cf. Lipitor*, 2024 WL 2866654, at *27 ("Plaintiffs' argumentation also works against them," because "[i]n an alternate world, it is just as likely" that the FDA would have reached the opposite decision).

It is true that Avadel *later* provided more evidence regarding ODE, and the FDA made a finding of clinical superiority in May 2023. The FDA did so after considering, among other things, Avadel's additional evidence and the opinions of "agency sleep experts" from an **April 2023** consult that the Court referenced in its Injunction Opinion. Injunction Op. 17, 19; *see* Ex. I. But the fact that the FDA ultimately changed its opinion only underscores that it had not done so as of the relevant timeframe—April 2022. As of that time, the FDA still considered Avadel's arguments for "breaking" Jazz's ODE to be insufficient, the FDA had not reached its May 2023 finding of clinical superiority, and the April 2023 consult by "agency sleep experts" did not exist.

To the extent Avadel would have made any showing of a public interest in the entry of LUMRYZ into the narcolepsy market in April 2022, it would have been "insufficient to outweigh

8

the public's interest in enforcing patent rights and encouraging innovation," as the Court found is true for the IH market today. *See* Injunction Op. 29. As the Court recognized, "[t]he heart of the patent grant is the right to exclude," and undermining that right erodes the incentive for companies such as Jazz to invest in innovation. *See* Injunction Op. 15 (citing 35 U.S.C. § 154(a)(1)). In April 2022, that reasoning would have applied even more forcefully, because Jazz's '782 patent property rights were accompanied by its ODE regulatory exclusivity, which provides a crucial incentive for the development of drugs that treat underserved patients.

**B.     It Is Impractical To Proceed With Discovery While The Scope Of Jazz's Relief For Avadel's Infringement Is Unsettled**

Absent a stay, it is impossible to fully complete discovery, and it is all but guaranteed that parts of discovery will need to be reopened. After all, the Court has indicated that its determination as to whether Avadel has antitrust standing will be based, in part, on the scope of the injunction and the royalty awarded to Jazz in the patent case. D.I. 94 at 22 n.8; *see also* Ex. A at 126:9-23; D.I. 182. But Avadel has appealed the Court's injunction order, and oral argument before the Federal Circuit will take place in February 2025. C.A. No. 21-691, D.I. 714. The parties are also disputing the royalty rate to compensate Jazz for Avadel's continued infringing sales to narcolepsy patients (and will further brief challenges to the jury's royalty determination in post-trial motions). C.A. No. 21-691, D.I. 687, 690. Thus, the material issues underpinning whether Avadel has antitrust standing—the scope of the injunction, the royalty rate, and the legal standard that the Court will apply—will not be settled for months, if not longer.

That places the parties in an untenable position because, if the case proceeds, Avadel's antitrust standing will remain a primary focus of discovery. Both Jazz's and Avadel's experts will need to prepare expert reports and offer deposition testimony regarding the antitrust standing issues raised by Avadel's infringement of Jazz's valid '782 patent. Opening expert reports are due on

November 8—less than two weeks after the October 28 deadline for the parties to complete this supplemental briefing, and months before the Federal Circuit will decide Avadel's appeal. Proceeding with expert discovery thus runs a high risk that the parties will need to re-do expert reports, other discovery, dispositive motions, and *Daubert* briefing.

Avadel would not be harmed by a stay, because Avadel seeks only monetary damages. Nor is there any risk of prejudice to Avadel in the form of loss of documents or testimony. Fact discovery closed on September 27. Only a few depositions and limited document supplementation remain, and they will be complete by the end of October.

Avadel's own conduct shows a stay is warranted. Avadel has already agreed to stay the trade secrets case (C.A. No. 22-487, D.I. 138) and obtained a partial stay of the patent injunction (C.A. No. 21-691, D.I. 714). And while Avadel refuses to agree to stay this case, it delays discovery at its convenience. For example, Avadel abruptly canceled the deposition of a Jazz executive that was scheduled to occur just three days later. Ex. B at 5-6. Avadel initially represented that the deposition needed to be rescheduled for "unforeseen circumstances," and then asserted that it was due to a "scheduling conflict." *Id.* at 4-5. But Avadel ultimately admitted that it cancelled the deposition because its counsel was working on matters related to the Court's injunction order—confirming that it believes the injunction takes precedence over discovery in this case. *Id.* at 2-3. And just recently, Avadel sought (and the Court granted) an extension from September 27 to October 25 for its post-launch document productions, a lengthy delay that would have been avoided if Avadel had not previously delayed document supplementation. Ex. C; D.I. 168, 176. Avadel cannot credibly oppose a stay while slow-rolling discovery when it suits Avadel.

## IV.   CONCLUSION

For these reasons and those set forth in Jazz's supplemental motion to stay (D.I. 80, 84), the Court should grant Jazz's supplemental motion to stay proceedings in this case.

|  |  |
|---|---|
| OF COUNSEL:<br><br>F. Dominic Cerrito<br>Steig D. Olson<br>Gabriel P. Brier<br>Frank C. Calvosa<br>Avi Grunfeld<br>Nicolas Siebert<br>Andrew Faisman<br>Maxwell Hawley<br>Kevin Adams<br>QUINN EMANUEL URQUHART<br>   & SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>(212) 849-7000<br><br>William R. Sears<br>Monika Hara<br>Lynette Lim<br>QUINN EMANUEL URQUHART<br>   & SULLIVAN, LLP<br>865 S. Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>(213) 443-3000<br><br>October 7, 2024 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Jeremy A. Tigan*<br>_____<br>Jack B. Blumenfeld (#1014)<br>Jeremy A. Tigan (#5239)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>jtigan@morrisnichols.com<br><br>*Attorneys for Counterclaim-Defendant*<br>*Jazz Pharmaceuticals, Inc.* |

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 7, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Daniel M. Silver, Esquire<br>Alexandra M. Joyce, Esquire<br>MCCARTER & ENGLISH, LLP<br>Renaissance Centre<br>405 N. King Street, 8th Floor<br>Wilmington, DE  19801<br>*Attorneys for Counterclaim-Plaintiff*<br>*Avadel CNS Pharmaceuticals, LLC* | *VIA ELECTRONIC MAIL* |
| Kenneth G. Schuler, Esquire<br>Marc N. Zubick, Esquire<br>Alex Grabowski, Esquire<br>Sarah W. Wang, Esquire<br>LATHAM & WATKINS LLP<br>330 North Wabash Avenue, Suite 2800<br>Chicago, IL  60611<br>*Attorneys for Counterclaim-Plaintiff*<br>*Avadel CNS Pharmaceuticals, LLC* | *VIA ELECTRONIC MAIL* |
| Herman H. Yue, Esquire<br>Franco Benyamin, Esquire<br>LATHAM & WATKINS LLP<br>1271 Avenue of the Americas<br>New York, NY  10020<br>*Attorneys for Counterclaim-Plaintiff*<br>*Avadel CNS Pharmaceuticals, LLC* | *VIA ELECTRONIC MAIL* |
| Alan J. Devlin, Esquire<br>Ian Conner, Esquire<br>Anna M. Rathbun, Esquire<br>LATHAM & WATKINS LLP<br>555 Eleventh Street, NW, Suite 1000<br>Washington, D.C.  20004-1304<br>*Attorneys for Counterclaim-Plaintiff*<br>*Avadel CNS Pharmaceuticals, LLC* | *VIA ELECTRONIC MAIL* |

| | |
|---|---|
| Daralyn J. Durie, Esquire<br>Rebecca E. Weires, Esquire<br>Tannyr Pasvantis, Esquire<br>Eliot A. Adelson, Esquire<br>Helen He, Esquire<br>Margaret A. Webb, Esquire<br>Adam Brausa, Esquire<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA  94105<br>*Attorneys for Counterclaim-Plaintiff*<br>*Avadel CNS Pharmaceuticals, LLC* | *VIA ELECTRONIC MAIL* |
| Kira A. Davis, Esquire<br>Henry Huttinger, Esquire<br>Katherine E. McNutt, Esquire<br>Rose S. Lee, Esquire<br>MORRISON & FOERSTER LLP<br>707 Wilshire Boulevard<br>Los Angeles, CA  90017<br>*Attorneys for Counterclaim-Plaintiff*<br>*Avadel CNS Pharmaceuticals, LLC* | *VIA ELECTRONIC MAIL* |
| David F. McGowan, Esquire<br>David F. Kowalski, Esquire<br>MORRISON & FOERSTER LLP<br>12531 High Bluff Drive, Suite 100<br>San Diego, CA  92130<br>*Attorneys for Counterclaim-Plaintiff*<br>*Avadel CNS Pharmaceuticals, LLC* | *VIA ELECTRONIC MAIL* |
| Andrew T. Jones, Esquire<br>MORRISON & FOERSTER LLP<br>2100 L Street, NW, Suite 900<br>Washington, D.C.  20037<br>*Attorneys for Counterclaim-Plaintiff*<br>*Avadel CNS Pharmaceuticals, LLC* | *VIA ELECTRONIC MAIL* |
| Stacy Cline Amin, Esquire<br>Haydn Forrest, Esquire<br>Alexander Okuliar, Esquire<br>MORRISON & FOERSTER LLP<br>2100 L Street, NW, Suite 900<br>Washington, D.C.  20037<br>*Attorneys for Counterclaim-Plaintiff*<br>*Avadel CNS Pharmaceuticals, LLC* | *VIA ELECTRONIC MAIL* |

3

Matthew C. Hans, Esquire                                         *VIA ELECTRONIC MAIL*
POLSINELLI PC
100 S. Fourth Street, Suite 1000
St. Louis, MO  63102
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

/s/ *Jeremy A. Tigan*

Jeremy A. Tigan (#5239)