# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAZZ PHARMACEUTICALS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 22-941-GBW |
| v. | ) |
| | ) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ |
| AVADEL CNS PHARMACEUTICALS, LLC, | ) |
| | ) |
| | ) REDACTED PUBLIC VERSION |
| Defendant. | ) FILED OCTOBER 28, 2024 |
| | ) |

**AVADEL'S ANSWERING BRIEF IN OPPOSITION TO JAZZ'S SUPPLEMENTAL
BRIEF IN SUPPORT OF JAZZ'S SUPPLEMENTAL MOTION TO STAY**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................................1 | |
| II. | NATURE AND STAGE OF THE PROCEEDINGS ..........................................................1 | |
| III. | STATEMENT OF FACTS ..................................................................................................2 | |
| IV. | ARGUMENT .......................................................................................................................3 | |
| | A. | Jazz's supplemental brief relies on disputed questions of fact that require trial .........................................................................................................................3 |
| | | 1. There is a genuine issue of disputed fact whether the FDA would have granted ODE by April 2022—Jazz cannot assume this away .............4 |
| | | 2. There is a fact question whether Jazz would have sought a P.I. in 2022 .............................................................................................................4 |
| | | 3. Avadel has an independent basis for establishing antitrust standing ...........5 |
| | B. | Jazz could not have gotten the "extraordinary remedy" of a P.I. in April 2022 .....................................................................................................................5 |
| | C. | A straightforward application of the Court's injunction decision makes clear that a P.I. would have been denied in 2022 ...............................................6 |
| V. | THE ANTITRUST CASE SHOULD NOT BE STAYED .................................................9 | |
| | A. | Jazz's claims about expert discovery are wrong .......................................................9 |
| | B. | A stay would prejudice Avadel ..............................................................................9 |
| | C. | It would be inappropriate to stay the antitrust case at this juncture .......................10 |
| CONCLUSION ................................................................................................................10 | | |

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Abbott Cardiovascular Sys., Inc. v. Edwards Lifesciences Corp.*,
No. 19-149, 2019 WL 2521305 (D. Del. June 6, 2019) ............................................................8

*Biogen v. Sandoz*,
No. 22-1190, 2023 WL 7130655 (D. Del. June 29, 2023) ........................................................6

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*,
498 F.3d 1059 (9th Cir. 2007) ..................................................................................................1

*Graceway Pharms., LLC v. Perrigo Co.*,
697 F. Supp. 2d 600 (D.N.J. 2010) ...........................................................................................7

*Grill v. Aversa*,
908 F. Supp. 2d 573 (M.D. Pa. 2012) ...................................................................................5, 6

*In re Wellbutrin*,
868 F.3d 132 (3d Cir. 2017) .....................................................................................................3

*Madison Square Garden Corp. v. Braddock*,
90 F.2d 924 (3d Cir. 1937) .......................................................................................................6

*Meds. Co. v. Teva Parenteral Meds., Inc.*,
No. 09-750, 2011 WL 13141923 (D. Del. Oct. 6, 2011) ..........................................................4

*Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*,
357 F.3d 1319 (Fed. Cir. 2004) ............................................................................................5, 6

*Personalized User Model, L.L.P. v. Google, Inc.*,
No. 09-525, 2012 WL 5379106 (D. Del. Oct. 31, 2012) ........................................................10

*Voith Paper GMBH & Co. KG v. Johnsonfoils, Inc.*,
No. 07-226, 2008 WL 874311 (D. Del. Mar. 31, 2008) ...........................................................4

## **RULES**

D. Del. LR 7.1.5(a) ........................................................................................................................4

Fed. R. Civ. P. 1..........................................................................................................................10

## I. INTRODUCTION

The Court asked a clear question: "whether the Court's injunction opinion demonstrates that Jazz would have obtained an injunction blocking Avadel's launch of LUMRYZ in April 2022." D.I. 182. Jazz fails to answer it, effectively conceding that the Court's August 2024 decision means that Jazz would *not* have obtained such an injunction in April 2022. D.I. 184.

The Court has already found a genuine issue of disputed fact in whether the FDA would have granted orphan drug exclusivity ("ODE") to LUMRYZ sooner than it did but-for Jazz's improper conduct. D.I. 94 at 16-17. Ignoring that holding, Jazz claims that it would have obtained an injunction in April 2022 because LUMRYZ would not have gotten ODE (and thus would not have been approved) as of that time.[1] D.I. 184 at 3, 6-9. But Jazz cannot justify a stay by assuming away a fact question. Its effort is a premature motion for summary judgment on an issue that the Court has already found presents a disputed question of fact. *See, e.g.*, *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1070 (9th Cir. 2007).

By assuming a scenario in which the FDA had not approved LUMRYZ by April 2022, Jazz's argument amounts to a non-answer—Jazz would not have obtained an injunction because there would have been nothing to enjoin. The only way Jazz could have obtained an order "blocking Avadel's launch of LUMRYZ in April 2022," was to move for a preliminary injunction ("P.I."). Jazz had no realistic prospect of getting such an injunction and, for that reason, never moved for a P.I. in the real world.

## II. NATURE AND STAGE OF THE PROCEEDINGS

In this antitrust case, Avadel seeks equitable and monetary relief from Jazz's efforts to

---

[1] As Jazz itself has insisted, the FDA had to determine that LUMRYZ was clinically superior in order to grant it final approval. Ex. 1 at -246 (the "statute plainly requires Avadel to demonstrate that FT218 is clinically superior to XYWAV to obtain approval").

impede competition from Avadel's superior, once-nightly oxybate product, LUMRYZ. Jazz has tried over and over to avoid the merits of this claim. Its latest motion is its *fourth* stay-related motion thus far (D.I. 49, 80, 100, 164), excluding its unsuccessful motions to dismiss. D.I. 24, 48.

Once again, Jazz posits that the '782 patent deprives Avadel of antitrust standing. D.I. 80, 100, 114, 184. This Court rejected that assertion on May 24, 2024, holding that "a plaintiff could show that a valid and infringed patent does not break the causal chain . . . by pleading that (1) no injunction would have issued for plaintiff's infringement of defendant's patent, and (2) the hypothetical damages award would not have prevented plaintiff's entry into the relevant market." D.I. 94 at 19. The Court then denied Jazz's motion to enjoin sales of LUMRYZ for narcolepsy. C.A. No. 21-691 ("Patent Case"), D.I. 665. And, in a subsequent order, "the Court emphasize[d] that the [prior injunction] Order *does not* enjoin, in any way, Avadel's use of Lumryz for narcolepsy." Patent Case, D.I. 710 at 3. On October 4, 2024, the Court asked the parties to brief the question posed above. D.I. 182.

### III.   STATEMENT OF FACTS

As the FTC's Chair has observed, Jazz stopped the FDA from approving LUMRYZ by improperly listing "a patent that had nothing to do with the drug itself [Xyrem] or an approved method of using the drug," thus "blocking Avadel from the market." Ex. 2 at 2. Jazz falsely told the FDA that the '963 patent—which expressly claims a "computer-implemented distribution system"—instead claims a "method of treating a patient with a prescription drug[.]" D.I. 14 at 52-53. Jazz later insisted that ████████████████████████████████████████████ ████████████████████████████████████████████ Ex. 3 at -133.

Jazz knew that the '963 patent claims a ████████████████████████████ ████████████████████████████ Ex. 4 at -223. But the benefits of improperly listing a "distribution patent" were irresistible: "The listing of our formulation patent[] in the

2

Orange Book requires potential competitors to certify as to non-infringement or invalidity of the patent prior to FDA approval of their product candidates unless they are willing to postpone market entry until patent expiry," Ex. 5 at 5, ███████████████████████████ ███████████████████████████████████████████████████ Ex. 6 at -178 (emphases added). Jazz specifically identified ███████████████████████ ██████████████████████████████████████ Ex. 7 at 5.

Those efforts worked. The FDA deferred, as Jazz knew it must, to Jazz's improper use code, thus forcing Avadel to certify to the '963 patent. The resulting automatic stay prevented the FDA from approving LUMRYZ. And, because the FDA does not decide ODE until an NDA is otherwise fully approvable, the stay delayed resolution of ODE, too. When Jazz was finally forced to delist the patent, the FDA quickly approved LUMRYZ and granted it ODE on the same day.

## IV. ARGUMENT

### A. Jazz's supplemental brief relies on disputed questions of fact that require trial

Jazz's latest request again challenges Avadel's antitrust standing. D.I. 80 (citing *In re Wellbutrin*, 868 F.3d 132 (3d Cir. 2017)). But Avadel's standing is a question of fact. *In re Wellbutrin*, 868 F.3d at 164. Here, Jazz asserts that the "launch" of Lumryz would have been "stopped" by the '782 patent (*id*. at 165). At best, Jazz is raising a disputed factual question that should only be resolved on a fully developed factual record. D.I. 80 at 2-3. The motion to stay should thus be denied.

Jazz ***did not*** seek to preliminarily enjoin the launch of LUMRYZ, and its eventual effort to enjoin its sale for narcolepsy failed. That real-world evidence establishes standing. Regardless, Jazz's stay request is not the appropriate vehicle to resolve this factual dispute. Nor would it allow Avadel to proffer all of its evidence, including forthcoming expert opinions. In any event, the Court denied Jazz's requested injunction in narcolepsy on grounds that would have applied

3

equally—if not even more strongly—to a hypothetical P.I. motion filed in April 2022. The Court should not indulge Jazz's efforts to revisit questions that have already been decided or otherwise to seek a stay based on disputed questions of fact. Doing so would short-circuit the discovery process, depriving the Court of a fully developed factual record. *See, e.g.*, *Voith Paper GMBH & Co. KG v. Johnsonfoils, Inc.*, No. 07-226, 2008 WL 874311, at *2 (D. Del. Mar. 31, 2008).

### 1. There is a genuine issue of disputed fact whether the FDA would have granted ODE by April 2022—Jazz cannot assume this away

*First*, Jazz's brief hinges on the claim that the FDA would "not have decided by April 2022 to make a finding of clinical superiority and 'break Jazz's ODE.'" D.I. 184 at 3, 6-9. But that is the exact same argument, relying on the same grounds, that Jazz made unsuccessfully when it first moved for a stay. D.I. 50, 57. The Court properly rejected that effort, holding that the "Consult Letter merely raises a genuine issue of material fact regarding whether the FDA would have found that LUMRYZ was clinically superior to XYREM prior to Jazz's delisting of the '963 patent." D.I. 94 at 16-17. Jazz never moved for reconsideration of that holding, let alone within the requisite 14 days. D. Del. LR 7.1.5(a). It is law of the case. *Meds. Co. v. Teva Parenteral Meds., Inc.*, No. 09-750, 2011 WL 13141923, at *1 n.1 (D. Del. Oct. 6, 2011).

Instead of acknowledging the Court's prior ruling, Jazz conjures a hypothetical scenario in which the FDA had *not* approved LUMRYZ, such that no launch would have taken place for want of ODE. D.I. 184 at 6. This conflates the question raised by the Court—whether "Jazz would have obtained an injunction blocking Avadel's launch of LUMRYZ in April 2022" (D.I. 182)—with an entirely different question—whether Avadel would have gotten ODE in time to launch in April 2022. Jazz's pretense is improper and wrong on the merits. D.I. 54 at 5-8, 11-14.

### 2. There is a fact question whether Jazz would have sought a P.I. in 2022

*Second*, Jazz provides no evidence, whatsoever, that it would have sought a P.I. in April

4

2022. D.I. 184. Obviously, Jazz could not "have obtained an injunction blocking Avadel's launch of LUMRYZ in April 2022" (D.I. 182), absent evidence that it would have moved for one.

Indeed, even if Jazz claimed that it would have sought an injunction, that assertion would be suspect given real-world evidence. ***Jazz never moved for a P.I.***, despite being asked repeatedly to work on a potential briefing schedule. Patent Case, D.I. 91. Its decision not to seek a P.I. makes plain that Jazz knew its prospects were bleak. On this, Jazz was right—and the jury will be entitled to hear evidence that Jazz's probability of obtaining a P.I. was low. Moreover, Jazz's executives have recently testified that Jazz is not "in the business of pulling drugs that are effective from the market" and wants patients to make the "decision [about what drug to take] with their physician." Patent Case, D.I. 595 at 125:16-22. At best, there is an issue of fact whether Jazz would have even sought an injunction in April 2022.

### 3. Avadel has an independent basis for establishing antitrust standing

***Third***, Jazz breezes past a critical point—no basis exists for a stay because Avadel could establish antitrust standing even if Jazz's argument about the '782 patent were otherwise correct (which it is not). D.I. 82 at 16 n.7; D.I. 108 at 13-14. Avadel intends to submit evidence showing that the parties would have rationally negotiated a license in the but-for world.

### B. Jazz could not have gotten the "extraordinary remedy" of a P.I. in April 2022

"A preliminary injunction is a "drastic and extraordinary remedy[.]"[2] *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1324 (Fed. Cir. 2004); *see also Grill v. Aversa*, 908 F. Supp. 2d 573, 592 (M.D. Pa. 2012). As the Third Circuit has emphasized, "upon an application for a preliminary injunction to doubt is to deny." *Grill v*, 908 F. Supp. 2d at 591 (quoting *Madison*

---

[2] The '782 patent was issued on October 19, 2021. Jazz could only have obtained an order "blocking Avadel's [April 2022] launch" by moving for a P.I. Such a motion would have failed.

5

*Square Garden Corp. v. Braddock*, 90 F.2d 924, 927 (3d Cir. 1937)).

Moreover, in a patent case, an alleged infringer defeats a P.I. if it merely "raises a substantial question concerning infringement or validity[.]" *Nat'l Steel*, 357 F.3d at 1325 (citation omitted). Jazz ignores this point, even though the Court found there existed "genuine dispute[s] of material fact" regarding the enablement of the claims of the '782 patent. *See* Patent Case, D.I. 539 at 21, 23. Avadel would have thus raised a substantial question on validity, warranting denial of Jazz's hypothetical P.I. request. *See, e.g.*, *Biogen v. Sandoz*, No. 22-1190, 2023 WL 7130655 (D. Del. June 29, 2023) (denying patentee's request for a P.I. to enjoin sales of a biosimilar drug).

### C. A straightforward application of the Court's injunction decision makes clear that a P.I. would have been denied in 2022

***Public interest***: "More than any other *eBay* factor," the Court held, "the public interest strongly favors denying Jazz's request to enjoin Lumryz for narcolepsy." Patent Case, D.I. 665 at 15. That same conclusion would have been inevitable in April 2022.

The Court rejected the basis for Jazz's request for a "limited" injunction in narcolepsy because new and existing patients alike benefit from choice, especially when it comes to a drug that is superior for at least some of them. *Id.* at 20. But Jazz now doubles down on its losing claim by arguing that "it would make little sense to conclude that the public interest favored Avadel at a time [in 2022] when it was not on the market[.]" D.I. 184 at 7. The Court has addressed this argument, declining to "make Lumryz unavailable to the vast majority of [narcolepsy] patients in need of [Lumryz] treatment." Patent Case, D.I. 665 at 20. The Court also noted that the "FDA's superiority determination strongly indicates that the public interest favors the availability of LUMRYZ for narcolepsy." *Id.* at 19. Again, Jazz cannot avoid this conclusion by assuming that no genuine issue of material facts exists as to LUMRYZ's ODE in April 2022.

Finally, Jazz points to the Court's observation about "put[ting] some limit on" the public-

6

interest prong, but any concern about "opening the door for infringement" does not apply in a case of patent ambush. D.I. 184 at 7. When Avadel sought approval for LUMRYZ for narcolepsy, the '782 patent did not even exist; it was issued only after the but-for approval date.

*Balance of the equities*: The Court found that the equities tipped in Avadel's favor, noting, "this is not a case where an infringer *elected* to build its business around an infringing product . . . . Rather, Avadel's investment into Lumryz began in 2019, at a time when 'claim 24 of the '782 patent *did not exist*.'" Patent Case, D.I. 665 at 13. That factor would have loomed large in 2022. The '782 patent was issued on October 19, 2021—*four days* after the FDA would likely have approved LUMRYZ—and would have weighed heavily against granting a P.I. *See Graceway Pharms., LLC v. Perrigo Co.*, 697 F. Supp. 2d 600, 609 (D.N.J. 2010).

The Court further observed that Avadel is 'a much smaller company' that 'depends entirely on the sales of the enjoined products for its revenue.' . . . . Thus, even the limited injunction sought by Jazz could 'leav[e] Avadel to liquidate within months.'" Patent Case, D.I. 665 at 14. Again, that factor would have been identical in April 2022.

*Irreparable harm*: The irreparable-harm analysis would not have materially differed in April 2022. Jazz argues otherwise because it "was diligently working to increase sales of XYWAV[.]" D.I. 184 at 4. But XYWAV was approved in July 2020, meaning that Jazz would have had almost two years to transition its patients to that drug before Avadel's but-for launch. Indeed, Jazz already had "approximately 6,900 active patients on Xywav exiting the fourth quarter of 2021"—four months before Avadel's planned launch. Ex. 8 at 7. For context, Avadel had 1,900 patients on LUMRYZ by June 30, 2024—a year after launching. Ex. 9 at 1.

In any event, Jazz cannot complain about the interruption of its efforts to move narcolepsy patients from one Jazz product (XYREM) to an improved Jazz product (XYWAV) almost *twenty*

7

*years* into Jazz's monopoly. *Abbott Cardiovascular Sys., Inc. v. Edwards Lifesciences Corp.*, No. 19-149, 2019 WL 2521305, at *22 (D. Del. June 6, 2019) (Plaintiffs' contention that they will lose their "first mover" advantage [with next-gen product] is overstated given the length of time that Plaintiffs were the only ones in the market").

More generally, any hypothetical claim of irreparable harm by Jazz in April 2022 would have been undermined by its prior decisions to license generic competitors to enter the market. As Jazz informed its investors in an SEC filing made just *one month* prior to April 2022:

> Our ability to maintain or increase oxybate product sales . . . is subject to . . . risks . . . including those related to *the near-term* introduction of authorized generic and generic versions of sodium oxybate. . . . We granted Hikma the right to sell an authorized generic . . . in the U.S. beginning on January 1, 2023. . . . In our settlements with Amneal, . . . Lupin, and Par . . ., we granted each party the right to sell a limited volume of an AG Product in the U.S. beginning on July 1, 2023[.]

Ex. 8 at 36 (emphasis added). The same licenses that drove the Court's irreparable harm analysis in August 2024 were in place in April 2022.

Finally, in denying Jazz a narcolepsy injunction, the Court noted that "Avadel's marketing strategy will [not] cause irreparable harm to Jazz's reputation and goodwill" because "Jazz does not practice claim 24 of the '782 patent" and "Avadel's superiority claims are supported by the FDA's ODE determination." Patent Case, D.I. 665 at 7-8. Jazz obviously did not have a product practicing that claim of the '782 patent in 2022, and there is a fact question for the jury as to when the FDA would have granted ODE but-for Jazz's improper patent listing.

*Adequacy of legal remedy*: Jazz claims that Avadel would have been unable to "compensate Jazz for its infringement through monetary damages in April 2022" due to its purportedly "'questionable financial condition' in April 2022[.]" D.I. 184 at 6. The facts do not support Jazz's hyperbolic claim. In the real world—and just a few weeks after Jazz finally delisted its '963 patent and cleared the way for LUMRYZ's approval—Avadel secured $200 million of

8

capital to help fund the launch of LUMRYZ, including from a large credit facility. Ex. 10 at 4.

In any event, Jazz's argument wrongly conflates Avadel's finances in the real world in April 2022—when Jazz's wrongful patent listing had already delayed FDA approval of LUMRYZ by half a year—with the scenario under consideration by the Court. The hypothetical P.I. motion would have been decided six months after full FDA approval. And even hobbled by Jazz's anticompetitive actions in the real world, Avadel had more than enough cash on hand to launch in April 2022. Ex. 11 at 225:23-226:1.

## V. THE ANTITRUST CASE SHOULD NOT BE STAYED

### A. Jazz's claims about expert discovery are wrong

Jazz tries to justify a stay by claiming that experts will otherwise have to rewrite reports. It argues that "the scope of the injunction" will determine Avadel's antitrust standing and that "Avadel has appealed the Court's injunction order, and oral argument before the Federal Circuit will take place in February 2025." D.I. 184 at 9-10. That argument is wrong. As the Court made clear, its injunction "Order *does not* enjoin, in any way, Avadel's use of Lumryz for narcolepsy." Patent Case, D.I. 710 at 3. Jazz could have cross-appealed denial of its motion for an injunction in narcolepsy, but chose not to do so.

Jazz also suggests that experts quantifying antitrust damages must account for royalties, which remain in flux. But adjusting a calculation to account for a royalty that will be established long before trial is a simple exercise. Parties routinely supplement expert reports (including those of damages experts) shortly before trial, as the Jazz and Avadel did in the patent case. Patent Case, D.I. 532, 538. The parties can easily do so in this antitrust case if necessary.

### B. A stay would prejudice Avadel

Jazz requests a stay pending resolution of "the appeal, if any, of the jury's verdict finding claim 24 of the '782 patent valid." D.I. 80 at 9. This would mean staying the antitrust case during

9

all remaining post-trial briefing and the subsequent appeal (i.e., for years), denying Avadel a "just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1.

Jazz argues that "Avadel would not be harmed by a stay, because Avadel seeks only monetary damages." D.I. 184 at 10. That is wrong. Avadel's Prayer for Relief seeks an order "enjoining Jazz . . . from engaging in related conduct in the future, including from . . . attempting to monopolize the relevant product and geographic markets[.]" D.I. 14 at 49.

### C. It would be inappropriate to stay the antitrust case at this juncture

Fact discovery is closed, opening expert reports are merely weeks away, and there is a firm trial date. Courts are loath to stay cases that are at this advanced posture. *See, e.g.*, *Personalized User Model, L.L.P. v. Google, Inc.*, No. 09-525, 2012 WL 5379106, at *2 (D. Del. Oct. 31, 2012). Indeed, when Jazz first sought a stay, it emphasized that "discovery is in its infancy," "the parties have invested relatively few resources in discovery," "no depositions have been scheduled," "Jazz's original motion to dismiss remains pending," and "no trial date has been set." D.I. 50, *passim*. All of those factors now point in the opposite direction.

Finally, Jazz baldly equates Avadel's trade secrets action with this important antitrust case. D.I. 184 at 2, 10. But Avadel's willingness to stay the former case in order to expedite the appeal in the patent case has no bearing on whether this separate case should be stayed.[3]

### CONCLUSION

The Court should deny Jazz's supplemental motion to stay this antitrust case.

---

[3] The parties have rescheduled several depositions in this case for various reasons stemming from a witness's getting COVID to the assigned attorney's facing a conflict that arose from fast-moving developments stemming from the Court's injunction decision in the patent case. Jazz points to the latter, routine request to reschedule (D.I. 184 at 10)—to what end is unclear.

| | |
|---|---|
| Dated:  October 21, 2024 | McCARTER & ENGLISH, LLP |
| *Of Counsel*: | */s/ Daniel M. Silver* |
| | Daniel M. Silver (#4758) |
| Kenneth G. Schuler | Alexandra M. Joyce (#6423) |
| Marc N. Zubick | Renaissance Centre |
| Sarah W. Wang | 405 N. King Street, 8th Floor |
| Alex Grabowski | Wilmington, Delaware 19801 |
| LATHAM & WATKINS LLP | (302) 984-6300 |
| 330 N. Wabash Avenue, Suite 2800 | dsilver@mccarter.com |
| Chicago, IL 60611 | ajoyce@mccarter.com |
| Telephone: (312) 876-7700 | |
| kenneth.schuler@lw.com | *Counsel for Defendant* |
| marc.zubick@lw.com | |
| sarah.wang@lw.com | |
| alex.grabowski@lw.com | |

Herman H. Yue
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
Herman.Yue@lw.com

Ian R. Conner
Alan J. Devlin
Anna Rathbun
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Washington, D.C. 20004
(202) 637-2200
Ian.Conner@lw.com
Alan.Devlin@lw.com
Anna.Rathbun@lw.com

Daralyn J. Durie
Eliot A. Adelson
Helen He
Margaret A. Webb
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
ddurie@mofo.com
eadelson@mofo.com
hhe@mofo.com
mwebb@mofo.com

Kira A. Davis
W. Henry Huttinger
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5200
kiradavis@mofo.com
hhuttinger@mofo.com

Alexander Okuliar
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037, USA
(202) 887-1500
aokuliar@mofo.com

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that true and correct copies of the foregoing document were caused to be served on October 21, 2024 on the following counsel in the manner indicated below.

### **VIA EMAIL:**

Jack B. Blumenfeld
Jeremy Tigan
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

William R. Sears
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Willsears@quinnemanuel.com

F. Dominic Cerrito
Eric C. Stops
Evangeline Shih
Andrew S. Chalson
Gabriel P. Brier
Frank C. Calvosa
Steig D. Olson
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
nickcerrito@quinnemanuel.com
ericstops@quinnemanuel.com
evangelineshih@quinnemanuel.com
andrewchalson@quinnemanuel.com
gabrielbrier@quinnemanuel.com
frankcalvosa@quinnemanuel.com
steigolson@quinnemanuel.com

*Attorneys for Plaintiff Jazz Pharmaceuticals, Inc.*

ME1 50737991v.1

Dated: October 21, 2024                                    */s/ Daniel M. Silver*
                                                                                       Daniel M. Silver (#4758)