YIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAZZ PHARMACEUTICALS, INC., ) <br> ) <br> Counterclaim-Defendant, ) <br> ) <br> v. ) <br> ) <br> AVADEL CNS PHARMACEUTICALS LLC, ) <br> ) <br> Counterclaim-Plaintiff. ) | C.A. No. 22-941 (GBW) <br><br> **PUBLIC VERSION** |

**LETTER TO THE HONORABLE GREGORY B. WILLIAMS FROM JEREMY A. TIGAN REGARDING JAZZ'S MOTION TO COMPEL IMPROPERLY WITHHELD AND <u>REDACTED DOCUMENTS</u>**

OF COUNSEL:

F. Dominic Cerrito
Steig D. Olson
Gabriel P. Brier
Frank C. Calvosa
Avi Grunfeld
Nicolas Siebert
Andrew Faisman
Maxwell Hawley
Kevin Adams
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000

William R. Sears
Monika Hara
Lynette Lim
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Plaintiff Jazz Pharmaceuticals, Inc.*

Confidential Version Filed: October 21, 2024
Public Version Filed: October 28, 2024

Dear Judge Williams:

Fact discovery has unraveled Avadel's counterclaims, and Avadel has now resorted to making unsupportable privilege assertions to shield key evidence from discovery. Avadel claims that, but for Jazz's listing of a patent in the FDA's Orange Book, the FDA would have approved Lumryz in October 2021 and Avadel would have launched Lumryz in April 2022. Publicly available documents, such as a memo from the FDA, gut this theory: As Avadel's CEO acknowledged, long after Avadel's alleged but-for October 2021 approval date, in a July 2022 memo, the FDA stated that it was actively working on, but was still undecided on whether to grant, the necessary Orphan Drug Exclusivity ("ODE") for Lumryz to launch. Ex. 1. ███████████
███████████████████████████████████████████████████████████████ Ex. 2 at 85:1-90:14, 113:4-17. ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████ *See, e.g., id.* at 168:1-170:13; Ex. 3 at 48:2-61:23; Ex. 4 at 115:1-117:21.

Avadel is now attempting to hide highly relevant evidence that goes directly to these ODE, DDI, and supply chain issues under the guise of privilege. Avadel has improperly withheld or redacted 73 documents falling into three categories: (1) three marketing documents authored by Avadel's commercial team, discussing Avadel's "launch timelines"; (2) 36 communications with a third-party, non-legal consultant, Greenleaf Health ("Greenleaf"), related to FDA regulatory issues, including ODE; and (3) 34 communications with a third-party non-legal consultant, ProPharma Group (formerly, Weinberg Group), related to FDA regulatory issues, including ODE and DDI labeling. Appendix A. Avadel has not carried its burden of establishing that these documents are privileged. The Court should order their production, or at a minimum order *in camera* review.

**Background and Legal Standard**: To support its claim of attorney-client privilege, Avadel bears the burden of showing that each at-issue document contains "(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (internal citations omitted). But Avadel has not made this showing as to the at-issue documents, and in some instances the documents include metadata and cover emails that entirely undermine its privilege assertion.

Jazz first challenged Avadel's privilege designations on June 14, 2024, but Avadel refused to provide privilege log descriptions for many contested documents until September 27, 2024, the last day of fact discovery. *See* Ex. 5 at 2-4; Ex. 6. On September 5, Jazz reiterated its challenges as to the Greenleaf documents. Ex. 7 at 2-3. In a tacit admission that many of its privilege claims were baseless, Avadel then downgraded over ***a quarter*** of the Greenleaf documents. *Id.* at 1. On October 16, Avadel did the same thing when Jazz challenged its privilege assertions over documents with ProPharma—Avadel downgraded nearly ***a third*** of the ProPharma documents. *See* Ex. 8 at 1. These downgrades raise serious questions about the integrity of Avadel's privilege claims. Just as tellingly, Jazz recently discovered an unredacted version of a document Avadel had redacted on the basis that it purportedly reflected legal advice from Avadel's General Counsel. Ex. 9 at 1. But the unredacted version of the document showed that this was not true, and after

Jazz pointed this out to Avadel, Avadel dropped its privilege claim for that document. *Id.* The Court thus should not simply accept Avadel's privilege designations without question.

**Marketing "Launch Timelines"**: Avadel has not established that there were *any* lawyers involved in these three documents. ▮ Ex. 4 at 201:9-203:3. Avadel's privilege log states that these documents ▮ Ex. 10 at 613, ▮ Ex. 4 at 200:14-205:25, 211:2-212:9, 214:7-16, 223:10-224:13. *Pfizer Inc. v. Lupin Pharms., Inc.*, 2013 WL 6247357 (D. Del. Dec. 2, 2013), is instructive. There, the court denied a request to claw back documents that "were neither created with the knowledge of [counsel], nor . . . shared with [counsel]" and bore "no indication" of being prepared for any legal purpose. *Id.* at *1-2. Here too, the Launch Timelines do not "bear any indication that they were shared with, or created under the direction of, an attorney." *Id.* They should be produced in unredacted form.

**Greenleaf Documents**: Avadel relied heavily on regulatory consultants, in part because it laid off more than 50% of its workforce in 2019 after selling or divesting all of its FDA-approved products and declaring bankruptcy. *See* Ex. 11 at 12. Greenleaf was one such consultant, and Avadel has asserted privilege over many Greenleaf documents. However, no Greenleaf employee involved in the disputed communications is a lawyer, and three of the communications have no lawyer copied at all. The remaining thirty-three documents bear no indicia of privilege, and appear to be ordinary regulatory communications on which a lawyer happens to be copied. Avadel seeks to maintain privilege over the thirty-six at-issue Greenleaf documents by asserting that Greenleaf's "presence and advice [we]re necessary to [Avadel's] legal representation." Ex. 12 at 2.[1] But that does not make the communications privileged; at most, it might support a finding that Avadel did not waive privilege by including Greenleaf in the communications. Avadel still bears the burden of showing that the communications were privileged in the first instance, and it has failed to do so.

Moreover, ▮ Ex. 15 at § 4 (emphasis added). Greenleaf's website confirms that Greenleaf "does not provide legal advice or legal services."[2] Further, ▮ Ex. 16 at 1-2. The

---

[1] Jazz originally challenged forty-nine Greenleaf documents. In response, Avadel withdrew its privilege claims over thirteen documents, including correspondence with the FDA, which are clearly not privileged and confirm that Avadel's privilege claims with respect to Greenleaf were dubious from the outset. *See, e.g.*, Exs. 13; 14.

[2] Greenleaf Health, *Home*, https://greenleafhealth.com (last visited Oct. 21, 2024).

MSA and SOW █████████████████████████████████████████ Ex. 15 at 11; Ex. 16 at 3. ████████████████████████████████████████████████████
████████████████████████████████████ See Ex. 17 ███████████████████; Ex. 18 ████████████████████████████████████████; Ex. 19 ███████████████████████████████████. Avadel thus has no basis for claiming that its communications with Greenleaf were ever privileged to begin with.

Caselaw confirms the Greenleaf documents are not privileged. "[C]ourts have generally recognized the principle that compliance with regulations is usually a business matter, not a legal one." *Ciccio v. SmileDirectClub, LLC*, 2022 WL 2910501, at *5 (M.D. Tenn. July 22, 2022) (collecting cases) (citations and quotations omitted). Thus, for the Greenleaf regulatory communications to be privileged, Avadel carries the burden of showing that the communications "have the primary purpose of soliciting [or conveying] legal, rather than business advice," which it has not done. *Id.* As the court in *Ciccio* explained: "If a party had the power to confer 'privileged status' on any regulatory consultant simply by describing the consultant in the right way internally, it would vitiate the distinction between regulatory and legal advice altogether." *See id.* at *6. That distinction is exactly what Avadel attempts to elide, with its blanket assertions of privilege over Greenleaf communications that bear no other indicia of legal advice. Avadel has thus failed to meet its burden as to these documents.

**ProPharma Documents**: Avadel's privilege assertion over the thirty-four disputed ProPharma documents suffers from similar flaws, but is even more egregious because no Avadel lawyers are even present on these communications. ProPharma was not involved in soliciting or conveying legal advice. ProPharma—by its own description—is a consulting firm consisting of "subject matter experts," "strategists," and "programs managers" providing preclinical research, clinical development, and new drug commercialization services.[3] ████████████████████████
████████████████████████████████████████████████████████████████
████████████ *See* Ex. 20 at 2-5; Ex. 3 at 122:16-21 ████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████ Ex. 20 at 1. Jazz has asked Avadel to provide a retainer agreement substantiating its claim that ProPharma somehow acted as a legal advisor to Avadel, but Avadel to date has not produced one, further undermining its privilege assertions. ██████████████████████████████████
████████████████████████████████████████████████████████ Ex. 2 at 88:4-89:22, 128:13-129:11; Ex. 21 at 112:5-9, 129:10-130:18. Avadel cannot point to ProPharma as having ultimate knowledge about critical issues, while also hiding behind a blanket assertion of privilege to avoid Jazz's defenses. These documents should be produced as well.

---

[3] ProPharma, *About Us*, https://www.propharmagroup.com/about/ (last visited Oct. 21, 2024); ProPharma, *RCO Solutions*, https://www.propharmagroup.com/rco-solutions/ (last visited Oct. 21, 2024).

Respectfully,

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)

Attachments
cc: Clerk of the Court (via hand delivery)
All Counsel of Record (via CM/ECF and e-mail)

4