# EXHIBIT 1

# MEMORANDUM

### DEPARTMENT OF HEALTH AND HUMAN SERVICES
### PUBLIC HEALTH SERVICE
### FOOD AND DRUG ADMINISTRATION

**To: NDA 214755 File for Lumryz (Sodium Oxybate for Extended-Release Oral Suspension)**

**From:**  **Ranjit Mani, MD, Clinical Reviewer and Team Leader, Division of Neurology 1 (DN1), Office of New Drugs (OND), Center for Drug Evaluation and Research (CDER)**

**Teresa Buracchio, MD, Division Director, DN1, OND, CDER**

**Subject: Review of the Office of Orphan Products Development (OOPD) Consult Request (#16-5302)**

**Date: July 8, 2022**

The Division (DN1) received a consultation request from the Office of Orphan Products Development (OOPD) (dated July 6, 2021, but preceded by an emailed request dated July 1, 2021), which follows a request from the applicant for orphan drug exclusivity for Sodium Oxybate Extended-Release for Oral Suspension (Lumryz; FT218). The applicant's request for orphan-drug exclusivity for Lumryz was submitted on December 15, 2020, along with the submission of an original New Drug Application (NDA 214755), seeking the approval of Lumryz for the treatment of cataplexy and excessive daytime sleepiness in narcolepsy is currently under review by the Agency. A supplement to the request for orphan-drug exclusivity was also submitted to NDA 214755 on July 14, 2021, and this supplement included arguments that orphan-drug exclusivity for Xyrem and Xywav should not block approval for FT218.

DN1's input regarding the orphan-drug exclusivity issues was initially considered in a consult memo dated August 31, 2021. In the August 31, 2021, consult memo, DN1 stated that DN1 would not consider the greater convenience of once-nightly dosing regimen of Lumryz as a major contribution to patient care (MCTPC) compared to a twice-nightly dosing regimen for Xyrem and Xywav. However, OOPD subsequently identified additional information for DN1's further consideration, and DN1's consideration of that information remains ongoing. In light of the upcoming tentative approval action for this application, this memorandum documents the fact that the August 31, 2021, consult review does



EXHIBIT
#1106
Dw 9/19/24

FDA-Jazz-000483

Ranjit B. Mani, MD, HFD-120 Medical Review                                    Page 2 of 2

not represent DN1's final or current thinking on the matter, and that the orphan-drug exclusivity issues associated with this application remain under review.

Ranjit B.
Mani -S

Digitally signed by Ranjit
B. Mani -S
Date: 2022.07.08
12:02:01 -04'00'

Ranjit B. Mani, MD
Clinical Reviewer and Team Leader


Teresa Buracchio, MD
Division Director

-------------------------------------------------------------------------------

**This is a representation of an electronic record that was signed electronically. Following this are manifestations of any and all electronic signatures for this electronic record.**

-------------------------------------------------------------------------------

/s/
------------------------------------------------------------

RANJIT B MANI
07/08/2022 01:02:06 PM

TERESA J BURACCHIO
07/08/2022 02:17:29 PM

FDA-Jazz-000485

# EXHIBIT 2

# FULLY REDACTED

# EXHIBIT 3

# FULLY REDACTED

# EXHIBIT 4

# FULLY REDACTED

# EXHIBIT 5

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7446**

WRITER'S EMAIL ADDRESS
jillianfarley@quinnemanuel.com

September 20, 2024

<u>VIA E-MAIL</u>

Anne Thorson
Latham & Watkins LLP
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Anne.Thorson@lw.com

Re:     *Jazz Pharmaceuticals, Inc. v. Avadel CNS Pharmaceuticals, LLC*,
      C.A. No. 1:22-cv-00941-GBW (D. Del.)

Dear Anne:

      We write in response to Avadel's letter dated September 6, 2024 and email dated September 17, 2024.

## I.     Avadel's Production Error

      We first address Avadel's representation as to the nature and scope of its production error. *See* 9/17/2024 Email from A. Thorson to J. Farley. Although we appreciate Avadel pointing us to previous correspondence, this still does not explain or justify Avadel's decision to wait until three weeks before the close of fact discovery to reveal the full extent and severity of the error. Jazz does not dispute that Avadel previously informed it that a number of documents "were inadvertently ***produced*** in volume AVDL_AT_007 due to a vendor processing error." 9/17/2024 Email from A. Thorson to J. Farley (emphasis added) (quoting 7/1/2024 Ltr. from K. Wu to A. Grunfeld). Rather, Jazz was, and remains, concerned that Avadel did not disclose that this error also resulted in thousands of documents being ***withheld or redacted*** until after the fact, and only after Jazz inquired into certain entries on Avadel's supplemental privilege log. Indeed, Avadel did not reveal this aspect of the error until September 6, 2024. *See* 9/6/2024 Ltr. From A. Thorson to J. Farley at 2. This marked the first time that Jazz learned that documents had been erroneously ***withheld*** from Jazz. Jazz thus "did not ask for any further information about the vendor error until [our] recent email of September 13, 2024," *id.*, because it was not aware until Avadel's September 6 letter that Avadel's "significant production error" went beyond the documents Avadel clawed back on July 1, 2024 as inadvertently ***produced***.

**quinn emanuel urquhart & sullivan, llp**
ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON |
LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY |
SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

We also appreciate Avadel confirming that it took steps to fully correct the error. However, we ask that Avadel promptly disclose any errors that result in documents being improperly withheld from Jazz going forward.

## II.    Avadel's Improper Redactions

Jazz reiterates its challenges to Avadel's redactions to AVDL_AT_01013581, AVDL_AT_01024469, and AVDL_00689122. *See* 9/16/2024 Email from J. Farley to A. Thorson. Please produce these documents or justify your claims of privilege and/or attorney work product by September 27, 2024.

## III.    Avadel's Insufficient Privilege Descriptions

Jazz renews its request that Avadel supplement its privilege log to include a description sufficient to substantiate any claim of privilege under Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure for the documents previously challenged by Jazz, but for which Avadel has continued to withhold or maintain redactions. As an initial matter, Avadel misunderstands the challenge Jazz raises regarding Avadel's supplemental privilege log. Jazz did not "simply reassert[] its … challenges to 4,436 entries on a privilege log that is no longer operative." 9/6/2024 Ltr. from A. Thorson to J. Farley at 2. Jazz takes issue only with the supplemental privilege log entries for the documents that Avadel has continued to withhold or maintain redactions for after Jazz previously challenged them as improperly withheld or redacted. *See* 6/14/2024 Ltr. from A. Grunfeld to K. Wu, Ex. A; 8/30/2024 Ltr. From J. Farley to K. Wu.

In any event, Avadel's **supplemental** privilege log served on July 23, 2024 is deficient because it does not include descriptions sufficient to substantiate any claim of privilege under Rule 26(b)(5)(A) for the documents previously challenged by Jazz, but which Avadel has continued to withhold or maintain redactions for despite Jazz's specific request that Avadel provide such descriptions. *See* 6/14/2024 Ltr. from A. Grunfeld to K. Wu at 2-3 ("If you decline to [produce the challenged documents], please supplement your privilege log … to include information sufficient to substantiate any claim of privilege under Rule 26(b)(5)(A)…."); *Affinion Net Pats., Inc. v. Maritz, Inc.*, 2006 WL 8452658, at *1 (D. Del. Aug. 23, 2006) (a party's "privilege log must contain a brief description or summary of the contents of the document that is specific enough to permit … opposing counsel to determine whether the privilege asserted applies to that document" to comply with the requirements of Federal Rule of Civil Procedure 26(b)(5) (citation omitted)).

Jazz has provided descriptions to substantiate its basis for privilege or **each** document that Avadel has challenged, but which Jazz has continued to redact or withhold in accordance with Rule 26(b)(5)(A).[1] Jazz's privilege log currently contains **3,970** descriptions. *See* Jazz's September 10, 2024 Supplemental Privilege Log. In contrast, when Jazz raised challenges to Avadel's January 22, 2024 privilege log, Avadel produced some documents for which it had been redacting or withholding on the basis of privilege, but failed to "supplement [its] privilege log … to include information sufficient to substantiate any claim of privilege under Rule 26(b)(5)(A)"

---

[1]  Per agreement of the parties, Jazz has not logged documents post-dating May 12, 2021.

for the documents that Jazz challenged but which Avadel declined to produce.  6/14/2024 Ltr. from A. Grunfeld to K. Wu at 2-3, Ex. A; Avadel's July 23, 2024 Supplemental Privilege Log.  Instead, Avadel produced a privilege log with descriptions for a mere ***288*** documents.  In other words, fewer than 7% of the 4,145[2] documents Avadel continues to redact or withhold contain descriptions.  To make matters worse, these 288 descriptions appear to account only for documents whose "File Name" or "Email Subject" fields are redacted (*see* Avadel's January 22, 2024 Privilege log containing 101 descriptions) and those documents that Avadel clawed back on July 1, 2024 (*see* Avadel's July 10, 2024 Privilege log containing 288 descriptions, an increase of 187 corresponding to the 187 documents Avadel clawed back on July 1, 2024).  Notably, Avadel did not provide a description for a ***single*** document it continues to withhold or redact over Jazz's challenges, unless it was otherwise encompassed in one of the preceding categories.  This is unacceptable and prejudicial to Jazz.

Further, Avadel's claim that it "is unable to decipher what specific challenges Jazz purports to have lodged against its entries on its supplemental privilege log" does not make sense.  9/6/2024 Ltr. from A. Thorson to J. Farley at 2.  *First*, Jazz's June 14 privilege challenges were no more "non-descript" or "blanket" than Avadel's.  *Id.* at 1.  Jazz provided Avadel with an annotated version of Avadel's privilege log with challenges to specific entries, much like Avadel provided to Jazz.  *Compare* 6/14/2024 Ltr. from A. Grunfeld to K. Wu at Ex. A, *with* 3/22/2024 Ltr. from H. Huttinger to W. Sears at Ex. A.  Moreover, Avadel confirmed that it "review[ed] [the] 4,436 documents Jazz identified in its June 14 letter," 9/6/2024 Ltr. from A. Thorson to J. Farley at 1-2, so it should be apparent to Avadel which of those documents Avadel continues to redact or withhold.  Avadel must provide descriptions in it privilege log for those documents.  *Second*, when Jazz raised challenges to five documents that appeared to contain improper redactions in its August 30 Letter, Avadel reviewed those documents and provided descriptions for the pre-May 12, 2021 document that it continued to maintain redactions for.  *See id.* at 1; Avadel's September 6, 2024 Privilege Log.  Avadel clearly understands what Jazz is asking of it and how to justify its continued assertions of privilege under Rule 26(b)(5)(A), but has inexplicably failed to do so for the vast majority of documents that Jazz challenged on June 14, 2024.  6/14/2024 Ltr. from A. Grunfeld to K. Wu at Ex. A.

Although it should already be obvious which documents Jazz is lodging challenges against for the reasons discussed above, in the interest of resolving this issue expeditiously, Jazz has attached as Exhibit A to this letter a log consisting of the documents from Avadel's Supplemental Privilege Log that were previously challenged by Jazz on June 14, 2024, but which Avadel has continued to withhold or maintain redactions for that require descriptions to substantiate Avadel's claims of privilege and/or attorney work product in its supplemental privilege log.  This log includes Jazz's prior objections for your reference.  We note that in Jazz's August 30, 2024 Letter, Jazz indicated that "Avadel has continued to withhold or maintain redactions for at least 741 documents that Jazz previously challenged as improperly withheld or redacted."  August 30, 2024

---

[2]  For the avoidance of doubt, Jazz does not challenge all 4,145 documents that Avadel continues to redact or withhold that Jazz previously challenged; Jazz takes issue only with those documents that pre-date May 12, 2021 and for which Avadel continues to refuse to provide descriptions.  *See* Ex. A.

Ltr. from J. Farley to K. Wu at 2. This number was based on the information Avadel had provided Jazz as of August 30, 2024, but now that Avadel has finally revealed the scope and nature of its production error, Jazz realizes the actual number is much higher: 4,145—1,166 of which predate May 12, 2021 and lack descriptions.

On July 1, 2024, Avadel represented that its production error led to an inadvertent production of privileged documents, but mentioned nothing about documents being inadvertently withheld or redacted due to this error. 7/1/2024 Ltr. from K. Wu to A. Grunfeld at 1. On July 10, 2024, Avadel re-produced some of the documents it had clawed back as a result of the error. 7/10/2024 Email from K. Wu to A. Grunfeld. Then, on July 23, 2024, Avadel produced a separate set of documents, seemingly in response to Jazz's June 14, 2024 privilege log challenges, again with no mention of an error resulting in documents being improperly withheld or redacted. *See* 7/22/2024 Ltr. from K. Wu to A. Grunfeld; 7/23/2024 Email from C. Greeley. Given Avadel's failure to disclose the full scope of the production error, Jazz reasonably believed that Avadel's July 23, 2024 production contained documents rolled off only in response to Jazz's June 14, 2024 privilege challenges. Now that Avadel has finally revealed the scope of its production error, Jazz realizes that Avadel's July 23, 2024 production also contained documents rolled off in response to Avadel's production error. Indeed, of the 4,436 documents Jazz challenged, Avadel rolled off just 291 (less than 7%) in its July 23 production. Accordingly, the vast majority of documents that Avadel rolled off in that production—91% (3,373 documents) to be exact—were in response to an error that Avadel did not disclose to Jazz. Based on Jazz's additional review and Avadel's September 6 disclosure that its "significant production error" involved improperly redacting or withholding and then rolling off documents, the number of documents missing descriptions is therefore higher than Jazz initially realized. Please supplement Avadel's privilege log to remedy these deficiencies by September 27, 2024.

Best Regards,

*/s/ Jillian Farley*
Jillian Farley

EXHIBIT  6

| | |
|---|---|
| **From:** | Christine.Greeley@lw.com |
| **Sent:** | Friday, September 27, 2024 4:22 PM |
| **To:** | Andrew Faisman; Nicolas Siebert; Avi Grunfeld; Maxwell Hawley; Will Sears; Lynette Lim; Steig Olson; Jazz Avadel Antitrust; Jack Blumenfeld; JTigan@morrisnichols.com |
| **Cc:** | avadelantitrust.lwteam@lw.com; jazzpatentlitigation.lwteam@lw.com; DSilver@McCarter.com; ajoyce@mccarter.com; HHuttinger@mofo.com; MoFo-Avadel-Jazz@mofo.com |
| **Subject:** | Jazz v. Avadel - No. 22-00941-GBW - Production of AVDL_AT_015 & AVDL_AT_007_Overlay003 |
| **Attachments:** | 2024-09-27 Avadel Supplemental Privilege Log.xlsx |

**[EXTERNAL EMAIL from christine.greeley@lw.com]**


**This message needs your attention**
- jazzavadelantitrust@quinnemanuel.com never replied to this person.

Counsel,

You will receive two secure transfer emails containing links to two of Avadel's productions in the antitrust case, (1) volume AVDL_AT_015, containing documents bearing Bates numbers AVDL_00689122 through AVDL_AT_01058957, and (2) volume AVDL_AT_007_Overlay003, containing documents bearing Bates numbers AVDL_AT_00778646 through AVDL_AT_01033517.  The productions contain documents produced in response to Avadel's review of documents specified in Jazz's correspondence dated 9/16/2024, 9/20/2024, and 9/23/2024.  *See* 9/16/2024 Email from J. Farley; 9/20/2024 Ltr. from J. Farley; 9/23/2024 Email from L. Lim.

The password to access the volume AVDL_AT_015 zip file is **qu#hLp=p7uswl-he?$xu**.  The password to access the volume AVDL_AT_007_Overlay003 zip file is **fozuPhojanLdr3fU@o00**.

These documents are being produced as Highly Confidential pursuant to the protective order entered in this case.

Please also see attached a supplemental privilege log for these productions and the challenges Jazz asserted in its September correspondence, *supra*. Thank you.

Best,
Christie

**Christine Greeley**
Pronouns: She/Her/Hers

**LATHAM & WATKINS LLP**
505 Montgomery Street | Suite 2000 | San Francisco, CA 94111-6538
D: +1.415.395.8836

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.

EXHIBIT 7

| | |
|---|---|
| **From:** | Webb, Margaret A. <MWebb@mofo.com> |
| **Sent:** | Thursday, September 26, 2024 4:31 PM |
| **To:** | Jillian Farley; Christine.Greeley@lw.com; He, Helen; Huttinger, Henry; MoFo-Avadel-Jazz; avadelantitrust.lwteam@lw.com; jazzpatentlitigation.lwteam@lw.com; DSilver@McCarter.com; ajoyce@mccarter.com; ajoyce@mccarter.com |
| **Cc:** | Jazz Avadel Antitrust; JTigan@morrisnichols.com; Nicolas Siebert; Jack Blumenfeld |
| **Subject:** | RE: Jazz/Avadel - Greenleaf |

**[EXTERNAL EMAIL from mwebb@mofo.com]**

Jillian,

Avadel maintains its position that the attorney-client privilege covers communications involving Greenleaf. ███████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████████ Greenleaf was an "integrated member of the [LUMRYZ] team" and worked with Avadel, and its counsel, on "legal and regulatory issues." *In re Flonase Antitrust Litig.*, 879 F. Supp. 2d 454, 460 (E.D. Pa. 2012) (holding that communications between a pharmaceutical company and an independent pharmaceutical consulting services company were entitled to the attorney-client privilege where consultant's "work touched on several legal and regulatory issues, such as [company's] assertion of intellectual property rights, interaction with the FDA, and application for and receipt of pediatric exclusivity for [drug]"); *see also Robocast, Inc. v. Apple, Inc.*, No. CV 10-1055 (RGA), 2013 WL 12147601, *5 (D. Del. July 19, 2013) (attorney-client privilege applied where independent accountant's "involvement was integral to the solicitation, receipt and use of legal advice" for the company that retained him); *Sight Sciences, Inc. v. Ivantis, Inc.*, No. CV 21-1317-GBW-SRF, 2023 WL 7458354, at *2-3 (D. Del. July 3, 2023) (denying motion to compel production of withheld documents because "disclosure of a privileged communication to a consultant does not automatically waive the privilege").

Nevertheless, Avadel will produce a subset of downgraded documents based on Avadel's re-review of the Greenleaf documents identified in Jazz's September 24 privilege challenge log. We will endeavor to produce the downgraded documents tomorrow.

Best,
Meg

**Margaret Webb**
Associate
mwebb@mofo.com
T: +1 (415) 268-7544

Morrison Foerster
425 Market St.
San Francisco, CA 94105

## ⲘⲞⲢⲢⲒⲤⲞⲚ FOERSTER

mofo.com | LinkedIn

**From:** Jillian Farley <jillianfarley@quinnemanuel.com>
**Sent:** Tuesday, September 24, 2024 1:01 PM
**To:** Christine.Greeley@lw.com; He, Helen <HHe@mofo.com>; Huttinger, Henry <HHuttinger@mofo.com>; MoFo-Avadel-Jazz <MoFo-Avadel-Jazz@mofo.com>; avadelantitrust.lwteam@lw.com; jazzpatentlitigation.lwteam@lw.com; DSilver@McCarter.com <ajoyce@mccarter.com>; ajoyce@mccarter.com
**Cc:** Jazz Avadel Antitrust <jazzavadelantitrust@quinnemanuel.com>; JTigan@morrisnichols.com; Nicolas Siebert <nicolassiebert@quinnemanuel.com>; Jack Blumenfeld <jblumenfeld@morrisnichols.com>
**Subject:** RE: Jazz/Avadel - Greenleaf

<mark>External Email</mark>

Counsel,

We have reviewed Avadel's engagement letters with Greenleaf and do not believe they support Avadel's claims of privilege or attorney work product for communications between Avadel and Greenleaf.  Please produce any documents that include Greenleaf personnel which you have withheld or redacted on the basis of privilege or attorney work product by September 27, 2024.  Jazz has identified entries involving Greenleaf with "Presence of Third Party" in the "Jazz Challenge" column of the attached log.

Thank you,
Jillian

**Jillian Farley**
*Associate*
**Quinn Emanuel Urquhart & Sullivan, LLP**

51 Madison Avenue, 22nd Floor
New York, NY 10010
212-849-7446 Direct
212-849-7000 Main Office Number
212-849-7100 FAX
jillianfarley@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Jillian Farley <jillianfarley@quinnemanuel.com>
**Sent:** Thursday, September 5, 2024 5:53 PM
**To:** Christine.Greeley@lw.com; HHe@mofo.com; HHuttinger@mofo.com; MoFo-Avadel-Jazz@mofo.com; avadelantitrust.lwteam@lw.com; jazzpatentlitigation.lwteam@lw.com; DSilver@McCarter.com; ajoyce@mccarter.com; ajoyce@mccarter.com
**Cc:** Jazz Avadel Antitrust <jazzavadelantitrust@quinnemanuel.com>; JTigan@morrisnichols.com; Nicolas Siebert <nicolassiebert@quinnemanuel.com>; Jack Blumenfeld <jblumenfeld@morrisnichols.com>
**Subject:** Jazz/Avadel - Greenleaf

Counsel,

Gudeman identified Greenleaf as a consultant to Avadel on regulatory issues, including ODE, during her deposition on August 21, 2024. Avadel withheld or redacted a number of communications with Greenleaf based on claims of privilege. Please provide Jazz with Avadel's engagement letter(s) with Greanleaf by September 12, 2024 so that Jazz can evaluate this privilege assertion.

Thank you,
**Jillian Farley**
*Associate*
**Quinn Emanuel Urquhart & Sullivan, LLP**

51 Madison Avenue, 22nd Floor
New York, NY 10010
212-849-7446 Direct
212-849-7000 Main Office Number
212-849-7100 FAX
jillianfarley@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

===========================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email. Learn about Morrison & Foerster LLP's Privacy Policy.
.

# EXHIBIT  8

| | |
|---|---|
| **From:** | Anne.Thorson@lw.com |
| **Sent:** | Wednesday, October 16, 2024 8:50 PM |
| **To:** | DSilver@McCarter.com; Lynette Lim; Anna.Rathbun@lw.com; DPeters@steinsperling.com |
| **Cc:** | Jazz Avadel Antitrust; Jack Blumenfeld; JTigan@morrisnichols.com; avadelantitrust.lwteam@lw.com; MoFo-Avadel-Antitrust@mofo.com; ajoyce@mccarter.com |
| **Subject:** | RE: Jazz v. Avadel - ProPharma Documents |

**[EXTERNAL EMAIL from anne.thorson@lw.com]**

Counsel,

Pursuant to Jazz's request during our October 15th meet and confer, Avadel reviewed the documents with entries on its September 27, 2024 privilege log that (1) involved communications with ProPharma or the Weinberg Group, and (2) did not contain legal personnel in the to/from/cc/bcc or other metadata fields on the log.

Avadel will produce the following documents: PRIV_AVDL_AT_00003855, PRIV_AVDL_AT_00004002, PRIV_AVDL_AT_00004014, PRIV_AVDL_AT_00004016, and PRIV_AVDL_AT_00004375.

Avadel will provide redacted versions of the following documents: PRIV_AVDL_AT_00010592, PRIV_AVDL_AT_00009427, PRIV_AVDL_AT_00010176, PRIV_AVDL_AT_00004396, PRIV_AVDL_AT_00004477, PRIV_AVDL_AT_00005994, PRIV_AVDL_AT_00004466, PRIV_AVDL_AT_00004467, and PRIV_AVDL_AT_00012250.

Thank you,

**Anne Nicole Thorson**
Pronouns: She/Her/Hers

**LATHAM & WATKINS LLP**
10250 Constellation Blvd. Suite 1100 | Los Angeles, CA 90067
D: +1.424.653.5591 | M: +1.909.647.7453

**From:** Silver, Daniel <DSilver@McCarter.com>
**Sent:** Tuesday, October 15, 2024 4:29 PM
**To:** 'Lynette Lim' <lynettelim@quinnemanuel.com>; Rathbun, Anna (DC) <Anna.Rathbun@lw.com>; Thorson, Anne (CC) <Anne.Thorson@lw.com>
**Cc:** Jazz Avadel Antitrust <jazzavadelantitrust@quinnemanuel.com>; Jack Blumenfeld <jblumenfeld@morrisnichols.com>; JTigan@morrisnichols.com; #C-M AVADEL ANTITRUST - LW TEAM <avadelantitrust.lwteam@lw.com>; MoFo-Avadel-Antitrust@mofo.com; Joyce, Alexandra <ajoyce@mccarter.com>
**Subject:** RE: Jazz v. Avadel - ProPharma Documents

Lynette, We have a couple minor changes to the letter. With these changes implemented, Jeremy has my permission to file. Thanks and best regards, Dan

**From:** Lynette Lim <lynettelim@quinnemanuel.com>
**Sent:** Tuesday, October 15, 2024 3:25 PM
**To:** Anna.Rathbun@lw.com; Anne.Thorson@lw.com; DPeters@steinsperling.com

**Cc:** Jazz Avadel Antitrust <jazzavadelantitrust@quinnemanuel.com>; Jack Blumenfeld <jblumenfeld@morrisnichols.com>; JTigan@morrisnichols.com; avadelantitrust.lwteam@lw.com; MoFo-Avadel-Antitrust@mofo.com; Silver, Daniel <DSilver@McCarter.com>; Joyce, Alexandra <ajoyce@mccarter.com>
**Subject:** RE: Jazz v. Avadel - ProPharma Documents

## EXTERNAL EMAIL | STOP | VERIFY | REPORT

Anna,

Thanks for the meet and confer and for confirming that Avadel will produce a privilege log accompanying the ProPharma production by October 18. We confirm that the ProPharma and Weinberg Group privilege designations we are challenging are encompassed within the September 27 privilege log and we are not challenging additional entries, though we reserve the right to challenge future entries.

Attached please find a revised letter to the Court. Please let us know promptly if you have any revisions to names of counsel for Avadel. As discussed, we'd like to get this on file today or tomorrow.

Best,

Lynette

**Lynette Lim**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
213-443-3746 Direct
213-443-3000 Main Office Number
213-443-3100 Fax
lynettelim@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Anna.Rathbun@lw.com <Anna.Rathbun@lw.com>
**Sent:** Tuesday, October 15, 2024 8:20 AM
**To:** Lynette Lim <lynettelim@quinnemanuel.com>; Anne.Thorson@lw.com; DPeters@steinsperling.com
**Cc:** Jazz Avadel Antitrust <jazzavadelantitrust@quinnemanuel.com>; Jack Blumenfeld <jblumenfeld@morrisnichols.com>; JTigan@morrisnichols.com; avadelantitrust.lwteam@lw.com; MoFo-Avadel-Antitrust@mofo.com; DSilver@McCarter.com; ajoyce@mccarter.com
**Subject:** RE: Jazz v. Avadel - ProPharma Documents

**[EXTERNAL EMAIL from anna.rathbun@lw.com]**

Lynette,

While we continue to disagree with the characterizations in your email, we are available to meet and confer at 2:30-3:00 ET or 4-4:30 ET today.

Thanks,
Anna

---

**From:** Lynette Lim <lynettelim@quinnemanuel.com>
**Sent:** Monday, October 14, 2024 8:17 PM
**To:** Rathbun, Anna (DC) <Anna.Rathbun@lw.com>; Thorson, Anne (CC) <Anne.Thorson@lw.com>;
DPeters@steinsperling.com
**Cc:** Jazz Avadel Antitrust <jazzavadelantitrust@quinnemanuel.com>; Jack Blumenfeld
<jblumenfeld@morrisnichols.com>; JTigan@morrisnichols.com; #C-M AVADEL ANTITRUST - LW TEAM
<avadelantitrust.lwteam@lw.com>; MoFo-Avadel-Antitrust@mofo.com; DSilver@McCarter.com; ajoyce@mccarter.com
**Subject:** RE: Jazz v. Avadel - ProPharma Documents

Anna,

Thank you for confirming that Avadel intends to complete its privilege review in time for ProPharma to produce communications from January 1, 2016 through July 23, 2024 by October 18.  Please also provide a privilege log for any withheld documents by that date.

In the meantime, we will revise our proposed letter to the Court accordingly and recirculate it.  We reserve our rights to challenge Avadel's existing privilege claims over documents involving ProPharma (and its subsidiary, the Weinberg Group), and to further challenge documents that Avadel withholds upon this round of review.

As for the documents with ProPharma/the Weinberg Group Avadel has already withheld, Avadel's silence after we invited Avadel to provide any retainer or consulting agreements substantiating its privilege claim is revealing.  As such, Jazz challenges the following categories of documents over which Avadel has asserted privilege:
1. Withheld documents and communications involving ProPharma/the Weinberg Group with no legal personnel listed in the to/from/cc/bcc or other metadata fields; and
2. Redacted documents and communications involving ProPharma/the Weinberg Group with no legal personnel listed in the to/from/cc/bcc or other metadata fields or any other indicia of privilege in the unredacted portions.

We would like to meet and confer on this issue ASAP—we believe we are at impasse but would like to discuss briefly before involving the Court.  As discussed, we are more than happy to involve ProPharma's counsel (copied on this email) in the discussion.  Please let us know your availability to meet and confer tomorrow.  We would like to proceed quickly, in light of Ms. Scarola's impending deposition.

As for your stated concern that we listed Delaware counsel on our draft proposed letter to the Court:  as I'm sure you know of, Jazz's Delaware counsel reached out to Avadel's Delaware counsel last Friday and they met and conferred this morning on the substance of the proposed letter, confirming impasse.  Jazz included Delaware counsel's names and that representation in the draft letter in the interest of getting a draft to Avadel promptly, and with the understanding that Delaware counsel would meet and confer before we filed it.  We do not think there is anything improper in doing so, but in any event, that issue has now been resolved.

We reserve all rights.

Best,

Lynette

**Lynette Lim**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
213-443-3746 Direct

213-443-3000 Main Office Number
213-443-3100 Fax
lynettelim@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Anna.Rathbun@lw.com <Anna.Rathbun@lw.com>
**Sent:** Friday, October 11, 2024 7:15 PM
**To:** Lynette Lim <lynettelim@quinnemanuel.com>; Anne.Thorson@lw.com
**Cc:** Jazz Avadel Antitrust <jazzavadelantitrust@quinnemanuel.com>; Jack Blumenfeld <jblumenfeld@morrisnichols.com>; JTigan@morrisnichols.com; avadelantitrust.lwteam@lw.com; MoFo-Avadel-Antitrust@mofo.com; DSilver@McCarter.com; ajoyce@mccarter.com
**Subject:** RE: Jazz v. Avadel - ProPharma Documents

[EXTERNAL EMAIL from anna.rathbun@lw.com]

---

Lynette,

Thank you for your email. We are not in a position to provide revisions to the letter by your arbitrary goal of tonight.  We will be back in touch after the Jewish holiday with proposed changes reflecting input from our larger team. In the meantime, however, we want to note the following:

First, as you know, neither party's Delaware counsel was on today's call.  We are troubled that Jazz's proposed letter to the Court incorrectly represents that fact.  We are also concerned by Jazz's mischaracterization of the dispute and the relief it is seeking.  We continue to believe it is improper for Jazz to involve the Court prior to meeting and conferring with ProPharma.

Second, as we indicated on the call, after our meet and confer we received the Avadel-ProPharma communications that ProPharma collected in response to the subpoena.  We now anticipate that we will be in a position to complete our privilege review in time to allow ProPharma to produce non-privileged, non-duplicative communications by October 18.  This includes non-privileged, non-duplicative communications dated between Jan. 1, 2016, through July 23, 2024.

As Judge Williams has already acknowledged through his order extending Avadel's time for its supplemental production, we as Avadel's counsel have an ethical obligation to ensure that Avadel's privileged communications are protected.

By the time this issue is fully briefed, Jazz will already have ProPharma's production of communications between Avadel and ProPharma in hand.   Avadel reserves all rights to seek appropriate relief if Jazz insists on including this issue in its letter.

Thanks,
Anna

---

**From:** Lynette Lim <lynettelim@quinnemanuel.com>
**Sent:** Friday, October 11, 2024 8:00 PM
**To:** Rathbun, Anna (DC) <Anna.Rathbun@lw.com>; Thorson, Anne (CC) <Anne.Thorson@lw.com>
**Cc:** Jazz Avadel Antitrust <jazzavadelantitrust@quinnemanuel.com>; Jack Blumenfeld <jblumenfeld@morrisnichols.com>; JTigan@morrisnichols.com; #C-M AVADEL ANTITRUST - LW TEAM

<avadelantitrust.lwteam@lw.com>; MoFo-Avadel-Antitrust@mofo.com; DSilver@McCarter.com; ajoyce@mccarter.com

**Subject:** Jazz v. Avadel - ProPharma Documents

Anna,

Thanks for the meet and confer today.  Attached is a draft joint letter to the Court regarding Avadel's involvement in the ProPharma production and Jazz's privilege challenges.  Please let us know if you would like to make any revisions to the names listed as counsel for Avadel.  We'd like to get this on file ASAP—tonight if possible.

During the meet and confer, you mentioned that you believe that counsel for ProPharma should be involved in this discussion.  Again, Jazz has been in separate conversations with ProPharma for months regarding the production of documents, and we were not aware until yesterday that Avadel intended to involve itself in their production.  Nonetheless, if you'd like us to talk to ProPharma before the Court makes a scheduling order regarding Jazz's requests, we are happy to make ourselves available for a call with them to discuss the logistics of the proposed review and production.

Best,

Lynette

**Lynette Lim**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
213-443-3746 Direct
213-443-3000 Main Office Number
213-443-3100 Fax
lynettelim@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com. This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

# EXHIBIT  9

| | |
|---|---|
| **From:** | Molly.Sprick@lw.com |
| **Sent:** | Friday, October 18, 2024 4:19 PM |
| **To:** | Jillian Farley; avadelantitrust.lwteam@lw.com; MoFo-Avadel-Antitrust@mofo.com; DSilver@McCarter.com; ajoyce@mccarter.com; Anne.Thorson@lw.com; Anna.Rathbun@lw.com |
| **Cc:** | Jazz Avadel Antitrust; JTigan@morrisnichols.com; Jack Blumenfeld |
| **Subject:** | RE: Jazz/Avadel - Inconsistent Redactions |

**[EXTERNAL EMAIL from molly.sprick@lw.com]**

Jillian,

We have reviewed the documents noted below and agree to reproduce AVDL_AT_01013581 and AVDL_AT_01024934 without redactions.

Best,
Molly

**Molly Sprick**
*Pronouns: She/Her/Hers*

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Direct Dial: +1.332.240.2171
Email: molly.sprick@lw.com
https://www.lw.com

---

**From:** Jillian Farley <jillianfarley@quinnemanuel.com>
**Sent:** Thursday, October 17, 2024 12:17 PM
**To:** #C-M AVADEL ANTITRUST - LW TEAM <avadelantitrust.lwteam@lw.com>; MoFo-Avadel-Antitrust@mofo.com; DSilver@McCarter.com; ajoyce@mccarter.com; Thorson, Anne (CC) <Anne.Thorson@lw.com>; Rathbun, Anna (DC) <Anna.Rathbun@lw.com>
**Cc:** Jazz Avadel Antitrust <jazzavadelantitrust@quinnemanuel.com>; JTigan@morrisnichols.com; Jack Blumenfeld <jblumenfeld@morrisnichols.com>
**Subject:** Jazz/Avadel - Inconsistent Redactions

Counsel,

During Jazz's ongoing review of Avadel's claims of privilege on ProPharma communications, we came across two versions of the same email thread that are inconsistently redacted (AVDL_AT_01013581 and AVDL_AT_01024934). We wanted to raise this issue to get Avadel's privilege position on these documents, but see no basis for the privilege based on Avadel's privilege log description for AVDL_AT_01013581. Please let us know if you plan to claw any of these documents back so we can respond accordingly.

Thank you,
Jillian

**Jillian Farley**
*Associate*
**Quinn Emanuel Urquhart & Sullivan, LLP**

51 Madison Avenue, 22nd Floor
New York, NY 10010
212-849-7446 Direct
212-849-7000 Main Office Number
212-849-7100 FAX
jillianfarley@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.

# EXHIBIT 10
# FULLY REDACTED

EXHIBIT  11

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

---

**FORM 8-K**

---

**CURRENT REPORT**
Pursuant to Section 13 or 15(d)
of the Securities Exchange Act of 1934

Date of Report (Date of earliest event reported): **February 6, 2019**

---

# AVADEL PHARMACEUTICALS PLC

(Exact name of registrant as specified in its charter)

---

| **Ireland** | **000-28508** | **98-1341933** |
|---|---|---|
| (State or Other Jurisdiction of Incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

**Block 10-1**
**Blanchardstown Corporate Park,**
**Ballycoolin**
**Dublin 15, Ireland**                    **Not Applicable**
(Address of Principal Executive Offices)              (Zip Code)

Registrant's telephone number, including area code: **+353 1 485 1200**

---

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐    Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐    Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐    Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐    Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Indicate by check mark whether the registrant is an emerging growth company as defined in Rule 405 of the Securities Act of 1933 (§230.405 of this chapter) or Rule 12b-2 of the Securities Exchange Act of 1934 (§240.12b-2 of this chapter).

Emerging growth company ☐

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

**Item 1.01     Entry into a Material Definitive Agreement.**

On February 6, 2019, Avadel Pharmaceuticals plc, an Irish public limited company (the "Company"), entered into the First Supplemental Indenture (the "First Supplemental Indenture"), among the Company, Avadel Finance Cayman Limited, a Cayman Islands exempted company limited by its shares and a wholly owned subsidiary of the Company ("Avadel Cayman"), and The Bank of New York Mellon, a New York banking corporation, as trustee (the "Trustee"). The First Supplemental Indenture amended certain provisions of the indenture dated as of February 16, 2018 (the "Indenture"), providing for the issuance of $143,750,000 aggregate principal amount of 4.50% Exchangeable Senior Notes due 2023 (the "Notes"). In particular, the First Supplemental Indenture provided that (a) any bankruptcy filing by Avadel Specialty Pharmaceuticals, LLC, a Delaware limited liability company ("Specialty Pharma") and an indirect wholly owned subsidiary of Avadel, would not constitute an Event of Default under the Indenture, and (b) any transfer or other disposition of any or all of Specialty Pharma's assets or a plan of reorganization or liquidation, in either case as confirmed by the bankruptcy court, will not be deemed to be the sale, conveyance, transfer or lease of all or substantially all of the properties and assets of Avadel under the Indenture.

The foregoing description of the First Supplemental Indenture does not purport to be complete and is qualified in its entirety by reference to the complete text of the First Supplemental Indenture, a copy of which is filed as Exhibit 4.1 to this Current Report on Form 8-K and is incorporated herein by reference.

**Item 8.01     Other Events.**

On February 7, 2019, the Company issued a press release announcing, among other things, the bankruptcy filing by Specialty Pharma. The press release is filed as Exhibit 99.1 to this Current Report on Form 8-K and is incorporated herein by reference. The foregoing description of the Company's February 7, 2019 press release does not purport to be complete and is qualified in its entirety by reference to the complete text of such press release which is filed as Exhibit 99.1 to this Current Report on Form 8-K and is incorporated herein by reference.

On February 7, 2019, the Company issued a press release providing certain additional information about the bankruptcy filing by Specialty Pharma. This press release is filed as Exhibit 99.2 to this Current Report on Form 8-K and is incorporated herein by reference. The foregoing description of such February 7, 2019 press release does not purport to be complete and is qualified in its entirety by reference to the complete text of such press release which is filed as Exhibit 99.2 to this Current Report on Form 8-K and is incorporated herein by reference.

**Item 9.01     Financial Statements and Exhibits.**

(d) Exhibits

| | |
|---|---|
| 4.01 | First Supplemental Indenture, dated as of February 6, 2019, by and among Avadel Finance Cayman Limited, Avadel Pharmaceuticals plc, and The Bank of New York Mellon. |
| 99.1 | Press release of Avadel Pharmaceuticals plc dated February 7, 2019. |
| 99.2 | Press release of Avadel Pharmaceuticals plc dated February 7, 2019. |

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

**AVADEL PHARMACEUTICALS PLC**

By: /s/ Phillandas T. Thompson

   Phillandas T. Thompson
   Senior Vice President, General Counsel and Corporate Secretary

Date: February 7, 2019

Exhibit Index

4.01    First Supplemental Indenture, dated as of February 6, 2019, by and among Avadel Finance Cayman Limited, Avadel Pharmaceuticals plc, and The Bank of New York Mellon.

99.1    Press release of Avadel Pharmaceuticals plc dated February 7, 2019.

99.2    Press release of Avadel Pharmaceuticals plc dated February 7, 2019.

Exhibit 4.1

FIRST SUPPLEMENTAL INDENTURE

Supplementing the Indenture dated as of February 16, 2018

AVADEL FINANCE CAYMAN LIMITED, as Notes Issuer

and

AVADEL PHARMACEUTICALS PLC, as Guarantor

and

THE BANK OF NEW YORK MELLON, as Trustee

―――――――――――――――

4.50% Exchangeable Senior Notes due 2023

Dated as of February 6, 2019

FIRST SUPPLEMENTAL INDENTURE, dated as of February 6, 2019 (this "First Supplemental Indenture"), by and among Avadel Finance Cayman Limited, a Cayman Islands exempted company limited by its shares (the "Company"), Avadel Pharmaceuticals plc, a public limited company incorporated under the laws of Ireland ("Avadel"), and The Bank of New York Mellon, a New York banking corporation (the "Trustee"), as Trustee under the Indenture dated as of February 16, 2018 by and among the Company, Avadel and the Trustee (the "Indenture"). Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed thereto in the Indenture.

RECITALS

WHEREAS, the Company and Avadel have heretofore executed and delivered to the Trustee the Indenture providing for the issuance of $143,750,000 aggregate principal amount of 4.50% Exchangeable Senior Notes due 2023 (the "Notes").

WHEREAS, Avadel Specialty Pharmaceuticals, LLC, a Delaware limited liability company ("Specialty Pharma"), is an indirect, wholly owned subsidiary of Avadel.

WHEREAS, Specialty Pharma intends to become the subject of a voluntary case (the "Bankruptcy Case") under the United States federal bankruptcy laws (the "Bankruptcy Code") before the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court" and, such case, the "Specialty Pharma Bankruptcy Proceeding").

WHEREAS, in connection with the Bankruptcy Case, Specialty Pharma intends to transfer or otherwise dispose of any or all of its assets pursuant to (x) one or more orders entered by the Bankruptcy Court pursuant to the Bankruptcy Code or (y) a plan of reorganization or liquidation, in either case as confirmed by the Bankruptcy Court (each, a "Specialty Pharma Asset Transfer").

WHEREAS, Section 6.01(i) of the Indenture provides, among other things, that the commencement of a voluntary case or other proceeding seeking liquidation, reorganization or other relief under any bankruptcy or similar laws with respect to the Company, Avadel or any Significant Subsidiary is an Event of Default.

WHEREAS, Specialty Pharma is a Significant Subsidiary for all purposes under the Indenture.

WHEREAS, Section 11.01 of the Indenture provides, among other things, that neither the Company nor Avadel shall consolidate or enter into a scheme or arrangement with, merge with or into, or sell, convey, transfer or lease all or substantially all of their respective properties and assets to, another Person except under certain conditions specified therein.

WHEREAS, the Company and Avadel desire to amend Sections 1.01, 6.01(i) and 11.01 of the Indenture to ensure that neither the Specialty Pharma Bankruptcy Proceeding, nor any Specialty Pharma Asset Transfer, will result in an Event of Default under the Indenture or otherwise violate the Notes or the Indenture.

WHEREAS, pursuant to Sections 10.05 and 17.06 of the Indenture, there have been delivered to the Trustee on the date hereof an Officers' Certificate and Opinion of Counsel certifying, among other things, that all conditions precedent under the Indenture relating to execution and delivery of this First Supplemental Indenture have been complied with.

WHEREAS, the Holders of at least a majority of the aggregate principal amount of the Notes then outstanding have consented to the amendments to the Indenture set forth herein pursuant to Section 10.02 of the Indenture.

WHEREAS, all things necessary to make this First Supplemental Indenture a valid supplement to the Indenture, according to the terms of this First Supplemental Indenture and the terms of the Indenture, have been done.

NOW, THEREFORE, in consideration of the foregoing and the mutual premises and covenants contained herein and for other good and valuable consideration, the parties hereto agree as follows:

ARTICLE 1
DEFINITIONS AND OTHER PROVISIONS OF GENERAL APPLICATION

Section 1.01 <u>References</u>. Each reference to a particular section set forth in this First Supplemental Indenture shall, unless otherwise stated or the context otherwise requires, refer to this First Supplemental Indenture.

ARTICLE 2
AMENDMENTS

Section 2.01 <u>Amendment to Section 1.01 of the Indenture</u>. Section 1.01 of the Indenture is hereby amended by adding the following definitions (each of which shall be included in alphabetical order within Section 1.01):

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware.

"**Specialty Pharma**" means Avadel Specialty Pharmaceuticals, LLC, a Delaware limited liability company and an indirect, wholly owned subsidiary of Avadel.

"**Specialty Pharma Asset Transfer**" means any transfer or other disposition of any or all of Specialty Pharma's assets to one or more Persons other than any Affiliate pursuant to (x) one or more orders entered by the Bankruptcy Court pursuant to the Bankruptcy Code or (y) a plan of reorganization or liquidation, in either case as confirmed by the Bankruptcy Court.

"**Specialty Pharma Bankruptcy Proceeding**" means a voluntary case commenced pursuant to any chapter or provision of the Bankruptcy Code before the Bankruptcy Court no later than February 15, 2019.

Section 2.02 <u>Amendment to Section 6.01(i) of the Indenture</u>. Section 6.01(i) of the Indenture is hereby amended and restated in its entirety to read as follows:

2

"(i) the Company, Avadel or any Significant Subsidiary of Avadel shall commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to the Company, Avadel or any such Significant Subsidiary or its debts under any bankruptcy, insolvency, examinership or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, examiner, liquidator, custodian or other similar official of the Company, Avadel or any such Significant Subsidiary or any substantial part of its property, or shall consent to any such relief or to the appointment of or taking possession by any such official in an involuntary case or other proceeding commenced against it, or shall make a general assignment for the benefit of creditors, or shall fail generally to pay its debts as they become due; *provided*, that, notwithstanding the foregoing, the commencement and prosecution of the Specialty Pharma Bankruptcy Proceeding shall not constitute an Event of Default;"

Section 2.03 <u>Amendment to Section 11.01 of the Indenture</u>. Section 11.01 of the Indenture is hereby amended by adding the following to the last paragraph of Section 11.01:

"Anything to the contrary (including without limitation the preceding sentence) notwithstanding, and for the avoidance of doubt, any Specialty Pharma Asset Transfer shall not be deemed to be the sale, conveyance, transfer or lease of all or substantially all of the properties and assets of Avadel to another Person."

ARTICLE 3
MISCELLANEOUS PROVISIONS

Section 3.01 <u>Confirmation of Indenture</u>. The Indenture, as supplemented and amended by this First Supplemental Indenture, is in all respects ratified and confirmed, and the Indenture and this First Supplemental Indenture shall be read, taken and construed as one and the same instrument.

Section 3.02 <u>Governing Law</u>. THIS FIRST SUPPLEMENTAL INDENTURE SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK. THE TRUSTEE, THE COMPANY, AVADEL, AND THE HOLDERS AGREE TO SUBMIT TO THE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS FIRST SUPPLEMENTAL INDENTURE.

Section 3.03 <u>Separability</u>. In case any provision in this First Supplemental Indenture shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

Section 3.04 <u>Counterparts</u>. This First Supplemental Indenture may be executed in several counterparts, each of which shall be an original and all of which shall constitute but one and the same document.

Section 3.05 <u>Effect of Headings</u>. The Section headings herein are for convenience of reference only, are not to be considered a part hereof and shall in no way modify or restrict any of the terms and provisions hereof.

Section 3.06 <u>Trustee Makes No Representations</u>. The Trustee makes no representations as to the validity or sufficiency of this First Supplemental Indenture. The recitals of fact contained herein shall be taken as statements solely of the Company and Avadel, and the Trustee assumes no responsibility for the correctness or sufficiency thereof.

Section 3.07 <u>Successors and Assigns</u>. All agreements of the Company and Avadel in this First Supplemental Indenture shall bind their respective successors.

[The remainder of this page is intentionally left blank.]

4

IN WITNESS WHEREOF, the parties hereto have caused this First Supplemental Indenture to be duly executed as of the day and year first above written.

AVADEL FINANCE CAYMAN LIMITED,
a Cayman Island exempted company limited by its shares

By:    /s/ Michael F. Kanan
       Name:  Michael F. Kanan
       Title:   Treasurer

AVADEL PHARMACEUTICALS PLC,
a public limited company incorporated under the laws of Ireland

By:    /s/ Michael F. Kanan
       Name:  Michael F. Kanan
       Title:   Senior Vice President and
               Chief Financial Officer

[Signature Page to First Supplemental Indenture (Exchangeable Senior Notes due 2023)]

THE BANK OF NEW YORK MELLON, as Trustee

By:   /s/ Wanda Camacho
       Name:  Wanda Camacho
       Title:   Vice President

[Signature Page to First Supplemental Indenture (Exchangeable Senior Notes due 2023)]

Exhibit 99.1

**Avadel Pharmaceuticals Announces Restructuring to Focus on FT218 Clinical Development Program**

– Company cost structure expected to be reduced by $70 to $75 million in 2019 –

– Approximately $100 million in cash and marketable securities at December 31, 2018 –

DUBLIN, Ireland, February 7, 2019 (GLOBE NEWSWIRE) — Avadel Pharmaceuticals plc (Nasdaq: AVDL), today announced a corporate restructuring to assure the financial health required to maximize the value of FT218, currently in Phase III development for the treatment of excessive daytime sleepiness (EDS) and Cataplexy in patients suffering from Narcolepsy. Avadel expects to realize $70 to $75 million in cost reductions in 2019 as compared to 2018 as a result of the restructuring plan, driven primarily by exiting NOCTIVA™.

"It is clear that FT218, an investigational, once-nightly formulation of sodium oxybate, is the Company's most promising and commercially-attractive asset targeting a large orphan market with an estimated value of nearly $1.5 billion in 2018," said Greg Divis, interim Chief Executive Officer of Avadel. "If approved, we believe FT218, with once-nightly dosing, will provide a significant improvement for patients over the current standard-of-care. Our focus going forward is to direct our resources toward this development program. As part of our review of the Company's operations, we have engaged third-party experts to evaluate the ongoing clinical development program of FT218, including the REST-ON Phase III clinical trial, with the objectives of accelerating enrollment and assuring NDA filing readiness. To date, 149 patients have been randomized in the study, 56% of the overall enrollment goal."

Geoffrey Glass, Chairman of Avadel's Board of Directors added, "following recently-announced management and board changes, we undertook a comprehensive review of our existing businesses and corporate strategy. The restructuring plan announced today marks an important step toward restoring Avadel's financial health and creating a pathway to enhance shareholder value. This plan simplifies Avadel's business, preserves capital, and creates needed focus and clarity. While the restructuring unfortunately affects a majority of our employees, this action is required to enable the Company to maximize the value of FT218 for the treatment of narcolepsy."

Avadel expects that the restructuring and other cost-saving actions will result in $70 to $75 million in cost reductions during 2019 as compared to 2018, of which $55 to $60 million is expected to result from the exit of NOCTIVA. NOCTIVA's performance since launch has been highly disappointing despite a substantial investment of resources. It no longer warrants such a level of support, and Avadel will be better positioned for the future by exiting the business entirely. Once fully implemented, the plan will lower the Company's cost structure by $80 to $90 million in 2020 and beyond when compared to 2018. Avadel estimates it will incur approximately $10 to $15 million of one-time pre-tax charges for severance and other costs related to the restructuring, primarily during the first half of 2019. The Company's cash and marketable securities balance as of December 31, 2018 was approximately $100 million.

The Company's workforce will be downsized by more than 50% as part of the restructuring. The focus of the remaining company and corresponding resources include FT218 and hospital products related capabilities and functions. Separately, Avadel Specialty Pharmaceuticals, LLC, a subsidiary, responsible solely for the sales, marketing and distribution of NOCTIVA, has made a voluntary filing under Chapter 11 of the United States Bankruptcy Code. This action is not expected to materially impact any other aspect of the Company's business, including the ability to operate its sterile injectables hospital business and complete the FT218 Phase III clinical trial. As part of this action, Avadel expects to record in the fourth quarter of 2018 a pre-tax non-cash impairment charge of approximately $66 million related to NOCTIVA intangible assets.

Avadel will host a conference call and live webcast in early March to report financial results for the fourth quarter and full year ended December 31, 2018 and provide a corporate update. The Company will announce the exact date and time of the call later this month.

**About Avadel Pharmaceuticals plc**

Avadel Pharmaceuticals plc (Nasdaq: AVDL) is a specialty pharmaceutical company that seeks to develop differentiated pharmaceutical products that are safe, effective and easy to take through formulation development, by utilizing its proprietary drug delivery technology and through in-licensing / acquiring new products; ultimately, helping patients adhere to their prescribed medical treatment and see better results. Avadel's current portfolio of products and product candidates focuses on the central nervous system (CNS) / sleep, and hospital markets. The Company is headquartered in Dublin, Ireland with operations in St. Louis, Missouri and Lyon, France. For more information, please visit www.avadel.com.

*Safe Harbor: This press release may include forward-looking statements within the meaning of Section 27A of the Securities Act of 1933 and Section 21E of the Securities Exchange Act of 1934. The words "will," "may," "believe," "expect," "anticipate," "estimate," "project" and related or similar words and expressions, and (as applicable) the negatives thereof, identify forward-looking statements, each of which speaks only as of the date the statement is made. Although we believe that our forward-looking statements are based on estimates and assumptions made within the bounds of our knowledge of our business and operations, our business and operations are subject to significant risks and as a result there can be no assurance that actual results of our research, development and commercialization activities and the results of our business and operations will not differ materially from the results contemplated in such forward-looking statements. These risks include: (a) risks relating to our restructuring actions described in this presentation, including the risks that (i) such actions may not result in the full cost savings we have described in this presentation; and (ii) we may incur a greater amount of one-time costs as a result of such actions than the amount we describe in this presentation; (b) risks relating to the development of our investigational "FT218" sodium oxybate product, including the risks that (i) we may not have adequate capital to complete the development of FT218, we may need to obtain additional capital for such purpose, and such additional capital may not be available on attractive terms or at all; (ii) we may be unsuccessful in accelerating the pace of our clinical trial enrollment for the Phase 3 REST-ON clinical trial, or we could experience delay or failure in completing that clinical trial; and (iii) we could be unsuccessful in marketing the FT218 product in the event we obtain FDA approval for it; and (c) the other risks, uncertainties and contingencies described in the Company's filings with the U.S. Securities and Exchange Commission, including our annual report on Form 10-K for the year ended December 31, 2017, and our quarterly reports on Form 10-Q for the periods ended June 30, 2018 and September 30, 2018, in particular disclosures that may be set forth in under the captions "Forward-Looking Statements" and "Risk Factors," including without limitation: our dependence on a small number of products and customers for the majority of our revenues; the possibility that our Bloxiverz®,Vazculep® and Akovaz® products, which are not patent protected, could continue to face substantial and increased competition resulting in a further loss of market share and/or forcing us to further reduce the prices we charge for those products; the possibility that we could fail to successfully complete the research and development for products we are evaluating for potential application to the FDA pursuant to our "unapproved-to-approved" strategy, or that competitors could complete the development of such products and apply for FDA approval of such products before us; the possibility that our products may not reach the commercial market or gain market acceptance; our need to invest substantial sums in research and development in order to remain competitive; our dependence on certain single providers for development of several of our drug delivery platforms and products; our dependence on a limited number of suppliers to manufacture our products and to deliver certain raw materials used in our products; the possibility that our competitors may develop and market technologies or products that are more effective or safer than ours, or obtain regulatory approval and market such technologies or products before we do; the challenges in protecting the intellectual property underlying our drug delivery technologies and other products; and our dependence on key personnel to execute our business plan. You should not place undue reliance on forward-looking statements, which speak only as of the date they are made and are not guarantees of future performance. We do not undertake any obligation to publicly update or revise these forward-looking statements.*

Contacts:      **Michael F. Kanan**
               **Chief Financial Officer**
               Phone: (636) 449-1844
               Email: mkanan@avadel.com

               **Alex Gray**
               **Burns McClellan**
               Phone: (212) 213-0006
               Email: agray@burnsmc.com

Exhibit 99.2

**Avadel Pharmaceuticals Clarifies Announcement of Corporate Restructuring**

DUBLIN, Ireland, February 7, 2019 (GLOBE NEWSWIRE) — Avadel Pharmaceuticals plc (Nasdaq: AVDL), provided clarification regarding the restructuring actions announced earlier today.

· As part of the restructuring plan, Avadel Specialty Pharmaceuticals, LLC, a special purpose entity and wholly-owned subsidiary responsible solely for NOCTIVA™-related activities, made a voluntary filing on February 6, 2019 under Chapter 11 of the United States Bankruptcy Code. Avadel Pharmaceuticals plc and other corporate entities remain solvent and substantially unaffected.

· The restructuring actions do not trigger a default or violate covenants related to the 4.50% Exchangeable Senior Notes due in 2023.

**About Avadel Pharmaceuticals plc**

Avadel Pharmaceuticals plc (Nasdaq: AVDL) is a specialty pharmaceutical company that seeks to develop differentiated pharmaceutical products that are safe, effective and easy to take through formulation development, by utilizing its proprietary drug delivery technology and through in-licensing / acquiring new products; ultimately, helping patients adhere to their prescribed medical treatment and see better results. Avadel's current portfolio of products and product candidates focuses on the central nervous system (CNS) / sleep, and hospital markets. The Company is headquartered in Dublin, Ireland with operations in St. Louis, Missouri and Lyon, France. For more information, please visit www.avadel.com.

*Safe Harbor: This press release may include forward-looking statements within the meaning of Section 27A of the Securities Act of 1933 and Section 21E of the Securities Exchange Act of 1934. The words "will," "may," "believe," "expect," "anticipate," "estimate," "project" and related or similar words and expressions, and (as applicable) the negatives thereof, identify forward-looking statements, each of which speaks only as of the date the statement is made. Although we believe that our forward-looking statements are based on estimates and assumptions made within the bounds of our knowledge of our business and operations, our business and operations are subject to significant risks and as a result there can be no assurance that actual results of our research, development and commercialization activities and the results of our business and operations will not differ materially from the results contemplated in such forward-looking statements. These risks include: (a) risks relating to our restructuring actions described in this presentation, including the risks that (i) such actions may not result in the full the cost savings we have described in this presentation; and (ii) we may incur a greater amount of one-time costs as a result of such actions than the amount we describe in this presentation; (b) risks relating to the development of our investigational "FT218" sodium oxybate product, including the risks that (i) we may not have adequate capital to complete the development of FT218, we may need to obtain additional capital for such purpose, and such additional capital may not be available on attractive terms or at all; (ii) we may be unsuccessful in accelerating the pace of our clinical trial enrollment for the Phase 3 REST-ON clinical trial, or we could experience delay or failure in completing that clinical trial; and (iii) we could be unsuccessful in marketing the FT218 product in the event we obtain FDA approval for it; and (c) the other risks, uncertainties and contingencies described in the Company's filings with the U.S. Securities and Exchange Commission, including our annual report on Form 10-K for the year ended December 31, 2017, and our quarterly reports on Form 10-Q for the periods ended June 30, 2018 and September 30, 2018, in particular disclosures that may be set forth in under the captions "Forward-Looking Statements" and "Risk Factors," including without limitation: our dependence on a small number of products and customers for the majority of our revenues; the possibility that our Bloxiverz®, Vazculep® and Akovaz® products, which are not patent protected, could continue to face substantial and increased competition resulting in a further loss of market share and/or forcing us to further reduce the prices we charge for those products; the possibility that we could fail to successfully complete the research and development for products we are evaluating for potential application to the FDA pursuant to our "unapproved-to-approved" strategy, or that competitors could complete the development of such products and apply for FDA approval of such products before us; the possibility that our products may not reach the commercial market or gain market acceptance; our need to invest substantial sums in research and development in order to remain competitive; our dependence on certain single providers for development of several of our drug delivery platforms and products; our dependence on a limited number of suppliers to manufacture our products and to deliver certain raw materials used in our products; the possibility that our competitors may develop and market technologies or products that are more effective or safer than ours, or obtain regulatory approval and market such technologies or products before we do; the challenges in protecting the intellectual property underlying our drug delivery technologies and other products; and our dependence on key personnel to execute our business plan. You should not place undue reliance on forward-looking statements, which speak only as of the date they are made and are not guarantees of future performance. We do not undertake any obligation to publicly update or revise these forward-looking statements.*

**Contacts:**

**Michael F. Kanan**
**Chief Financial Officer**
Phone: (636) 449-1844
Email: <u>mkanan@avadel.com</u>

**Alex Gray**
**Burns McClellan**
Phone: (212) 213-0006
Email: agray@burnsmc.com

EXHIBIT  12

**Kevin Wu**
Kevin.Wu@lw.com

505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Tel: +1.415.391.0600  Fax: +1.415.395.8095
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Silicon Valley |
| Hong Kong | Singapore |
| Houston | Tel Aviv |
| London | Tokyo |
| Los Angeles | Washington, D.C. |
| Madrid | |

July 22, 2024

**VIA E-MAIL**

Avi Grunfeld
Quinn Emanuel
51 Madison Avenue, 22nd Floor
New York, NY 10010-1601
avigrunfield@quinnemanuel.com

Re:    *Jazz Pharmaceuticals, Inc. v. Avadel CNS Pharmaceuticals, LLC,*
       C.A. No. 1:22-cv-00941-GBW (D. Del.)

Dear Avi:

We write in response to your June 14, 2024, letter regarding Avadel's January 22, 2024, privilege log. Avadel is investigating your objections, and will de-designate documents and make any roll-off productions that are necessary.

Avadel served its privilege log on January 22, 2024. Rather than challenge any aspect of that log in a timely fashion, Jazz chose instead to sit on its hands for almost *five months*, waiting until depositions were merely weeks away. Jazz has provided no explanation for why it took so long to raise any issues with Avadel's privilege log. And despite having had such abundant time to evaluate the privilege log and identify any legitimate issues with precision, Jazz has elected instead to assert sweeping objections. Indeed, Jazz raises objections to over 4,400 entries on Avadel's privilege log, despite its own prior position that "the parties have agreed not to issue blanket privilege challenges." *See* 1/22/2024 Ltr. from N. Siebert, at 5. The parties further agreed that any challenges must be "reasonable, tied to specific entries, and any party requesting such information shall have a good faith belief that the entry may be improperly designated as privileged." *Id.*

Accordingly, although it responds below to each purported issue that you have raised, Avadel does not agree to re-review every document on its privilege log purported to be improperly designated without a legitimate, objective basis for challenging each specific entry.

LATHAM&WATKINS LLP

### A. Presence of Third Parties

As you know, work-product protection is not waived by sharing it with a non-adverse third party. *See Westinghouse Elec. Corp. v. Republic of the Phil.*, 951 F.2d 1414, 1428 (3rd Cir. 1991) ("Because the work-product doctrine serves instead to protect an attorney's work product from falling into the hands of an adversary, a disclosure to a third party does not necessarily waive the protection of the work-product doctrine."); *Nielsen v. Elecs. Inst. v. Student Fin. Corp.*, 2001 WL 34367325, at *2 (D. Del. Jan. 18, 2001) (finding that the work-product protection was not waived where privileged documents were disclosed to a plaintiff's accountant "who [was] not an adversary"). And with respect to attorney-client privilege, the presence of third parties on communications does not necessarily result in waiver. *In re Riddell Concussion Reduction Litig.*, 2016 WL 7108455, at *6 (D.N.J. Dec. 5, 2016) ("[T]he mere fact [that] an attorney communicates with a third-party does not necessarily waive the attorney-client privilege."). Jazz itself has made this argument in past correspondence.  *See* 4/5/2024 Ltr. from N. Siebert, at 5 ("[W]here consultants are hired at the direction of counsel, they fall within the ambit of attorney-client privilege and the work product doctrine"; "communications with consultants directed to do work of behalf of in-house counsel may be properly privileged."). Most obviously, the common-interest doctrine prevents waiver when separate parties communicate with each other further to a common legal interest. *See AgroFresh Inc. v. Essentiv LLC*, No. 16-662 (MN), 2019 WL 4917894, at *2 (D. Del. Oct. 4, 2019) ("The common interest doctrine is an exception to the general rule that the attorney-client privilege is waived following the disclosure of privileged materials to a third party" (citation omitted)). Even in the absence of a common interest, if the disclosure to a third party "serves the purpose of enabling clients to obtain informed legal advice," then attorney-client privilege is not waived. *Westinghouse*, 951 F.2d at 1425. Thus, communications with third-party consultants, advisors, or the like "remain privileged if they assist the attorney to formulate and render legal advice."  *Riddell*, 2016 WL 7108455, at *5 (citing *Westinghouse*, 951 F.2d at 1424)*.* As such, attorney-client privilege "extends to consultations with third parties whose presence and advice are necessary to the legal representation," as in this case. *Id.*  (citation omitted).

Notwithstanding this well-established case law and the fact that Jazz has conceded that communications with a non-adverse third party may be privileged, Jazz objected to over 4,400 specific privilege log entries on the sole basis that they reflect correspondence with third parties. The third parties identified on Avadel's privilege log worked closely with and at the direction of Avadel's in-house and outside counsel. For instance, Greenleaf Health and ProPharma Group, which subsequently acquired the Weinberg Group and OneSource Regulatory, were all FDA regulatory consultants for Avadel. Avadel also consulted with McManus Group on healthcare policy and government relations issues. United Biosource and Two Labs Pharmaceutical Services assisted Avadel in developing and administering the LUMRYZ REMS. Curry Rockefeller Group and Real Chemistry advised Avadel on medical communications. Stern Investor Relations and LifeSci Advisors provided investor relations services to Avadel. Trinity Life Sciences advised Avadel on commercial strategy. Fingerpaint was a marketing consultant for Avadel. Bank of America was Avadel's investment banker for various corporate transactions. Deloitte was an auditor for Avadel. Geoffrey Glass, Eric Ende, Mark McCamish, Peter Thornton, and Linda Palczuk are Avadel board members.

2

**LATHAM&WATKINS** LLP

These entities and individuals are the third parties identified in the vast majority of the log entries that Jazz belatedly challenges based on the presence of third parties. In these documents, Avadel's attorneys provided—or were asked to provide—legal advice to third party agents related to their various engagements with Avadel.

Importantly, Avadel produced hundreds of documents that include one or more third parties, notwithstanding the presence of counsel. This speaks to the fact that Avadel undertook a diligent, document-by-document analysis in order to determine whether a third party was included in correspondence in order to help facilitate legal advice. Avadel did not make any blanket withholding, and Jazz has identified no reason to believe that any document that included a third party sender or recipient was improperly withheld.

Nevertheless, Avadel agrees to undertake a further review of any documents that include one or more third parties and that Jazz has identified as potentially not privileged, and will produce any documents determined to have been incorrectly withheld or redacted in the first instance.

### B. Withheld Documents Improperly Categorized as Redacted

Avadel is reviewing the documents that Jazz identified as having been potentially miscategorized as redacted on Avadel's privilege log. Avadel will provide a supplemental log correcting these entries and any others that have been mislabeled and will produce any documents Avadel determines to have been incorrectly withheld.

### C. Attorney Present on Non-Privileged Content

Jazz has identified no specific basis for its objection that an unspecified number of documents and communications on Avadel's privilege log "do not appear to contain a request for or provision of legal advice." *See* 6/14/2024 Ltr. from A. Grunfeld, at 2. As Jazz itself has noted, companies' legal teams "regularly review[] draft business and financial presentations to provide legal advice." 1/22/2024 Ltr. from N. Siebert to H. Huttinger, at 6. Jazz has no basis to assert that Avadel did not apply redactions to the challenged documents pursuant to a good faith claim of privilege. Nonetheless, Avadel has reviewed the specific documents Jazz identified as potentially not containing legal advice, and has confirmed that the withheld portions do reflect requests for or the provision of legal advice from Jerad Seurer, Elise Roth, John Bermingham, or Avadel's in-house legal team generally.

### D. Timing of Supplemental Privilege Log

We are cognizant of the fact that Jazz is scheduled to begin taking depositions in this case on July 26, 2024. Jazz bears sole responsibility for this timing challenge because it waited almost five months to challenge any aspect of Avadel's timely produced privilege log. Jazz now asks Avadel to scramble to undertake large-scale re-reviews of already evaluated, withheld documents based on sweeping challenges to Avadel's log entries.

LATHAM&WATKINS LLP

    Notwithstanding those facts, Avadel agrees to produce a supplemental privilege log by Friday, July 26, 2024, at the latest. It also agrees to prioritize the review of any challenged, withheld documents for which Danielle Burroughs, the first witness whom Jazz intends to depose, is the custodian. To be clear, however, we do not agree that the subsequent production of any initially withheld document would itself provide legitimate grounds for re-opening any deposition of an Avadel witness. As explained above, the timing challenge is one that Jazz itself created.

Best Regards,

/s/ *Kevin Wu*

Kevin Wu

EXHIBIT  13

| | |
|---|---|
| **Sent:** | Monday, June 28 2021 09:27 PM |
| **Subject:** | FT218 ODE Discussion |
| **From:** | Jerad Seurer |
| **To:** | Jerad Seurer <jseurer@avadel.com>; Greg Divis <gdivis@avadel.com>; Thomas S. McHugh <tmchugh@avadel.com>; Jennifer Gudeman <jgudeman@avadel.com>; Richard Kim <rkim@avadel.com>; Jordan Dubow, M.D. <jdubow@avadel.com>; John R. Manthei <john.manthei@lw.com>; Amy.Speros@lw.com; Kiera.Murphy@lw.com; Marc.Zubick <Marc.Zubick@lw.com>; Kenneth G. Schuler <KENNETH.SCHULER@lw.com>; Ben.Haas@LW.com; Marla Scarola <marla.scarola@weinberggroup.com>; joseph.griffin@greenleafhealth.com; brian.corrigan@greenleafhealth.com; john.jenkins@greenleafhealth.com; |
| **CC:** | Marla Scarola <Marla.Scarola@propharmagroup.com>; Bruno Stoekl <bstoekl.ext@avadel.com>; |
| **Location:** | Microsoft Teams Meeting |
| **Start Time:** | Tuesday, July 6 2021 03:00 PM |
| **End Time:** | Tuesday, July 6 2021 04:00 PM |
| **Duration:** | 60 |
| **Timezone:** | (UTC-06:00) Central Time (US & Canada) |
| **Attachments:** | Untitled.msg; Untitled.msg |

---

# Microsoft Teams meeting

**Join on your computer or mobile app**

Click here to join the meeting

**Or call in (audio only)**

+1 323-538-4343,,843521671#   United States, Los Angeles

Phone Conference ID: 843 521 671#

Find a local number | Reset PIN

Learn More | Meeting options

---

CONFIDENTIAL

AVDL_AT_01059359

# EXHIBIT 14
# FULLY REDACTED

# EXHIBIT 15
# FULLY REDACTED

# EXHIBIT 16

# FULLY REDACTED

# EXHIBIT 17
# FULLY REDACTED

# EXHIBIT 18

# FULLY REDACTED

# Exhibit 19

# Fully Redacted

EXHIBIT 20

FULLY REDACTED

# EXHIBIT 21

## FULLY REDACTED