## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JAZZ PHARMACEUTICALS, INC.,

        Plaintiff and Counter-Defendant,

        v.

AVADEL CNS PHARMACEUTICALS, LLC,

        Defendant and Counter-Plaintiff

C.A. No. 22-941-GBW



REDACTED PUBLIC VERSION
FILED MAY 9, 2025

## DEFENDANT AND COUNTER-PLAINTIFF AVADEL CNS PHARMACEUTICALS, LLC'S OPENING BRIEF IN SUPPORT OF ITS MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND *DAUBERT* MOTIONS

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ........................................................................................................1

II.    AVADEL'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT ...............................2

    A.    Legal Standard ................................................................................................2

    B.    Background .....................................................................................................3

    C.    Motion No. 1: Avadel's Motion for Partial Summary Judgment on Jazz's Regulatory Compliance Defense ....................................................................8

    D.    Motion No. 2: Avadel's Motion for Partial Summary Judgment on Anticompetitive Conduct ...........................................................................12

III.   AVADEL'S *DAUBERT* MOTIONS........................................................................14

    A.    Legal Standard ..............................................................................................14

    B.    Motion to Exclude Expert Testimony of Dr. Anupam Jena ..................................15

    C.    Motion to Exclude Expert Testimony of Dr. Iain Cockburn ...............................16

    D.    Motion to Exclude Expert Testimony of Jonathan Singer....................................19

    E.    Motion to Exclude Expert Testimony of Daniel Troy ..........................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Actos Antitrust Litig.*,
    628 F. Supp. 3d 524 (S.D.N.Y. 2022) ..........................................................8, 11, 13

*In re Actos Antitrust Litig.*,
    No. 13-CV-9244 (RA), 2025 WL 1001259 (S.D.N.Y. Mar. 31, 2025)
    ...........................................................................................................9, 10, 11, 13

*AFMS LLC v. United Parcel Serv. Co.*,
    No. CV105830JGBAJWX, 2014 WL 12515335 (C.D. Cal. Feb. 5, 2014) ............................18

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ....................................................................................2

*Apotex v. Thompson*,
    347 F.3d 1335 (Fed. Cir. 2003) .......................................................................4

*Arista Records LLC v. Lime Group LLC*,
    No. 06-cv-5936, 2011 WL 1642434 (S.D.N.Y. April 20, 2011) ...........................................24

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
    472 U.S. 585 (1985) ...................................................................................12

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
    455 F.3d 195 (3d Cir. 2006) ...........................................................................21

*CAE Inc. v. Gulfstream Aerospace Corp.*,
    203 F. Supp. 3d 447 (D. Del. 2016) ....................................................................14

*Caraco Pharm. Lab'ys, Ltd. v. Novo Nordisk A/S*,
    566 U.S. 399 (2012) ...................................................................................4, 5

*Cohen v. Cohen*,
    125 F.4th 454 (3d Cir. 2025) .........................................................................17

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) .........................................................................2, 14, 15, 16

*Schneider ex rel. Estate of Schneider v. Fried*,
    320 F.3d 396 (3d Cir. 2003) ..........................................................................14

*Exela Pharma Sciences, LLC v. Eton Pharmas., Inc.*,
    2022 WL 806524 (D. Del. Feb. 8, 2022) ...........................................................20, 23

*Fed. Trade Comm'n v. AbbVie Inc.*,
976 F.3d 327 (3d Cir. 2020)......................................................................................4, 13

*Fed. Trade Comm'n v. Vyera Pharms., LLC*,
No. 20CV706 (DLC), 2021 WL 5279465 (S.D.N.Y. Nov. 12, 2021)....................................16

*FTC v. Tate's Auto Center of Winslow Inc.*,
No. CV-18-08176-PCT-DJH, 2021 WL 410857 (D. Ariz. Feb. 5, 2021) ..............................22

*Guardant Health, Inc. v. Found. Med., Inc.*,
No. CV 17-1616-LPS-CJB, 2020 WL 2461551 (D. Del. May 7, 2020) ...................................3

*In re Ikon Off. Sols., Inc.*,
277 F.3d 658 (3d Cir. 2002)....................................................................................................10

*Insight Equity A.P. X, LP v. Transitions Optical, Inc*,
No. 10-635-RGA, 2016 WL 3610155 (D. Del. July 1, 2016) .................................................14

*Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC*,
60 F.4th 1373 (Fed. Cir. 2023) .................................................................................1, 13, 19

*Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC*,
641 F. Supp. 3d 85 (D. Del. 2022), *aff'd* 60 F.4th 1373 (Fed. Cir. 2023) ........................22, 23

*Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC*,
No. 1:21-cv-691-GBW (D. Del. Nov. 10, 2022), D.I. 222-3.................................................3, 5

*In re Lantus Direct Purchaser Antitrust Litig.*,
950 F.3d 1 (1st Cir. 2020)............................................................................................3, 8, 11, 13

*Le Page's, Inc. v. 3M*,
324 F.3d 141 (3d Cir. 2003)....................................................................................................12

*In the Matter of Louisiana Real Est. Appraisers Bd.*,
No. 9374, 2019 WL 2118885 (F.T.C. May 6, 2019) .................................................................9

*Martinez v. Porta*,
601 F. Supp. 2d 865 (N.D. Tex. 2009) ...........................................................................20, 23

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,
708 F.2d 1081 (7th Cir. 1983) ..................................................................................................9

*Mid-Texas Commc'ns Sys., Inc. v. Am. Tel. & Tel. Co.*,
615 F.2d 1372 (5th Cir. 1980) ............................................................................................9, 10

*In re Montage Tech. Group Ltd. Secs. Litig.*,
No. 14-cv-00722-SI, 2016 WL 1598666 (N.D. Cal. Apr. 21, 2016)....................................22

*Novo Nordisk A/S v. Caraco Pharm. Lab'ys, Ltd.*,
    688 F.3d 766 (Fed. Cir. 2012)......................................................................4

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
    345 F. Supp. 2d 431 (D. Del. 2004)............................................................24

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3d Cir. 1994).............................................................15, 16, 17

*PC Connector Solutions LLC v. SmartDisk Corp.*,
    406 F.3d 1359 (Fed. Cir. 2005)..................................................................23

*Pepper v. United States*,
    131 S.Ct. 1229 (2011)...........................................................................19, 23

*Persawvere, Inc. v. Milwaukee Elec. Tool Corp.*,
    No. CV 21-400-GBW, 2023 WL 8019085 (D. Del. Nov. 20, 2023)........20, 23

*Phila. Taxi Ass'n, Inc v. Uber Techs., Inc.*,
    886 F.3d 332 (3d Cir. 2018).......................................................................14

*Phonetele, Inc. v. Am. Tel. & Tel. Co.*,
    889 F.2d 224 (9th Cir. 1989) .......................................................................9

*S. Pac. Commc'ns Co. v. Am. Tel. & Tel. Co.*,
    740 F.2d 980 (D.C. Cir. 1984) .....................................................................9

*New York ex rel. Schneiderman v. Actavis PLC*,
    787 F.3d 638 (2d Cir. 2015).......................................................................12

*Stock v. Gray*,
    No. 2:22-CV-04104-DGK, 2024 WL 2402116 (W.D. Mo. May 23, 2024)..........21

*Teva Branded Pharm. Prods. R&D, Inc. v. Amneal Pharms. of New York, LLC*,
    124 F.4th 898 (Fed. Cir. 2024) ....................................................................3

*In re TMI Litig.*,
    193 F.3d 613 (3rd. Cir. 1999) ....................................................................15

*In re TMI Litig.*,
    193 F.3d at 703–04 ....................................................................................18

*UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*,
    949 F.3d 825 (3d Cir. 2020).......................................................................17

*United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Takeda Pharm. Co. Ltd.*,
    11 F.4th 118 (2d Cir. 2021) .......................................................................13

iv

*United States v. Grinnell Corp.*,
 384 U.S. 563 (1966)...............................................................................12

*United States v. Microsoft Corp.*,
 253 F.3d 34 (D.C. Cir. 2001) (en banc).................................................12

*W. Penn Allegheny Health Sys. v. UPMC*,
 627 F.3d 85 (3d Cir. 2010)....................................................................12

**Other Authorities**

21 U.S.C. § 355-1(f)(8)...............................................................................5

21 U.S.C. § 355(b)(1).................................................................................4

21 C.F.R. § 314.53(b).................................................................................4

21 C.F.R. § 314.53(f)..................................................................................7

Food and Drug Administration, Applications for FDA Approval to Market a New
 Drug, 68 Fed. Reg. 36,676 (June 18, 2003)....................................... 4, 5

Fed. R. Civ. P. 56(a)..................................................................................2

Fed. R. Evid. 702(a)..................................................................................22

## I.    INTRODUCTION

Avadel looks forward to proving at trial that Jazz unlawfully protected its monopoly from competition by taking actions that delayed the launch of LUMRYZ, thus depriving narcolepsy patients of the benefits of a once-nightly oxybate drug and Avadel of the profits that it would have lawfully earned but for Jazz's decision to list and refusal to delist U.S. Patent No. 8,731,963 (the "'963 patent") from the Orange Book.  In advance of trial, Avadel moves for partial summary judgment on two discrete issues—as to which there is no genuine dispute as to any material fact—and challenges four of Jazz's expert opinions.

First, Jazz has no admissible evidence to support the necessary, second element of its affirmative, regulatory-compliance defense that its decision to list and maintain the listing of the '963 patent was a reasonable effort to comply with the Hatch-Waxman regulatory regime.  Every relevant case requires a party invoking that defense to prove not only that its decision was reasonable, but also that the decision reflected a good-faith effort to follow the law.  Jazz failed to produce any evidence in discovery that Jazz's conduct—including its refusal to delist even after this Court ordered delisting—stemmed from a good-faith belief that the law required Jazz to list and maintain its listing, an issue on which Jazz bears the burden of proof.  Unlike defendants in other cases that have raised that defense, Jazz refused to allow its witnesses to answer questions about its listing rationale, instead asserting privilege and instructing the witnesses not to answer.  The Court should therefore grant partial summary judgment to Avadel on Jazz's regulatory compliance defense.

Second, the Court should grant partial summary judgment that Jazz's listing and refusal to delist the '963 patent were exclusionary conduct.  There is no dispute that Jazz's listing of the '963 patent was wrongful.  "[T]his Court has found that Jazz was not permitted to list the '963 patent," (D.I. 94 at 7 n.2) and that conclusion was affirmed by the Federal Circuit.  *See Jazz*

*Pharms., Inc. v. Avadel CNS Pharms., LLC*, 60 F.4th 1373 (Fed. Cir. 2023). This determination satisfies the second element of both of Avadel's antitrust counterclaims—exclusionary conduct—as a matter of law, as recent case law confirms.

Avadel also files four, narrow *Daubert* motions. Two of Jazz's economists, Drs. Anupam Jena and Iain Cockburn, disclosed nearly identical opinions that have no bearing on any issue in this case. Specifically, they devoted a large part of their reports to the economics and benefits of innovation in the pharmaceutical industry in general—without tying that analysis in any way to the conduct challenged in this case, i.e., Jazz's decision to list and refusal to delist the '963 patent. This irrelevant testimony would be unhelpful to the jury and should be excluded.

Finally, Avadel moves to exclude the testimony and opinions of Jazz's experts Messrs. Jonathan Singer and Daniel Troy regarding whether it was reasonable for a company to list and maintain the '963 patent in the Orange Book for several reasons. Both experts offer opinions premised on legal error, rendering their opinions unreliable, and improperly opine on Jazz's state of mind. ████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████

## II.     AVADEL'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT

### A.  Legal Standard

Summary judgment is appropriate on a "claim or defense" or "part of [a] claim or defense" when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]here is no issue for trial

unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted). At summary judgment, if the moving party demonstrates the absence of a genuine issue of material fact, "the nonmovant must then demonstrate that there is a genuine issue of material fact that prevents grant of the motion." *Guardant Health, Inc. v. Found. Med., Inc.*, No. CV 17-1616-LPS-CJB, 2020 WL 2461551, at *1 (D. Del. May 7, 2020), *report and recommendation adopted*, No. CV 17-1616-LPS-CJB, 2020 WL 5994155 (D. Del. Oct. 9, 2020).

### B. Background

#### 1. Regulatory Framework

The Hatch-Waxman Act strikes a careful balance between "two competing interests": encouraging innovation in drug development and accelerating the availability of lower-cost competing drugs. *In re Lantus Direct Purchaser Antitrust Litig.*, 950 F.3d 1, 5 (1st Cir. 2020) (citing 68 Fed. Reg. 36676 (June 18, 2003)). The Orange Book is the "linchpin of this entire scheme." *Teva Branded Pharm. Prods. R&D, Inc. v. Amneal Pharms. of New York, LLC*, 124 F.4th 898, 904 (Fed. Cir. 2024).

Listing a patent in the Orange Book can force a generic or 505(b)(2) competitor to file a paragraph IV certification, which the NDA holder can use to trigger a 30-month stay of FDA approval simply by filing a lawsuit that alleges infringement of the listed patent. This automatic stay rewards the holder of a validly listed patent protecting a drug with an automatic injunction against a competitor. But an improperly listed patent upends the statutory regime by allowing an NDA holder to improperly give itself an injunction without satisfying the necessary prerequisites. *See* FTC Amicus Brief at 14, *Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC*, No. 1:21-cv-691-GBW (D. Del. Nov. 10, 2022), D.I. 222-3. Because an automatic stay "creates

3

tension with the Hatch-Waxman Act's procompetitive goals," *Fed. Trade Comm'n v. AbbVie Inc.*, 976 F.3d 327, 340 (3d Cir. 2020), Congress and the FDA have specified which patents are to be listed the Orange Book.  Specifically, an NDA holder must list every patent that claims the "drug" or a "method of using" the drug and no others.  *See* 21 U.S.C. § 355(b)(1); 21 C.F.R. § 314.53(b); 68 Fed. Reg. 36676 at 36687.  As the FDA made clear in 2003, it "interpret[s] the statute to permit listing of ***only*** those patents claiming the approved drug product and its approved uses." 68 Fed. Reg. at 36687 (emphasis added).

For method-of-use patents, the brand is required to submit a "use code" that "must accurately describe 'the *patented* method of use'—i.e., the approved method of use claimed in the patent." *Novo Nordisk A/S v. Caraco Pharm. Lab'ys, Ltd.*, 688 F.3d 766, 768 (Fed. Cir. 2012) (emphasis in original).  Use codes facilitate the FDA's review of section viii statements (and equivalent statements for 505(b)(2) applications) whereby an applicant can avoid a paragraph IV certification by submitting a proposed label that "carves out" a patented method of use.  *Caraco Pharm. Lab'ys, Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 403, 406 (2012).  The FDA will not approve an ANDA or 505(b)(2) application if the "proposed carve-out label overlaps at all with the brand's use code."  *Id.* at 406.

The FDA's role is purely ministerial.  The agency does not "police the listing process by analyzing whether the patents listed by NDA applicants actually claim the subject drugs or applicable methods of using those drugs." *Apotex v. Thompson*, 347 F.3d 1335, 1349 (Fed. Cir. 2003).  The FDA also "does not attempt" to verify the accuracy of use codes.  *Caraco*, 566 U.S. at 405.  The FDA takes use codes "as a given" and "does not independently assess the patent's scope or otherwise look behind the description authored by the brand." *Id.* at 403, 406.  Brands could thereby try to evade the listing rules and improperly obtain a stay by "exploit[ing] the

FDA's determination that it cannot police patent claims." *Id.* at 424.  The FDA sought to close this loophole and ensure that only eligible patents are listed by requiring use of Form FDA 3542, which must be signed under penalty of perjury and includes a false statement warning.  *See* 68 Fed. Reg. 36676 at 36686-87.

Congress, the FDA, and FTC have raised concerns about abuses of Risk Evaluation and Mitigation Strategy ("REMS") requirements to impede competition.  The FDA Amendments Act of 2007 ("FDAAA") provides that a brand cannot use REMS to "block or delay" approval of an ANDA or 505(b)(2) application.  *See* 21 U.S.C. § 355-1(f)(8).  At public meetings in 2010, the FDA discussed the actions it was taking to try to "make sure that REMS are not used to block or delay generic competition."[1]  The FTC, in this case, emphasized that "[i]mproperly submitting a REMS distribution patent for listing in the Orange Book and obtaining a 30-month stay based on that listing may constitute a misuse of the REMS to 'block or delay' the approval of ANDA or 505(b)(2) products in violation of the FDAAA."  FTC Amicus Brief at 20-21, *Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC*, No. 1:21-cv-691-GBW (D. Del. Nov. 10, 2022), D.I. 222-3

### 2.  Facts Relating to Jazz's Listing and Refusal to Delist the '963 Patent

Jazz purchased the rights to Xyrem in 2005 when it acquired Orphan Medical.  Avadel's Concise Statement of Undisputed Material Facts ("CSOF") ¶ A-2.  Xyrem is a controlled substance subject to restrictions on distribution through a REMS program.  CSOF ¶ A-1.  Jazz prosecuted a family of patents relating to a drug distribution system for tracking prescriptions, of which the '963 patent is a member.  CSOF ¶ A-3.  The '963 patent, which issued in May 2014,

---

[1] *See* Ex. 39, Center for Drug Evaluation and Research, FDA, Risk Evaluation and Mitigation Strategy (REMS) Public Meeting (July 28, 2010), at 270 (statement by Jane Axelrad, Associate Director of Policy, Center for Drug Evaluation and Research).

claims a "computer-implemented system" comprising "one or more computer memories" and a "data processor."  CSOF ¶ A-4.

The '963 patent was not the first of Jazz's REMS patents to be challenged as improperly listed in the Orange Book.  Roxane and Par, two generic companies that had filed ANDAs referencing Xyrem, alleged that Jazz had improperly listed the '730 patent (the parent patent to the '963 patent) and several other patents in the same family, starting in 2010.  Roxane, for example, alleged that Jazz's REMS patents did not claim a method of use and were serving to "block or delay" approval of Roxane's ANDA in violation of FDAAA.  CSOF ¶ A-5.

In February 2014, three months before listing the '963 patent in the Orange Book, Jazz disclosed in its SEC filings that the "FTC has been paying increasing attention to the use of REMS by companies selling branded products" and the possibility that "the FTC or others could claim that our REMS or other practices are being used in an anticompetitive manner."  Jazz noted that the FDCA "states that a REMS shall not be used by an NDA holder to block or delay generic drugs from entering the market. Two of the ANDA applicants have asserted that our patents covering the distribution system for Xyrem should not have been listed in the Orange Book, and that the Xyrem REMS is blocking competition." CSOF ¶ A-6.

The '963 patent was issued in May 2014 and listed in the Orange Book shortly afterward. CSOF ¶¶ A-4, A-7.  Unlike the '730 patent and every other patent in the same family, the '963 patent does not claim a method at all—its claims are facially directed to a "computer-implemented system." CSOF. ¶ A-4. ████████████████████████████████████████

████████████████████████ CSOF ¶ A-7. ████████████████████████

████████████████████████████████████████ CSOF ¶ A-8.

████████████████████████████████████ CSOF ¶ A-9.

████████████████████████████████████████████████

████████████████████████████████████████ CSOF ¶ A-10.

Jazz's CEO, Bruce Cozadd, recognized and assured investors that he was confident of a 30-

month stay of Avadel's approval, stating: "[O]ur belief is that in using" the 505(b)(2) pathway,

Avadel "should certify [to] Orange Book-listed patents, which would give at least the

opportunity, if appropriate [f]or litigation[] that could provide up to a 30-month stay." CSOF ¶

A-11.

In August 2019, Avadel brought a patent listing dispute to the FDA pursuant to 21 C.F.R.

§ 314.53(f) asserting that the '963 patent was improperly listed in the Orange Book because its

claims are directed to a "system" not a method of use. CSOF ¶ A-12.  Jazz refused to delist the

patent, CSOF ¶ A-13, and has again blocked discovery into that decision by claiming that the

basis for this decision is privileged, CSOF ¶ A-14.

When Avadel submitted its NDA for LUMRYZ in December 2020, it did not include a

paragraph IV certification but instead sought to carve out the '963 patent under Section

505(b)(2)(B). CSOF ¶ A-15. █████████████████████████████

█████████████████████████████████████████ CSOF ¶ A-16. ████████

████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████ CSOF ¶ A-16.

FDA had set a target action date (PDUFA date) for Avadel's NDA for LUMRYZ of

October 15, 2021.  CSOF ¶ A-17. But just five weeks before that date, FDA concluded that

Jazz's use code for the '963 patent implicated the LUMRYZ NDA.  CSOF ¶ A-18.  FDA missed

the PDUFA date and, on May 24, 2022, informed Avadel that it had to certify to the '963 patent, which Avadel did—under protest—on June 6, 2022. CSOF ¶¶ A-19, A-20. On July 15, 2022, Jazz filed a second complaint against Avadel for alleged infringement of the '963 patent. CSOF ¶ A-21. This complaint triggered an automatic stay, precluding approval of the LUMRYZ NDA until the '963 patent and associated pediatric exclusivity expired in June 2023 unless the '963 patent were delisted. CSOF ¶ A-22.

### C. Motion No. 1: Avadel's Motion for Partial Summary Judgment on Jazz's Regulatory Compliance Defense

The Court should grant summary judgment rejecting Jazz's regulatory compliance defense.  Styled as "Reasonable Basis for Conduct", Jazz's Seventh Affirmative Defense pleads that it "acted reasonably in listing the '963 patent in the Orange Book and maintaining that listing until March 2023." D.I. 99 at 63.  The only recognized "reasonableness" defense to a monopolization claim for improperly listing patents in the Orange Book is known as the regulatory compliance or regulatory justification defense.  *See Lantus*, 950 F.3d at 12-13; *In re Actos Antitrust Litig.*, 628 F. Supp. 3d 524, 534 (S.D.N.Y. 2022).  Because there is no evidence to support the subjective good-faith element of this defense, the Court should grant summary judgment rejecting Jazz's Seventh Affirmative Defense.

### 1. The regulatory compliance defense requires Jazz to establish subjective good faith.

The regulatory compliance defense has two elements:  Jazz must prove that it "(1) [] objectively 'had a reasonable basis in regulatory policy to conclude' that its actions were required by regulation, and (2) [] subjectively 'in good faith concluded' that its actions were required by regulation.'"  *In re Actos*, 628 F. Supp. 3d at 534.  Courts and the FTC have uniformly held that evidence of subjective good faith is required to assert this defense.  *See Lantus*, 950 F.3d at 12-13 (the defense applies only to a "good-faith attempt to comply with the

regulatory demands of the Hatch-Waxman Amendments" and emphasizing that "the challenged conduct be both reasonable and in good faith"); *S. Pac. Commc'ns Co. v. Am. Tel. & Tel. Co.*, 740 F.2d 980, 1009 (D.C. Cir. 1984) (defense applies only if the defendant "actually made its decision at the time in good faith on that basis rather than solely on the basis of competitive considerations"); *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.,* 708 F.2d 1081, 1109-10 (7th Cir. 1983) (defense recognized for "good faith adherence to regulatory obligations"); *Phonetele, Inc. v. Am. Tel. & Tel. Co.*, 889 F.2d 224, 229 (9th Cir. 1989) (affirming finding that defendant "was acting on the basis of its reasonable belief" regarding compliance with the regulatory regime); *Mid-Texas Commc'ns Sys., Inc. v. Am. Tel. & Tel. Co*., 615 F.2d 1372, 1381 (5th Cir. 1980) (adjudicating the defense requires an "an assessment of [defendant]'s alleged monopolistic purpose or intent"); *In the Matter of Louisiana Real Est. Appraisers Bd*., No. 9374, 2019 WL 2118885, at *5 (F.T.C. May 6, 2019) (defendant is required to "show that its action was taken because of the regulatory obligations, rather than business considerations"). There is no evidence that Jazz subjectively and in good faith concluded that its decisions to list and maintain the listing of the '963 patent were required by the regulatory demands of the Hatch-Waxman Act.

The subjective, good-faith element examines "whether a defendant acted out of a subjective belief that its conduct was required by regulatory law, as opposed to for 'competitive' reasons." *In re Actos Antitrust Litig.*, No. 13-CV-9244 (RA), 2025 WL 1001259, at *20 (S.D.N.Y. Mar. 31, 2025) (quoting *Southern Pacific*, 740 F.2d at 1009). The required proof of subjective good faith ensures that a monopolist cannot engage in post hoc rationalization of conduct that was actually intended to thwart competition. The Fifth Circuit, which first articulated the defense in the context of the regulatory regime established by the

Communications Act of 1934, explained that although the challenged conduct may be "based upon articulable concerns of public policy, it may also be possible to rationalize a decision whose purpose is anticompetitive." *Mid-Texas*, 615 F.2d at 1380. Accordingly, the defendant can justify its conduct only "to the extent that [it] based its decision [] on articulable concerns relating to the public interest." *Id.* at 1380-81.

Although "'[q]uestions of intent' like subjective intent 'are usually inappropriate for disposition on summary judgment,'" *In re Actos*, 2025 WL 1001259, at *28 (internal citation omitted), that is not the case where, as here, there is a complete absence of evidence regarding subjective intent. *See In re Ikon Off. Sols., Inc.*, 277 F.3d 658, 666 (3d Cir. 2002) ("If a non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case on which it bears the burden of proof at trial, there is no issue as to a genuine issue of a material fact and thus the moving party is entitled to judgment as a matter of law.") (internal citations omitted). Thus, Jazz must have evidence that when it decided to list and refused to delist the '963 patent, it subjectively had a good faith belief that it was not merely permitted to take those actions but was required to do so by regulatory law (the Hatch-Waxman Act and FDA's implementing regulations). No such evidence exists or has been disclosed.

### 2. Jazz has no evidence to prove that it listed and maintained the '963 patent in the Orange Book in a good-faith effort to comply with the law.

There is no evidence to create a dispute as to a material fact about whether Jazz had subjective good faith in making its decisions to list and maintain the '963 patent listing. Unlike other similarly situated defendants that have relied upon the advice of counsel to try to establish subjective good faith, Jazz has asserted attorney-client privilege over any evidence that may exist regarding its subjective good faith. As such, the record is entirely absent of any evidence that could create a dispute as to whether subjective good faith existed.

██████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████

████████████████████ Jazz also made the election to disclaim reliance on advice of counsel as part of its defense.  D.I. 99 at 61 ("For avoidance of doubt, Jazz does not invoke advice of counsel or waive privilege by providing this statement of defenses."). ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████ CSOF ¶ A-9. █████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Jazz's decisions in this case stand in stark contrast to the defendants in *Actos* and *Lantus,* where both waived privilege and relied upon advice of counsel to try to prove the subjective good-faith element of the regulatory compliance defense.  *See In re Actos*, 2025 WL 1001259, at *6-8, 30 (discussing Takeda's reliance on the legal advice of a "leading regulatory lawyer" at Hogan & Harston LLP in addition to an opinion letter from Munger, Tolles & Olson LLP); Mem. of Law in Support of Def.'s Mot. for Summary Judgment at 28-29, *In re Lantus Direct Purchaser Antitrust Litig.*, No. 16-cv-12652-LTS-JCB (D. Mass. Mar. 21, 2025), D.I. 585 (discussing Sanofi's reliance on the legal advice it received from the co-chair of the patent litigation group at Covington & Burling LLP and an opinion letter from another experienced patent attorney).    Due to its election to disclaim reliance upon advice of counsel and having

provided no other evidence, Jazz cannot demonstrate that its actions were taken because of a subjective good-faith belief, at the time, that they were required to act by regulation.

The Court should grant partial summary judgment that Jazz's regulatory compliance defense fails as a matter of law because Jazz has withheld any evidence that could establish the essential element of subjective good faith.

### D. Motion No. 2: Avadel's Motion for Partial Summary Judgment on Anticompetitive Conduct

The Court should also grant partial summary judgment on the second element of both of Avadel's counterclaims—i.e., monopoly maintenance and attempt to monopolize in violation of Section 2 of the Sherman Act. The second element of these claims is exclusionary conduct by the defendant.[2] *See, e.g.*, *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 605 (1985); *W. Penn Allegheny Health Sys. v. UPMC*, 627 F.3d 85, 108 (3d Cir. 2010). To meet this burden, Avadel need merely show that Jazz's improper patent listing was "likely [to] impede generic [or 505(b)(2)] competition[.]" *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 654 (2d Cir. 2015); *see also Le Page's, Inc. v. 3M*, 324 F.3d 141, 146-47 (3d Cir. 2003) (a firm engaged in exclusionary conduct if it "took steps to maintain" its market position by "compet[ing] on some basis other than the merits"); *United States v. Microsoft Corp.*, 253 F.3d 34, 79 (D.C. Cir. 2001) (en banc) (conduct is exclusionary for purposes of Section 2 of the Sherman Act if it "reasonably appear[s] capable of making a significant contribution to . . . maintaining monopoly power"). The Court has already decided that this exclusionary conduct exists.

---

[2] Anticompetitive or exclusionary conduct is sometimes described as the "willful acquisition or maintenance" of monopoly power, "as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966). The meaning is the same.

Specifically, this "Court has found that Jazz was not permitted to list the '963 patent." D.I. 94 at 7 n.2. That decision was affirmed by the Federal Circuit. *See Jazz Pharms.*, 60 F.4th 1373. The court in *Actos* has held that partial summary judgment on exclusionary conduct is appropriate where, as here, the court has already determined that a patent was improperly listed in the Orange Book. *In re Actos*, 2025 WL 1001259, at *11 ("[T]he Court finds no genuine dispute that Takeda satisfied the 'willful maintenance' element of a monopolization claim by misdescribing the Patents in January and May 2010, which entitles Plaintiffs to partial summary judgment on that issue.").

*Actos* is consistent with other courts, which consistently recognize that improper patent listings are anticompetitive conduct under Section 2 of the Sherman Act. *See United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Takeda Pharm. Co. Ltd.*, 11 F.4th 118, 134–38 (2d Cir. 2021); *Lantus*, 950 F.3d at 7, 11–15. Under the Hatch-Waxman Act, such listings result in 30-month stays, which impede competition. *AbbVie Inc*, 976 F.3d at 361 ("The automatic, 30-month stay is a collateral injury the defendant's mere use of legal process invariably inflicts.").

Jazz's affirmative defense, which is premised on the notion that "Jazz acted reasonably in listing the '963 patent in the Orange Book and maintaining that listing until March 2023," has no bearing on whether summary judgment is appropriate here. D.I. 99 at 63. Whether Jazz's decision to list the '963 patent in 2014—and to refuse to delist it until ordered to do so by the Federal Circuit in February 2023—was reasonable is not part of the second element of Avadel's antitrust counterclaims. It arises, if at all, only as part of Jazz's purported affirmative defense. *See In re Actos,* 2025 WL 1001259, at *20-23*; In re Lantus*, 950 F.3d at 13.

Finally, to the extent Jazz argues that there are questions of fact as to whether its

wrongful listing of the '963 patent actually delayed the launch of LUMRYZ, any such question would only go to antitrust injury—which is a separate element of Avadel's counterclaims under the Clayton Act, rather than the element of anticompetitive conduct at issue here under the Sherman Act.  *See, e.g.*, *Phila. Taxi Ass'n, Inc v. Uber Techs., Inc.*, 886 F.3d 332, 338 (3d Cir. 2018) (whether there is an antitrust violation and antitrust injury should be addressed separately); *CAE Inc. v. Gulfstream Aerospace Corp.*, 203 F. Supp. 3d 447, 454 (D. Del. 2016) (analyzing antitrust injury separately from other elements); *Insight Equity A.P. X, LP v. Transitions Optical, Inc*, No. 10-635-RGA, 2016 WL 3610155, at *6-11 (D. Del. July 1, 2016) (reviewing in sequence whether there was anticompetitive conduct and an antitrust injury).

In short, the Court and the Federal Circuit have already determined that the '963 patent was incorrectly listed, which indisputably demonstrates exclusionary conduct.  The Court should therefore grant Avadel partial summary judgment on the second element of its monopolization counterclaims.

## III.    AVADEL'S *DAUBERT* MOTIONS

### A.  Legal Standard

Under Federal Rule of Evidence 702, the party offering an expert's opinions has the burden of demonstrating that: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."  Fed. R. Evid. 702.  Rule 702 tasks the court with acting as the "gatekeeper" in ensuring that an expert's testimony is "not only relevant, but reliable." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).

**B.  Motion to Exclude Expert Testimony of Dr. Anupam Jena**

The Court should exclude Dr. Jena's irrelevant opinions regarding (1) the economics and regulatory framework for innovations in the pharmaceuticals industry broadly, Ex. 30, Jena Report ¶¶ 28–44, and (2) Jazz's purportedly procompetitive investments in pharmaceutical drugs across various therapeutic spaces, *id.* ¶¶ 49–84.  First, pharmaceutical innovation in the abstract has no bearing on any disputed facts.  *See In re TMI Litig.*, 193 F.3d 613, 670 (3rd. Cir. 1999) ("[A]dmissibility depends . . . on a connection between the expert opinion offered and the particular disputed factual issues in the case."). ████████████████████████████████

████████████████████████████████████    █████████████████

████████    ██████████████████████████████████████

████████████    Therefore, it should be excluded.

Second, Dr. Jena opines on the purported competitive benefits of Jazz's pharmaceutical innovations, but those benefits do not flow from the challenged conduct in this case: Jazz's improper Orange Book listing to delay competition from LUMRYZ.  Jazz's development of an FDA-required REMS program is not at issue here, nor is Jazz's development of Xywav, nor Jazz's research into dosing, nor Jazz's development of Sunosi, nor Jazz's education of physicians and patients about narcolepsy.  Ex. 30, Jena Report ¶¶ 49–84.  Dr. Jena's opinions regarding the competitive effects of this unrelated conduct, even if true, will not "assist the trier of fact" in deciding the competitive effect of Jazz's challenged conduct.  *See Daubert*, 509 U.S. at 593.  Dr. Jena's opinions serve only to portray Jazz in a false positive light intended to distract from the core issue of the case and, consequently, will confuse the jury by introducing concepts that have no connection to the "particular disputed factual issues in the case."  *In re TMI Litig.*, 193 F.3d at 670; *see also In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 746 (3d Cir. 1994) ("[U]nder Rule 702, admissibility of scientific testimony turns not only on reliability but also on the possibility

that admitting the evidence would overwhelm, confuse, or mislead the jury.").  This renders his

opinions "not relevant and, ergo, non-helpful."  *Daubert*, 509 U.S. at 591; *see also In re Paoli*,

35 F.3d at 743 ("[E]ven if an expert's proposed testimony constitutes scientific knowledge, his or

her testimony will be excluded if it is not scientific knowledge *for purposes of the case*.").

██████████████████████████████████████████████████████

██████████████████████████████████████████████ Dr.

Jena's testimony on an analogous situation has been stricken elsewhere for lack of relevance.  In

*FTC v. Vyera Pharmaceuticals*, the court excluded Dr. Jena's testimony that generic drug

manufacturers typically face lower costs than branded drug manufacturers, which was "not

relevant" because "Vyera made no investment to develop Daraprim," the drug at issue in that

case.  *Fed. Trade Comm'n v. Vyera Pharms., LLC*, No. 20CV706 (DLC), 2021 WL 5279465, at

*7 (S.D.N.Y. Nov. 12, 2021). ████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████ Dr. Jena's testimony is "not relevant."  *Vyera Pharms., LLC*, 2021 WL 5279465 at

*7.

Avadel respectfully requests that the Court exclude these irrelevant sections of Dr. Jena's

report.

### C.  Motion to Exclude Expert Testimony of Dr. Iain Cockburn

The Court should exclude Dr. Cockburn's expert opinion and testimony in their entirety.

First, the Court should exclude Dr. Cockburn's irrelevant opinions regarding Jazz's purportedly

"procompetitive" investments and innovations for the same reasons it should exclude Dr. Jena's

nearly identical opinions. ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████ But Avadel does not challenge

any of that conduct.  Thus, Dr. Cockburn's claim that these "████████████████

█████████████████████████████████████████████████████" is

not relevant or helpful "knowledge *for purposes of the case.*"  *Id.*  ¶ 67; *In re Paoli.*, 35 F.3d at

743 (emphasis in original).

Second, Dr. Cockburn's critique of Dr. Orszag's economic model is unreliable and

should be stricken entirely because Dr. Cockburn does not provide any analysis of his own.  Dr.

Cockburn opines that "a complete evaluation [in this case] would need to take into account

indicators of dynamic competition," Ex. 32, Cockburn Report ¶ 17, but this opinion is

unsupported by any methodology or evaluation of "dynamic competition." █████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████ Dr. Cockburn's opinions

thus lack "good grounds to support his criticism."  *Cohen v. Cohen*, 125 F.4th 454, 461 (3d Cir.

2025) (internal citation omitted); *see also UGI Sunbury LLC v. A Permanent Easement for

1.7575 Acres*, 949 F.3d 825, 834 (3d Cir. 2020) (striking expert opinion for lack of "good

grounds" where it was not "testable," not the "subject to peer review," and not "generally

accepted").  Dr. Cockburn's failure to independently assess "dynamic competition" renders his "subjective" and "unsupported" testimony unreliable.  *In re TMI Litig.*, 193 F.3d at 703–04. ("In order for expert testimony to meet *Daubert*'s reliability standard, it must be based on the methods and procedures of science, not on subjective belief and unsupported speculation.").

The Third Circuit's opinion in *Elcock v. Kmart Corp.* is instructive.  233 F.3d 734 (3d Cir. 2000).  There, the court found an expert's opinion unreliable where he "never explained his method in rigorous detail," making it "nearly impossible for [the opposing party's] experts to repeat [the expert's] apparently subjective methods."  *Id.* at 747.  Similarly, here Dr. Cockburn opines generally about "dynamic competition" factors including pharmaceutical innovation, the risks and costs involved in drug development and launch, and the importance of patents.  Ex. 32, Cockburn Report ¶¶ 12–64.  But he admits that he does not provide a "rigorous," "detailed" methodology for incorporating those concepts into an economic model.  Ex. 33, Cockburn Dep. at 46:1–7; *see also AFMS LLC v. United Parcel Serv. Co.*, No. CV105830JGBAJWX, 2014 WL 12515335, at *7 (C.D. Cal. Feb. 5, 2014) ("The vagueness of [the expert's] methodology is particularly troublesome in the antitrust arena where economic models and analysis are required.").

Indeed, Dr. Cockburn concedes that he could not provide a detailed methodology for evaluating the effects of "dynamic competition" because no such peer-reviewed, generally accepted methodology exists.  In support of his opinion that the significance of "dynamic competition" is "widely recognized," Dr. Cockburn cites a 2023 article by David J. Teece called *The Dynamic Competition Paradigm: Insights and Implications*.  Ex. 32, Cockburn Report ¶ 16, fn. 22.  But Teece says the opposite.  Teece frames "dynamic competition" as a concept that "should be," but has not yet been, "developed and translated into an enforcement

framework/paradigm." Ex. 34, Teece at 379. Dr. Cockburn concedes that, while there are "proposals floating out there," there is simply no generally accepted economic methodology to incorporate "dynamic competition" effects into the legal framework. Ex. 33, Cockburn Dep. 107:9–21.

Because Dr. Cockburn's opinions are irrelevant and unreliable, Avadel respectfully requests that the Court exclude Dr. Cockburn's opinions and testimony in their entirety.

### D.  Motion to Exclude Expert Testimony of Jonathan Singer

Avadel moves to exclude the testimony and opinions of Jazz's expert Mr. Jonathan Singer regarding whether it was reasonable for a company to list and maintain the '963 patent in the Orange Book. Those opinions should be excluded for multiple reasons.

Although he is a patent litigator, Mr. Singer did not engage in any analysis of the '963 patent claims themselves. Instead, he relied on Jazz's expert Dr. Edward Sellers' opinion that the '963 patent claims cover the XYREM/XYWAV REMS. Ex. 35, ███████████. Based on Dr. Sellers' opinion, Mr. Singer offered the opinion that █████████████████ ███████████████████████████████████████████ █████████████████████████████████████████████ ████████████████████████████████ This opinion directly contradicts the Federal Circuit's holding in its decision affirming this Court's order to delist the '963 patent from the Orange Book.

In its opinion, the Federal Circuit held that "Section 314.53 does not broaden the term 'method' such that reciting a ***condition of use*** turns a system patent into a listable method-of-use patent. Rather, this regulation narrows that category of listable patents to those that (1) claim methods of use, wherein (2) those methods of use are directly relevant to the NDA in question." *Jazz Pharms.*, 60 F.4th at 1380 (emphasis added). Mr. Singer cannot now contradict or relitigate

this issue, which the Federal Circuit has already settled as a matter of law (and which Jazz declined to appeal). *See Pepper v. United States*, 131 S.Ct. 1229, 1250-51 (2011) ("When a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."). By basing his opinion on an argument that is incorrect as a matter of law, Mr. Singer necessarily advances an unreliable opinion that must be excluded. *See, e.g.*, *Exela Pharma Sciences, LLC v. Eton Pharmas., Inc.*, 2022 WL 806524, at *3 (D. Del. Feb. 8, 2022) (excluding expert testimony on non-infringement based on the "general rule" that "courts routinely preclude those portions of an expert's report that are premised on a misunderstanding of the law"); *Martinez v. Porta*, 601 F. Supp. 2d 865, 866 (N.D. Tex. 2009) ("While it is true that a qualified expert is not prohibited, ipso facto, from expressing an opinion on an ultimate issue of fact, such an opinion cannot be based on an erroneous legal premise.").

Mr. Singer also offers improper state of mind opinions—including the purported state of mind of Jazz when it listed the '963 patent in the Orange Book. "Expert witnesses are not 'permitted to testify . . . regarding [the defendant's] intent, motive, or state of mind, *or evidence by which such state of mind may be inferred*.'" *Persavvere, Inc. v. Milwaukee Elec. Tool Corp.*, No. CV 21-400-GBW, 2023 WL 8019085, at *14 (D. Del. Nov. 20, 2023) (*quoting Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 443 & n.9 (D. Del. 2004)) (emphasis added). Mr. Singer does not stop at what he believes a "reasonable patent attorney" would have advised, but goes further, opining on whether Jazz's action was itself reasonable. *See, e.g.*, ███████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████. Such opinions plainly either attempt to

opine on Jazz's state of mind or provide evidence by which state of mind may be inferred, and should be excluded.

Finally, the Court has already found that "there is a genuine dispute of material fact regarding whether Jazz had a reasonable basis to conclude that it was required to list the '963 patent." (D.I. 94 at 9.)  Avadel understands, therefore, that the objective reasonableness element of Jazz's regulatory compliance defense is a question of fact, not a question of law.  The jury will not need to resolve any factual disputes concerning Jazz's regulatory compliance defense because, as explained above, Avadel is entitled to partial summary judgment on the subjective good faith element of this defense.  If, however, the Court determines that it should exclude expert testimony relating to whether Jazz's listing decisions were objectively reasonable on the basis that such testimony involves an impermissible legal opinion, then the Court should exclude the opinions and testimony of Mr. Singer that it was reasonable for Jazz to list the '963 patent in the Orange Book. *See Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006) ("an expert witness is prohibited from rendering a legal opinion."); *Stock v. Gray*, No. 2:22-CV-04104-DGK, 2024 WL 2402116, at *1 (W.D. Mo. May 23, 2024) (prohibiting an expert from "testify[ing] regarding statutory interpretation or offer[ing] legal opinions or legal analysis").

For these reasons, Mr. Singer's opinions regarding whether it was reasonable for Jazz to list and maintain the '963 patent in the Orange Book should be excluded.

### E.  Motion to Exclude Expert Testimony of Daniel Troy

Avadel moves to exclude the testimony and opinions of Jazz's expert Mr. Daniel Troy regarding whether it was reasonable for a company like Jazz to list and maintain the '963 patent in the Orange Book.  Those opinions should be excluded for multiple reasons.

███████████████████████████████████

███████████████████████████████████████

████████████████████   ████████████████████████████████

████████████████████████████████████████████████   This

"assumption" renders Mr. Troy's opinion wholly circular.  To assume that the '963 patent

claimed a method of using Xyrem is to assume that it **had** to be listed, and the notion that a

company acted reasonably in listing such an "assumed" method-of-use patent is therefore

meaningless and entirely unhelpful to a jury.  *See* Fed. R. Evid. 702(a).

Courts routinely exclude opinions predicated on such circular reasoning.  *See, e.g.*, *In re*

*Montage Tech. Group Ltd. Secs. Litig.*, No. 14-cv-00722-SI, 2016 WL 1598666, at *11 (N.D.

Cal. Apr. 21, 2016) (concluding that "[t]he [expert's] speed test as conducted here is unreliable

and is therefore inadmissible" where the expert's test is "'logically circular' because it is 'based

on the assumption that unusually large residual stock returns generally reflect the reaction by

investors to value-relevant news' even though 'this assumption is exactly the question that the

test is supposed to examine'") (internal citations omitted); *FTC v. Tate's Auto Center of Winslow*

*Inc.*, No. CV-18-08176-PCT-DJH, 2021 WL 410857, at *8 (D. Ariz. Feb. 5, 2021) ("Expert

opinions must help the jury. Fed. R. Evid. 702(a).  It is not helpful for [the expert] to imply that

ill-gotten monies cannot be traced because there are no ill-gotten monies. Furthermore, if this

statement is predicated upon the assumption that there are no ill-gotten monies, this is an implicit

and circular legal conclusion, which the Court will not admit.").

Second, Mr. Troy's "assumption" and accompanying opinions implicate a legal error.  As

part of its opinion affirming this Court's order to delist the '963 patent, the Federal Circuit held

that because the Orange Book listing requirements concern whether a patent is directed to a

"method of using a drug," "[a]n inquiry into whether a patent may be properly listed or

delisted from the Orange Book therefore ***clearly requires a determination of what that patent***

*claims*." *Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC*, 641 F. Supp. 3d 85, 90 (D. Del. 2022), *aff'd* 60 F.4th 1373, 1379 (Fed. Cir. 2023) (emphasis added). Mr. Troy is not a patent lawyer, has no expertise in identifying what a patent claims, and failed to conduct ***any*** analysis of what the '963 patent claims are directed to. Ex. 37, Troy Dep. Tr. 43:6-8. In short, Mr. Troy's "assumption" is not only circular, but one that wholly ignores the very methodology for evaluating patent listing emphasized by the Federal Circuit.

Third, Mr. Troy's "assumption" and accompanying opinions are unreliable because they are premised on another legal error. This Court and the Federal Circuit have already determined, as a matter of law, that the '963 patent does not claim a method of using a drug, but rather claims a system. *Jazz Pharms.*, 641 F. Supp. 3d at 90, *aff'd* 60 F.4th at 1379. That is law of the case. *See Pepper*, 131 S.Ct. at 1250-51; *see also PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1363 (Fed. Cir. 2005) ("A claim cannot have different meanings at different times; its meaning must be interpreted as of its effective filing date."). By basing his opinion on an "assumption" that is incorrect as a matter of law, Mr. Troy necessarily advances an unreliable opinion that must be excluded. *See, e.g.*, *Exela Pharma Sciences*, 2022 WL 806524, at *3; *Martinez*, 601 F. Supp. 2d at 866.

Fourth, Mr. Troy offers the opinion that Jazz did not know and/or "could not have known" that the '963 patent claims would be construed as reciting systems rather than methods. *See, e.g.*, Ex. 38, Troy Op. Rep. at ¶¶108, 112; Ex. 37, Troy Dep. 351:2-10. Mr. Troy also asserts that Jazz could have relied on FDA guidance "that was available to Jazz at the time when the listing decisions had to be made." *See, e.g.*, Ex. 38, Troy Op. Rep. at ¶ 23. This testimony is likewise improper. *See Persawvere*, 2023 WL 8019085, at *14 ("Expert witnesses are not 'permitted to testify . . . regarding [the defendant's] intent, motive, or state of mind, or evidence

23

by which such state of mind may be inferred.'").  Mr. Troy's testimony about what Jazz ostensibly could or could not have known is an improper effort to suggest Jazz's actual state of mind and, at best, plainly attempts to provide "evidence by which state of mind can be inferred." Particularly given that Jazz declined to waive privilege as to its subjective knowledge regarding whether or not the '963 patent claimed systems and/or was properly listable (*see, supra* at p. 11), any such testimony from Mr. Troy is particularly inappropriate.  *See Arista Records LLC v. Lime Group LLC*, No. 06-cv-5936, 2011 WL 1642434, at *2-3 (S.D.N.Y. April 20, 2011).

Finally, as explained above with respect to Mr. Singer's opinions, to the extent the Court determines that it should exclude expert testimony relating to whether Jazz's listing decisions were objectively reasonable as an impermissible legal opinion, then the Court should exclude Mr. Troy's opinions that it was reasonable for a company like Jazz to list and maintain the '963 patent in the Orange Book.  Although Mr. Troy disclaims that he is providing a legal opinion (Ex. 38, Troy Op. Rep. at ¶ 17), his opinion that Jazz's listing of the '963 patent was consistent with "available regulatory guidance" (*id.* at p. 52, ¶ 78) relates to the legal issue of whether the listing complied with FDA regulations and should be excluded.  *See Oxford Gene Technology*, 345 F. Supp. 2d at 442-43 (an expert is not permitted to testify as to whether a party's conduct satisfied a legal standard).

For these reasons, Mr. Troy's opinions regarding whether it was reasonable for Jazz to list and maintain the '963 patent in the Orange Book should be excluded.

Respectfully submitted,

Dated: April 25, 2025

MCCARTER & ENGLISH , LLP

/s/ *Daniel M. Silver*

OF COUNSEL:

Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
Renaissance Centre
405 North King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

Kenneth G. Schuler
Marc N. Zubick
Alex Grabowski
Sarah W. Wang
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-7700
kenneth.schuler@lw.com
marc.zubick@lw.com
alex.grabowski@lw.com
sarah.wang@lw.com

*Attorneys for Defendant*

Ian R. Conner
Alan J. Devlin
Anna Rathbun
Christopher J. Brown
LATHAM & WATKINS LLP
555 Eleventh Street, NW Suite 1000
Washington, D.C. 20004
(202) 637-2200
ian.conner@lw.com
alan.devlin@lw.com
anna.rathbun@lw.com
christopher.brown@lw.com

Herman Yue
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
herman.yue@lw.com

Alfred C. Pfeiffer
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 395-8898
al.pfeiffer@lw.com

Daralyn J. Durie
Rebecca E. Weires
Tannyr Pasvantis
Eliot A. Adelson
Margaret A. Webb
Helen He
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-6055
ddurie@mofo.com
rweires@mofo.com
tpasvantis@mofo.com
eadelson@mofo.com
mwebb@mofo.com
hhe@mofo.com

Kira A. Davis
Henry Huttinger
Katherine E. McNutt
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5200
kiradavis@mofo.com
hhuttinger@mofo.com
kmcnutt@mofo.com

Alexander Okuliar
Haydn Forrest
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037, USA
(202) 887-1500
aokuliar@mofo.com
hforrest@mofo.com

Matthew C. Has
POLSINELLI
100 South Fourth Street, Suite 1000
St. Louis, MO 63102
mhans@polsinelli.com

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that true and correct copies of the foregoing document were caused to be served on April 25, 2025 on the following counsel in the manner indicated below.

### VIA EMAIL:

Jack B. Blumenfeld
Jeremy Tigan
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

William R. Sears
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Willsears@quinnemanuel.com

F. Dominic Cerrito
Eric C. Stops
Evangeline Shih
Andrew S. Chalson
Gabriel P. Brier
Frank C. Calvosa
Steig D. Olson
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 5th Avenue
New York, NY 10016
nickcerrito@quinnemanuel.com
ericstops@quinnemanuel.com
evangelineshih@quinnemanuel.com
andrewchalson@quinnemanuel.com
gabrielbrier@quinnemanuel.com
frankcalvosa@quinnemanuel.com
steigolson@quinnemanuel.com

*Attorneys for Plaintiff Jazz Pharmaceuticals, Inc.*

ME1 51410368v.1

Dated: April 25, 2025

*/s/ Daniel M. Silver*
Daniel M. Silver (#4758)