IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAZZ PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Counterclaim-Defendant, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-941 (GBW) |
| | ) | |
| AVADEL CNS PHARMACEUTICALS LLC, | ) | **PUBLIC VERSION** |
| | ) | |
| Counterclaim-Plaintiff. | ) | |

**JAZZ'S OMNIBUS OPENING BRIEF IN SUPPORT OF ITS MOTIONS TO
EXCLUDE CERTAIN AVADEL EXPERTS UNDER *DAUBERT***

OF COUNSEL:

F. Dominic Cerrito
Steig D. Olson
Gabriel P. Brier
Frank C. Calvosa
Nicolas Siebert
Maxwell Hawley
Kevin Adams
John P. Galanek
Habib-Emmanuel Abraham
Sami H. Rashid
Elizabeth J. Murphy
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
295 5th Avenue
New York, NY  10016
(212) 849-7000

William R. Sears
Lynette Lim
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jtigan@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Counterclaim-Defendant
Jazz Pharmaceuticals, Inc.*

**Confidential Version Filed: April 25, 2025
Public Version Filed: May 9, 2025**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      LEGAL STANDARD ..................................................................................................1

II.     ARGUMENT .............................................................................................................1

    A.      Keith Flanagan's Testimony Should Be Excluded In Its Entirety ..........................1

    B.      Ellis Unger's Testimony Should Be Excluded In Its Entirety ................................4

    C.      Dr. E. Fintan Walton's Testimony Should Be Excluded In Its Entirety ................6

    D.      Dr. William Charman's Testimony Should Be Excluded In Its Entirety ...............8

    E.      Peter Waibel's Testimony Should Be Excluded In Its Entirety .............................9

    F.      William Schultz's Testimony Should Be Excluded In Its Entirety ......................12

    G.      Michael Carrier's Testimony Should Be Excluded In Its Entirety ......................13

    H.      Jonathan Orszag's Testimony Should Be Excluded In Part, Specifically Opening Report ¶218 And Reply Report ¶¶180-84 ...............................................16

III.    CONCLUSION........................................................................................................16

**<u>TABLE OF AUTHORITIES</u>**

<u>Page(s)</u>

<u>Cases</u>

*In re Actos Antitrust Litig.*,
2025 WL 1001259 (S.D.N.Y. Mar. 31, 2025) ...........................................................10, 12, 14

*Bartlett v. Mut. Pharm. Co.*,
2010 WL 3659789 (D.N.H. Sept. 14, 2010) ............................................................................2

*Bayer HealthCare LLC v. Baxalta Inc.*,
2019 WL 10890386 (D. Del. Jan. 3, 2019).............................................................................12

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
455 F.3d 195 (3d Cir. 2006).............................................................................................9, 12

*Cohen v. Cohen*,
125 F.4th 454 (3d Cir. 2025) ..........................................................................................1, 14

*Cont'l Paper Bag v. Eastern Paper Bag*,
210 U.S. 405 (1908)................................................................................................................7

*Crockett v. Luitpold Pharms., Inc.*,
2023 WL 2187641 (E.D. Pa. Feb. 23, 2023) ........................................................................16

*Crowley v. Chait*,
322 F. Supp. 2d 530 (D.N.J. 2004) ........................................................................................5

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)................................................................................................................1

*Doucette v. Jacobs*,
106 F.4th 156 (1st Cir. 2024).................................................................................................4

*In re Elec. Books Antitrust Litig.*,
2014 WL 1282298 (S.D.N.Y. Mar. 28, 2014) ......................................................................16

*Elorac, Inc. v. Sanofi-Aventis Canada, Inc.*,
2017 WL 3592775 (N.D. Ill. Aug. 21, 2017) ....................................................................6, 8

*In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
2022 WL 226130 (D. Kan. Jan. 26, 2022)............................................................................16

*In re Generic Pharms. Pricing Antitrust Litig.*,
2024 WL 4980784 (E.D. Pa. Dec. 3, 2024) ...........................................................................3

*Heller v. Shaw Indus., Inc.*,
    167 F.3d 146 (3d Cir. 1999)........................................................................................1

*In re Initial Pub. Offering Sec. Litig.*,
    174 F. Supp. 2d 61 (S.D.N.Y. 2001)........................................................................12

*Jones v. Varsity Brands, LLC*,
    2024 WL 457173 (W.D. Tenn. Feb. 6, 2024)..........................................................16

*Kraft Foods Grp. Brands LLC v. TC Heartland, LLC*,
    232 F. Supp. 3d 632 (D. Del. 2017)..........................................................................8

*Kruszka v. Novartis Pharms. Corp.*,
    28 F. Supp. 3d 920 (D. Minn. 2014)..........................................................................2

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)...................................................................................................8

*Kyocera Senco Indus. Tools Inc. v. ITC*,
    22 F.4th 1369 (Fed. Cir. 2022) ...............................................................................11

*Logantree, LP v. Fossil Grp., Inc.*,
    2024 WL 5333342 (D. Del. May 7, 2024).............................................................12

*Meadows v. Anchor Longwall & Rebuild, Inc.*,
    306 F. App'x 781 (3d Cir. 2009) ...............................................................................1

*Medicines Co. v. Mylan Inc.*,
    2014 WL 1516599 (N.D. Ill. Apr. 17, 2014).............................................................2

*Microsoft Corp. v. Motorola, Inc.*,
    2013 WL 4008822 (W.D. Wash. Aug. 5, 2013) .....................................................13

*In re Mirena IUD Prods. Liab. Litig.*,
    169 F. Supp. 3d 396 (S.D.N.Y. 2016)...................................................................2, 5

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3d Cir. 1994)........................................................................1, 2, 10, 14

*In re Proton-Pump Inhibitor Prods. Liab. Litig.*,
    2022 WL 18999830 (D.N.J. July 5, 2022).............................................................16

*Sprint Commc'ns Co. v. Charter Commc'ns, Inc.*,
    2021 WL 979307 (D. Del. Mar. 16, 2021) ...........................................................8, 9

*In re TMI Litig.*,
    193 F.3d 613 (3d Cir. 1999), *amended,* 199 F.3d 158 (3d Cir. 2000) ......................1

*Transcon. Gas Pipe Line Co. v. Permanent Easements for 3.16 Acres*,
2023 WL 3727514 (M.D. Pa. May 30, 2023) ............................................................7

*United States v. Ford*,
481 F.3d 215 (3d Cir. 2007) ..................................................................................15

*Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*,
540 U.S. 398 (2004) ..................................................................................................7

*In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*,
858 F.3d 787 (3d Cir. 2017) .....................................................................................2

## **Other Authorities**

21 C.F.R. § 316.3(b)(3) ..................................................................................................3

Rule 26(a)(2)(B) ...........................................................................................................8

Rule 702 .............................................................................................................1, 13, 15

Should this case proceed to trial, Avadel cannot carry its burden under Rule 702 of demonstrating admissibility for certain expert testimony. The opinions below should be excluded.

## I.    LEGAL STANDARD

Under Rule 702, Avadel must prove three requirements for its expert testimony: "qualifications, reliability, and fit." *Cohen v. Cohen*, 125 F.4th 454, 460 (3d Cir. 2025). An expert must "possess sufficient qualifications in the form of knowledge, skills and training." *Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781, 788 (3d Cir. 2009). To be reliable, the opinion must "be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). The reliability analysis "applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia.*" *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999). An opinion does not "fit" the facts of the case where there is no "connection between the expert opinion offered and the particular disputed factual issues in the case." *In re TMI Litig.*, 193 F.3d 613, 670 (3d Cir. 1999), *amended,* 199 F.3d 158 (3d Cir. 2000).

## II.    ARGUMENT

### A.    Keith Flanagan's Testimony Should Be Excluded In Its Entirety

Flanagan is a former FDA employee who seeks to opine that, absent the '963 patent's listing in the Orange Book, the █████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████ There are two independent bases for exclusion.

*First*, an expert—even a former government agency employee—cannot opine as to whether an agency would or would not have taken a certain course of action. Such opinions necessarily require impermissible speculation as to how the agency would have approached a hypothetical

scenario. Flanagan should not be permitted to testify about what "the FDA would or would not have ultimately accepted or rejected. This is impermissible speculation as to the state of mind of the FDA." *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 466 (S.D.N.Y. 2016); *see also Kruszka v. Novartis Pharms. Corp.*, 28 F. Supp. 3d 920, 931 (D. Minn. 2014) (finding "testimony about the FDA and Novartis's state of mind is not appropriate as expert testimony."); *Medicines Co. v. Mylan Inc.*, 2014 WL 1516599, at *4 (N.D. Ill. Apr. 17, 2014) (collecting cases and precluding expert "from opining on what the Patent Office Examiner would have done").

*Second*, Flanagan's opinion rests on "subjective belief or unsupported speculation," instead of "methods and procedures of science." *In re Paoli*, 35 F.3d at 742; *see also In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 858 F.3d 787, 796 (3d Cir. 2017) (explaining analysis must be "truly a methodology, rather than a mere conclusion-oriented selection process").

To start, Flanagan could not cite a single time the FDA has taken the course of action he posits here—resolving ODE clinical superiority issues within 10 months: ████████████████ ████████████████████████████████████████████████████████████ ████████████████████████ "[I]t is pure speculation to assume that the FDA would" take a course of action where there is "no evidence" to suggest the FDA has taken that course before. *Bartlett v. Mut. Pharm. Co.*, 2010 WL 3659789, at *10 (D.N.H. Sept. 14, 2010).

Beyond that, a necessary premise of Flanagan's conclusion is that the Office of Orphan Drug Products ("OOPD"), the division responsible for evaluating Lumryz's clinical superiority, and the Division of Neurology I ("DN1"), who OOPD consulted during its clinical superiority evaluation and who are the subject matter experts that conducted the substantive review of the Lumryz NDA, would have not only resolved Lumryz's ODE issues in its favor, but have done so in mere weeks. He applies no discernable methodology to reach that conclusion.

2

██████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████. Flanagan's lack of knowledge of the underlying facts, and lack of analysis, warrant exclusion. *In re Generic Pharms. Pricing Antitrust Litig.*, 2024 WL 4980784, at *31 (E.D. Pa. Dec. 3, 2024) (noting that experts "must provide some kind of analysis, methodology, or basis on which [they] reach[] [their] opinions.").

██████████████████████████████████████████

the OOPD's Standard Operating Procedures and Policies ("SOPP"), which formally designate clinical superiority determinations as "complex." A4211. He thus did not address that these decisions require a series of "Complex Exclusivity Determination Activities," which involve multiple personnel, including different scientific divisions within the FDA and regulatory counsel, and as a result may "take more time" to complete than other types of NDA reviews that lack the complexity present here. A4208; A4211; A1756 at 64:17-65:9; A1758 at 70:1-12; A1760 at 78:18-22; A1764 at 94:10-21. Flanagan similarly ignored that Lumryz's eventual ODE pathway was as a "major contribution to patient care," which is assessed only "*[i]n unusual cases, where neither greater safety nor greater effectiveness has been shown*," 21 C.F.R. § 316.3(b)(3), meaning that,

to even get to that pathway, the FDA has to work through greater efficacy and safety first, indicating it will inevitably take more time. "[A]n expert's failure to point to and consider material elements of the record she purports to be analyzing can be grounds for a district court's exclusion of the proffered testimony." *Doucette v. Jacobs*, 106 F.4th 156, 169 (1st Cir. 2024) (internal citation and quotation omitted). Here, Flanagan's failure to cite the controlling SOPP or address the actual approval pathway at issue warrants exclusion.

The sole basis for Flanagan's opinion is that October 15, 2021 was the default PDUFA goal date assigned to Avadel's NDA, just as a similar goal date is assigned to *every* NDA. ██████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████[1] Such an approach employs no scientific methodology and is not admissible.

### B.    Ellis Unger's Testimony Should Be Excluded In Its Entirety

To prop up Flanagan, Avadel seeks to introduce testimony from another ex-FDA employee, Unger, on the same subject matter. This opinion should be excluded for the same reason the Court should exclude Flanagan's opinion. *See supra* §II.A. Specifically, Unger, like Flanagan,

---

[1] ████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████ Unger has no basis to testify

that, ████████████████████████████████████

████████████████████████████████ A0042 ¶3. Nor

can Unger speculate that DN1's original August 2021 memo finding a lack of clinical superiority

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

This too impermissibly goes to the FDA's state of mind. *In re Mirena*, 169 F. Supp. 3d at 466.

Separately, Unger's opinion should be excluded as unreliable because he admitted that he

misrepresented the basis for his conclusion. Unger's report states he ████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████. Unger could not have agreed with a conclusion from a report he did not read. An expert

must "conduct independent analyses," not merely rely "upon information spoonfed to him by [the

party's] counsel." *Crowley v. Chait*, 322 F. Supp. 2d 530, 542 (D.N.J. 2004). Because Unger

admitted he did not independently analyze the Flanagan report he purports to bolster, his opinion on this subject is necessarily unreliable and should be excluded.

### C.    Dr. E. Fintan Walton's Testimony Should Be Excluded In Its Entirety

To get around the fact that Avadel's earlier hypothetical entry would have been unlawful because it would have infringed Jazz's '782 patent, Avadel offers Walton, whose testimony was excluded the last time he sought to testify as an expert in a U.S. court. *Elorac, Inc. v. Sanofi-Aventis Canada, Inc.*, 2017 WL 3592775, at \*13-16 (N.D. Ill. Aug. 21, 2017) (noting "Dr. Walton's opinion is not reliably rooted in facts or data because it is based on assumptions that are essentially speculative."). Walton opines that a "reasonable" company in Jazz's position acting without "monopolistic intent" likely would have granted a voluntary license for the '782 patent to Avadel between October 19, 2021, when the '782 patent issued, and April 2022, Avadel's alleged launch date. A0007-09 ¶¶23, 26-28. █████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████. Walton's opinions should be excluded.

*First*, Walton's opinions rest on his fabricated concept of "monopolistic intent," which is *ipse dixit*, contravenes settled law, and which Walton is unqualified to offer. ███████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████. Although the term plainly implicates antitrust concepts, Walton has no antitrust experience. A1297 at 19:9-20:12. He did not review any information about antitrust laws—not even a Wikipedia article. A1299 at 27:3-28:22; A1297 at 19:9-20:12. Nor did Walton apply an accepted non-legal definition of monopolistic intent—he was unaware of any such definition and identified no one other than himself that has applied it. A1298-99 at 23:14-29:20. Walton thus "has no basis for and/or is

6

admittedly unqualified" to opine on the concept he made up for this case. *Transcon. Gas Pipe Line Co. v. Permanent Easements for 3.16 Acres*, 2023 WL 3727514, at *4 (M.D. Pa. May 30, 2023).

Moreover, Walton's definition of "monopolistic intent" would appear to encompass a company's lawful assertion of intellectual property rights. A0009 ¶¶27-28; A0920-21 ¶23. But a patent holder (like Jazz) is entitled to exclude others from using its intellectual property and has no duty to help its rivals. *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 411 (2004) ("[T]here is no duty to aid competitors."); *Cont'l Paper Bag v. Eastern Paper Bag*, 210 U.S. 405, 423-24 (1908) (patent law "provide[s] for an exclusive right to inventors to make, use, and vend their inventions. In other words, the language of complete monopoly has been employed[.]"). As Avadel's own purported expert, Professor Carrier, has written: "If a patent is valid and infringed, the patentee could rely on the patent itself to restrict competition." A3383.

Ignoring this settled rule, Walton uses his flawed definition of "monopolistic intent" to assume away factors that weigh against licensing—including entirely lawful factors. For example, Walton does not consider prior litigation between Jazz and Avadel, A1355 at 250:5-13, including that a prior collaborative attempt between Jazz and Avadel spawned a trade secret lawsuit, A1323 at 122:19-123:16. Indeed, ███████████████████████████████████████ ████████████████████████████████. This conveniently allows Walton to ignore that, in the actual world, Jazz obtained an injunction against Avadel in the idiopathic hypersomnia space—which confirms Jazz had reasonable bases for litigating the '782 patent rather than licensing it to Avadel. C.A. No. 21-1594, D.I. 540 at 2. ████████████████████

████████████████████████████████████████████████████

███████████ ████████████████████████████████████████████████████.

Walton's testimony "is unreliable and unhelpful to the finder of fact" because it relies on an

incorrect, pseudo-legal standard to wish away contrary facts. *See Kraft Foods Grp. Brands LLC v.*

*TC Heartland, LLC*, 232 F. Supp. 3d 632, 635 (D. Del. 2017).

    *Second*, Walton's opinions are based on ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██. Applying a made-up list of factors to a company that does not exist is plainly not "the same

level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*

*Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Just like the last time Walton's testimony was

excluded, his testimony is "not reliably rooted in facts or data." *Elorac*, 2017 WL 3592775, at *14.

## D.    Dr. William Charman's Testimony Should Be Excluded In Its Entirety

    Charman is a formulation expert who testified for Avadel in the patent case on alleged

invalidity. For this case, he was ████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████. But rather than describe such opinions, Charman improperly ██████████

████████████████████████████████████████████████████████, and then

seeks to offer the ultimate legal opinion that ██████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████

    *First*, Charman's report violates Rule 26(a)(2)(B), which "calls for the disclosure of 'all

opinions the witness will express,' not all opinions the witness has or has ever had." *Sprint Comms.*

*Co. v. Charter Comms., Inc.*, 2021 WL 979307, at *3 (D. Del. Mar. 16, 2021). ███████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████. Thus, it is unclear what opinions Charman would have had in

April 2022. This underscores why "[w]holesale incorporation of opinions offered at different times

in different cases, only some of which could possibly be relevant to the opinions [the] experts are

offering in this case is not literally in compliance with the rules." *Sprint*, 2021 WL 979307, at *3.

*Second*, Charman's opinion **in this case** is a legal one—whether ███████████████

████████████████████████████████████████████. Charman

supports his legal opinion by reasoning that because JMOL was not granted in the patent case, his

opinions in the patent case reports █████████████████████████████████

████████████████████████████████████████████

███. Setting aside that Charman agrees the evidence underlying the Court's February 2024 JMOL

decision is different from the evidence that would have been available in April 2022, *see* A2192

at 54:21-55:10; *id.* at 56:17-57:20, Charman cannot offer the legal opinion that the Court could or

would have found a substantial question of validity at a hypothetical preliminary injunction hearing

in April 2022 because the Court denied JMOL in 2024. *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455

F.3d 195, 217 (3d Cir. 2006) ("[A]n expert witness is prohibited from rendering a legal opinion.").

### E.    Peter Waibel's Testimony Should Be Excluded In Its Entirety

Waibel is a former in-house patent attorney who seeks to opine on: (1) Jazz's decision to

list and maintain the '963 patent in the Orange Book; (2) whether Jazz's Xyrem REMS practices the '963 patent's claims; and (3) Jazz's chances of meeting the legal standard and succeeding on a preliminary or permanent injunction for the '782 patent. All of these are improper.

*First*, Waibel offers improper legal opinions regarding Jazz's listing. As to claim construction, ████████████████████████████████████████████████████ ████████████████████████████████████████████████████. As to the listing itself, ████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████. These are legal opinions— ████ ████████████████████████████████████████████████████ ████████████████████████

Courts "have generally excluded patent law expert testimony relating to substantive issues of patent law." A4705-06. And the Southern District of New York, in an alleged improper listing antitrust suit, excluded expert testimony from a former in-house patent attorney, like Waibel, regarding how "a reasonable patent attorney" would have interpreted the listing regulations and, therefore, the reasonableness of listing the patent. *In re Actos Antitrust Litig.*, 2025 WL 1001259, at *33 (S.D.N.Y. Mar. 31, 2025); *see also id.* at *31 (excluding attorney expert on whether "Takeda's descriptions of the Patents were correct based on their own interpretations of the Listing Statute and Regulation").

*Second*, Waibel's opinions are merely his subjective beliefs, and expert opinion "must be based on the 'methods and procedures of science' rather than on 'subjective belief….'" *In re Paoli*, 35 F.3d at 742. Waibel does not offer any methodology for assessing how a "reasonable patent attorney" would approach the issues in this case. ████████████████████████████████████



*Third*, Waibel lacks the qualifications necessary to testify on whether Jazz's REMS practices the claims of the '963 patent. *See, e.g.*, A0154 ¶¶79-80. "To offer expert testimony from the perspective of a skilled artisan in a patent case—like for claim construction, validity, or infringement—a witness must at least have ordinary skill in the art." *Kyocera Senco Indus. Tools Inc. v. ITC*, 22 F.4th 1369, 1376-77 (Fed. Cir. 2022) (reversing admission of expert's testimony on infringement). The opinions of an expert witness who lacks ordinary skill would only "cause mischief and confuse the factfinder." *Id.* at 1377.

Waibel admitted he lacks the requisite ordinary skill in the art to opine on whether Jazz's REMS practices the '963 patent's claims. He is not an expert in REMS, or a technical expert or a person of ordinary skill in the field of the '963 patent. A2001 at 214:13-215:15. He also did not consult with any POSA in offering his opinions. A2001 at 215:16-24. He thus cannot opine on whether Jazz's REMS practices the '963 patent's claims.[2]

*Finally*, ████████████████████████████████

████████████████████████████████████████████

---

[2] Avadel offers expert testimony from a purported POSA, Dr. Gudin, regarding this topic. Waibel does not rely on Gudin and goes beyond what Gudin opines. *See* A0154-56 ¶¶79-82; A0071-77 ¶¶26-39. Jazz is not moving to exclude Gudin's testimony.

███████████████████████████████████████. "The decision to grant or deny an injunction is an act of equitable discretion by the district court." *Bayer HealthCare LLC v. Baxalta Inc.*, 2019 WL 10890386, at *1 (D. Del. Jan. 3, 2019). "[A]n expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts." *Logantree, LP v. Fossil Group, Inc.*, 2024 WL 5333342, at *2 (D. Del. May 7, 2024). Waibel's "no realistic chance" opinion "ventures precisely into this forbidden territory." A4705-06.

### F. William Schultz's Testimony Should Be Excluded In Its Entirety

Schultz is an FDA regulatory attorney who seeks to opine that Jazz lacked ███████████ ████████████████████ for listing and maintaining the listing of the '963 patent. *See, e.g.*, A0336. Schultz also opines, and expressly bases the previous opinion, on whether the ███████ ████████████████████████████████████████ to allow for listing. A0333. These opinions are inadmissible for two independent reasons.

*First,* Schultz's opinions should be excluded because, like Waibel's, they are impermissible legal opinions. *Berckeley*, 455 F.3d at 217. *Actos* held that "[p]ermitting a witness to testify about their own 'understanding of the meaning and applicability' of statutes and regulations would run roughshod" over the "venerable rule" that "[i]nstructing the jury on the content and scope of the law is the 'exclusive' duty of the court." *In re Actos*, 2025 WL 1001259, at *31 (quoting *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 69-70 (S.D.N.Y. 2001)). That court therefore excluded regulatory law expert testimony on "interpretations of the Listing Statute and Regulation" because "there is no such thing as an expert opinion when it comes to interpreting a statute unless that opinion belongs to a court'" *Id.* (quotations and citations omitted)). The same result is warranted here, ████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████

*Second*, Schultz's opinions do not meet Rule 702's "fit" requirement. ███████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████ But here, there is no dispute about the listing of the '963 patent ***after*** the Federal Circuit's decision. All that matters is what happened ***before*** the Federal Circuit ruled. Because Schultz's opinion depends on the Federal Circuit's ruling that had not yet occurred, his opinions are irrelevant. *See Microsoft Corp. v. Motorola, Inc.*, 2013 WL 4008822, at *8 (W.D. Wash. Aug. 5, 2013) ("To say ex post that a decision made was actually a good one is irrelevant to the factors that went into the decision, unless the ex post events were evaluated prior to the actual decision."). Schultz's opinions should be excluded for this independent reason as well.

### G.    Michael Carrier's Testimony Should Be Excluded In Its Entirety

Carrier is a law professor and self-proclaimed "███████████████████████████ ███████████████████████████████████████. He seeks to improperly opine that: ███████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

*First*, Carrier's opinions regarding "a reasonable company in Jazz's position" and listing can be excluded on three independent bases. As with Waibel and Schultz, Carrier's opinions are improper legal opinions. ███████████████████████████████

███████████████████████████████████████████████-

13

██████████████████████████████████████████████████████

███████████████████████████████████. As in *Actos*, a law

professor, like Carrier, cannot opine on "their own interpretations of the Listing Statute and

Regulation[s];" this alone warrants exclusion. *In re Actos*, 2025 WL 1001259, at *31.

Separately, Carrier lacks the necessary "qualifications," *Cohen*, 125 F.4th at 460, to opine

on what "a reasonable pharmaceutical company," let alone one "in Jazz's position," would have

done concerning the Orange Book. Carrier has never worked at a pharmaceutical company, A1889

at 18:13-16. No pharmaceutical company has ever hired him to assist with Orange Book listings,

A1889 at 18:17-22. He could not recall a single time a pharmaceutical company has ever told him

their internal policies related to Orange Book listings, A1889 at 18:23-19:25. He has never worked

at FDA, A1889 at 18:10-12, or represented a company or the government in patent litigation,

A1888 at 17:6-19.███████████████████████████████████████████

████████████████████████. Given these admissions, Carrier lacks the necessary

qualifications to opine on what "a reasonable pharmaceutical company," let alone one "in Jazz's

position," would do with respect to listing a patent in the Orange Book.

Finally, Carrier's opinions on listing merely reflect his subjective belief. *In re Paoli*, 35

F.3d at 742. Carrier does not offer any methodology for assessing what "a reasonable

pharmaceutical company" even is—whether generally or specifically for Orange Book listings. ██

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████. Without any baseline to measure against, let alone an objective one, Carrier is left with his improper subjective belief.

*Second*, Carrier's opinion regarding the prevalence of listing REMS patents fails the "fit" requirement. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ But Carrier misleadingly focuses on all REMS programs, rather than patented REMS. In fact, of the 53 *programs* he identifies, only 5 had REMS *patents*—100% of companies with REMS patents listed them. A0216-17 ¶¶109, 112. Thus, his opinions fail to satisfy Rule 702's "fit" requirement because they do not "speak[] clearly and directly to an issue in dispute in the case," and could "mislead the jury." *United States v. Ford*, 481 F.3d 215, 219 n.6 (3d Cir. 2007).

This dispute concerns the reasonableness of Jazz's determination that a REMS patent was required to be listed in the Orange Book. Thus, the relevant industry practice is the behavior of other companies that, like Jazz, were forced to determine whether REMS patents needed to be listed in the Orange Book, *i.e.*, companies that obtained REMS patents. Carrier's own work shows that Jazz's actions were consistent with industry practice: prior to his engagement in this case, Carrier wrote that "current practice is to list REMS patents in the Orange Book." A4062. Moreover, ██████████████████████████████████████████

████████████████████████████████████████████████████████. Unable to

identify any company that came to a different conclusion than Jazz, Carrier confuses the issue by focusing not on companies in Jazz's position, but rather, on all companies with REMS regardless of whether they obtained REMS patents. This misleading inquiry does not meet the required fit.

### H. Jonathan Orszag's Testimony Should Be Excluded In Part, Specifically Opening Report ¶218 And Reply Report ¶¶180-84

Orszag is an economist who seeks to opine on Avadel's drug manufacturing and supply chain, and whether Avadel would have been ready to launch as of April 2022. A0583-84 ¶218; A1034-36 ¶¶180-84. "To satisfy Daubert's qualification requirement, an expert must possess specialized knowledge regarding the area of testimony." *Crockett v. Luitpold Pharms., Inc.*, 2023 WL 2187641, at *2 (E.D. Pa. Feb. 23, 2023). But Orszag confirmed he has no knowledge of Avadel's supply chain, the substance of the manufacturing application Avadel filed with the FDA, the FDA approval process, or DEA quota approval process (needed to manufacture the drug). ██

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████[3] The Court should "credit [Mr. Orszag's] own testimony on the matter when he testified that he is *not* an expert on [the relevant issues]." *In re Proton-Pump Inhibitor Prods. Liab. Litig.*, 2022 WL 18999830, at *32 (D.N.J. July 5, 2022).

### III. CONCLUSION

For the foregoing reasons, the Court should grant Jazz's motions.

---

[3] Courts have previously excluded Orszag's testimony for "simply offer[ing] his opinions without any rationale to support his conclusions." *Jones v. Varsity Brands, LLC*, 2024 WL 457173, at *4 (W.D. Tenn. Feb. 6, 2024); *see also In re Elec. Books Antitrust Litig.*, 2014 WL 1282298, at *15 (S.D.N.Y. Mar. 28, 2014) (Orszag's testimony was "unmoored from record facts and unsupported by any rigorous analysis."); *In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 2022 WL 226130, at *11 (D. Kan. Jan. 26, 2022) (his testimony "goes too far").

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

/s/ Jeremy A. Tigan

F. Dominic Cerrito
Steig D. Olson
Gabriel P. Brier
Frank C. Calvosa
Nicolas Siebert
Maxwell Hawley
Kevin Adams
John P. Galanek
Habib-Emmanuel Abraham
Sami H. Rashid
Elizabeth J. Murphy
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
295 5th Avenue
New York, NY  10016
(212) 849-7000

William R. Sears
Lynette Lim
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

April 25, 2025

Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jtigan@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Counterclaim-Defendant
Jazz Pharmaceuticals, Inc.*

17

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on April 25, 2025, upon the following in the manner indicated:

Daniel M. Silver, Esquire                                    *VIA ELECTRONIC MAIL*
Alexandra M. Joyce, Esquire
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE  19801
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

Kenneth G. Schuler, Esquire                                  *VIA ELECTRONIC MAIL*
Marc N. Zubick, Esquire
Alex Grabowski, Esquire
Sarah W. Wang, Esquire
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL  60611
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

Herman H. Yue, Esquire                                       *VIA ELECTRONIC MAIL*
Franco W. Benyamin, Esquire
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY  10020
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

David F. Kowalski, Esquire                                   *VIA ELECTRONIC MAIL*
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA  92130
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

Alan J. Devlin, Esquire                                    *VIA ELECTRONIC MAIL*
Ian R. Conner, Esquire
Anna M. Rathbun, Esquire
Christopher J. Brown, Esquire
Kimon K. Triantafyllou, Esquire
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

Alfred C. Pfeiffer, Esquire                                *VIA ELECTRONIC MAIL*
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

Daralyn J. Durie, Esquire                                  *VIA ELECTRONIC MAIL*
Tannyr Pasvantis, Esquire
Eliot A. Adelson, Esquire
Helen He, Esquire
Margaret A. Webb, Esquire
Adam R. Brausa, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

Rose S. Lee, Esquire                                       *VIA ELECTRONIC MAIL*
Kira A. Davis, Esquire
W. Henry Huttinger, Esquire
Katherine E. McNutt, Esquire
Rebecca E. Weires, Esquire
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

David F. McGowan, Esquire                                  *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, CA  92130
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

Andrew T. Jones, Esquire                                    *VIA ELECTRONIC MAIL*
Haydn Forrest, Esquire
Alexander Okuliar, Esquire
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, D.C.  20037
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*


Matthew C. Hans, Esquire                                    *VIA ELECTRONIC MAIL*
POLSINELLI PC
7676 Forsyth Boulevard, Suite 800
St. Louis, MO  63105
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*


                                                 */s/ Jeremy A. Tigan*
                                                 _____
                                                 Jeremy A. Tigan (#5239)