# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAZZ PHARMACEUTICALS, INC., | : |
| Plaintiff, | : C.A. No. 22-941-GBW |
| v. | : |
| AVADEL CNS PHARMACEUTICALS LLC, | : |
| Defendant. | : |

## MEMORANDUM ORDER

Plaintiff Jazz Pharmaceuticals, Inc. ("Jazz") filed this patent infringement action against Defendant Avadel CNS Pharmaceuticals LLC ("Avadel") in July 2022 alleging that "Avadel's submission of its NDA to obtain approval to engage in the commercial manufacture, use, sale, offer for sale, or importation of sodium oxybate oral solution, prior to the expiration of [U.S. Patent No. 8,731,963 ("the '963 patent)] constitutes infringement of one or more of the claims of that patent." *See* Complaint, D.I. 1, at ¶¶ 1-17. Thereafter, in October 2022, Avadel filed antitrust counterclaims alleging that Jazz delayed the launch of Avadel's LUMRYZ product by improperly listing the '963 patent in the FDA's Orange Book. *See* Answer to Complaint with Counterclaim, D.I. 14, at ¶¶ 34-153. Specifically, Avadel's counterclaims allege that Jazz unlawfully protected its monopoly from

competition by taking actions that delayed the launch of LUMRYZ, thus depriving narcolepsy patients of the benefits of a once-nightly oxybate drug and Avadel of the profits that it would have lawfully earned but for Jazz's decision to list and refusal to delist the '963 patent from the Orange Book. *Id.*[1]

Pending before the Court is Jazz's Supplemental Motion to Stay (D.I. 80) (the "Motion"), which have been fully briefed (D.I. 82, D.I. 83, D.I. 84, D.I. 184, D.I. 189, D.I. 190, D.I. 193, D.I. 201, D.I. 203).[2] For the following reasons, the Court denies the Motion.

## I. BACKGROUND

Jazz filed this '963 patent infringement action against Avadel for its sodium oxybate product, LUMRYZ, on July 15, 2022. D.I. 1. On October 21, 2022, Avadel filed its answer and counterclaims, which included both patent and antitrust counterclaims. D.I. 14. On December 9, 2022, Jazz moved to dismiss Avadel's antitrust counterclaims under Federal Rule of Civil Procedure 12(b)(6). D.I. 21. On March 6, 2023, the parties stipulated to the dismissal of Jazz's patent infringement claims against Avadel as well as Avadel's counterclaims for declarations of noninfringement, invalidity, and patent delisting. D.I. 32. Thus, only Avadel's antitrust counterclaims remain in this action, although Jazz continues

---

[1] The Court writes for the benefit of the parties and briefing sets forth the background and facts necessary for discussion of the pending motion.

[2] The Court previously denied Jazz's original Motion to Stay (D.I. 49) as moot. *See* D.I. 94.

to litigate patent claims unrelated to the '963 patent against Avadel in separate actions, Case Nos. 21-691, 21-1138, and 21-1594. The parties submitted a proposed scheduling order on March 9, 2023, D.I. 34, which the Court entered on May 19, 2023, D.I. 44. On March 24, 2024, the Court entered its Memorandum Order denying Jazz's Motion to Dismiss and denying Jazz's original Motion to Stay (D.I. 49) as moot. *See* D.I. 94. Discovery is complete, the deadline for the parties to file their respective case dispositive motions and *Daubert* motions has passed, Jazz and Avadel have filed their respective case dispositive motions and *Daubert* motions and briefing is complete or near complete, the final pretrial conference is scheduled for October 30, 2025, and Trial is scheduled to begin on November 3, 2025. *See* D.I. 88; D.I. 199; D.I. 245; D.I. 246; D.I. 250; D.I. 251; D.I. 252; D.I. 253; D.I. 254; D.I. 255; D.I. 256; D.I. 257; D.I. 266.

## II.  LEGAL STANDARD

Decisions whether to stay a case "are firmly within the discretion of district courts." *Westinghouse Air Brake Techs. Corp. v. Siemens Mobility, Inc.*, No. 17-1687, 2019 WL 126192, at *1-2 (D. Del. Jan. 8, 2019). In determining whether a stay is appropriate, courts consider the following three factors: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any

delay or allow the movant to gain a clear tactical advantage. *See Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 2021 WL 616992, at *2 (D.Del. Feb. 17, 2021).

## III. DISCUSSION

After evaluating the factors, the Court denies the Motion for the following reasons:

### A. Granting a Stay Will Not Simplify the Issues for Trial Because Avadel Does Have Antitrust Standing.

In support of its motion, Jazz argues that the '782 patent deprives Avadel of antitrust standing in this action. D.I. 80 at 3-7. In other words, Jazz claims that, "[u]nder black-letter antitrust law, Avadel could not have legally entered the market with LUMRYZ in April 2022 because that entry would have infringed the claim of a valid patent." D.I. 80 at 2. However, courts that have considered this specific question have rejected Jazz's position.

For example, in *Arista Networks, Inc. v. Cisco Sys., Inc.*, 2018 WL 11606358, at *10 (N.D. Cal. Feb. 14, 2018), the court held that, in itself, "patent infringement is not a defense against antitrust standing and injury[.]" The *Arista* court explained that "the public is best served by holding the antitrust defendant liable for engaging in anticompetitive conduct as well as subjecting the infringing plaintiff to its own penalties. The antitrust defendant can resort to available remedies to recover from the infringing plaintiff." *Id.* (citations omitted). *See also Dexon v. Cisco Sys., Inc.*, No. 22-53, 2023 WL 9065490, at *8-9 (E.D. Tex. Dec. 8,

4

2023). Similarly, in *In re Zetia Antitrust Litig.*, 655 F. Supp. 3d 406, 435 (E.D. Va. 2023), the court rejected the argument at summary judgment that a plaintiff is "precluded from establishing antitrust injury because [the incumbent manufacturer's] patent was valid and infringed." The court explained that the fact that the incumbent manufacturer "won its patent litigation" against the generic manufacturer did not "weigh on the question" of whether the plaintiff suffered an antitrust injury. *Id.*[3]

In order to prove antitrust injury, Avadel must show that it experienced some harm as a result of Jazz's anticompetitive patent listing. *See Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 114 n. 9 (1969) (Zenith's burden of proving the fact of damage under § 4 of the Clayton Act is satisfied by its proof of some damage flowing from the unlawful conspiracy; inquiry beyond this minimum point goes only to the amount and not the fact of damage."). The Supreme Court has stated "in explaining its 'traditional rule excusing antitrust plaintiffs from an unduly rigorous standard of proving antitrust injury', 'it does not "come with very good grace" for the wrongdoer to insist upon specific and certain proof of the injury which it has itself inflicted.'" *Danny Kresky Enters. Corp. v. Magid*, 716 F.2d 206, 213 (3d Cir. 1983).

---

[3] Jazz over-relies on the holding in *Wellbutrin*, 868 F.3d 132, 165 (3d Cir. 2017) in claiming that Avadel does not have antitrust standing for damages alleged caused to Avadel by Jazz's actions in improperly listing the '963 patent in the Orange Book.

The facts of the instant action plausibly present an instance of alleged anticompetitive conduct and antitrust injury which the antitrust laws were designed to prevent and, therefore, create antitrust standing. *See, e.g., In Re Suboxone Antitrust Litig.*, No. 2445, 2017 WL 4910673, at *13 (E.D. Pa. Oct. 30, 2017) ("[W]here a complaint alleges that a defendant has attempted to delay FDA approval in some manner, courts have held that 'such conduct creates the anticompetitive effect that the antitrust laws were designed to prevent, and therefore constitutes antitrust injury.'" (quoting *In re Neurontin Antitrust Litig.*, No. 1479, 2009 WL2751029, at *13 (D.N.J. Aug. 28, 2009); *In re Thalomid & Revlimid Antitrust Litig.*, No. 14-6997, 2015 WL 9589217, at *14 (D.N.J. Oct. 29, 2015) (allegations that "Celgene manipulated the FDA regulatory scheme, particularly the Hatch-Waxman Act, to 'block[] and delay[] . . . competition'" plausibly showed antitrust injury).

For these reasons, under the circumstances of this case, this Court, similar to the *Arista* court, finds that the public is best served by allowing the alleged antitrust defendant to possibly be held liable for engaging in anticompetitive conduct while allowing the infringing plaintiff to be subject to its own penalties. Thus, Avadel should have its day in court on its antitrust counterclaims against Jazz.

### B. The Status of the Litigation Weighs Against Granting a Stay

Discovery has closed, the deadline for the parties to file their respective case dispositive motions and *Daubert* motions has passed, Jazz and Avadel have filed their respective case dispositive motions and *Daubert* motions and briefing is complete or near complete, the final pretrial conference is scheduled for October 30, 2025, and Trial is scheduled to begin on November 3, 2025. *See* D.I. 199; D.I. 88; D.I. 245; D.I. 246; D.I. 250; D.I. 251; D.I. 252; D.I. 253; D.I. 254; D.I. 255; D.I. 256; D.I. 257; D.I. 266. Typically, courts are loath to stay cases that are so far advanced and close to trial. *See, e.g., Personalized User Model, L.L.P. v. Google, Inc.*, No. 09-525, 2012 WL 5379106, at *2 (D. Del. Oct. 31, 2012). All of these factors weigh against granting a stay.

### C. A Stay Would Unduly Prejudice Avadel and Grant Jazz a Tactical Advantage

Under the circumstances of the instant action, Avadel has a compelling interest in being able to get its day in court to try its antitrust claims. Avadel claims that "[t]here can be little doubt that Jazz unlawfully delayed competition from Avadel's [competitive] drug by improperly maintaining a bogus patent listing." D.I. 82, at 19. Avadel claims that the Chair of the FTC observed in September 2023 "that Jazz's '963 patent 'had nothing to do with the drug itself or an approved method of using the drug,' but Jazz used it to trigger a stay (by filing this case),

7

'blocking Avadel from the market . . . In the intervening period, Jazz continued to rake in monopoly profits and patients were deprived of a potentially superior formulation of a critical narcolepsy drug.'" D.I. 82, at 20 (quoting Lina M. Khan, FTC Chair, Statement at the September Open Commission Meeting at 2 (Sept. 14, 2023), at 2). The Court finds that not allowing this case to proceed by granting a stay would unduly prejudice Avadel and grant Jazz an unfair tactical advantage. *See ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, N0. 12-054, 2013 WL 663535, at *6 (D. Del. Feb. 25, 2013) ("[C]ourts are generally reluctant to stay proceedings where the parties are direct competitors."), report and recommendation adopted, 2013 WL 1743854 (D. Del. Apr. 22, 2013).

## IV. CONCLUSION

For the foregoing reasons, the Court denies Jazz's Supplemental Motion to Stay (D.I. 80).

\*         \*         \*

WHEREFORE, at Wilmington, this 29th day of May 2025, **IT IS HEREBY ORDERED** that Jazz's Supplemental Motion to Stay (D.I. 80) is **DENIED**.

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE