# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

JAZZ PHARMACEUTICALS, INC.,

      Plaintiff and Counter-Defendant,

      v.

AVADEL CNS PHARMACEUTICALS, LLC,

      Defendant and Counter-Plaintiff

C.A. No. 22-941-GBW



REDACTED PUBLIC VERSION
FILED JUNE 6, 2025

# AVADEL'S OPPOSITION TO JAZZ'S MOTIONS
# TO EXCLUDE CERTAIN AVADEL EXPERTS UNDER *DAUBERT*

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................1

II.   LEGAL STANDARD ..........................................................................................1

III.  ARGUMENT ........................................................................................................1

      A.    Mr. Keith Flanagan & Dr. Ellis Unger's Testimony ...............................1
      B.    Dr. E. Fintan Walton's Testimony ...........................................................7
      C.    Dr. William Charman's Testimony..........................................................10
      D.    Peter Waibel's Testimony ........................................................................11
      E.    William Schultz's Testimony ...................................................................14
      F.    Prof. Michael Carrier's Testimony ..........................................................15
      G.    Jonathan Orszag's Testimony ..................................................................16

IV.   CONCLUSION....................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*10x Genomics, Inc. v. Parse Biosciences, Inc.*,
 2025 WL 572788 (D. Del. Feb. 21, 2025) ...................................................................................1

*360Heros, Inc. v. GoPro, Inc.*,
 569 F. Supp. 3d 198 (D. Del. 2021)......................................................................................4, 9

*Bell Atl. Corp. v. AT&T Corp.*,
 339 F.3d 294 (5th Cir. 2003) ...................................................................................................9

*Christoforetti v. Bally's Park Place, Inc.*,
 2021 WL 3879074 (D.N.J. Aug. 31, 2021) ..............................................................................5

*Daubert v. Merrell Dow Pharms., Inc.*,
 509 U.S. 579 (1993)..................................................................................................................1

*Evans v. United States*,
 2017 WL 5193252 (E.D. Pa. Nov. 8, 2017) .............................................................................7

*FTC v. Qualcomm Inc.*,
 2018 WL 6460573 (N.D. Cal. Dec. 10, 2018).......................................................................5, 9

*Helios Software, LLC v. Awareness Techs., Inc.*,
 2015 WL 12806482 (D. Del. Apr. 13, 2015) ...........................................................................7

*In re Actos Antitrust Litig.*,
 2025 WL 1001259 (S.D.N.Y. Mar. 31, 2025) ........................................................................12

*In re Dealer Mgmt. Sys.*,
 581 F. Supp. 3d 1029 (N.D. Ill. 2022) .....................................................................................8

*In re Diet Drugs*,
 2001 WL 454586 (E.D. Pa. Feb. 1, 2001) ............................................................................3, 4

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
 2021 WL 2577490 (D. Kan. June 23, 2021)..............................................................................3

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practs. & Antitrust Litig.*,
 2020 WL 1164869 (D. Kan. Mar. 10, 2020) .....................................................................11, 12

*In re Flonase Antitrust Litig.*,
 907 F. Supp. 2d 637 (E.D. Pa. 2012)....................................................................................3, 4

*In re Fosamax Prods. Liab. Litig.*,
    645 F. Supp. 2d 164 (S.D.N.Y. 2009)...................................................................12

*In re Glumetza Antitrust Litig.*,
    2021 WL 3773621 (N.D. Cal. Aug. 25, 2021) ........................................................13

*In re HIV Antitrust Litig.*,
    2023 WL 3089820 (N.D. Cal. Mar. 7, 2023)............................................................8

*In re Intuniv Antitrust Litig.*,
    2020 WL 5995326 (D. Mass. Oct. 9, 2020)...........................................................13

*In re Lantus Direct Purchaser Antitrust Litig.*,
    950 F.3d 1 (1st Cir. 2020) ....................................................................................13

*In re Lidoderm*,
    296 F. Supp. 3d 1142 (N.D. Cal. 2017) ................................................................13

*In re Merck Mumps Vaccine Antitrust Litig.*,
    685 F. Supp. 3d 280 (E.D. Pa. 2023), *rev'd in part on other grounds*, 2024
    WL 4432076 (3d Cir. Oct. 7, 2024)..................................................................3, 4

*In re Mirena IUD Prods. Liab. Litig*,
    169 F. Supp. 3d 396 (S.D.N.Y. 2016)...............................................................3, 12

*In re Payment Card Interchange Fee & Merch. Discount Antitrust Litig.*,
    2022 WL 14865281 (E.D.N.Y. Oct. 26, 2022)........................................................8

*In re Proton-Pump Inhibitor Prods. Liab. Litig.*,
    2022 WL 18999830 (D.N.J. July 5, 2022)........................................................2, 4, 5

*In re Solodyn Antitrust Litig.*,
    2018 WL 563144 (D. Mass. Jan. 25, 2018)........................................................8, 9

*In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*,
    2020 WL 6887885 (E.D. Pa. Nov. 24, 2020) .........................................................7

*In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*,
    2021 WL 662292 (E.D. Pa. Feb. 19, 2021) ..........................................................16

*In re Terazosin Hydrochloride Antitrust Litig.*,
    2005 WL 5955705 (S.D. Fla. Feb. 1, 2005) ......................................................3, 4

*In re Wellbutrin XL Antitrust Litig.*,
    868 F.3d 132 (3d Cir. 2017)...................................................................................7

*IPA Techs. Inc. v. Microsoft Corp.*,
    2024 WL 1797394 (D. Del. Apr. 25, 2024)............................................................5

*Kruszka v. Novartis Pharms. Corp*,
 28 F. Supp. 3d 920 (D. Minn. 2014) ................................................................. 3

*Kyocera Senco Indus. Tools Inc. v. ITC*,
 22 F.4th 1369 (Fed. Cir. 2022) ....................................................................... 14

*Multiple Energy Techs., LLC v. Under Armour, Inc.*,
 2025 WL 82304 (W.D. Pa. Jan. 13, 2025) ......................................................... 6

*Oterra A/S v. Wild Flavors, Inc.*,
 2025 WL 1424919 (D. Del. May 16, 2025) ......................................................... 7

*Oxford Gene Tech. Ltd. v. Mergen Ltd*.,
 345 F. Supp. 2d 431 (D. Del. 2004) .......................................................... 12, 15

*Par Pharm., Inc. v. Hospira, Inc.*,
 2019 WL 2396748 (D. Del. June 6, 2019) ...................................................... 2, 5

*Pineda v. Ford Motor Co.*,
 520 F.3d 237 (3d Cir. 2008) ............................................................................. 1

*Shuffle Tech Int'l LLC v. Sci. Games Corp*.,
 2017 WL 3838096 (N.D. Ill. Sept. 1, 2017) ..................................................... 12

*Sprint Commc'ns Co. v. Charter Commc'ns, Inc.*,
 2021 WL 979307 (D. Del. Mar. 16, 2021) ....................................................... 10

*Stecyk v. Bell Helicopter Textron, Inc.*,
 295 F.3d 408 (3d Cir. 2002) ........................................................................ 2, 5

*Stirista, LLC v. Skydeo Inc.*,
 2025 WL 825288 (D. Del. Mar. 14, 2025) ................................................... 12, 15

*Summit 6, LLC v. Samsung Elecs. Co., Ltd.*,
 802 F.3d 1283 (Fed. Cir. 2015) ........................................................................ 1

*TAKTL, LLC v. IWR, N. Am., LLC*,
 2024 WL 4343141 (W.D. Pa. Sept. 30, 2024) ............................................ 2, 5, 16

*The Medicines Co. v. Mylan Inc.*,
 2014 WL 1516599 (N.D. Ill. Apr. 17, 2014) .................................................. 3, 4

*TQ Delta, LLC v. 2Wire, Inc.*,
 2021 WL 2685654 (D. Del. June 30, 2021) ....................................................... 6

*UPMC v. CBIZ, Inc.*,
 2020 WL 2736691 (W.D. Pa. May 26, 2020) ................................................. 2, 4

*Vandenbraak v. Alfieri*,
    2005 WL 1242158 (D. Del. May 25, 2005)...........................................................................10

*Waldorf v. Shuta*,
    142 F.3d 601 (3d Cir. 1998).................................................................................................14

## I.    INTRODUCTION

Jazz moves to exclude nearly all of Avadel's experts, not because they are not qualified, but because Jazz disagrees with their opinions or methodologies. Its motions should be denied.

## II.    LEGAL STANDARD

Rule 702 "has a liberal policy of admissibility[,]" *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008), as "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court."[1] *Summit 6, LLC* v. *Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015); *accord 10x Genomics, Inc. v. Parse Biosciences, Inc.*, 2025 WL 572788, at *4 (D. Del. Feb. 21, 2025). Courts prefer "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" to exclusion of expert testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

## III.    ARGUMENT

### A.    Mr. Keith Flanagan & Dr. Ellis Unger's Testimony

There is no dispute that Mr. Flanagan and Dr. Unger are well qualified to opine on FDA's practice and procedure for reviewing and approving new drug applications ("NDAs"), including orphan drug exclusivity ("ODE"). Mr. Flanagan was the Director of the Office of New Drug Policy, a sub-office of the Office of New Drugs ("OND"), responsible for review and approval of drugs like LUMRYZ.  *See* A0082[2] ¶ 8; A0111-14. Dr. Unger was the Director of the Office of Drug Evaluation 1 in OND, which oversaw the regulation of neurological drugs like Xywav and LUMRYZ. *See* A0953 ¶ 5; A0052-60.

---

[1] Unless otherwise noted, all quoted material is cleaned up.

[2] All citations marked "A__" are to the Appendix of Exhibits in Support of Jazz's Motions for Summary Judgment and Omnibus Daubert Motion, D.I. 260-65.

This vast experience renders them both experts in FDA practices and procedures, including the ways in which FDA prioritizes work to meet PDUFA deadlines,[3] and deprioritizes work when those deadlines are missed. *See* A0082-83 ¶¶ 9-11; A0091 ¶¶ 45-46; A0042-42 ¶¶ 7-10; A0044-45 ¶¶ 16-17; A0047 ¶ 21. Courts regularly allow FDA experts to testify on this basis. *See Par Pharm., Inc. v. Hospira, Inc.*, 2019 WL 2396748, at *3 (D. Del. June 6, 2019) (admitting expert with "twenty-five years of training, knowledge and utilization of FDA regulations, policies, procedures and practices," and noting "[t]he totality of her knowledge and experience provide[d] a reliable basis for her opinions"); *In re Proton-Pump Inhibitor Prods. Liab. Litig.*, 2022 WL 18999830, at *20-21 (D.N.J. July 5, 2022) (expert "highly qualified" to opine on "FDA's process for approving drug labeling," among other things, "given his decade-long experience doing just that at FDA"); *UPMC v. CBIZ, Inc.*, 2020 WL 2736691, at *13 (W.D. Pa. May 26, 2020).

Seeking to prevent the jury from hearing from Mr. Flanagan and Dr. Unger, Jazz mischaracterizes their opinions and testimony. The Court should reject Jazz's arguments.

*First*, Jazz contends that no expert can opine on "whether an agency would or would not have taken a certain course of action," because such testimony "goes to the FDA's state of mind." *See* D.I. 258 at 1-2, 5. Neither Mr. Flanagan nor Dr. Unger do so. Rather, by evaluating the factual record in light of their experience, they opine that ███████████████████████████████ ███████████████████████████████████

---

[3] Jazz argues that Mr. Flanagan "wrongly describes the [PDUFA] goal date as a 'deadline.'" D.I. 258 at 4. This is, at most an issue for cross-examination,; not exclusion. *See TAKTL, LLC v. IWR, N. Am., LLC*, 2024 WL 4343141, at *10 (W.D. Pa. Sept. 30, 2024); *see also Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002). Moreover, both FDA and ***Jazz*** have characterized PDUFA dates as "deadlines." *See*, Ex. 50, at 2; Ex. 49, at 29; Ex. 52. All exhibits cited herein are to the concurrently filed Declaration of Daniel M. Silver, Esq. in Support of Avadel CNS Pharmaceuticals, LLC's Opposition to Jazz's Motions for Summary Judgment and Daubert Motions.

Experts can offer testimony "as to what reasonable FDA officials . . . would have done." *In re Diet Drugs*, 2001 WL 454586, at *19 (E.D. Pa. Feb. 1, 2001); *see also In re Flonase Antitrust Litig.*, 907 F. Supp. 2d 637, 644-45 (E.D. Pa. 2012). This does not amount to "opining on the FDA's state of mind." *In re Merck Mumps Vaccine Antitrust Litig.*, 685 F. Supp. 3d 280, 310-11 (E.D. Pa. 2023), *rev'd in part on other grounds*, 2024 WL 4432076 (3d Cir. Oct. 7, 2024). Where, as here, experts testify that FDA would have "earlier" made "the exact same [decision] in the 'but for' world that it eventually [made] in the real world," it is not "speculation" and is admissible. *In re Terazosin Hydrochloride Antitrust Litig.*, 2005 WL 5955705, at *4 (S.D. Fla. Feb. 1, 2005); *see also In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 2021 WL 2577490, at *38 (D. Kan. June 23, 2021) (admitting expert testimony that a drugmaker "could have secured FDA approval no later than 2014 had it pursued its ANDA more aggressively").

Jazz points to non-binding, inapposite cases. *See* D.I. 258 at 2. In *In re Mirena IUD Prods. Liab. Litig.*, the court concluded that, while one expert could not testify about FDA's "willingness" to accept certain language in a hypothetical drug label, another expert ***could*** "opine on what the FDA would have done in a typical situation when presented with a set of facts." 169 F. Supp. 3d 396, 461-62, 465, 479 (S.D.N.Y. 2016). Similarly, *in Kruszka v. Novartis Pharms. Corp.*, the court determined that experts could "not proffer an opinion relating to what individuals . . . with the FDA thought with respect to certain documents or about their motivations" but ***could*** "opine[ ] on what the FDA . . . actually did." 28 F. Supp. 3d 920, 931 (D. Minn. 2014).[4]

Neither Mr. Flanagan nor Dr. Unger offers opinions comparable to those excluded in

---

[4] *The Medicines Co. v. Mylan Inc.*, 2014 WL 1516599 (N.D. Ill. Apr. 17, 2014), involved expert testimony about the Patent Office, not FDA. *See id.* at *1. And the court merely held that an expert could not testify about what "what the [Patent Office] Examiner would have done or thought had she been given different information." *Id.* at *4.

*Mirena*, *Kruszka*, and *Medicines*. They do not speculate about FDA's receptiveness to hypothetical arguments or information. Nor do they base their conclusions on conjectures about any specific individual's thoughts or motivations. Instead, relying on their FDA experience and review of the record, ███████████████████████████████████████████ ██████████████████████████. That topic is well suited to expert testimony from qualified individuals. *See Diet Drugs*, 2001 WL 454586, at \*19; *Flonase*, 907 F. Supp. 2d at 642-44; *Merck*, 685 F. Supp. 3d 280, 310-11; *Terazosin Hydrochloride*, 2005 WL 5955705, at \*4.

*Second*, Jazz asserts that Mr. Flanagan and Dr. Unger's opinions are speculative because they lack a "scientific methodology." *See* D.I. 258 at 4-5. But "[t]he Third Circuit and district courts within the Circuit have made clear that an expert's personal, relevant experience can serve as a foundation for reliability." *360Heros, Inc. v. GoPro, Inc.*, 569 F. Supp. 3d 198, 204 & n.5 (D. Del. 2021) (collecting cases). Thus, "[e]xperts are permitted to rely on their own experience working at an agency to form an opinion about that agency's practices and procedures and may also testify as to the general practices and customs of that agency." *UPMC*, 2020 WL 2736691, at \*13. Mr. Flanagan and Dr. Unger's experience at FDA—which Jazz does not contest—squarely renders their analyses sufficiently reliable. Moreover, "courts have found testimony of FDA regulatory experts to be reliable when the expert applies the same methodology used in the expert's work at FDA." *Proton-Pump*, 2022 WL 18999830, at \*9 & n.90 (collecting cases). Jazz makes no claim that either Mr. Flanagan or Dr. Unger failed to utilize the same methodology they employed at FDA, and the record confirms that both did so. *See* A0084-85 ¶¶ 19; A0091 ¶¶ 45-46; A0102-03 ¶¶ 92-94; A0044-47 ¶¶ 15-22. As such, their respective methodologies are sufficiently reliable. *See Proton-Pump*, 2022 WL 18999830, at \*9; *Par Pharm.*, 2019 WL 2396748, at \*3 (methodology that "draws on . . . years of training, knowledge and utilization of FDA regulations, policies,

4

procedures and practices . . . provides a reliable basis for [expert] opinions"); *FTC v. Qualcomm Inc.*, 2018 WL 6460573, at *4 (N.D. Cal. Dec. 10, 2018) (admitting testimony of expert who "arrive[d] at his conclusions with this experience in hand and after reviewing the available facts"); *see also IPA Techs. Inc. v. Microsoft Corp.*, 2024 WL 1797394, at *22 (D. Del. Apr. 25, 2024); *Christoforetti v. Bally's Park Place, Inc.*, 2021 WL 3879074, at *4 (D.N.J. Aug. 31, 2021).

*Third*, Jazz argues that Mr. Flanagan and Dr. Unger "lack [ ] knowledge of the underlying facts," pointing to a handful of issues on which the experts were unable to testify with certainty—such as, for example, ███████████████████████████████████████ ██████████████████████████████████. *See* D.I. 258 at 3, 5. It is rich that Jazz (improperly) characterizes Mr. Flanagan and Dr. Unger's opinions as "impermissibly" opining on "FDA's state of mind" while, in the same breath, faulting them for not knowing "FDA's motives" and "thinking." *Id.* at 5. It is also unsurprising that they could not confidently answer questions about those topics; ***no one could***, apart from the individuals at FDA involved in reviewing the LUMRYZ NDA (and whom neither Avadel nor Jazz can call to testify). Their lack of certainty on a few granular aspects of FDA's review does not undermine their opinions as to the ***overall*** timeline of FDA's review. In any event, "challenges to the sufficiency of the factual foundation underlying [an expert's] opinions go to the weight of his testimony, not its admissibility." *TAKTL*, 2024 WL 4343141, at *10; *see Stecyk*, 295 F.3d at 414.

*Fourth*, Jazz criticizes Mr. Flanagan for not citing to a particular document and a particular regulation in his opening expert report, and for quoting part of a sentence in one document cited in his reply report.[5] *See* D.I. 258 at 3-4. In his deposition, Mr. Flanagan explained and defended

---

[5] Far from "misleadingly excerpt[ing]" a document to "suggest the [PDUFA] goal date was a firm deadline," as Jazz asserts, D.I. 258 at 4, Mr. Flanagan merely noted that ████████████████████████

these choices. *See* A1759-60 at 74:14-78:16; A1773 at 129:19-133:21; A1781-82 at 162:1-166:12. And again, Jazz's concerns with Mr. Flanagan's citations "go to the weight of the evidence, not the admissibility, and are appropriately addressed in cross-examination." *Multiple Energy Techs., LLC v. Under Armour, Inc.*, 2025 WL 82304, at *3 (W.D. Pa. Jan. 13, 2025).

*Fifth*, Jazz cherry-picks a passage from Dr. Unger's deposition testimony and accuses him of "misrepresent[ing]" in his opening report ████████████████████████████████ ███████████. *See* D.I. 258 at 5-6. Of course, arguments regarding "alleged contradictions between [an expert's] deposition testimony and his expert report . . . address whether [the expert] is a credible witness," which "is generally a question for the fact finder, not the court." *TQ Delta, LLC v. 2Wire, Inc.*, 2021 WL 2685654, at *3 (D. Del. June 30, 2021).

Regardless, Jazz is wrong; Dr. Unger did not misrepresent anything in his opening report.



████. If Jazz believes it productive to cross-examine Dr. Unger, an experienced and knowledgeable FDA expert, on this basis, it is free to do so. It provides no basis to exclude his testimony. *See Oterra A/S v. Wild Flavors, Inc.*, 2025 WL 1424919, at *6 (D. Del. May 16, 2025).

In any event, as his reports and deposition make clear, Dr. Unger is not parroting Mr.



███████████████████████████████████████████████████.

Flanagan's opinions, but instead offers his own well-reasoned opinions. ████████████

███████████████████████████████████████████████████████ Excluding

Dr. Unger's independent opinions would be improper. *See Helios Software, LLC v. Awareness Techs., Inc.*, 2015 WL 12806482, at *2 (D. Del. Apr. 13, 2015) (admitting testimony of expert who "conducted his own analysis," "independently reach[ed] the same conclusions" as another expert, and "embrac[ed]" the other expert's opinions); *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, 2020 WL 6887885, at *5 (E.D. Pa. Nov. 24, 2020); *see also Evans v. United States*, 2017 WL 5193252, at *5 (E.D. Pa. Nov. 8, 2017).

### B.  Dr. E. Fintan Walton's Testimony

The Court should deny Jazz's motion to exclude Dr. Walton's testimony. *See* D.I. 258 at 6-8. A delayed competitor can establish antitrust standing by showing that it would have obtained a voluntary license to a blocking patent in the but-for world. *In re Wellbutrin XL Antitrust Litig.*, 868 F.3d 132, 167 (3d Cir. 2017). While no such showing is necessary here, Avadel can demonstrate that it would have more likely than not received a voluntary license in the but-for world—that is, one in which Jazz did not act with the intent to monopolize.

Drawing on his decades of work on hundreds of patent-licensing transactions in the pharmaceutical industry, ████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████.

Jazz's *Daubert* motion boils down to one proposition: Jazz did not, and would not, license the '782 patent to Avadel. But that is not the relevant question here. The but-for world assumes the absence of the antitrust violation. *See In re Payment Card Interchange Fee & Merch. Discount Antitrust Litig.*, 2022 WL 14865281, at *5 n.7 (E.D.N.Y. Oct. 26, 2022). Accordingly, ███████████ █████████████████████████████████████████████. Courts routinely reject *Daubert* motions based on assumptions to create a proper but-for world. *In re Dealer Mgmt. Sys.*, 581 F. Supp. 3d 1029, 1074 (N.D. Ill. 2022). And to the extent that Jazz believes the but-for world ought to include different or additional considerations, the issue "is a battle of the experts that should be left to the factfinder." *Id.* at 1057. *In re HIV Antitrust Litig.* is instructive. There, the movant argued (as Jazz does here) that an expert's "but-for analysis is flawed because the but-for world is the world (1) without the antitrust violation and (2) *everything else stays the same or constant*." 2023 WL 3089820, at *13 (N.D. Cal. Mar. 7, 2023). The court rejected that argument. Rather, "[t]he but-for premise requires some conceptualization of the actions in which the defendant might have engaged in the but-for world, instead of committing the violation." *Id.*; *see also In re Solodyn Antitrust Litig.*, 2018 WL 563144, at *21 (D. Mass. Jan. 25, 2018).

As a variation on the same argument, Jazz claims that Dr. Walton's "opinion does not concern Jazz 'in the real world' but rather a 'hypothetical company' with 'some of the features of Jazz,' but not all of them." D.I. 258 at 6. This argument likewise misses the legal mark. In the but-for world, the actions of the antitrust violator are—by definition—***not*** the same as in the real world. *See HIV*, 2023 WL 3089820, at *13; *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2022 WL 14865281, at *5 n.7 (E.D.N.Y. Oct. 26, 2022).

Jazz then argues that Dr. Walton's opinion fails because he uses the term ███████ ██████████████████████████████████████████████████████████████████

8

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████. That is not true. A1298 at 23:2-13;

A1300 at 30:15-21; *see also* A0920 ¶ 23. Jazz is free to challenge the strength of Dr. Walton's

assumptions on cross-examination, but Jazz's cherry-picked quotations do not rise to exclusion.

Ultimately, Jazz may disagree with Dr. Walton's analysis, but to require an expert to limit the but-

for world to real world evidence, as Jazz seems to advocate for, "would be an almost impossible

standard to require . . . given that this is a but-for scenario." *See Solodyn*, 2018 WL 563144, at

*21; *see also Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 303 (5th Cir. 2003).

Jazz next asserts that Dr. Walton's analysis is based on "arbitrary" factors. Not so. Dr.

Walton is an industry expert, and courts routinely allow experts to testify based on their experience

in the pertinent field about what would have occurred in the but-for world. *E.g.*, *360Heros,* 569 F.

Supp. 3d at 204 & n.5. That is what Dr. Walton did here, drawing on his "decades of experience

advising on patent-licensing deals and negotiations, as well as literature in the field and public

statements by pharmaceutical companies." A0930 ¶ 54; *see also* A0930 ¶ 53; A1312 at 78:21-

79:12. Based on that experience, he identified the ten factors ████████████████████

████████████████████████████████████████████████

███████████████████████████████. A0930 ¶ 54. He cites vast literature and

empirical studies in support of those factors. *See* A0009-24.  In short, Dr. Walton "has used his

experience as a patent license [expert] to opine on topics relating to that very subject area," and

those opinions are thus "sufficiently reliable to be admissible even though they may not be founded

in scientific data or fact." *Qualcomm*, 2018 WL 6460573, at *4.

This does not mean, as Jazz incorrectly asserts, that the list of factors is "made up" or lacks intellectual rigor. *See* D.I. 258 at 8. ███████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████. Notably, Jazz does not contest that any of the factors applied by Dr. Walton is irrelevant to answering the question at hand. Instead, it relies on Dr. Walton's testimony that negotiating a patent license is both an art and a science. *See* A1313 at 84:10-23. But that simply reflects the need to pay particular attention to the "specific circumstances" of the hypothetical negotiation, which is what Dr. Walton did. *See* A0930 ¶ 54.

### C.  Dr. William Charman's Testimony

Jazz's motion to exclude the opinions of Dr. William Charman should be denied. *First*, Dr. Charman's report discloses his opinions. Rule 26 "is intended to protect opposing parties from unfair surprise and to allow such parties an opportunity to develop evidence to meet the expert testimony being proffered." *Vandenbraak v. Alfieri*, 2005 WL 1242158, at *3 (D. Del. May 25, 2005). Dr. Charman's report does exactly that, ███████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████. A0382 ¶ 23. While Dr. Charman will not rely on evidence that only became available ***after*** April 2022, Jazz had no trouble identifying those discrete pieces of evidence, and their absence would not alter his ultimate opinions. Further, the lone case Jazz cites, *Sprint Commc'ns Co. v. Charter Commc'ns, Inc.*, 2021 WL 979307 (D. Del. Mar. 16, 2021), is readily distinguishable: *Sprint* addressed the incorporation of nine expert reports totaling over 3,300 pages and eighteen days of trial testimony. Here, Dr. Charman seeks to

incorporate just over 100 pages of his prior expert reports concerning invalidity of the '782 patent.[6]

*Second*, Jazz's assertion that Dr. Charman intends to offer a *legal* opinion is wrong. His opinion is no different than those offered by the technical experts from **both** parties in the patent case, every single one of whom was provided with legal standards by counsel that they applied to opine on the validity of the '782 claims. Moreover, Courts routinely permit experts to testify in pharmaceutical antitrust cases regarding the likelihood of success in underlying patent litigation. *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practs. & Antitrust Litig.*, 2020 WL 1164869, at *33 (D. Kan. Mar. 10, 2020) (collecting cases). And while Dr. Charman noted the Court's JMOL decision was ▮▮▮▮▮▮▮ his opinions regarding the existence of a substantial question of validity, his citation to the Court's decision does not somehow transform Dr. Charman's opinion into a legal one. *See* A0382-83 ¶¶ 24-28.

### D. Peter Waibel's Testimony

Peter Waibel is the only expert in this case who has experience making Orange Book listing determinations at a pharmaceutical company. A0123-24 ¶¶ 2-5. He provides background and context on aspects of the Hatch-Waxman regulatory regime, the process for listing a patent in the Orange Book, and explains the customary practice in the industry with respect to listing determinations. A0139-44 ¶¶ 44-57. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. If the Court denies Avadel's motions for summary judgment (D.I. 267 at 8-14), these opinions will help the jury to assess the

---

[6] Jazz's assertion that Dr. Charman incorporates "four reports (~1500 pages)" is false. D.I. 258 at 8. Dr. Charman's opinions from his three amended/supplemental opening reports in the patent case are all contained in Dr. Charman's Second Supplemental Opening Report. And the majority of his reports address invalidity of *five* other Jazz patents, which are irrelevant to this antitrust case.

propriety of Jazz's listing (anticompetitive conduct) and whether it was reasonable (an element of Jazz's regulatory compliance defense). Jazz advances three arguments:[7]

*First*, Mr. Waibel is not offering a legal opinion. Mr. Waibel has no opinions on the *antitrust law* that governs this case; and patent law experts routinely testify in pharmaceutical antitrust cases. *See EpiPen*, 2020 WL 1164869, at *33 (collecting cases). Similarly, in product liability cases, "courts admit expert testimony regarding companies' compliance with FDA regulations" and the "reasonableness of [the pharmaceutical company's] conduct." *Mirena*, 169 F. Supp. 3d at 467 (quoting *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 191 (S.D.N.Y. 2009)). And even in patent cases, lawyers with industry experience are permitted to testify regarding reasonable corporate behavior and the actions of a reasonable patent attorney. *See Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 442-43 (D. Del. 2004) (allowing expert to opine on "the actions that a reasonable corporation undertakes upon learning of a patent relevant to its business"); *Shuffle Tech Int'l LLC v. Sci. Games Corp.*, 2017 WL 3838096, at *9 (N.D. Ill. Sept. 1, 2017) (allowing expert to opine on "what reasonable in-house and external IP counsel would do and be aware of throughout the prosecution process").

Jazz's reliance on *Actos* is misplaced. There, the court excluded *both parties'* patent and regulatory experts because it determined that whether the defendant's "understanding of regulatory law was reasonable is a question of law for the Court." *In re Actos Antitrust Litig.*, 2025 WL 1001259, at *32-33 (S.D.N.Y. Mar. 31, 2025). Here, on the other hand, the Court has already found that "there is a genuine dispute of material fact regarding whether Jazz had a reasonable basis to

---

[7] Jazz improperly seeks to exclude Mr. Waibel's testimony in its entirety, even though Jazz makes no argument regarding his opinion regarding custom and practice in the industry regarding Orange Book listing determinations. *See* A0126 ¶ 13. There is thus no basis to exclude his entire opinion. *See Stirista, LLC v. Skydeo Inc.*, 2025 WL 825288, at *1-2 (D. Del. Mar. 14, 2025).

conclude that it was required to list the '963 patent." D.I. 94 at 9; *accord In re Lantus Direct Purchaser Antitrust Litig.*, 950 F.3d 1, 12 (1st Cir. 2020) (collecting authority recognizing that a defendant's regulatory compliance defense should be submitted to the jury).

Jazz also cannot have its cake and eat it too. ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████ Jazz cannot present this testimony while precluding Avadel from responding. *See In re Glumetza Antitrust Litig.*, 2021 WL 3773621, at *6 (N.D. Cal. Aug. 25, 2021) (a party's *Daubert* argument is "undermin[ed]" where it proffers an expert "who performs substantially the same analysis").

*Second*, Mr. Waibel's opinion is not "merely his subjective beliefs." ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████. Mr. Waibel's unwillingness to opine whether particular patent attorneys or Jazz are reasonable or unreasonable has no bearing on whether his opinion is reliable and framed appropriately.  *See, e.g.*, *In re Lidoderm Antitrust Litig.*, 296 F. Supp. 3d 1142, 1180-81 (N.D. Cal. 2017); *In re Intuniv Antitrust Litig.*, 2020 WL 5995326, at *18 (D. Mass. Oct. 9, 2020).

*Third*, Mr. Waibel is qualified to opine that ████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████. Jazz's authority is inapposite because

Mr. Waibel is *not* offering testimony "from the perspective of a skilled artisan" on infringement,

nor is this "a patent case." *Cf. Kyocera Senco Indus. Tools Inc. v. ITC*, 22 F.4th 1369, 1376-77

(Fed. Cir. 2022). ██████████████████████████████████████████

██████████████████████████████████ He clearly has "specialized knowledge" and

"possess[es] skill or knowledge greater than the average layman." *Waldorf v. Shuta*, 142 F.3d 601,

625 (3d Cir. 1998).

### E.  William Schultz's Testimony

William Schultz, the former Deputy Commissioner for Policy at FDA, offers numerous

opinions ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████. There is no basis to exclude his testimony.

*First*, Mr. Schultz, like Mr. Waibel, is not providing an impermissible legal opinion and

Jazz's motion should be denied on the same bases discussed above. *Second*, Jazz argues that Mr.

Schultz's opinions do not meet Rule 702's "fit" requirement because he relied on the Federal

Circuit's ruling on the issue of whether the '963 patent claims a method of use. Mr. Schultz is not

a patent expert and thus it is appropriate for him to rely on the Federal Circuit. ██████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████. *Finally*, while Jazz seeks to exclude Mr.

Schultz's testimony in its entirety, it does not challenge his opinions on regulatory policy

underlying the Hatch Waxman Act and FDA's role. There is no basis to exclude his testimony in

14

its entirety. *See Stirista*, 2025 WL 825288, at *1-2.

### F.  Prof. Michael Carrier's Testimony

Jazz does not dispute that Prof. Carrier is a leading authority on patent and antitrust issues in the pharmaceutical industry; he is the only expert in this case who has published on the listing of REMS patents in the Orange Book.  A0183-85 ¶¶ 7-15. His opinions regarding Jazz's listing and empirical analysis of REMS patent listings will assist the jury.

*First*, for the reasons discussed above, Prof. Carrier's opinion ███████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████ is not an impermissible legal opinion.  Nor can Jazz question his qualifications. Prof. Carrier has studied and written about the listing of REMS patents for nearly a decade; and Jazz's own regulatory and industry practice expert, Daniel Troy, relies on his work.  A0466-69 nn. 263, 265, 271, 278. He clearly meets the Rule 702 standard, and Jazz's attacks "are more appropriately directed to the weight of [his] testimony, rather than its admissibility." *Oxford Gene*, 345 F. Supp. 2d at 443. Finally, Prof. Carrier's opinion does not merely reflect his subjective belief—he grounds his opinion in ██████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████ His unwillingness to opine on whether Novartis or any pharmaceutical company is a reasonable pharmaceutical company as a general matter does not undermine his analysis as that is not the question at issue.

*Second*, Jazz's argument that Prof. Carrier's empirical analysis on industry practice fails the "fit" requirement is wrong. As Jazz's expert Mr. Troy admitted, ████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

15

███████████████████████████. That Prof. Carrier did not scour the patent portfolios of dozens of pharmaceutical companies to determine whether any obtained but did not list REMS patents—an unnecessary and methodologically difficult task that Mr. Troy also did not perform—does not make Prof. Carrier's opinion irrelevant or unhelpful. A1157-58 ¶ 29. Prof. Carrier's methodology is also consistent with peer-reviewed literature. *See* Ex. 48. Indeed, Mr. Troy relied on Prof. Carrier's prior empirical work for his own industry practice opinion. A0466-69 nn. 263, 265, 271, 278. ███████████████████████████

███████████████████████████████████████████

███████. Jazz's attacks are fodder for cross-examination, not a basis for exclusion.

### G. Jonathan Orszag's Testimony

Jazz moves to exclude a portion of Mr. Orszag's report because he "seeks to opine on Avadel's drug manufacturing and supply chain, and whether Avadel would have been ready to launch as of April 2022." D.I. 258 at 16. Mr. Orszag does no such thing. The disputed paragraphs from his reports rely on and are properly supported by record evidence, including contemporaneous documents and sworn deposition testimony. Mr. Orszag uses these record facts to inform his *economic opinions* regarding LUMRYZ's entry in the but-for world. *See* A1662 at 309:4-24. This is entirely appropriate. *See In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, 2021 WL 662292, at *9, 11 (E.D. Pa. Feb. 19, 2021). To the extent Jazz is challenging the record evidence Mr. Orszag relies on, its motion still fails as "challenges to the sufficiency of the factual foundation underlying [an expert's] opinions go to the weight of his testimony, not its admissibility." *TAKTL,* 2024 WL 4343141, at *10.

## IV.  CONCLUSION

The Court should deny Jazz's motions to exclude Avadel's experts.

Respectfully submitted,

Dated: May 23, 2025

MCCARTER & ENGLISH , LLP

/s/ *Daniel M. Silver*

OF COUNSEL:

Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
Renaissance Centre
405 North King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

Kenneth G. Schuler
Marc N. Zubick
Alex Grabowski
Sarah W. Wang
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-7700
kenneth.schuler@lw.com
marc.zubick@lw.com
alex.grabowski@lw.com
sarah.wang@lw.com

*Attorneys for Defendant*

Ian R. Conner
Alan J. Devlin
Anna Rathbun
Christopher J. Brown
LATHAM & WATKINS LLP
555 Eleventh Street, NW Suite 1000
Washington, D.C. 20004
(202) 637-2200
ian.conner@lw.com
alan.devlin@lw.com
anna.rathbun@lw.com
christopher.brown@lw.com

Herman Yue
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
herman.yue@lw.com

Alfred C. Pfeiffer
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 395-8898
al.pfeiffer@lw.com

Daralyn J. Durie
Rebecca E. Weires
Tannyr Pasvantis
Eliot A. Adelson
Margaret A. Webb
Helen He
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-6055
ddurie@mofo.com
rweires@mofo.com
tpasvantis@mofo.com
eadelson@mofo.com
mwebb@mofo.com
hhe@mofo.com

Kira A. Davis
Henry Huttinger
Katherine E. McNutt
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5200
kiradavis@mofo.com
hhuttinger@mofo.com
kmcnutt@mofo.com

Alexander Okuliar
Haydn Forrest
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037, USA
(202) 887-1500
aokuliar@mofo.com
hforrest@mofo.com

Matthew C. Has
POLSINELLI
100 South Fourth Street, Suite 1000
St. Louis, MO 63102
mhans@polsinelli.com

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that true and correct copies of the foregoing document were caused to be served on May 23, 2025 on the following counsel in the manner indicated below.

### VIA EMAIL:

Jack B. Blumenfeld
Jeremy Tigan
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

William R. Sears
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Willsears@quinnemanuel.com

F. Dominic Cerrito
Eric C. Stops
Evangeline Shih
Andrew S. Chalson
Gabriel P. Brier
Frank C. Calvosa
Steig D. Olson
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 5th Avenue
New York, NY 10016
nickcerrito@quinnemanuel.com
ericstops@quinnemanuel.com
evangelineshih@quinnemanuel.com
andrewchalson@quinnemanuel.com
gabrielbrier@quinnemanuel.com
frankcalvosa@quinnemanuel.com
steigolson@quinnemanuel.com

*Attorneys for Plaintiff Jazz Pharmaceuticals, Inc.*

Dated: May 23, 2025

/s/ Daniel M. Silver
Daniel M. Silver (#4758)

ME1 53269837v.1