IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAZZ PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Counterclaim-Defendant, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-941 (GBW) |
| | ) | |
| AVADEL CNS PHARMACEUTICALS LLC, | ) | ███████████████ |
| | ) | |
| Counterclaim-Plaintiff. | ) | ███ |
| | | REDACTED - PUBLIC VERSION |

**JAZZ'S REPLY BRIEF IN SUPPORT OF ITS
<u>MOTIONS FOR SUMMARY JUDGMENT</u>**

OF COUNSEL:

F. Dominic Cerrito
Steig D. Olson
Gabriel P. Brier
Frank C. Calvosa
Sami H. Rashid
Elizabeth J. Murphy
John P. Galanek
Nicolas Siebert
Maxwell Hawley
Kevin Adams
Habib-Emmanuel Abraham
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
295 Fifth Avenue
New York, NY 10016
(212) 849-7000

William R. Sears
Lynette Lim
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

June 13, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jtigan@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Counterclaim-Defendant
Jazz Pharmaceuticals, Inc.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  PRELIMINARY STATEMENT ....................................................................................1

II. MOTION 1 – AVADEL LACKS ANTITRUST STANDING ...........................................2

    A.  Avadel Fails To Raise A Triable Issue Of Fact Regarding Alleged Delay ............2

        1.  Avadel's causation theory fails ...............................................................2

        2.  Avadel's three alleged "facts" do not create a material dispute .................4

        3.  Avadel's remaining ODE arguments fail...................................................6

        4.  Jazz's DDI patents also barred approval as of October 15, 2021 ...............7

    B.  Avadel Lacks Antitrust Standing Because Its Lumryz Sales Were Illegal............8

III. MOTION 2 – AVADEL CANNOT SHOW ANTITRUST LIABILITY.........................12

    A.  There Is No Dispute That Jazz Did Not Engage In *Walker Process* Fraud..........12

    B.  There Is No Genuine Dispute Regarding Jazz's Regulatory Compliance ............15

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*In re Androgel Antitrust Litig. (No. II)*,
  2018 WL 2984873 (N.D. Ga. June 14, 2018*)* .......................................................8, 9

*Arista Networks, Inc. v. Cisco Sys., Inc.*,
  2018 WL 11606358 (N.D. Cal. Feb. 14, 2018) ...........................................................9

*Blue Shield of Virginia v. McCready*,
  457 U.S. 465 (1982)....................................................................................................9

*In re Canadian Import Antitrust Litig.*,
  470 F.3d 785 (8th Cir. 2006) ......................................................................................8

*City of Pittsburgh v. W. Penn Power Co.*,
  147 F.3d 256 (3d Cir. 1998)........................................................................................3

*DeCurtis LLC v. Carnival Corp.*,
  2023 WL 2071915 (S.D. Fla. Feb. 8, 2023) .............................................................14

*Dexon Comput., Inc. v. Cisco Sys., Inc.*,
  2023 WL 9065490 (E.D. Tex. Dec. 8, 2023)...............................................................9

*Eagle Pharms., Inc. v. Eli Lilly & Co.*,
  2018 WL 6201704 (D. Del. Nov. 27, 2018) ..............................................................10

*Fedorczyk v. Caribbean Cruise Lines, Ltd.*,
  82 F.3d 69 (3d Cir. 1996)............................................................................................3

*Fresenius Kabi USA, LLC v. Par Sterile Prods., LLC*,
  841 F. App'x 399 (3d Cir. 2021) .................................................................................8

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
  527 F. Supp. 2d 1084 (N.D. Cal. 2007) ....................................................................12

*Inline Packaging, LLC v. Graphic Packaging Intern.*,
  351 F. Supp. 3d 1187 (D. Minn. 2018)................................................................13, 14

*Intercontinental Great Brands v. Kellogg N. Am. Co.*,
  869 F.3d 1336 (Fed. Cir. 2017)..................................................................................13

*Itron, Inc. v. Benghiat*,
  2003 WL 22037710 (D. Minn. Aug. 29, 2003) .........................................................11

*In re K-Dur Antitrust Litig.*,
  686 F.3d 197 (3d Cir. 2012).........................................................................5

*King Instrument Corp. v. Otari Corp.*,
  814 F.2d 1560 (Fed. Cir. 1987)...................................................................11

*Kingsdown Med. Consultants v. Hollister Inc.*,
  863 F.2d 867 (Fed. Cir. 1988).....................................................................15

*LEGO A/S v. ZURU Inc.*,
  799 F. App'x 823 (Fed. Cir. 2020) .............................................................11

*In re Lipitor Antitrust Litig.*,
  2024 WL 2866654 (D.N.J. June 6, 2024) ...........................................1, 3, 4

*In re Nexium (Esomeprazole) Antitrust Litig.*,
  842 F.3d 34 (1st Cir. 2016).........................................................................8

*Puma Biotech., Inc. v. AstraZeneca Pharms. LP*,
  723 F. Supp. 3d 327 (D. Del. 2024).............................................................13

*Realtek Semiconductor Corp. v. MediaTek, Inc.*,
  732 F. Supp. 3d 1101 (N.D. Cal. 2024) .....................................................13

*Rohm & Haas Co. v. Brotech Corp.*,
  770 F. Supp. 928 (D. Del. 1991)...............................................................12

*In re Seroquel XR Antitrust Litig.*,
  2025 WL 992004 (D. Del. Apr. 2, 2025)......................................................5

*Skillz Platform Inc. v. Aviagames Inc.*,
  2023 WL 6542147 (N.D. Cal. Oct. 6, 2023)...............................................13

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
  2018 WL 563144 (D. Mass. Jan. 25, 2018) .................................................8

*In re Terazosin Hydrochloride Antitrust Litig.*,
  2005 WL 5955705 (S.D. Fla. Feb. 1, 2005) .................................................5

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011)...................................................................13

*Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004)...................................................................................11

*In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*,
  868 F.3d 132 (3d Cir. 2017).................................................3, 4, 6, 8, 9, 10, 11

*Williams v. Williams*,
    2002 WL 460051 (D. Del. Mar. 22, 2002) ...............................................................................4

*In re Zetia (Ezetimibe) Antitrust Litig.*,
    655 F. Supp. 3d 406 (E.D. Va. 2023) ......................................................................................9

## **Statutes**

FDA Reauthorization Act of 2017, Pub. L. No. 115-52, 131 Stat. 1005.......................................7

## I.    PRELIMINARY STATEMENT

Avadel pled a simplistic theory: Jazz's listing of the '963 patent supposedly prevented the FDA from approving Lumryz by October 15, 2021, the 10-month PDUFA goal date. But Jazz has shown that theory failed to account for the undisputed fact that, for Lumryz to be approved, the FDA had to resolve complex issues regarding whether Lumryz could overcome Xywav's Orphan Drug Exclusivity ("ODE"). Discovery yielded no support for Avadel's speculation that the FDA would have resolved such issues within 10 months absent the patent listing. Avadel's "experts" could cite *no precedent* for the FDA resolving complex ODE clinical superiority issues within 10 months. Discovery also yielded no support for Avadel's speculation that the FDA had put ODE issues aside to focus exclusively on the '963 patent listing. Rather, undisputed evidence shows the FDA worked on ODE issues, and other complex approval issues, past the PDUFA goal date and up until the time they were resolved, on May 1, 2023.

Unable to overcome this flaw, Avadel makes a late-game pivot. It no longer seriously defends the October 15, 2021 but-for approval date it pled. Instead, it now postulates that the patent listing may have slowed down the FDA's work on the ODE issues (and thus the ultimate approval of Lumryz) by "a single day." This is an admission that Avadel has found no factual support for the claim it actually pled, and it is even more speculative and unfounded than Avadel's pleaded theory, which was at least tethered to an actual date. The *Lipitor* court recently rejected this type of "single day delay" theory because it was too speculative. *In re Lipitor Antitrust Litig.*, 2024 WL 2866654, at *2 (D.N.J. June 6, 2024). This Court should do the same.

Avadel's pleading also did not account for the fact that Avadel's alleged earlier sales of Lumryz would have been illegal, because they would have infringed a Jazz patent. Avadel does not dispute this, and it is dispositive. The antitrust laws do not protect the right to make illegal, infringing sales. To get around this bar to its claims, Avadel would have to prove that it would

1

have been able to make *lawful* sales at an earlier time by securing a license from Jazz or, arguably, a court ruling that it could sell Lumryz by paying a royalty. But Avadel has failed to produce *proof* that either of these would have happened.

While each of these flaws standing alone warrant summary judgment, together they are even more powerful. No case has proceeded to trial with flaws like these.

Finally, Avadel fails to identify evidence that could establish, under the applicable "clear and convincing evidence" standard, that Jazz's patent listing was made with the intent to defraud. This failure independently warrants summary judgment as well.

## II.    MOTION 1 – AVADEL LACKS ANTITRUST STANDING

### A.    Avadel Fails To Raise A Triable Issue Of Fact Regarding Alleged Delay

#### 1.    Avadel's causation theory fails

These *undisputed facts* disprove the simplistic causation theory pled by Avadel:

- Prior to seeking ODE, Avadel suffered a string of FDA rulings that made clear breaking Jazz's ODE was not a foregone conclusion, including initial denial of its request for orphan drug designation (D.I. 294 ¶9), and denial of its requests for expanded access (D.I. 294 ¶10) and priority review (D.I. 294 ¶11);

- The FDA designated the clinical superiority issues raised by Avadel's application as "complex" subjecting them to multiple layers of review and consultation (D.I. 294 ¶14);

- On August 30, 2021, just weeks before the goal date, DN1 found that the data did not indicate Lumryz provided greater safety to patients (which OOPD had considered Avadel's best argument) and that "*no evidence*"[1] supported clinical superiority on any ground (D.I. 294 ¶17);

- The FDA told Avadel, *after* the PDUFA date, that its review was ongoing and ████████████ ████████████████████████████████████████████;

- The FDA told Avadel multiple times in 2022 it was working through issues related to approval, including ODE, and that the Lumryz application ███████████████████████████ ████████████████████████████████████████████;

- DN1 formally documented internally in July 2022 (*i.e.*, *nine months after* Avadel's alleged but-for approval date) "that the orphan-drug exclusivity issues associated with [Avadel's] application *remain under review*." (D.I. 294 ¶29);

---

[1] All emphasis added unless otherwise noted.

- The OOPD resolved the ODE issues on May 1, 2023, by finding that Lumryz provided a major contribution to patient care, the clinical superiority pathway that applies only in "unusual cases," and which requires first finding that Lumryz did not provide greater efficacy or safety, and only reached that conclusion after receiving a consult from internal sleep experts dated April 29, 2023 (D.I. 294 ¶32);

- The FDA never stopped working on the ODE issues at any time before May 1, 2023; ███████ ███████████████████████████████████████████████ ███████████████████.

Based on these undisputed facts, Avadel cannot prove the theory it pled, and cannot prove its alleged injury was caused by the '963 patent listing as opposed to "the realities of the regulated environment." *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 265 (3d Cir. 1998); *see also Lipitor*, 2024 WL 2866654, at *28-30 (granting summary judgment).

Conceding as much, Avadel now jettisons the causation theory it pled and tries to argue that, absent the patent listing, the FDA may have resolved the ODE issues "by a single day" faster than it actually resolved them. Avadel's Opposition to Summary Judgment ("Opp.") at 3. For this new theory, Avadel misleadingly cites an argument that ***Jazz*** had made (*i.e.*, there is no evidence the FDA review was slowed by even a single day) as if that were the low bar it must meet to prove its claims. Avadel is wrong. As the plaintiff, ***Avadel*** must proffer evidence supporting the theory ***Avadel*** pled. Moreover, Avadel's "single day" theory is even more speculative than what it pled. It begs a series of questions that Avadel cannot answer—*e.g.*, what day? There is no record support for any but-for approval date, leaving the jury with nothing other than guesswork. Avadel "cannot satisfy the summary judgment burden based on speculation alone." *In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 167 (3d Cir. 2017); *see also Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 76 (3d Cir. 1996) (affirming summary judgment where "[b]ased on the evidence presented, a jury could only speculate" as to causation).

In *Lipitor*, the court granted summary judgment against the theory that "if FDA approval of Ranbaxy's Lipitor ANDA had occurred any earlier—***even by one day***—that it is sufficient."

*Lipitor*, 2024 WL 2866654, at *2. This inherently speculative theory "failed to create a genuine issue of material fact." *Id.* The same is true here. Avadel faults the *Lipitor* plaintiffs for arguing for a quicker FDA approval "notwithstanding that the NDA sponsor faced numerous obstacles to securing approval." Opp. at 10. That is the exact same situation here. It is indisputable that ODE was an obstacle, and a very complex one, which necessarily took until May 2023 to resolve.

Avadel's assertion that the date of but-for FDA approval "goes to the damages period, not to liability," also fails. Opp. at 4. There are no damages without liability, and there is no liability without causation, which Avadel cannot prove. *See Wellbutrin*, 868 F.3d at 167.

### 2.    Avadel's three alleged "facts" do not create a material dispute

Avadel falls back on three pleading-stage allegations (which it calls "facts"), and says the Court already credited those. But the Court's prior decision addressed only whether Avadel had "plead[ed] facts" sufficient at **the pleading stage** to move into discovery. D.I. 94 at 16-17. The Court did not prematurely resolve this issue before seeing if the evidence supported it. Avadel cannot rely on "mere allegations" to carry its burden after discovery has proven them wrong. *See Williams v. Williams*, 2002 WL 460051, at *3 (D. Del. Mar. 22, 2002).

*First*, Avadel argues that, because "OOPD granted ODE to LUMRYZ within just eight weeks of Jazz's delisting," the FDA would have approved Lumryz within eight weeks back in 2021, if Jazz had delisted the patent earlier. Opp. at 4. But the premise of this allegation was that the OOPD had put the ODE issues aside until the patent was delisted. As shown above, the record indisputably proves that to be baseless. Avadel cites no evidence to support it. Thus, the amount of time between the patent delisting and the OOPD's clinical superiority decision on May 1, 2023 cannot be used as a proxy for the **total** amount of time it would have taken to resolve the clinical superiority issues in the but-for world.

Indeed, the record establishes it is wholly implausible that the FDA would have resolved

the ODE clinical superiority issues here within eight weeks. The FDA has never resolved such issues within 10 months, much less eight weeks. Highlighting the absurdity of Avadel's timeline, FDA could only reach the issue of MCTPC *after* it assessed both greater efficacy and greater safety. A1397 at 107:7-109:1; A1791 at 202:17-203:14. Avadel simply cannot prove that the OOPD and DN1 would have worked through all of the necessary questions regarding efficacy and safety and then worked through the MCTPC pathway reserved for "unusual cases," while allowing time to consult with regulatory counsel, the Office of Chief Counsel, and internal sleep experts, within the weeks between August 30 and October 15, 2021. There is literally no precedent in FDA history for a timeline that is anything close to this, nor is there any proof for this in the record.

Avadel's citations to *In re Seroquel XR Antitrust Litigation*, 2025 WL 992004 (D. Del. Apr. 2, 2025), *In re K-Dur Antitrust Litigation*, 686 F.3d 197 (3d Cir. 2012), and *In re Terazosin Hydrochloride Antitrust Litigation*, 2005 WL 5955705 (S.D. Fla. Feb. 1, 2005), do not help Avadel at all. Opp. at 4. Those cases stand for the proposition that events in the real world can inform what would have happened in the but-for world. *In re Seroquel*, 2025 WL 992004, at *3; *In re K-Dur*, 686 F.3d at 222; *In re Terazosin*, 2005 WL 5955705, at *4. But here, in the real world, the FDA did not resolve the ODE issues within eight weeks, and it never has come close to doing that in the real world anytime in its history. The gulf between the real world and Avadel's timeline is immense, and demonstrates the rank speculation underlying Avadel's claims.

*Second*, Avadel argues that the FDA's general practice is not to finally resolve ODE issues until an NDA is approvable. Opp. at 4-5. But that general practice does not support the conclusions Avadel wants to draw—either that OOPD *stopped working* on ODE until the NDA was otherwise approvable, or that it had decided how it would resolve the ODE issues *before* the patent was delisted, but refrained from announcing it. As Jazz has shown, no evidence supports either theory.

Jazz's Opening Brief in Support of Summary Judgment ("Mot.") at 16-23. Again, DN1 formally recorded in July 2022 what it had been telling Avadel all along—that "*the orphan-drug exclusivity issues associated with this application remain under review*." D.I. 294 ¶29. Avadel would have to come forward with very compelling evidence to overcome the plain meaning of this statement that ODE issues *remained under review* in July 2022. But it comes forward with nothing.

*Third*, Avadel's argument that the FDA did not rely on any "post-PDUFA date evidence" to reach its ODE decision is plainly wrong. Opp. at 5-6. OOPD and DN1 both expressly relied on the April 29, 2023 consult with FDA sleep experts to reach alignment on the MCTPC pathway. A4452; A2616. Despite Avadel's claim, Jazz has never said otherwise. Again, Avadel has no evidence to disprove the plain import of that express reliance. Avadel resorts to hypothesizing that "absent the '963 patent barrier," the sleep consult "would have occurred in Fall 2021." Opp. at 6. But the patent listing was not a "barrier" to consults, which indisputably happened while the patent was listed. At best, this is more speculation, not a disputed fact. *Wellbutrin*, 868 F.3d at 167.

### 3.    Avadel's remaining ODE arguments fail

Appearing to abandon the opinions of its two FDA "experts" (Flanagan and Unger), whose opinions rely on rank speculation, Avadel claims it "will introduce supportive testimony" about its approval timeline from its former consultant (now employee), Scarola. Opp. at 7. ███████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████. That is an Avadel employee's self-serving belief, nothing more.

Avadel also says it will point to "probative statistics." Opp. at 7. But Avadel cites inapposite statistics about the FDA's timeline for acting on NDAs *without clinical superiority ODE issues*. Those are not relevant: unlike those NDAs, Avadel's application could not be approved unless the FDA broke the ODE it had just recognized for Xywav by finding that Lumryz

6

was clinically superior. Thus, the statistics that are actually probative show why Avadel's claims must fail. ███████████████████████████████████████████

███████████████████████████████████████.[2] Avadel now cites three drug applications *from the 1990s*, conceding it lacks any precedent under the relevant statutory framework for the timeline it posits here. Opp. at 9. These archaic examples are meaningless, as the FDA did not even consider clinical superiority in reviewing ODE applications until after the FDA Reauthorization Act of 2017. Pub. L. No. 115-52. Since 2017, the FDA has documented all of its clinical superiority findings, and Avadel cannot point to any that happened within 10 months. A6445-57. But even Avadel's examples of less-complex ODE issues from the 1990s provide no support for its claims, and appear to be just an effort to confuse the Court. In one of Avadel's examples, it took the FDA more than *four years* to resolve the ODE issues. Ex. 78 at 3.

In a last-ditch gambit to concoct a factual dispute, Avadel cites a Jazz email observing that after the '963 patent was delisted, ████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████.

### 4. Jazz's DDI patents also barred approval as of October 15, 2021

To make Avadel's claims even more unfounded, it is also indisputable that the FDA also had to resolve labeling issues related to Jazz's DDI patents before it could approve Lumryz. Those issues were also indisputably not resolved until months after the October 15, 2021 goal date. *See* Mot. at 23. Avadel speculates that the FDA had made its decision as early as October 2021 and

---

[2] Avadel's dispute of this fact is based on its expert claiming that the FDA ████████████████
████████████████████████████████████████. This vague reference is meaningless. ████████████████████████████

████████████████████████████████████.

just did not say so for six months. Opp. at 11-12. ████████████████████████████
████████████████████████████████████████████.

### B.     Avadel Lacks Antitrust Standing Because Its Lumryz Sales Were Illegal

Compounding this dispositive flaw in Avadel's causation theory, Avadel's adjudicated infringement of the '782 patent deprives it of antitrust standing under *Wellbutrin*. Avadel's response misreads *Wellbutrin* and invites reversible error.

In *Wellbutrin*, as in this case, the patent holder (Andrx) had filed a lawsuit seeking "damages and an injunction against the sale of infringing products," but had not secured an injunction as of the time of the allegedly delayed launch. *Wellbutrin*, 868 F.3d at 146. That did not matter. The Third Circuit held: "It is not enough for the Appellants to show that Anchen wanted to launch its drug; they must also show **that the launch would have been legal**." *Id.* at 165. The reason is that the antitrust laws do not protect the right to make illegal sales. *Id.* at 165-66. This is a well-settled principle. As a case cited by *Wellbutrin* found, for example, a plaintiff illegally importing goods does not have antitrust standing either. *In re Canadian Import Antitrust Litig.*, 470 F.3d 785, 790-91 (8th Cir. 2006).

*Wellbutrin* is binding precedent, and it is not an outlier. Far from it. The cases following *Wellbutrin*, which Avadel ignores, uniformly support Jazz. Mot. at 24-25.[3] Avadel argues that the *Wellbutrin* court did not have the chance to consider Avadel's argument that an injunction is necessary to make infringing sales illegal. Opp. at 16. But the plaintiffs in *Wellbutrin* argued exactly that on appeal. Appellants' Redacted Opening Br. at 81, *Wellbutrin*, No. 15-3559 (3d Cir.

---

[3] *See Fresenius Kabi USA, LLC v. Par Sterile Prods., LLC*, 841 F. App'x 399, 403 (3d Cir. 2021); *In re Nexium (Esomeprazole) Antitrust Litig.*, 842 F.3d 34, 63 (1st Cir. 2016); *In re Androgel Antitrust Litig. (No. II)*, 2018 WL 2984873, at *13 (N.D. Ga. June 14, 2018*); In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2018 WL 563144, at *13 (D. Mass. Jan. 25, 2018).

Aug. 25, 2016) ("Appellants Brief"), *compare* Opp. at 12 (quoting D.I. 94 at 21). Just like Avadel, they argued that "to prevent Teva-Anchen's launch, Andrx needed an injunction[.]" Appellants Brief at 83, *compare* Opp. at 12-13.

The Third Circuit rejected these arguments. *Wellbutrin*, 868 F.3d at 165. The dispositive question is not whether Teva-Anchen would have been able to launch at-risk, but whether they could have launched "***without running afoul of the Andrx patent***." *Id.* at 169. None of the non-binding authority cited by Avadel supports a contrary view.[4] In *Arista*, the defendant had allegedly defrauded the plaintiff about the nature of the infringed patent itself. There is no similar allegation here. *Arista* expressly distinguished its situation from delayed-entry cases like this one, noting that in cases like *Wellbutrin* "***there was no antitrust injury*** because '[earlier entrants] would not have been able to enter the market … ***without infringing the [] patent***.'" *Arista Networks, Inc. v. Cisco Sys., Inc.*, 2018 WL 11606358, at *8 (N.D. Cal. Feb. 14, 2018). *Dexon Computer, Inc. v. Cisco Systems, Inc.*, like *Arista*, involved the fraudulent use of a patent, not an alleged delay of entry. 2023 WL 9065490, at *1 (E.D. Tex. Dec. 8, 2023). *In re Zetia (Ezetimibe) Antitrust Litigation* does not reject the settled principle that an infringing launch cannot confer antitrust standing; it relies on cases that reaffirm that principle. 655 F. Supp. 3d 406, 434-35 (E.D. Va. 2023) (citing *In re Androgel Antitrust Litig. (No. II)*, 2018 WL 2984873 (N.D. Ga. June 14, 2018)).

Avadel argues that applying *Wellbutrin* as written is "extreme" and would immunize criminal conduct. Opp. §III.C.4. There is no extreme or criminal conduct here. Avadel's only claim is that Jazz supposedly delayed the ability of Avadel to make infringing sales of Lumryz by listing one single patent in the wrong place, based on a speculative theory that otherwise the FDA would

---

[4] *Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982), says nothing about whether a delayed-entry plaintiff who has infringed a valid patent has antitrust standing.

have approved Lumryz by moving at unprecedented speed. The antitrust laws simply do not protect this speculative theory of harm, which is necessarily premised on the right to make infringing sales.

Avadel argues that an antitrust plaintiff's wrongdoing is not always a defense to antitrust claims. Opp. at 18-19. But Jazz is not trying to invoke *in pari delicto* as a defense to otherwise valid claims. Avadel's claims are not valid at all, because they improperly seek to use the antitrust laws to vindicate the right to make infringing sales. *See Eagle Pharms., Inc. v. Eli Lilly & Co.*, 2018 WL 6201704, at *2 (D. Del. Nov. 27, 2018) ("[I]f [plaintiff's] product infringes a valid claim of [defendant's] patent, then [plaintiff] may not have an antitrust claim, because [plaintiff's] product was lawfully prohibited from going on the market[.]").

The bottom line is that, to avoid *Wellbutrin*, Avadel must show that its earlier sales would have been legal. Avadel argues it would have received a voluntary license from Jazz before its earlier launch. Opp. at 19-22. But Avadel waived its licensing argument. Mot. at 27. Avadel cites no support for its ability to raise an entirely new theory of injury at the end of discovery. Opp. at 19-20. In any case, Avadel concedes ██████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████ That ends the inquiry. *Wellbutrin* rejected plaintiffs' attempt to "flip[] the burden of proof" as to whether the patentee could secure a license. *Id.* at 166. The Third Circuit made clear that, instead, the allegedly delayed entrant must show "it is more likely than not that [the allegedly delayed entrant] *would* have obtained a license." *Id.* at 167 (emphasis original). Avadel lacks any such proof. In *Wellbutrin*, the parties were one term away from a license agreement regarding the patent at issue. But the Third Circuit held that it was too speculative to assume the agreement would have been finalized. *Wellbutrin*, 868 F.3d at 167. Here it was not even started.

10

Avadel's argument that Jazz's refusal to license the patent would display "monopolistic intent" (Opp. at 21) makes no sense. *See* A1298 at 25:6-14; A1299 at 29:10-16; A1297 at 19:9-20:12. ████████████████████████████. In any case, Jazz has "no duty to aid competitors." *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 411 (2004). Moreover, Avadel cannot speculate about Jazz's state of mind, while ignoring undisputed facts showing ████████████████████████████ ████████████████████████████████████████ ████████████████████████. Avadel's cases say only that ***damages*** experts sometimes assume anticompetitive conduct would not have occurred in a but-for world. That does not mean Avadel can prove it would have secured a license the parties never discussed.

Finally, Jazz disagrees that an involuntary (court-ordered) license suffices to confer standing. Such a ruling does not make Lumryz's sales legal; it confirms those sales infringe.[5] But it does not matter, as there is no plausible timeline in which Avadel could have secured such a ruling, with the patent litigation having been resolved, before April 2022. Avadel does not argue otherwise. Jazz also disagrees that it is relevant whether it would have obtained an injunction barring Lumryz's launch prior to April 2022. This factor was not relevant in *Wellbutrin*. But even if the Court analyzes that question, Avadel cannot defeat summary judgment, because Jazz would have secured an injunction barring Lumryz's launch. Mot. at 26-27. Avadel hypothesizes it would have gotten ODE before April 2022, and that this would have weighed against an injunction, but as shown, no evidence supports that theory. Opp. at 14-16. That Jazz chose not to seek a

---

[5] None of Avadel's cases address antitrust standing and they confirm a court-ordered license follows from infringement, *i.e.*, from sales that are illegal. *See LEGO A/S v. ZURU Inc.*, 799 F. App'x 823, 834 (Fed. Cir. 2020); *King Instrument Corp. v. Otari Corp.*, 814 F.2d 1560, 1564 (Fed. Cir. 1987); *Itron, Inc. v. Benghiat*, 2003 WL 22037710, at *14 (D. Minn. Aug. 29, 2003).

preliminary injunction, where Lumryz's approval was barred by Jazz's lawful ODE for Xywav, is irrelevant.

### III. MOTION 2 – AVADEL CANNOT SHOW ANTITRUST LIABILITY

#### A. There Is No Dispute That Jazz Did Not Engage In *Walker Process* Fraud

***The Noerr-Pennington Doctrine Applies*:** This Court has determined that Jazz's "patent litigation suit is protected under *Noerr-Pennington* unless an exception applies." D.I. 94 at 11. To avoid this, Avadel rewrites its counterclaim, contending the listing of the '963 patent (even without a lawsuit) independently delayed FDA approval. But Avadel alleged an "overall scheme" that included the listing "***and … the instant lawsuit*.**" D.I. 14 at ¶144 & Preliminary Statement.

Moreover, if the listing alone "were independently unlawful and harmed competition," then Avadel would have needed to file its antitrust claim as a compulsory counterclaim in Civil Action No. 21-691, when the '963 patent was first asserted. Opp. at 24; *see, e.g.*, *Rohm & Haas Co. v. Brotech Corp.*, 770 F. Supp. 928, 931-34 (D. Del. 1991). But Avadel did not file its counterclaim in Civil Action No. 21-691 because the complained-of-harm (ongoing delay of FDA approval through October 2022) had not yet occurred when Avadel answered the complaint in June 2021. That demonstrates that the listing was not an independent cause of delayed approval. Avadel admitted as much in 2021: at a teleconference, the Court asked Avadel whether it would "preclude any approval if [the Court did not] delist [the '963 patent] by October?" A6438 at 16:1-7. Counsel for Avadel said "***no, no*.**" *Id.* at 16:8-11. Thus, Avadel recognized the listing alone could not and would not "preclude any approval."

*Hynix Semiconductor Inc. v. Rambus, Inc.*, is unavailing. 527 F. Supp. 2d 1084 (N.D. Cal. 2007). *Hynix* held a defendant's "good faith patent litigation" can be considered part of an "overall course of conduct" that violates the antitrust laws only if the court finds "that the other aspects of the scheme independently produce anticompetitive harms." *See id.* at 1097. *Hynix* does not apply

where, as here, "the core of the alleged scheme is the litigation itself [and] not some entirely distinct conduct whose consequences were furthered through litigation." *Realtek Semiconductor Corp. v. MediaTek, Inc.*, 732 F. Supp. 3d 1101, 1116 n.7 (N.D. Cal. 2024).

*Avadel Has Not Satisfied the Walker Process Standard*: Avadel's only potential basis for antitrust recovery is proving that Jazz engaged in *Walker Process* fraud by knowingly improperly listing the '963 patent in the Orange Book. *See* D.I. 94 at 12-14. Ignoring this standard, Avadel contends that ███████████████████████████████████████ ████████████████████████████████████████████████████████ Opp. at 25-26. But Avadel must come forth with clear and convincing evidence that an intent to deceive is the single most reasonable inference from the record. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). Avadel has not done so here.

Avadel argues that applying this standard "at summary judgment would be inconsistent with the requirement to 'draw all reasonable inferences in favor of the nonmoving party.'" Opp. at 26 n.16. This ignores the bevy of other claims and defenses, like patent invalidity, where the burden of proof is clear and convincing but summary judgment may still be granted. *See, e.g.*, *Puma Biotech., Inc. v. AstraZeneca Pharms. LP*, 723 F. Supp. 3d 327, 341 (D. Del. 2024). Avadel's argument is also belied by the host of cases that granted summary judgment where the intent to deceive was not the single most reasonable inference. *See, e.g.*, *Inline Packaging, LLC v. Graphic Packaging Intern.*, 351 F. Supp. 3d 1187, 1205-07 (D. Minn. 2018).[6] The Court should draw

---

[6] Avadel claims Federal Circuit decisions "omit the requirement that fraudulent intent must be the 'single most reasonable inference,'" Opp. at 26 n.16. Avadel cites no Federal Circuit decisions in support and ignores the many cases that have applied the *Therasense* standard at summary judgment. *See Intercontinental Great Brands v. Kellogg N. Am. Co.*, 869 F.3d 1336, 1351 (Fed. Cir. 2017); *Skillz Platform Inc. v. Aviagames Inc.*, 2023 WL 6542147, at *7 (N.D. Cal. Oct. 6, 2023). Courts also reject Avadel's argument that an antitrust plaintiff "need only show some factual dispute as to deceptive intent rather than, more onerously, pointing to record evidence

inferences in Avadel's favor but then ask whether the evidentiary record gives rise to the requisite *single* inference, because "the evidence must be sufficient to require a finding of deceitful intent in light of all the circumstances." *Id.* at 1203 (emphasis original).

None of the "evidence" that Avadel relies upon *requires* an inference of deceitful intent. *First*, Avadel argues that "Jazz knew that the '963 patent claims a distribution system." Opp. at §IV(A)(3)(a). All Avadel's cited documents show is that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Mot. at 31.

*Second*, Avadel argues "[a] reasonable jury also could conclude that Jazz knowingly submitted a false use code." Opp. at §IV(A)(3)(b). The only purported evidence Avadel has is that ██████████████████████████████████. Avadel argues that it is "entitled to the reasonable inference that ████████████████████████████████████████████████████" *Id.* at 29. That does not pass muster: "a patentee's failure to produce evidence affirmatively showing good faith does not equate to a concomitant showing of bad faith, especially when the burden falls to the challenger to make its case for inequitable conduct." *DeCurtis*, 2023 WL 2071915, at *8. And here, there is ample evidence of Jazz's good faith. Jazz's Opp. to Summary Judgment, at 5-9.

*Third*, Avadel argues "[a] reasonable jury could also conclude that Jazz listed the '963 patent … to exclude competitors." Opp. at §IV(A)(3)(c). But there is nothing "improper, illegal or inequitable in filing a patent application for the purpose of obtaining a right to exclude."

showing that deceptive intent is 'the single most reasonable inference able to be drawn from the evidence.'" *DeCurtis LLC v. Carnival Corp.*, 2023 WL 2071915, at *6 (S.D. Fla. Feb. 8, 2023).

14

*Kingsdown Med. Consultants v. Hollister Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988).

**B.    There Is No Genuine Dispute Regarding Jazz's Regulatory Compliance**

Avadel relies on the fact that, at the pleading stage, the Court stated "there is a genuine dispute of material fact regarding whether Jazz had a reasonable basis to conclude that it was required to list the '963 patent." But discovery has established the absence of any evidence supporting Avadel's allegations. ████████████████████████████████

████████████████████████████████████████████████

Avadel argues that "there is a genuine factual dispute regarding 'custom and practice' in the industry." Opp. at 31-32. The source of that alleged dispute is ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████. Thus, custom and practice is not disputed.

Lastly, Avadel argues there is a genuine dispute as to subjective reasonableness because "Jazz's reliance on self-serving statements made in litigation nearly a decade after it decided to list the '963 patent cannot satisfy its burden." Opp. at 32. Avadel again ignores undisputed evidence.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████. ████████████████████

████████████████████████ Confirming this, the Court has determined that Avadel has ***not*** even pled "facts sufficient to show that Jazz knew, or should have known, that the Court's constructions would render its decision to file the instant action objectively baseless." D.I. 94 at 12. Avadel has failed to develop evidence that could revive this allegation.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

OF COUNSEL:

F. Dominic Cerrito
Steig D. Olson
Gabriel P. Brier
Frank C. Calvosa
Sami H. Rashid
Elizabeth J. Murphy
John P. Galanek
Nicolas Siebert
Maxwell Hawley
Kevin Adams
Habib-Emmanuel Abraham
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
295 5th Avenue
New York, NY 10016
(212) 849-7000

William R. Sears
Lynette Lim
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

June 13, 2025

Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jtigan@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Counterclaim-Defendant*
*Jazz Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 13, 2025, upon the following in the manner indicated:

Daniel M. Silver, Esquire                                    *VIA ELECTRONIC MAIL*
Alexandra M. Joyce, Esquire
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE  19801
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

Kenneth G. Schuler, Esquire                                  *VIA ELECTRONIC MAIL*
Marc N. Zubick, Esquire
Alex Grabowski, Esquire
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL  60611
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

Herman H. Yue, Esquire                                       *VIA ELECTRONIC MAIL*
Franco W. Benyamin, Esquire
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY  10020
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

David F. Kowalski, Esquire                                   *VIA ELECTRONIC MAIL*
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA  92130
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

Alan J. Devlin, Esquire                                    *VIA ELECTRONIC MAIL*
Ian R. Conner, Esquire
Anna M. Rathbun, Esquire
Christopher J. Brown, Esquire
Kimon K. Triantafyllou, Esquire
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

Alfred C. Pfeiffer, Esquire                                *VIA ELECTRONIC MAIL*
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

Daralyn J. Durie, Esquire                                  *VIA ELECTRONIC MAIL*
Tannyr Pasvantis, Esquire
Eliot A. Adelson, Esquire
Helen He, Esquire
Margaret A. Webb, Esquire
Adam R. Brausa, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

Rose S. Lee, Esquire                                       *VIA ELECTRONIC MAIL*
Kira A. Davis, Esquire
W. Henry Huttinger, Esquire
Katherine E. McNutt, Esquire
Rebecca E. Weires, Esquire
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

David F. McGowan, Esquire                                  *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, CA  92130
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

2

Andrew T. Jones, Esquire                                    *VIA ELECTRONIC MAIL*
Haydn Forrest, Esquire
Alexander Okuliar, Esquire
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, D.C.  20037
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

Matthew C. Hans, Esquire                                    *VIA ELECTRONIC MAIL*
POLSINELLI PC
7676 Forsyth Boulevard, Suite 800
St. Louis, MO  63105
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*


                                        */s/ Jeremy A. Tigan*

                                        _____
                                        Jeremy A. Tigan (#5239)