IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JAZZ PHARMACEUTICALS, INC.,     )
     )
     Counterclaim-Defendant, )
     )
     v.     )     C.A. No. 22-941 (GBW)
     )
AVADEL CNS PHARMACEUTICALS LLC,  )     ████████████████████
     )     ████
     Counterclaim-Plaintiff. )     REDACTED - PUBLIC VERSION

## JAZZ'S OMNIBUS REPLY BRIEF IN SUPPORT OF ITS MOTIONS TO EXCLUDE CERTAIN AVADEL EXPERTS UNDER *DAUBERT*

OF COUNSEL:

F. Dominic Cerrito
Steig D. Olson
Gabriel P. Brier
Frank C. Calvosa
Sami H. Rashid
Elizabeth J. Murphy
John P. Galanek
Nicolas Siebert
Maxwell Hawley
Kevin Adams
Habib-Emmanuel Abraham
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
295 Fifth Avenue
New York, NY 10016
(212) 849-7000

William R. Sears
Lynette Lim
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

June 13, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jtigan@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Counterclaim-Defendant*
*Jazz Pharmaceuticals, Inc.*

## TABLE OF CONTENTS

**Page**

AVADEL'S EXPERTS SHOULD BE EXCLUDED ................................................................1

    A.    Keith Flanagan And Ellis Unger Should Be Excluded............................................1

    B.    E. Fintan Walton Should Be Excluded ...................................................................5

    C.    William Charman Should Be Excluded...................................................................6

    D.    Peter Waibel, William Schultz, and Michael Carrier Should Be Excluded.............7

    E.    Jonathan Orszag Should Be Excluded In Part .......................................................10

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*360Heros, Inc. v. GoPro, Inc.*,
    569 F. Supp. 3d 198 (D. Del. 2021).................................................................................3

*In re Actos Antitrust Litig.*,
    2025 WL 1001259 (S.D.N.Y. Mar. 31, 2025) ...............................................................7

*Baker v. City of Chicago*,
    2024 WL 5112397 (N.D. Ill. Aug. 20, 2024) ................................................................7

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993).....................................................................................................10

*In re Diet Drugs*,
    2001 WL 454586 (E.D. Pa. Feb. 1, 2001) ...................................................................2

*Doucette v. Jacobs*,
    106 F.4th 156 (1st Cir. 2024)........................................................................................4

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
    2020 WL 1164869 (D. Kan. Mar. 10, 2020) ..........................................................7, 9

*In re Flonase Antitrust Litig.*,
    907 F. Supp. 2d 637 (E.D. Pa. 2012) ...........................................................................2

*In re Fosamax Prods. Liab. Litig.*,
    645 F. Supp. 2d 164 (S.D.N.Y. 2009)......................................................................1, 2

*In re Fosamax Prods. Liab. Litig.*,
    924 F. Supp. 2d 477 (S.D.N.Y. 2013)..........................................................................3

*In re Merck Mumps Vaccine Antitrust Litig.*,
    685 F. Supp. 3d 280 (E.D. Pa. 2023) ...........................................................................2

*In re Mirena IUD Prods. Liab. Litig.*,
    169 F. Supp. 3d 396 (S.D.N.Y. 2016)..........................................................................2

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
    345 F. Supp. 2d 431 (D. Del. 2004)..............................................................................9

*Par Pharm., Inc. v. Hospira, Inc.*,
    2019 WL 2396748 (D. Del. June 6, 2019).....................................................................3

*In re Proton-Pump Inhibitor Prods. Liab. Litig.*,
  2022 WL 18999830 (D.N.J. July 5, 2022)...................................................................3

*In re Rezulin Prods. Liab. Litig.*,
  309 F. Supp. 2d 531 (S.D.N.Y 2004)........................................................................5

*Sprint Commc'ns Co. v. Charter Commc'ns, Inc.*,
  2021 WL 979307 (D. Del. Mar. 16, 2021) ................................................................6

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
  550 F.3d 1356 (Fed. Cir. 2008)................................................................................8

*In re Trasylol Prods. Liab. Litig.*,
  709 F. Supp. 2d 1323 (S.D. Fla. 2010) ...................................................................10

*UPMC v. CBIZ, Inc.*,
  2020 WL 2736691 (W.D. Pa. May 26, 2020)........................................................2, 3

*Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004)................................................................................................5

*Whyte v. Stanley Black & Decker, Inc.*,
  514 F. Supp. 3d 684 (W.D. Pa. 2021).................................................................5, 6, 8

*In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*,
  26 F. Supp. 3d 449 (E.D. Pa. 2014) .......................................................................10

## AVADEL'S EXPERTS SHOULD BE EXCLUDED

Avadel seeks to rewrite its expert reports in its opposition. These recharacterizations do not make the testimony any more admissible. Jazz's motion should be granted.

### A.    Keith Flanagan And Ellis Unger Should Be Excluded

Avadel now claims that Flanagan and Unger's reports are limited to the opinion that

███████████████████████████████████████████████████

███████████. That claim is erroneous. Flanagan and Unger do not claim the FDA resolved in the real world, or would have resolved in the but-for world, the ODE issues posed here in just eight weeks. That opinion would be absurd, and if possible, even less credible than the opinions they do offer. The first consult by the Division of Neurology 1 ("DN1") took eight weeks *on its own* (July 6, 2021 to August 30, 2021), ending with DN1 finding "no evidence" supporting Avadel's arguments for clinical superiority. And that was just the first step the Office of Orphan Products Development ("OOPD") had to take. ██████████████████

█████████████████████████████████████████████

████████████████████████████████.

Flanagan and Unger's real opinion is that the OOPD would have *reversed course* from the August 30, 2021 DN1 consult and reached alignment with DN1 on the view that Lumryz (although not providing greater safety or efficacy) provided a "major contribution to patient care" over Xywav within the seven weeks (not eight) between the time of the DN1 consult and October 15, 2021 (leaving no time for, *e.g.*, the required review by regulatory counsel). This opinion necessarily involves unfounded speculation about the FDA's state of mind—*i.e.*, about what views OOPD and DN1 would have had at different times—and "testifying as to the knowledge, motivations, intent, state of mind, or purposes" of FDA officials "is not a proper subject for expert or even lay testimony." *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y.

1

2009); *see also In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 466 (S.D.N.Y. 2016).

Avadel's own cases confirm this is impermissible. *See In re Diet Drugs*, 2001 WL 454586, at *19 (E.D. Pa. Feb. 1, 2001) (FDA expert "cannot testify as to what [an FDA official] would have done"); *In re Flonase Antitrust Litig.*, 907 F. Supp. 2d 637, 644-46 (E.D. Pa. 2012) (permitting only expert testimony that was "***not*** offering an opinion on what actually caused the delay of Roxane's generic FP onto the market").[1] Similarly, in *In re Merck Mumps Vaccine Antitrust Litigation*, the court permitted opinion on estimated entry dates only where the expert "looked at every clinical development start date and end date he could find for each prophylactic vaccine licensed in the United States to generate comparator vaccines and calculate his average development timeline." 685 F. Supp. 3d 280, 312 (E.D. Pa. 2023). ███████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████. And while Avadel argues Unger does not offer "conjecture[] about any specific individual's thoughts or motivations," Opp. at 4, █████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████.

If Avadel wanted to prove its hypothetical timeline, Avadel needed real evidence, which it did not even bother to seek from the FDA; it cannot just rely on speculation from hired experts. Avadel's own case explains that an expert can "rely on their own experience" only to "testify as to the ***general practices and customs*** of that agency" when the expert had "firsthand experience" with the agency's decision-making process. *UPMC v. CBIZ, Inc.*, 2020 WL 2736691, at *12-13

---

[1] All emphasis added unless otherwise noted.

(W.D. Pa. May 26, 2020).[2] Flanagan and Unger go well beyond general practices and customs—they opine that the FDA would have come to certain decisions by certain dates (moving at an unprecedented speed). A0083 ¶17; A0042 ¶3. This is impermissible. *See In re Fosamax Prods. Liab. Litig.*, 924 F. Supp. 2d 477, 497 (S.D.N.Y. 2013) ("Testimony about the negotiations with the FDA, or how long the negotiations took, is inadmissible. … [An FDA expert] may not opine about negotiations to which she was not privy.").

Even if opinions like those Flanagan and Unger offer were admissible in general, neither is actually qualified to offer such opinions here. Neither worked in OOPD or DN1, the divisions at issue. A0082-83 ¶¶7-13; A0042-43 ¶¶7-10. Neither had first-hand experience with OOPD or DN1 practices for resolving complex issues of clinical superiority related to ODE. *See, e.g.*, A1745 at 21:4-14; A1766 at 104:7-21; A1382 at 46:14-47:15; A1384 at 55:14-21. In Unger's words: ███

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

Avadel also cannot deny that Flanagan and Unger were ignorant of facts that necessarily underlie their opinions. Neither knew basic details of the FDA review process they speculate about—*e.g.*, ████████████████████████████████████████████

███████████████████████████████████████████████

---

[2] Avadel's other cited cases are distinguishable. In *360Heros, Inc. v. GoPro, Inc.*, the court allowed an expert to testify as to general industry norms, not a specific FDA timeline. 569 F. Supp. 3d 198, 204 (D. Del. 2021). Similarly, the court in *Par Pharm., Inc. v. Hospira, Inc.*, permitted testimony on "the context for FDA regulations," not about whether the FDA would do certain things. 2019 WL 2396748, *3 (D. Del. June 6, 2019). As for *In re Proton-Pump Inhibitor Prods. Liab. Litigation*, the court permitted a regulatory expert to testify because her methodology was the same she applied as an employee of the FDA. 2022 WL 18999830, *9 (D.N.J. July 5, 2022). But here, neither Flanagan nor Unger worked in the relevant division of the FDA or have any experience with ODE clinical superiority decisions. A0082-83 ¶¶7-13; A0042-43 ¶¶7-10; A1389 at 74:5-75:4.

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████.

Avadel admits that individuals at the FDA involved with the ODE issues here would know these facts. But Avadel tactically did not pursue any discovery from them, and the FDA records that were made public contradict Flanagan and Unger's opinions. Jazz's regulatory expert Troy knew many of the details that Flanagan and Unger did not, A0698-700 ¶102; A0758-60 ¶¶184-185, many of which were apparent from the FDA policy document that Flanagan and Unger intentionally disregarded, A4207-15. The records show that the FDA was working through the ODE issues through 2022 and until they were resolved on May 1, 2023. A4285-87; A4452-53.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████. While critiques about whether an expert overlooked certain materials might go to weight, intentionally failing to cite the actual policy under discussion warrants exclusion. *Doucette v. Jacobs*, 106 F.4th 156, 169 (1st Cir. 2024).

Finally, it is now beyond dispute that Unger's report contains perjury, because it offers as one of its two main opinions that Unger agreed with the analysis provided by Flanagan's report, even though Unger admitted he ***had not even read Flanagan's report***. Avadel blames Jazz counsel for having "moved on" at the deposition after ███████████████████████████████

█████████████████████████. But Jazz has no obligation to help a witness retract an admission of

4

perjury. If Unger's testimony had been untrue or unclear, ███████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████. The simple truth—which Avadel obscures **but does not deny**—is that Unger had

**not** read Flanagan's report before submitting his own, and thus his report contains blatantly untrue

sworn statements on a central opinion. That alone warrants exclusion. At a minimum, Unger first

reached the conclusion Avadel wanted him to reach, and "d[id] the research later," which also

warrants exclusion. *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 550 (S.D.N.Y 2004).

### B.    E. Fintan Walton Should Be Excluded

Walton opines that ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████.

Neither of Avadel's arguments salvages his testimony.

Avadel claims that experts can sometimes assume away anticompetitive conduct. Opp. at

8-9. But Walton assumes away **lawful** conduct by presuming that, if Jazz did not want to license

its patent to its competitor, █████████████████████████████████. In fact, there

is no obligation to license patents and "no duty to aid competitors." *See Verizon Commc'ns Inc. v.*

*L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 411 (2004). Avadel recasts Walton as opining

about what a "company acting rationally" would do, but that is a distinction without a difference:

rational companies do not have to license patents to competitors either. Opp. at 8-9.

Next, Avadel argues Walton should be permitted to invent the arbitrary ten-factor list

underlying his opinion because he is an "industry expert." Opp. at 9-10. Being an "industry expert"

does not allow an expert to make up factors and call it a method. *Whyte v. Stanley Black & Decker,*

*Inc.*, 514 F. Supp. 3d 684, 695 (W.D. Pa. 2021) (excluding expert opinion when expert "does not

explain why he assessed [certain] factors, but not others … [and] what aspects of his 'personal experience' led him to his conclusions"). Nor does it permit an expert to ignore facts relevant to the licensing question, such as the other lawsuits between Jazz and Avadel, A1322-23 at 121:17-124:22, Jazz's real-world licensing behavior, A1366 at 294:10-17, and the absence of any licensing discussions for the '782 patent. D.I. 248 ¶37; D.I. 294 ¶37. ██████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████ .

### C.    William Charman Should Be Excluded

Contrary to Avadel's assertion, Charman's opening report expressly "incorporate[s] by reference" the *entirety* of four separate reports from the patent case. A0382 ¶22. Avadel's assertion that he really "incorporate[s] just over 100 pages" from one report is just another effort to rewrite an improper opinion. It also underscores why Charman's report runs afoul of Rule 26. Opp. at 11 & n.6. Which 100 pages did Charman incorporate? The sections expressly addressing the '782 patent span 67 pages. A5895-97; A5901-04. So what other portions are fair game for trial? Avadel never says. Similarly, while Avadel avers that Charman "will not rely" on evidence that post-dates April 2022, Opp. at 10, Charman's opinions are inextricably intertwined with such information. *See, e.g.*, A2217 at 154:25-155:7. A "common objection at patent trials is, 'Objection, not disclosed in the expert's report.' Dealing with this objection at a jury trial … would be a nightmare when the universe of possible sources of a disclosure is [unclear]." *Sprint Commc'ns Co. v. Charter Commc'ns, Inc.*, 2021 WL 979307, at *4 (D. Del. Mar. 16, 2021). The only way to avoid that "nightmare" is to strike Charman's testimony now.

Charman's opinions should also be excluded because ████████████████████

████████████████████████████████████████████████████

████████████████████████████████ . Avadel tries to sidestep that Charman is offering a

legal opinion by claiming he was simply "provided with legal standards by counsel." Opp. at 11. But Charman impermissibly purported to apply those standards. *Baker v. City of Chicago*, 2024 WL 5112397, at *4 (N.D. Ill. Aug. 20, 2024) ("[Expert's] opinion is that the court would have applied the law differently to different facts or arguments presented to it, which is impermissible"). *In re EpiPen* is inapposite, as an expert was permitted to testify about prior legal proceedings "using his experience in the field of patent law." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 2020 WL 1164869, at *34 (D. Kan. Mar. 10, 2020). Charman has no such expertise. *See, e.g.*, A2181 at 11:22-13:14, A2184 at 24:6-16, A2195 at 69:2-18.

### D.    Peter Waibel, William Schultz, and Michael Carrier Should Be Excluded

***Waibel, Schultz, and Carrier provide impermissible legal opinions***: Avadel argues that experts have been permitted to provide other types of testimony, in other types of cases. Opp. at 12. None of Avadel's cases permitted an expert to testify that a patent listing was unreasonable, as Avadel's experts seek to do. *See, e.g.*, A0127; A0336; A0194. In contrast, *Actos*, cited by Jazz, held that "objective reasonableness is ultimately a question of law that the Court must decide." *In re Actos Antitrust Litig.*, 2025 WL 1001259, at *32 (S.D.N.Y. Mar. 31, 2025). Waibel, Schultz, and Carrier each impermissibly opine on this ultimate issue. While this Court allowed Avadel's claims to proceed to discovery on the reasonableness of listing the '963 patent, D.I. 94 at 9, this does not change the legal standard or allow Avadel's experts to opine on the ultimate issue.

Avadel's argument that Jazz cannot offer opinions on these same topics from Jonathan Singer and Daniel Troy ignores that Jazz's experts are rebuttal experts. These experts will have nothing to rebut on these topics if Waibel, Schultz, and Carrier are excluded, as they should be.

***Waibel's opinions are merely his subjective belief***: Avadel argues that "Mr. Waibel's unwillingness to opine whether particular patent attorneys or Jazz are reasonable or unreasonable has no bearing on whether his opinion is reliable." Opp. at 13. This misses the point. Despite

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████. That is the

very definition of a *subjective* opinion. *Whyte*, 514 F. Supp. 3d at 694 (collecting cases).

    *Waibel is not qualified to opine on infringement*: ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████. Nevertheless,

Avadel confusingly argues that Waibel is "not offering testimony 'from the perspective of a skilled

artisan' on infringement." Opp. at 14. To the extent Avadel argues that Waibel is not opining on

infringement, that is plainly wrong: █████████████████████████████████

███████████████████████████████. To the extent Avadel argues that his

testimony about infringement is permissible because he does not purport to be a skilled artisan,

only testimony from a skilled artisan (which Waibel is not) is relevant to infringement. *See*

*Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1363 (Fed. Cir. 2008). Either way,

his testimony should be excluded.

    Finally, Avadel does not contest that Waibel's opinions regarding the likelihood of an

injunction are inadmissible. Thus, these opinions should be excluded.

    *Schultz's opinions fail the fit requirement*: Avadel again misses the point in arguing that,

since Schultz is not a patent expert, he can rely on the Federal Circuit's opinion. Schultz is

purportedly opining on what was reasonable *in 2014* based on a claim construction not available

until 2023. This approach fails the "fit" requirement because it could not have been the analysis of

a reasonable pharmaceutical company in 2014. Nor is Avadel correct that Schultz's opinions are

relevant because they ██████████████████████████████████████████

████████████████████████ Opp. at 14. Neither Jazz nor its experts are making that contention,

so Avadel's lone relevance ground fails. *In re EpiPen*, 2020 WL 1164869, at \*26 (excluding expert opinions on theory that other party was not pursuing).

***Carrier is not qualified to opine on the actions of a reasonable pharmaceutical company***: Carrier is not qualified to testify as to what a reasonable pharmaceutical company would have done with respect to Orange Book listings because Carrier never worked at, or consulted for, a pharmaceutical company on Orange Book listings and never worked at the FDA. D.I. 258 at 14. And while Avadel asserts Carrier has "studied and written about the listing of REMS patents for nearly a decade," Carrier has published just two papers about REMS patents in his career. Opp. at 15. That limited academic scholarship regarding his subjective views on REMS patents does not qualify Carrier to opine about what a reasonable ***pharmaceutical company*** would have done. *See Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 435 (D. Del. 2004) ("A party can only elicit expert testimony from someone who has specialized knowledge or training sufficient to qualify him or her to opine on an issue within their field of expertise, and the expert's opinion must be confined to that field.").

***Carrier's opinions are merely his subjective belief***: Avadel argues that Carrier's opinions are grounded "in an extensive set of developments." Opp. at 15. But outside of two counterclaims that were never pursued, Carrier fails to demonstrate that his views are consistent with any pharmaceutical company, let alone all reasonable pharmaceutical companies, as he opines. ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

***Carrier's opinions fail the fit requirement***: Avadel admits that ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9



. That is no excuse for ignoring the pertinent question. Instead of doing that "difficult" work (and likely to avoid admitting that *all* companies with REMS patents listed them in the Orange Book), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. That is speculation, and no defense to exclusion.

Avadel's other arguments are unpersuasive. While Troy cited Carrier's article, he did so as evidence that REMS patents often were listed in the Orange Book—something Carrier previously wrote and which undermines his opinions here. *See In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 26 F. Supp. 3d 449, 460 (E.D. Pa. 2014) (excluding expert testimony "directly contrary to the findings of her own peer-reviewed, published research"); A0685 ¶81. Moreover, even if Carrier's methodology (which was not peer-reviewed) were consistent with peer-reviewed literature (which is questionable at best, given that the peer-reviewed study Avadel cites reported that 21% of REMS had Orange Book-listed patents, compared to Carrier's lower finding of 9%) that does not mean it "fits" this case. *See Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 593 (1993) ("Publication (which is but one element of peer review) is not a *sine qua non* of admissibility; it does not necessarily correlate with reliability[.]").

### E.    Jonathan Orszag Should Be Excluded In Part

Avadel concedes that Orszag is unqualified to opine on the supply-chain and regulatory issues in his report. Avadel reframes his report as opining that ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮. Stating the obvious is not proper expert testimony. Nor can Orszag just recite "record facts," as Avadel claims. Opp. at 16. Orszag "has no expertise that allows [him] to infer" Avadel's launch timeline, so he cannot "present the factual narrative to the jury." *In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323, 1347 (S.D. Fla. 2010).

10

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

OF COUNSEL:

F. Dominic Cerrito
Steig D. Olson
Gabriel P. Brier
Frank C. Calvosa
Sami H. Rashid
Elizabeth J. Murphy
John P. Galanek
Nicolas Siebert
Maxwell Hawley
Kevin Adams
Habib-Emmanuel Abraham
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
295 5th Avenue
New York, NY 10016
(212) 849-7000

William R. Sears
Lynette Lim
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

June 13, 2025

Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jtigan@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Counterclaim-Defendant*
*Jazz Pharmaceuticals, Inc.*

11

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 13, 2025, upon the following in the manner indicated:

Daniel M. Silver, Esquire                                    *VIA ELECTRONIC MAIL*
Alexandra M. Joyce, Esquire
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE  19801
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

Kenneth G. Schuler, Esquire                                  *VIA ELECTRONIC MAIL*
Marc N. Zubick, Esquire
Alex Grabowski, Esquire
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL  60611
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

Herman H. Yue, Esquire                                       *VIA ELECTRONIC MAIL*
Franco W. Benyamin, Esquire
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY  10020
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

David F. Kowalski, Esquire                                   *VIA ELECTRONIC MAIL*
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA  92130
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

Alan J. Devlin, Esquire                                          *VIA ELECTRONIC MAIL*
Ian R. Conner, Esquire
Anna M. Rathbun, Esquire
Christopher J. Brown, Esquire
Kimon K. Triantafyllou, Esquire
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

Alfred C. Pfeiffer, Esquire                                      *VIA ELECTRONIC MAIL*
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

Daralyn J. Durie, Esquire                                        *VIA ELECTRONIC MAIL*
Tannyr Pasvantis, Esquire
Eliot A. Adelson, Esquire
Helen He, Esquire
Margaret A. Webb, Esquire
Adam R. Brausa, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

Rose S. Lee, Esquire                                             *VIA ELECTRONIC MAIL*
Kira A. Davis, Esquire
W. Henry Huttinger, Esquire
Katherine E. McNutt, Esquire
Rebecca E. Weires, Esquire
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA  90017
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

David F. McGowan, Esquire                                        *VIA ELECTRONIC MAIL*
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, CA  92130
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*

Andrew T. Jones, Esquire                                    *VIA ELECTRONIC MAIL*
Haydn Forrest, Esquire
Alexander Okuliar, Esquire
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, D.C.  20037
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*


Matthew C. Hans, Esquire                                    *VIA ELECTRONIC MAIL*
POLSINELLI PC
7676 Forsyth Boulevard, Suite 800
St. Louis, MO  63105
*Attorneys for Counterclaim-Plaintiff*
*Avadel CNS Pharmaceuticals, LLC*


                                         */s/ Jeremy A. Tigan*
                                         _____
                                         Jeremy A. Tigan (#5239)