# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AVADEL CNS PHARMACEUTICALS, LLC, | |
| Plaintiff, | |
| v. | C.A. No. 22-941-GBW |
| JAZZ PHARMACEUTICALS, INC., | REDACTED PUBLIC VERSION |
| Defendant. | |

Daniel M. Silver, Alexandra M. Joyce, MCCARTER & ENGLISH, LLP, Wilmington, DE; Kenneth G. Schuler, Marc N. Zubick, Alex Grabowski, Sarah W. Wang, LATHAM & WATKINS LLP, Chicago, IL; Ian R. Conner, Alan J. Devlin, Anna Rathbun, Christopher J. Brown, LATHAM & WATKINS LLP, Washington, D.C.; Herman Yue, LATHAM & WATKINS LLP, New York, NY; Alfred C. Pfeiffer, LATHAM & WATKINS LLP, San Francisco, CA; Daralyn J. Durie, Rebecca E. Weires, Tannyr Pasvantis, Eliot A. Adelson, Margaret A. Webb, Helen He, MORRISON & FOERSTER LLP, San Francisco, CA; Kira A. Davis, Henry Huttinger, Katherine E. McNutt, MORRISON & FOERSTER LLP, Los Angeles, CA; Alexander Okuliar, Haydn Forrest; MORRISON & FOERSTER LLP, Washington, D.C.; Matthew C. Has, POLSINELLI, St. Louis, MO.

*Counsel for Plaintiff*

Jeremy A. Tigan, Cameron P. Clark, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; F. Dominic Cerrito, Steig D. Olson, Gabriel P. Brier, Frank C. Calvosa, Nicolas Siebert, Maxwell Hawley, Kevin Adams, John P. Galanek, Habib-Emmanuel Abraham, Sami H. Rashid, Elizabeth J. Murphy, QUINN EMANUEL URQUHART & SULLIVAN, LLP, New York, NY; William R. Sears, Lynette Lim, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Los Angeles, CA.

*Counsel for Defendant*

**MEMORANDUM OPINION**

October 2, 2025
Wilmington, Delaware

*[signature]*

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Pending before the Court are Plaintiff Avadel CNS Pharmaceutical, Inc.'s ("Avadel") Motion for Summary Judgment No. 1 (Jazz's regulatory compliance defense fails because there is no evidence to establish the requisite subjective good-faith element of this defense) ("Avadel's MSJ No. 1"), and Avadel's Motion for Summary Judgment No. 2 (Avadel has satisfied the second element of its antitrust claims as a matter of law because Jazz's wrongful listing of the '963 Patent in the FDA's Orange Book constitutes exclusionary conduct under Section 2 of the Sherman Act) ("Avadel's MSJ No. 2") (collectively, "the Summary Judgment Motions") (D.I. 266), both of which have been fully briefed (D.I. 267; D.I. 287; D.I. 314). For the reasons set forth below, the Court denies both motions.

I.  **BACKGROUND**

On July 15, 2022, Jazz Pharmaceuticals, Inc. ("Jazz") filed a Complaint for Patent Infringement ("Complaint") in this Court alleging that Avadel infringes U.S. Patent No. 8,731,963 ("the '963 Patent"). (D.I. 1 ¶ 1). On October 21, 2022, Avadel filed an Answer to Complaint for Patent Infringement, Defenses, and Counterclaims ("Counterclaim"). (D.I. 14).[1]

In its Counterclaim, Avadel alleged that Jazz violated Section 2 of the Sherman Act by listing and refusing "to delist the '963 [P]atent—a REMS[2] patent that claims a distribution system—in the Orange Book." (D.I. 14 ¶ 136). Avadel alleged that "Jazz did this, even though

---

[1] On March 7, 2023, this Court ordered the dismissal, per stipulation, of Jazz's claim for infringement and Avadel's corresponding counterclaims of non-infringement / invalidity / de-listing of the '963 patent. (*See* D.I. 32). Thus, only Avadel's antitrust counterclaims remained (and remain).

[2] REMS means Risk Evaluation and Mitigation Strategy. (*See* D.I. 247 at 6).

the owner of an FDA-approved drug product may only list in the Orange Book patents that claim the active pharmaceutical ingredient, composition or formulation, or method of using that drug." (D.I. 14 ¶ 136). Avadel further alleged that the improper listing of the '963 Patent, and maintenance thereof, was an attempt "to impede any pharmaceutical company that may try to launch a competitive oxybate[3] product." (D.I. 14 ¶ 137). In particular, Avadel alleged that the improper listing, and maintenance thereof, caused the FDA to decide "that it could not approve Avadel's NDA[4] unless Avadel filed a Paragraph IV certification." (D.I. 14 ¶ 137). "That certification, in turn," according to Avadel, "allowed Jazz to file this lawsuit, further delaying the FDA's ability to grant final approval to LUMRYZ by triggering an automatic stay." (D.I. 14 ¶ 137).

On November 18, 2022, in a separate but related action between the parties, this Court ordered Jazz to "submit to the FDA a request enclosing this Order to delete the '963 [P]atent from the Orange Book" since "the '963 [P]atent [did] not claim either 'the drug for which the application was approved' or 'an approved method of using the drug' consistent with 21 U.S.C. § 355(c)(3)(D)(ii)(I)." No. 21-691, D.I. 232 at 1-2.

On April 25, 2025, Avadel filed the Summary Judgment Motions as part of a larger omnibus motion. (D.I. 266). The Summary Judgment motions have been fully briefed. (*See* D.I. 267; D.I. 287; D.I. 314). The Court now turns to the merits.

---

[3]   Oxybate is used to treat narcolepsy. (*See* D.I. 247 at 4-5).

[4]   Avadel's NDA (New Drug Application) sought approval for LUMRYZ, Avadel's oxybate product. (*See* D.I. 247 at 7).

## II.   LEGAL STANDARD

### A.   Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact is one that could lead a reasonable jury to find in favor of the nonmoving party." *Bletz v. Corrie*, 974 F.3d 306, 308 (3d Cir. 2020). "The court must review the record as a whole, draw all reasonable inferences in favor of the nonmoving party, and must not 'weigh the evidence or make credibility determinations.'" *Id.* at 308 (quoting *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016)). The Third Circuit has cautioned that "a court should be reluctant to grant a motion for summary judgment when resolution of the dispositive issue requires a determination of state of mind . . . ." *Metzger By & Through Metzger v. Osbeck*, 841 F.2d 518, 521 (3d Cir. 1988).

### B.   Regulatory Compliance Defense

"Several circuits have identified a defense to antitrust liability where the defendant's action was taken as part of a good faith, reasonable attempt to comply with a regulatory scheme." *In re Lantus Direct Purchaser Antitrust Litig.*, 950 F.3d 1, 12 (1st Cir. 2020); *see also MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1109-10 (7th Cir. 1983); *Phonetele, Inc. v. American Telephone & Telegraph Co.*, 664 F.2d 716, 737-38 (9th Cir. 1981); *S. Pac. Commc'ns Co. v. Am. Tel. & Tel. Co.*, 740 F.2d 980, 1010 (D.C. Cir. 1984). This "defense has two elements: (1) [the antitrust defendant] objectively 'had a reasonable basis in regulatory policy to conclude' that its actions were required by regulation, and (2) [the antitrust defendant] subjectively 'in good faith concluded' that its actions were required by regulation." *In re Actos Antitrust Litig.*, 628 F. Supp. 3d 524, 534 (S.D.N.Y. 2022) (citation omitted). The First Circuit has explicitly applied this defense to improper Orange Book listings. *In re Lantus*, 950 F.3d at 14 ("[T]he defenses to

antitrust liability as a result of . . . an improper [Orange Book] submission include proving that the submission was the result of a reasonable, good-faith attempt to comply with the Hatch-Waxman scheme . . . .").

## III. DISCUSSION

Avadel first moves for summary judgment on Jazz's regulatory compliance defense. (D.I. 267 at 8). Specifically, Avadel challenges the "good-faith" element, claiming that "[t]here is no evidence that Jazz subjectively and in good faith concluded that its decisions to list and maintain the listing of the '963 [P]atent were required by the regulatory demands of the Hatch-Waxman Act." (*Id.* at 9). The Court ultimately finds that there are material issues of fact regarding Jazz's good faith for both its decisions to (1) list and (2) maintain the listing for the '963 Patent in the Orange Book. The Court will take each in turn.

### A. There are Material Issues of Fact Regarding Jazz's Good Faith in Listing the '963 Patent

As explained above, Avadel alleges that Jazz has proffered no evidence of its subjective good faith in listing the '963 Patent. (D.I. 267 at 8-12). Jazz responds by pointing to several examples it contends show evidence of its good faith, thus creating a material issue of fact that cannot be resolved at summary judgment. (D.I. 287 at 5-9). One such example is a Jazz employee who "███████████████████████████████████████████████████████████████." (*Id.* at 6). According to this witness, ███ ███████████████████████████████████████████████████████ (*Id.* at 5-6). Ultimately, the court concludes that this example alone is enough to create a material issue of fact.

In opposition to Avadel's MSJ No. 1, Jazz cites to the deposition transcript of Philip Honerkamp. (D.I. 287 at 6; *see also* D.I. 262, Ex. 32 (Deposition Transcript of Philip Honerkamp

5

("the Transcript"))). Despite Avadel's characterization to the contrary, (D.I. 314 at 6), the Transcript shows that there is a material issue of fact regarding Avadel's good faith in listing the '963 Patent. ███████████████████████████

███████████████████████████████

███ ███████████████████████████

████████████████████████ For example, in his deposition, Mr. Honerkamp testified that ████████████████████████

████████████████████



---

5   Attorney Olson is counsel for Jazz.

6

(D.I. 262, Ex. 32 at 111:6–112:12 (emphasis added)).[6]  In response to a follow up question, Mr. Honerkamp repeated ▮



(*Id.* at 112:24–113:23 (emphasis added)).  When pressed, Mr. Honerkamp once again stated that



---

[6] Questions (labelled "Q.") were asked by Attorney Marc N. Zubick, counsel for Avadel. (D.I. 262, Ex. 32 at 5:15-16). Answers (labelled "A.") were provided by Philip James Honerkamp, "Senior Vice President and Head of Neuroscience Strategy" at Jazz. (*Id.* at 5:19–6:3).

7



(*Id.* at 119:23–121:21 (emphasis added)). According to Mr. Honerkamp,



(*Id.* at 34:23–35:9 (emphasis added)). This deposition testimony is enough for a reasonable jury to find that Jazz listed the '963 Patent in an attempt to comply with the Hatch-Waxman framework, or to put it another way, that it met the good-faith element of the regulatory compliance defense. Avadel, in reply, offers four reasons why the above deposition testimony does not actually create a material issue of fact. (D.I. 314 at 2-7). None are persuasive.

8

*First*, Avadel contends that Jazz is using "attorney-client privilege as a sword and a shield," claiming a good-faith defense premised on the advice of counsel and refusing to turn over counsel communications. (D.I. 314 at 2). The Court agrees that Jazz cannot claim it relied on counsel's advice as evidence it listed the '963 Patent in good faith without waiving attorney-client privilege over said advice. *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) ("A defendant may also waive the [attorney-client] privilege by asserting reliance on the advice of counsel as an affirmative defense."); *see also In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, Master No. 3:15-cv-07658-MAS-LHG, 2021 WL 5105774, at *9 (D.N.J. Nov. 3, 2021) (Cavanaugh, J., (Ret.)) ("The Special Master sees no substantive difference between asserting an 'advice of counsel' defense and asserting what the Valeant defendants describe as an 'involvement of counsel.' The end result is the same: Defendants are supporting their position that they acted in good faith by attempting to show that they consulted with counsel and others before making a pivotal decision . . . ."). The issue, however, is that the proper remedy for such conduct is waiver of the privilege, not dismissing the affirmative defense at the summary judgment stage. *Cf. Upsher-Smith Lab'ys, LLC v. Zydus Pharms. (USA) Inc.*, C.A. No. 21-1132-GBW, 2024 WL 3487935, at *2 (D. Del. July 18, 2024) (finding that excluding a witness "from providing any testimony [via a motion in limine] would constitute an extreme form of relief," when the nonmoving party previously denied discovery into privileged materials it put at issue). Avadel cites no cases, nor is the Court aware of any, where summary judgment was granted based on a refusal to disclose privileged advice, where said advice had been waived due to the nonmoving party putting said advice at issue. (*See* D.I. 314 (Avadel's Reply Brief not citing any such cases)). In the one case Avadel does cite at the summary judgment stage, *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195 (3d Cir. 2006), the Third Circuit reminded the parties in a footnote that it

9

would impermissible for one to "rely upon the legal advice it received for the purpose of negating its scienter without permitting [the other] the opportunity to probe the surrounding circumstances and substance of that advice." *Id.* at 221 n.24. This Court believes its ruling does not run afoul of that instruction and finds that summary judgment on this ground is not appropriate. However, Jazz is cautioned that, if it intends to rely (in part or in whole) on the fact it received advice of counsel (or that counsel was involved) as evidence of its good faith in listing the '963 Patent, it must permit Avadel to conduct discovery into the "circumstances and substance of that advice." *Id.* at 221 n.24; *see also Upsher-Smith Lab'ys,* 2024 WL 3487935, at *2 (denying motion in limine but ordering nonmoving party to allow discovery into privileged materials it put at issue).

*Second,* Avadel takes issue with the fact that the deposition testimony that Jazz is relying upon was not proffered from the Jazz employees identified in an interrogatory as having information regarding its good faith in listing the '963 Patent in the Orange Book. (D.I. 314 at 5-6; *see also* D.I. 316, Ex. 97 at 8-9 (█████████████████████████████

█████████████

█████████████████). That interrogatory response was served on August 30, 2023 (D.I. 316, Ex. 97 at 11; *see also* D.I. 59 (notice of service filed on August 30, 2023)). Mr. Honerkamp's deposition was taken on September 27, 2024. (D.I. 262, Ex. 32 at 4:1-4; *see also* D.I. 150 (notice to take deposition on September 27, 2024)). Mr. Honerkamp was specifically designated as a 30(b)(6) witness regarding Jazz's decision to list the '963 Patent in the Orange Book. (D.I. 316, Ex. 98 ("Topic 2 - Jazz's decision(s) to list Jazz's REMS patents, including the '963 Patent, in the Orange Book . . . .")). Avadel confirmed this fact during Mr. Honerkamp's deposition, ████████

███████████████████████████████████████████████████



(D.I. 262, Ex. 32 at 107:16–108:5). The Court finds Avadel's argument that Mr. Honerkamp was not qualified to testify as to Jazz's reasons for listing the '963 Patent in the Orange Book because ▮ unavailing when (1) the interrogatory response was served over a year before Mr. Honerkamp's deposition, (2) Avadel has not pointed to any objection it had when Mr. Honerkamp was proffered to offer his testimony on the topic, and (3) Avadel elicited the testimony at issue.[7]

*Third*, Avadel claims that, if the Court were to accept the cited testimony, said testimony describes the REMS patents generically and is "divorced from the '963 [P]atent." (D.I. 314 at 6). Not so. Avadel itself had made clear that, when it was discussing the REMS patents, the '963 Patent was included. (*See* D.I. 262, Ex. 32 at 107:16-19 ▮

---

[7] The Court also notes that Fed. R. Civ. P. 30(b)(6) requires that "[t]he persons designated must testify about information known or reasonably available to *the organization*." Fed. R. Civ. P. 30(b)(6) (emphasis added). "The duty to prepare a Rule 30(b)(6) designee goes beyond matters personally known to the witness or to matters in which the designated witness was personally involved." *Great Am. Ins. Co. of New York v. Vegas Const. Co.*, 251 F.R.D. 534, 539 (D. Nev. 2008). Therefore, because Mr. Honerkamp was designated to testify on behalf of Jazz, he need not have had firsthand knowledge of the events about which he testified.

11

▮▮▮▮▮▮▮▮▮▮ In drawing all reasonable inferences in favor of the nonmoving party, as this Court is required to do, *Bletz*, 974 F.3d at 308, the Court finds that, when Mr. Honerkamp was discussing ▮▮▮▮▮▮▮▮▮▮ That Mr. Honerkamp declined to elaborate when Avadel's counsel pressed him ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ does not negate the Court's inference at the summary judgment stage.

*Lastly*, Avadel points out that, when asked through an interrogatory for every fact relating to Jazz's good faith in listing the '963 Patent, Jazz did not disclose any of the deposition testimony at issue in its initial response or through timely supplementation. (D.I. 314 at 6-7 ("Jazz did not disclose, whether at the time or through timely supplementation, any of the deposition testimony that it now cites in opposing summary judgment.")). In Avadel's view, this failure amounts to a prejudicial springing of evidence at the close of dispositive briefing. (*Id.* at 7 ("This failure requires preclusion because there is no justification for Jazz's attempt to prejudicially spring this 'evidence' upon Avadel at the close of dispositive briefing.")). Not so. Jazz could not have disclosed the deposition testimony when it first answered Avadel's interrogatory because that interrogatory was answered over a year before Mr. Honerkamp's deposition took place. (*See* D.I. 316, Ex. 101 at 9 (response dated May 18, 2023); D.I. 262, Ex. 32 at 4:1-4 (deposition conducted September 27, 2024)). Moreover, the Court disagrees with Avadel's characterization of Jazz's reliance on Mr. Honerkamp's deposition testimony as a prejudicial springing of evidence. Mr. Honerkamp gave his testimony in a deposition taken by Avadel and in response to questions asked by Avadel's attorney. The cases Avadel cites likewise do not support the proposition that Mr. Honerkamp's testimony should be excluded, as they both concern evidence that was not produced

during the course of discovery. *See Read v. Profeta*, 397 F. Supp. 3d 597, 648 (D.N.J. 2019) ("I nevertheless find that there is justice in Read's claim that he has been sandbagged by this declaration, ***submitted after the close of fact discovery***."); *Intuitive Surgical, Inc. v. Auris Health, Inc.*, 549 F. Supp. 3d 362, 378 n.13 (D. Del. 2021) ("Intuitive's ***briefing*** raises new facts allegedly supporting willfulness, including the fact that Auris conducted a freedom-to-operate analysis of Intuitive's patents."). There are no new facts here. Jazz's briefing does not cite to evidence submitted after the close of discovery. Instead, Jazz cites to evidence told directly to Avadel, in response to questions asked by Avadel, during a deposition. Therefore, even if the Court assumed, without deciding, that Jazz had a duty to supplement under Fed. R. Civ. P. 26(e), and that Jazz fell short of that duty in this instance, the Court would nonetheless find such a failure to be substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1).

**B.     There are Material Issues of Fact Regarding Jazz's Good Faith in Maintaining the Orange Book Listing for the '963 Patent**

Avadel further contends that Jazz has not proffered any evidence of subjective good faith when it refused to delist the '963 Patent. (D.I. 267 at 10; D.I. 314 at 10). The Court disagrees. The Court is required to draw all reasonable inferences in favor of the nonmoving party. *Bletz*, 974 F.3d at 308. If Jazz had a subjective good-faith belief for listing the '963 Patent, it would be reasonable to infer that Jazz maintained such a belief until the Federal Circuit affirmed this Court's decision ordering Jazz to delist. Although Avadel points to the fact that it brought a "patent listing dispute over the '963 Patent in 2019," claiming at that time "there were clear claims that . . . the listing was improper," (D.I. 314 at 10), good faith does not necessitate that Jazz acquiesce to all claims brought against it. At the summary judgment stage, the Court finds it appropriate to infer that Jazz's prior reasons to list the '963 Patent in the Orange Book were applicable when it refused to delist in response to Avadel's claims.

13

\*   \*   \*

For the foregoing reasons, the Court will credit the testimony of Mr. Honerkamp and finds that it does create material issues of fact regarding Jazz's good faith in listing, and continuing to list, the '963 Patent in the Orange Book. Avadel's MSJ No. 1 is therefore DENIED.

Since the Court denies Avadel's MSJ No. 1, the Court denies Avadel's MSJ No. 2 pursuant to the Court's summary judgment ranking procedures.

## IV.   CONCLUSION

For all of the foregoing reasons, the Court denies Avadel's Motion for Summary Judgment No. 1 (Jazz's regulatory compliance defense fails because there is no evidence to establish the requisite subjective good-faith element of this defense), and Avadel's Motion for Summary Judgment No. 2 (Avadel has satisfied the second element of its antitrust claims as a matter of law because Jazz's wrongful listing of the '963 Patent in the FDA's Orange Book constitutes exclusionary conduct under Section 2 of the Sherman Act) (D.I. 266). The Court will rule on Avadel's pending *Daubert* motions (D.I. 266) at a later date and will enter an Order consistent with this Memorandum Opinion.

Because this Memorandum Opinion is filed under seal, the parties shall meet and confer and, no later than twenty-one (21) days after entry of this Memorandum Opinion, submit a joint proposed redacted version of this Memorandum Order, accompanied by a supporting memorandum, detailing how, under applicable law, the Court may approve any requested redactions. In the absence of a timely, compliant request, the Court will unseal the entire Memorandum Opinion.